1

```
1            UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - X
       UNITED STATES OF AMERICA,    :   18-CR-00684(ENV)
3                                   :
                                    :
4                                   :   United States Courthouse
          -against-                 :   Brooklyn, New York
5                                   :
                                    :
6                                   :   May 30, 2019
                                    :   10:00 a.m.
7      ELGIN BRACK and SCOTT        :
       BRACK,                       :
8                                   :
            Defendants.
9    - - - - - - - - - - - - - - X
```

10        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE ERIC N. VITALIANO
11              UNITED STATES DISTRICT JUDGE

12
                  A P P E A R A N C E S:
13

For the Government:        RICHARD P. DONOGHUE, ESQ.
14                             United States Attorney
                               Eastern District of New York
15                             271 Cadman Plaza East
                               Brooklyn, New York 11201
16
                           BY:  PHILIP SELDEN, ESQ.
17                             Assistant United States Attorney

18
For Deft Elgin Brack:      LAW OFFICES OF JOEL M. STEIN, ESQ.
19                             30 Wall Street
                               8th Floor
20                             New York, New York 10005

21                         BY:  JOEL STEIN, ESQ.

22
For Deft Scott Brack:      STEVE ZISSOU & ASSOCIATES
23                             42-40 Bell Boulevard
                               Suite 302
24                             Bayside, New York 11361

25                         BY:  STEVE ZISSOU, ESQ.

```
                      Proceedings                    2

 1              A P P E A R A N C E S: (Continued.)

 2  Court Reporter:              DENISE PARISI, RPR, CRR
                                 Official Court Reporter
 3                               United States Courthouse
                                 225 Cadman Plaza East
 4                               Brooklyn, New York 11201
                                 Telephone: (718) 613-2605
 5                               E-mail: DeniseParisi72@gmail.com

 6  Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.
 7

 8                    *     *     *     *     *

 9           (In open court.)

10           THE COURTROOM DEPUTY:  All rise.  Court is now open.

11  The Honorable Eric N. Vitaliano is presiding.  The case on

12  calendar is USA versus Elgin Brack and Scott Brack, Case No.

13  18-CR-684 on for a status conference.

14           Would the attorneys please note their appearance

15  beginning with Government counsel?

16           MR. SELDEN:  Good morning, Your Honor.  On behalf of

17  the United States, Assistant United States Attorney, Phil

18  Selden.  Good morning.

19           THE COURT:  Good morning, Mr. Selden.

20           MR. STEIN:  Good morning, Your Honor.  Joel Stein

21  for Elgin Brack.

22           THE COURT:  Good morning.

23           MR. ZISSOU:  Scott Brack appears through counsel,

24  Steve Zissou.  Good morning.  Nice to see you again, Your

25  Honor.
```

Proceedings                                    3

1           THE COURT:  Good morning, same here.

2           THE COURTROOM DEPUTY:  Counsel for both sides are

3   present, including defendants.

4           THE COURT:  And the Bracks as well.

5           All right, Mr. Selden, why don't you catch us up,

6   please.

7           MR. SELDEN:  Thank you, Your Honor.

8           Your Honor, the Government's discovery productions

9   continue on.  We have specifically provided four additional

10   discovery productions to both Elgin Brack and Scott Brack by

11   way of counsel.  In addition, plea offers have been extended

12   to both defendants.  At this time the Government would be

13   happy to set a motions hearing date, or, if the defense would

14   like more time, we would be happy to provide additional time

15   for the review of discovery as well as plea considerations.

16           Thank you.

17           THE COURT:  Thank you.

18           Counsel?

19           MR. ZISSOU:  Lead counsel, Mr. Stein.

20           THE COURT:  You appointed him, Mr. Zissou?

21           MR. STEIN:  So, Judge, we have -- as Mr. Selden

22   correctly stated, we have received some recent discovery,

23   although, frankly, it's not particularly voluminous as

24   compared to the very voluminous discovery from before, and I

25   have been trying to plow through it, but the problem is and

1    that persists, and there's been a lot of back and forth with

2    Mr. Selden about this in the MDC -- I don't have an

3    explanation for it, but I will report to you my understanding

4    of what's happened.

5            So there are two forms of electronic discovery the

6    Government has sent to the jail:  There are a number of CDs

7    and then there's a hard drive, and there's a password for --

8    all the same password for all the CDs, same password for the

9    hard drive.  So the CDs have been sent to their clients in

10   their units so they are able to review the CDs in their unit

11   with the password for all the CDs.  There hasn't been a

12   problem with that.

13           The hard drive is a different issue and this came up

14   last time when we were before you about a month ago.

15           So the Government made arrangements with the MDC for

16   the hard drive to be placed in the east wing, the other

17   building, and they were given a schedule when they could go

18   over there.  It's two or three days a week, I forget exactly

19   how many days, but the problem has been the password for the

20   hard drive.

21           I have given my client several times the password,

22   instructed him carefully, hopefully, that the password has to

23   be entered obviously precisely; so there's lower case, upper

24   case, numbers, symbols, and Mr. Selden has sent it to me

25   multiple times, same password, I conveyed it to my client, and

1  he has not been able to open the hard drive.

2         Also, Mr. Selden informed us that some MDC officials

3  went to that building, entered the password and they didn't

4  have a problem opening it up.  So I don't know what to tell

5  you, Judge, but it's a persistent problem.

6         THE COURT:  Is there a way for whoever that other

7  person was to open up the hard drive for your clients --

8         MR. SELDEN:  It was a BOP official.  I don't know if

9  it was a Correction's officer or someone from legal, or I

10  don't know who it was.

11         THE COURT:  Just to open it up.

12         MR. STEIN:  It sounds easy, Judge, but it's --

13         THE COURT:  I know nothing is easy in the jailhouse.

14         MR. STEIN:  Mr. Zissou will speak for himself, but I

15  think his client is having the same problem.

16         THE COURT:  I'm assuming it goes to things on the CD

17  are different from the things on the hard drive, right?

18         MR. STEIN:  Yes.

19         MR. ZISSOU:  There's a lot of data and the data is

20  password protected; it starts the initial difficulty, you can

21  usually get through that.  If you recall last time we were

22  here, the defense suggested that the defendants be supplied

23  with laptops that we would purchase, load the appropriate

24  software on it, and then give it to the attorney for the

25  Government to do whatever they thought was appropriate, load

Proceedings                                                6

1   up the data on it, and give each one to the clients.

2         The warden made a suggestion, which we thought was

3   reasonable:  We'll give them visit -- we'll give them review

4   time in the visit room, two days a week, with access to the

5   discovery.  And we thought that was a reasonable suggestion,

6   mindful of the fact that there are security issues that the

7   BOP has to be concerned with.

8         I have to tell you, Judge, that it does appear to me

9   that both the attorney for the Government and the Bureau of

10  Prisons have made an effort to make this work.  Regretfully,

11  it hasn't worked yet; password issues, who's got what CD.  It

12  looks to me like these are issues that should be able to be

13  resolved, and so what I'm proposing is simply we give it

14  another time, we pick another status conference, we'll keep

15  trying, and if we still can't resolve it by then, then we'll

16  make whatever additional application we think we need to.

17        MR. STEIN:  Who knows, maybe we will get more

18  discovery in the intervening time.

19        THE COURT:  Are you onboard with that suggestion,

20  Mr. Stein?

21        MR. STEIN:  Yes, Judge.

22        THE COURT:  Mr. Selden, how about you?

23        MR. SELDEN:  Thank you very much, Your Honor.

24        Your Honor, with regards to the actual logistics for

25  defendants Elgin and Scott Brack, we would just inquire

Proceedings                                              7

1    through the Court whether or not counsel for Elgin Brack and

2    Scott Brack have had any past work or other logistical issues

3    opening the discovery.  We just want to see whether or not

4    there's been any issues for the attorneys with regards to

5    their ability to open up the discovery.

6              THE COURT:  Have either of you tried to open that?

7              MR. STEIN:  We don't have the hard drive, it's a

8    different password issue, but I haven't had any problem,

9    actually.  Mr. Selden has been very helpful in pointing some

10   things out for me so the answer is no.

11             THE COURT:  You haven't tried at the facility

12   yourself --

13             MR. STEIN:  I can't go to that building.

14             THE COURT:  Well, you said the visitor center so I

15   wasn't sure if that's where --

16             MR. STEIN:  It's in the east building.

17             MR. SELDEN:  Actually, Your Honor, I had an

18   opportunity to speak with Michael Cardew who is a

19   representative from MDC Brooklyn, and apparently paralegals

20   and legal counsel can go to the east visiting room.  But my

21   question was more whether or not counsel themselves have had

22   an ability to open the discovery at their offices.

23             THE COURT:  At their own offices?

24             MR. SELDEN:  At their own offices.

25             MR. STEIN:  I have had no problem.

```
                      Proceedings                      8
```

1      MR. ZISSOU:  So, Judge, what I did, because there's

2  a lot of -- what's the word? -- learning time?  I forget the

3  exact phrases, but it takes a while to get comfortable with

4  the data and how to open it.  So what we did was we copied all

5  the data onto a non-protected disk so we can access it

6  immediately without --

7      THE COURT:  And you mean in your office?

8      MR. ZISSOU:  Correct.  So it took some days to

9  transfer all the data onto a non-protected disk, but once you

10  do that, we have no problem whatsoever accessing the data.

11  There's some software issues, you have to download some

12  software from the Internet for it to run smoothly, you know,

13  but these are sort of common 2019 issues that lawyers face all

14  the time.

15      My primary concern and my primary belief here is the

16  computers and the hardware in the visiting room in the MDC,

17  it's ENIAC level.  I mean, it's back to the '70s.  And, again,

18  I appreciate that they don't want to spend time and money on

19  software and hardware, but the computers there are not the top

20  of the line stuff that we have in my office; they don't have

21  Internet access so they can't download or figure out how to

22  make it work.  Again, these are problems that should be

23  resolvable if the Bureau of Prisons continues to be committed

24  to making it so.

25      THE COURT:  It sounds like they are.

Proceedings                                          9

1    MR. ZISSOU:  It does.

2    MR. SELDEN:  Your Honor, now understanding that both

3    Mr. Zissou and Mr. Stein have had the ability to open up all

4    the discovery productions made by the Government, I would like

5    to make the following representations about MDC Brooklyn's

6    efforts to facilitate Elgin Brack and Scott Brack's ability to

7    look at the productions previously produced.

8         Specifically, Elgin Brack is allowed to go to the

9    east visiting room on Mondays and Wednesdays.  At that time,

10   he is provided an opportunity to preview, through the hard

11   drive -- he's provided an opportunity from 8:00 a.m. to

12   approximately 3:30 p.m.  Notably, this is more than the time

13   that would be allowed for another inmate accessing the law

14   library.  As well, he's provided lunch so he doesn't have to

15   go back to his actual unit.

16        Scott Brack is provided an opportunity to attend on

17   Tuesdays and Thursdays with the same access to the hard drive

18   as well as provided lunch.  Access to the DVDs is provided in

19   every unit from 6:00 a.m. to the recall time at approximately

20   3:30 p.m., seven days a week.

21        As of May 7th, both defendants were given hard drive

22   access in the east visiting room.  It's our understanding that

23   there have been difficulties with the password.  As a result

24   we inquired through MDC Brooklyn whether or not they would be

25   willing to go in and essentially spot check, see whether or

1    not the passwords work.  And, to be clear, in terms of the

2    times --

3                THE COURT:  But not while the --

4                MR. SELDEN:  Not while the defendants were present.

5                And I will share with the Court, Elgin Brack and

6    Scott Brack are one of five inmates at MDC Brooklyn who are

7    afforded an opportunity to go to the east visiting room to

8    utilize this hard drive procedure.  As the Court is probably

9    no doubt well aware, when this case sort of came through at

10   its early inception, Ms. Seltzer was counsel and she was

11   physically not in the jurisdiction and so, as a result, we

12   came up with this plan to allow Elgin Brack and Scott Brack

13   access to discovery in addition to their counsel.

14               There are five out of approximately 1500 inmates at

15   the MDC that are allowed this east visiting room privilege, if

16   you will.  As a result, also, MDC Brooklyn's position is that

17   actually tech spotting, if you will, with the inmates present,

18   because it is a jail facility, that's not something that they

19   are necessarily equipped to do and so, in inquiring, we asked

20   whether or not a paralegal or a legal counsel could go into

21   the east visiting room.  Mr. Cardew reported that they could,

22   and so if Mr. Zissou and Mr. Stein have not had issues with

23   the password, one potential --

24               THE COURT:  You mean while their client is present?

25               MR. SELDEN:  Yes.  And, in fact, that might be one

Proceedings                                                    11

1    possible solution to alleviate the password issue.

2            As it relates to the password, we actually did have

3    an MDC Brooklyn representative try to utilize the password on

4    both hard drives; they were able to do so successfully.  In

5    addition, they were able to spot check the various documents

6    on the hard drives and see if they opened.  We understand

7    Mr. Zissou's representations about 1970's computers, but the

8    files that they were able to open, they were actually able to

9    open them on the hard drives.  So we wanted to actually share

10   that as it relates to the actual hard drives.

11           As it relates to the CDs, Scott Brack, we

12   understand, is currently in possession of two CDs.  Elgin

13   Brack is in possession of one CD.  Everything that is on the

14   CDs is a mirror, with the exception that Scott Brack has

15   specific materials germane to Scott Brack that's on his CDs.

16   So that's why there's one CD versus two.  There is not a

17   reason why Elgin Brack should have an additional CD.

18           In addition, there are two CDs that are on their way

19   to Elgin and Scott Brack that they should be able to utilize

20   in their housing unit.

21           I have been informed that, as of May 29th,

22   yesterday, Mr. Elgin Brack declined to go to the east visiting

23   room to actually attempt to review material, and so we wanted

24   to flag that for the Court as far as where we stand.  That

25   might mean he's frustrated with the process, and so we are not

Proceedings                                    12

1   impugning anything as it relates to Mr. Elgin Brack, but one

2   possible suggestion would be to have the lawyers go and try

3   out the passwords but that --

4           THE COURT:  And show them how to open it?

5           MR. SELDEN:  Yes, Your Honor.  And since the lawyers

6   now have reviewed through the discovery themselves they would

7   be able to potentially identify, and the Government has

8   previously asked Mr. Zissou for specific Bates numbers.  If

9   there's a document that Scott Brack or Elgin Brack cannot

10  open, because the Government has Bates stamped its

11  productions, we would simply just ask:  What document are you

12  referring to that can't be opened?

13          Thank you, Your Honor.

14          MR. ZISSOU:  Judge, as I said, it does appear that

15  the parties are all working together diligently to resolve

16  this problem.  I'm hopeful that we will be able to do it, and

17  again, if it falls awry, we will let Your Honor know.

18          THE COURT:  Well, based on something that Mr. Stein

19  said earlier, I didn't think that you all could get in there

20  while they were there and, apparently, according to

21  Mr. Selden, that is now possible.

22          MR. ZISSOU:  Yeah.

23          THE COURT:  So that might assist them and you,

24  frankly, that you can be there with your client at the same

25  time and review the documents with them.

```
                    Proceedings                    13
```

1          MR. ZISSOU:  I'm looking forward to that, Judge, but

2     regretfully Mr. Selden and I are starting the same trial on

3     Monday in front of your colleague.

4          THE COURT:  Well, let Mr. Stein do it.

5          MR. STEIN:  Actually, I'm going to be there

6     tomorrow, Judge.

7          MR. ZISSOU:  He has my permission to go every day

8     next week and hopefully Your Honor will agree.

9          MR. SELDEN:  Your Honor, there was one -- as it

10    relates not necessarily to this discovery, but as it relates

11    to additional productions, I failed to mention that the

12    Government previously provided expert notice -- provided

13    expert notice to defendants Elgin Brack and Scott Brack,

14    regarding DNA evidence, and we put that in a production to the

15    defense relating to DNA and cell tower evidence as well.

16         Thank you, Your Honor.

17         THE COURT:  Okay.

18         MR. STEIN:  Judge, my client has informed me that he

19    would like to address the Court, not about the evidence but

20    about this discovery review process.

21         THE COURT:  You advised him, of course, that

22    anything he says --

23         DEFENDANT ELGIN BRACK:  I have no problem.

24         THE COURT:  I will hear you.

25         DEFENDANT ELGIN BRACK:  I -- I've seen one of the

Proceedings                                              14

1   CDs that my codefendant has and I've seen the CD that I have.

2   For some reason, I don't know why, my codefendant's second CD

3   has nothing but me on there.  My pictures, my texts, my

4   Facebook, and I think I need to see that.  It doesn't have

5   nothing to do with him.

6              As far as the password on the hard drive, it's not

7   working.  I wouldn't lie.  I asked the lawyer, can he bring

8   all of this to court and just show it to you, but he says it

9   might be a hard thing to do, but I don't think this is fair.

10  I have been in MDC for like six month, I cannot look at the

11  hard drive.  He sent me this K5J whatever password months ago.

12  I have been trying it all different type of ways.  It doesn't

13  work.  I wouldn't lie.

14             And as far as the second CD that he gave to my

15  codefendant that has me on there, I don't have that CD.  I

16  want that CD.

17             THE COURT:  All right.

18             DEFENDANT ELGIN BRACK:  And I'm speaking now in open

19  court, she's typing it up, so you can do your own research on

20  these two CD that he got and you will see that it's me.  When

21  you -- when my lawyer comes tomorrow to the east and he tries

22  that password and it doesn't work, I just want this noted down

23  in the court.  I'm not calling him a liar or nothing, but he's

24  just mistaken.

25             THE COURT:  We've heard that issue, Mr. Brack, and

Proceedings                                              15

1   we understand that the next step will be the lawyers appearing

2   with their respective clients in trying to make -- since they

3   have been able to access the information using that password,

4   to see if they can access the information on the computers

5   that you use to access the information.

6            DEFENDANT ELGIN BRACK:  But the attorneys, they have

7   either cards or CDs; they don't have the hard drive.

8            THE COURT:  No, they are coming to you at the MDC

9   and accessing the one that you have, and then they will see if

10  they can do it, and to the extent they are successful, maybe

11  they can show you what misstep you are making in the computer

12  process that makes you unable to open them.  So that's what

13  the next step will be.

14           With respect to discovery, I'm sure the respective

15  lawyers will, to the extent that information has been not

16  provided that's appropriate, I'm sure we will hear either that

17  that has been worked out among counsel or there will be an

18  application made to the Court.

19           DEFENDANT ELGIN BRACK:  All right.  So will I be

20  getting a second disk or can I just take it from my

21  codefendant?

22           THE COURT:  Well, we will have to find out from

23  counsel after they confer.

24           MR. SELDEN:  Your Honor, I can clarify what was on

25  one disk versus another without going into the substance of

Proceedings                                    16

1   that particular disk.  It was e-mails with Scott Brack and his

2   attorney that we do not believe are documents that we should

3   be providing to Elgin Brack.  So as a result, that's why he

4   does not have that additional disk containing those e-mails.

5          As it relates to a phone download, the Government

6   has actually provided specific Bates stamp ranges to Mr. Stein

7   for, for example, Google searches by what we believe is Elgin

8   Brack on the day before and the day of the alleged incidents

9   in question.  Those are items that could be, for example --

10         THE COURT:  I think the question Mr. Elgin Brack is

11  raising is whether or not the Government has provided to

12  Mr. Scott Brack information about Mr. Elgin Brack that the

13  Government hasn't provided to Mr. Elgin Brack.

14         MR. SELDEN:  No, it's actually just that we've

15  provided information to Scott Brack that is specific to Scott

16  Brack versus Elgin Brack, and so that is the answer.  It's

17  Scott Brack, as a codefendant, would also have information

18  about Elgin Brack and vice versa.

19         THE COURT:  But there's nothing about -- the point

20  that I think that's been raised, and we can have your

21  representation on it, is that there is nothing that's not

22  going to be or is not available either on the CDs or on the

23  hard drive that relates to Mr. Elgin Brack that has been

24  provided to Mr. Scott Brack that hasn't been provided to

25  Mr. Elgin Brack.

Proceedings                                    17

1          MR. SELDEN:  That's correct.  With the exception of

2     the e-mails, that is correct, Your Honor.

3          And, Your Honor, just with regard to logistics, I

4     understand that Mr. Stein plans to visit Elgin Brack tomorrow.

5     We would suggest that he visit on a Monday when Mr. Elgin

6     Brack's actual scheduled visiting days are in the east

7     visiting room.  It's my understanding that that room is

8     actually fairly well utilized and so having an attorney and

9     his client in there tomorrow just might not logistically be

10    something that would work.  Unless Mr. Stein has spoken

11    previously to representatives at MDC about the planned visit,

12    we just recommend Monday.

13         MR. STEIN:  I can't go Monday.  I don't need to

14    discuss my schedule with anybody.  I can't go Monday, I have a

15    previous commitment, and I don't tell the MDC about -- I

16    didn't tell them anything about what has been suggested here,

17    since we're doing it for the first time, so I'll find another

18    day and see what we can work out.

19         MR. SELDEN:  Mondays or Wednesdays are his visiting

20    days.

21         THE COURT:  I think what he's also suggesting is

22    that you might want to phone today because perhaps with

23    prearrangement you can do it tomorrow.

24         I think that was the point, correct, Mr. Selden?

25         MR. SELDEN:  Yes, Your Honor.

```
                      Proceedings                    18
```

1          MR. STEIN:  I will contact legal and see what I can

2    work out.

3          THE COURT:  You might be able to do a special for

4    tomorrow.

5          Okay, so we know how we want to go forward, but we

6    don't know the time schedule.

7          MR. SELDEN:  And, Your Honor, just one last --

8    Murphy's law, if for whatever reason, for example, Mr. Stein

9    or Mr. Zissou are unable to utilize the passwords with their

10   clients, we would ask Mr. Stein and Mr. Zissou to propose a

11   laptop, as Mr. Zissou has voiced already, and propose it to

12   Government counsel as well as Ms. McFarland, the make, the

13   model, and when they think they will be available to purchase

14   that item so that we can actually move forward and download

15   the documents if for whatever reason they are not able to

16   access the hard drives.

17         MR. ZISSOU:  I'm happy to send them one now.  I'm

18   sure the Court wouldn't object if I spent a minor amount

19   purchasing a laptop.  The way we've done it in the past is we

20   just buy it from the maker, send it directly to the attorney

21   for the Government, still wrapped, and they load it up.  They

22   have access to the same software that you need.  We don't even

23   need to touch it; that's how we've done that in the past.  I'm

24   happy to do that now to get things going.

25         THE COURT:  As long as Jerry Tritz doesn't get mad

1  at Mr. Zissou, it's okay with me.

2          MR. ZISSOU:  I will clear it with him before I do

3  anything, Judge.

4          MR. SELDEN:  Your Honor, I do want to say, though,

5  that MDC has requested that we try to work out the actual

6  portable hard drives first.

7          THE COURT:  Yes, that would be in everyone's best

8  interest, if that's doable.  If it proves not doable, then we

9  have to go to plan B.

10          MR. SELDEN:  Absolutely.

11          THE COURT:  Or Z, wherever we're at.

12          MR. ZISSOU:  Z, I like Z, Judge.  And we'll keep

13  working, I promise you, Judge.

14          THE COURT:  I thought you might.

15          All right, does that bring us to when we shall find

16  out at our next status conference as to whether or not all of

17  this is worked out and which plan worked?

18          MR. SELDEN:  That's good, Your Honor.

19          THE COURT:  You say about 30 days?

20          MR. SELDEN:  That sounds good.  Thank you, Your

21  Honor.

22          THE COURTROOM DEPUTY:  How's June 28th?

23          MR. ZISSOU:  I might have to leave by then.  I think

24  my last day is going to be the 26th.

25          THE COURT:  We can do it on a Thursday or -- that

```
                          Proceedings                     20
```

1 would be a Wednesday, right?

2 　　　　MR. ZISSOU:  Yeah, 24th, 25th, I have to -- I have

3 to travel in an unrelated case and I'm pretty sure I have to

4 be on the plane by the 28th, give or take a day, so I have to

5 be in a venue by the 30th.

6 　　　　THE COURTROOM DEPUTY:  How's the 26th?

7 　　　　THE COURT:  Try the 26th.  I have to go to

8 Washington earlier that week.

9 　　　　MR. STEIN:  No good for me.

10 　　　　MR. ZISSOU:  Why don't you make it the 27th?  If

11 there's a problem, I will let you know.

12 　　　　THE COURT:  Mr. Stein?

13 　　　　MR. STEIN:  Excuse me?

14 　　　　THE COURT:  27th works for you?

15 　　　　MR. STEIN:  Yes, I'm just asking what day of the

16 week that is.

17 　　　　THE COURT:  It's a Thursday.

18 　　　　MR. SELDEN:  Is there a particular time on that day,

19 Your Honor?

20 　　　　THE COURT:  I knew that right away because William

21 always offers Fridays first.

22 　　　　THE COURTROOM DEPUTY:  We can do 10:00 a.m.

23 　　　　MR. SELDEN:  I have a sentencing that morning at

24 10:00 a.m.  Is there an afternoon time that's available?

25 　　　　THE COURT:  We can to 11:00.

```
                         Proceedings                    21
```

1      MR. SELDEN:  I have a 10:30 sentencing also,

2  following that first sentencing.  So I have two in the

3  morning.  Is the afternoon available, please?

4      MR. STEIN:  How about noon?

5      THE COURT:  Is that a problem with you?

6      MR. ZISSOU:  Any time on Thursday is fine.

7      THE COURT:  Even in the afternoon?

8      MR. ZISSOU:  Sure.  Any time, Your Honor.

9      MR. SELDEN:  Sure, that works well.  Thank you.

10     THE COURT:  What time did you make it, William?

11     THE COURTROOM DEPUTY:  Noon.

12     THE COURT:  That's fine.

13     Anything else?

14     MR. STEIN:  Noon on the 27th?

15     THE COURT:  27th.

16     MR. STEIN:  Judge, I have two administrative sort of

17  matters.

18     THE COURT:  Sure.

19     MR. STEIN:  One is, since obviously we've been

20  devoting a lot of time on this, whether you will authorize

21  interim vouchers.  I don't know whether I need to submit a

22  letter to that effect.

23     MR. ZISSOU:  If he enters it on the docket entry --

24     MR. STEIN:  So that's okay, Judge?

25     THE COURT:  It's okay with me.

Proceedings                                      22

1          MR. STEIN:  The other thing is -- I spoke with the

2    marshals before -- with the Court's permission, we want to go

3    downstairs, and the marshals have agreed to put the clients

4    into the cellblock, and counsel will go down there and --

5          THE COURT:  That is absolutely encouraged.  Not only

6    permission but encouraged.

7          Anything else administratively we need to take care

8    of?

9          MR. SELDEN:  Nothing from the Government.  Thank

10   you, Your Honor.

11         THE COURT:  All right, so based on the information

12   provided, discovery continues to be an issue, which we hope

13   we've made some substantial progress on.  Obviously discovery

14   is important for a lot of reasons, including most importantly

15   to allow defense to make some strategic determinations.  Plea

16   agreements have been extended, so to the extent that the

17   discovery might push them in that direction, that could lead

18   to the disposition of this matter without the necessity of

19   trial, and the overall need of time for the proper preparation

20   of this case given the discovery issues is more than apparent.

21         So for all of those reasons, without the objection

22   of any party to otherwise meet the ends of justice, we will go

23   over for further status on June 27th at noon and exclude the

24   time in the interim.  So we will see you on June 27th.

25         MR. ZISSOU:  Thank you for your indulgence this

Proceedings                                23

1    morning, Your Honor.

2              THE COURT:  Good to see you all.

3              MR. SELDEN:  Thank you, Your Honor.

4              May we be excused?

5              THE COURT:  You are excused.

6              MR. SELDEN:  Thank you, Your Honor.  Have a nice

7    day.

8              (Matter concluded.)

9

10                    *     *     *     *     *

11

12   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

13

14      /s/ Denise Parisi                August 8, 2019
     _____      _____
15        DENISE PARISI                      DATE

16

17

18

19

20

21

22

23

24

25