1002

<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3    - - - - - - - - - - - - - - - X

 4    UNITED STATES OF AMERICA,    :    18-CR-684(ENV)

 5              Plaintiff,          :
                                         United States Courthouse
 6         -against-               :    Brooklyn, New York

 7    ELGIN BRACK,                  :
                                         March 11, 2020
 8              Defendant.          :    10:00 o'clock a.m.

 9    - - - - - - - - - - - - - - - X

10
                            TRANSCRIPT OF TRIAL
11             BEFORE THE HONORABLE ERIC N. VITALIANO
                UNITED STATES DISTRICT JUDGE, and a jury.
12

13    APPEARANCES:

14

      For the Government:          RICHARD P. DONOGHUE
15                                 United States Attorney
                                   BY: PHILIP A. SELDEN
16                                     JONATHAN SIEGEL
                                       JONATHAN LAX
17                                 Assistant United States Attorneys
                                   271 Cadman Plaza East
18                                 Brooklyn, New York

19
      For the Defendant:           JOEL M. STEIN, ESQ.
20
                                   GARY FARRELL, ESQ.
21

22    Court Reporter:             Charleane M. Heading
                                   225 Cadman Plaza East
23                                 Brooklyn, New York
                                   (718) 613-2643
24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer-aided transcription.
</pre>

CMH        OCR        RMR        CRR        FCRR

1003

```
1              (In open court; outside the presence of the jury.)
2         THE CLERK:  The Honorable Eric N. Vitaliano
3    presiding.
4         The case on the calendar is USA versus Elgin Brack,
5    Case Number 18-CR-684, on for a jury trial.
6         Will counsel note their appearance starting with
7    government counsel.
8         MR. SELDEN:  Good morning, Your Honor.  On behalf of
9    the United States, Assistant United States Attorney Phil
10   Selden.  I'm joined by Assistant United States Attorneys
11   Jonathan Siegel and Jonathan Lax, Paralegal Specialist Elicia
12   Bates and Detective Steven Saint-Hilaire.
13        THE COURT:  Good morning.
14        MR. SIEGEL:  Good morning.
15        MR. STEIN:  Good morning, Your Honor.  Joel Stein
16   for Elgin Brack.
17        MR. FARRELL:  Good morning, Judge.  Gary Farrell
18   also for Elgin Brack.
19        THE COURT:  Good morning.
20        Good morning, Mr. Brack.
21        THE CLERK:  All counsel present including the
22   defendant.
23        THE COURT:  Any housekeeping?
24        MR. SELDEN:  Not on behalf of the government.  We
25   wanted to tell Mr. Farrell if he needed assistance with any
```

1   technology in the courtroom, we're happy to do that.  It

2   sounds as if he does not, but if that changes, we'll step up

3   and do it.

4           MR. FARRELL:  Your Honor, I acknowledge the gracious

5   offer by the government.  I'm decidedly low tech and I think

6   I'll be able to use the ELMO.  I think I can manage my way,

7   but if I can't, Mr. Bennett will get me through.

8           My only issue, Judge, is I hope the break will fall

9   at the time the government's first summation is done because I

10  do want to set up a little bit.

11          THE COURT:  Yes.  What I do is I take breaks in

12  between.

13          MR. FARRELL:  Excellent.  Okay.  That's good then.

14  I'm done.  Thank you.

15          THE COURT:  You've answered one question.  I know

16  the batting order on this side is you.

17          MR. FARRELL:  Yes.

18          THE COURT:  Mr. Selden, what's the batting order on

19  your side?

20          MR. SELDEN:  Thank you, Your Honor.  Mr. Siegel will

21  be conducting the government's closing argument and I will be

22  conducting the government's rebuttal argument.  Thank you.

23          THE COURT:  Okay.  And, of course, you're reminded

24  that rebuttal is rebuttal, not a second close.

25          MR. SELDEN:  Absolutely, Your Honor.

1005

1       THE COURT:  The clerk will mark as Court Exhibit 2

2  the final charge as read and the accompanying final verdict

3  sheet as Court's 2A and with that, we will bring the jury in.

4       (So marked.)

5       (Jury enters.)

6       THE COURT:  Be seated, please.

7       Counsel will stipulate that the jury is present and

8  properly seated.

9       MR. SELDEN:  On behalf of the government, yes.

10  Thank you, Your Honor.

11       MR. STEIN:  Yes, Judge.

12       THE COURT:  Thank you, Counsel.

13       Ladies and gentlemen, welcome back.  I hope you had

14  a smooth ride in.  The weather seems to be a little finer

15  today than it was yesterday.  I appreciate that.  I appreciate

16  your presence, your sacrifice and your attentiveness.  Let me

17  sketch out for you what the day looks like today and you will

18  hear me say this on a couple of occasions.

19       There is no rush to judgment on a deliberation day.

20  It takes as much time as it takes and the jury hasn't

21  completed its work on any given day.  We just come back for

22  the next day.  Our day today will end at around 4:45, between

23  4:45 and 5, and if it's concluded, it's concluded.  If it's

24  not, we will pick up tomorrow.

25       What is the work that lies ahead of us?  Well, there

1   are the closing arguments and as you remember from the opening

2   instructions, the government has the right to open and close

3   the debate.  So we will have an opening argument on behalf of

4   the government which will be followed by the summation on

5   behalf of the defendant which will be followed by the rebuttal

6   argument on the behalf of the government.  We will take a

7   little break in between each of those events.

8           We will then have the Court's final instructions on

9   the law and then the case will be delivered to you, the

10  jurors, for your deliberation.  As you know, unlike all the

11  rest of the days when I used to sort of make a joke that

12  nobody is buying you lunch, today we're buying lunch but, of

13  course, there's a catch.  You are going to work through your

14  lunch.  You will be able to deliberate and eat at the same

15  time so everybody will be back in the jury room here for

16  lunch.

17          So with all of that, we are ready to begin and to

18  make a closing argument on behalf of the government, I call

19  upon Assistant United States Attorney Jonathan Siegel.

20          MR. SIEGEL:  Thank you very much, Your Honor.  And

21  Your Honor, with the Court's permission, Ms. Bates is going to

22  help me with the court technology.

23          Good morning, ladies and gentlemen.  Over the last

24  two weeks, the government has proven beyond a reasonable doubt

25  that the defendant Elgin Brack went on an armed robbery spree

Summation - Siegel                    1007

1    on November 26, 2018.  You have all seen the overwhelming

2    evidence for yourselves and now that you've seen that

3    evidence, I'm going to help you put it all together.

4           I'm going to talk to you about three things.  First,

5    I'm going to walk through what all the evidence shows, and I'm

6    not going to touch on every piece of evidence because then we

7    would have to be here for another week, but I'm going to walk

8    you through, step by step, what happened on November 25th and

9    26th, 2018.  Second, I'm going to explain the charges and what

10   I expect the Court will tell you about the law and, third and

11   finally, I'm going to boil it all down to the key issue:  Five

12   ways that you can know, that you do know that the defendant is

13   the person who committed the robberies that night.

14          So let's start with what the evidence shows happened

15   here and I want to be clear, by the way, when I'm talking to

16   you, I am going to be talking about evidence only.  Nothing

17   that I say up here is evidence separate from what you have

18   heard during the trial, but I'm going to be giving you

19   exhibits and I'm going to be citing to the transcript.  The

20   reason I'm doing that is for this trial, only the evidence

21   matters and when you deliberate, you will be able to see

22   whatever evidence you want.  So if during my argument, I put

23   up a picture of an exhibit, if I show you an exhibit, you can

24   ask to see that exhibit during your deliberations.  If I talk

25   about testimony, you can ask to see that transcript.

Summation - Siegel                          1008

1          So this is the basic timeline of this case.

2          At 3:00 p.m. on November 25, 2018, the defendant was

3   videotaped in the Bronx.  He was wearing the same clothes that

4   he would later wear during the robberies.  That's important

5   evidence that you've heard us talk about a bunch of times and

6   I'm going to come back to it today.  Just 12 hours later after

7   that video, the defendant started his robbery spree.  At

8   3:30 a.m., at the Duane Reade in Woodside, Queens, he

9   attempted a robbery and he shot Alejandro Deleon.  Just

10  25 minutes after that, he robbed the 7-Eleven, 20 minutes

11  after that, he robbed his first Rite Aid, and an hour and a

12  half after that, he robbed the second Rite Aid in Jamaica, and

13  15 hours later, he was under arrest in the Bronx.

14         That is the whole timeline of this case, those

15  30 hours.

16         So let's start with that first event, that video

17  from the Bronx.  This is Government Exhibit 417A.  It's the

18  video that Special Agent Tyler Miceli testified that he

19  downloaded on Hughes Avenue in the Bronx and that's at

20  transcript pages 452 to 454.  At 3:00 p.m. or 3:07 as is shown

21  in the timestamp on November 25th, just 12 hours before the

22  robbery started, Elgin Brack and Scott Brack were together on

23  Hughes Avenue in the Bronx.

24         And Ms. Bates, if you can please play the video.

25         (Video played.)

Summation - Siegel                          1009

1          MR. SIEGEL:  You can see them walking together and

2     the defendant himself told you who these people are.  That's

3     Scott Brack on the right in the gray and that's the defendant.

4          (Video stopped.)

5          MR. SIEGEL:  We can look more closely at what the

6     defendant was wearing.  He was wearing bright white shoes and

7     he was wearing a green hooded jacket.  As he himself admitted

8     to you, he was wearing Government Exhibit 306.  This green

9     hooded jacket.  He was also wearing black jeans with zippers.

10    Again, he testified that these are the pants he was wearing,

11    these black jeans with these copper gold zippers, and that's

12    Government Exhibit 307.  On his back as he walked down the

13    street, was his backpack, Government Exhibit 304.  This

14    backpack, the same backpack that Detective Nuzio later

15    searched and found those black jeans inside of and found the

16    gun inside of.

17          Now, this video is not the only evidence that shows

18    that the defendant and Scott Brack were together in the Bronx

19    that afternoon.  There was also the cell site evidence.

20          As Dave Magnuson, the cell site expert, testified,

21    and that's as transcript 765, the defendant using what

22    Mr. Magnuson called the North Carolina phone because of the

23    defendant's North Carolina area code, he called Scott Brack on

24    Scott's New York area code phone.  That was at 12:21 p.m. and

25    they both hit on cell towers in the Bronx.  And it shows that

1    they were both in that area of Hughes Avenue in the Bronx that

2    afternoon.

3            The cell site evidence also shows you what they did

4    that night because at 1:34 a.m. now on November 26th, the

5    defendant called Scott Brack again.  And, remember, this is

6    after the defendant claims he lost his phone, but despite

7    that, at 1:30 in the morning, his phone is calling Scott

8    Brack.  And, again, the map shows what cell towers their

9    phones were hitting on.  They were still close to each other

10   and they were together in New Jersey.

11           Now, to get from New Jersey to Queens to commit

12   these robberies in just a few hours, they needed a car and the

13   evidence shows that they had a car.  They had Edward Vasquez's

14   gray two-door Toyota Solara, the same car that they would

15   later be arrested in.  And as we watch the videos from these

16   robberies, I want you to watch out for this car because you

17   are going to see it.  That night, they drove that Toyota

18   Solara from New Jersey to New York and how do you know?

19   Because their trip was captured by license plate readers or

20   LPRs.

21           This is an LPR record and I want to walk through

22   what this shows.  The top part of the record, it shows the

23   photograph that was taken of the car, that's the photograph on

24   the left, and it shows the photograph of the license plate of

25   the car.  You can see the license plate that it photographed,

Summation - Siegel                    1011

1    HYC8724.  And I'm going to go back to the last slide.  It's

2    the same license plate, HYC8724.

3             The top record also shows some information about the

4    car and it might be some small font, but if you look at your

5    screens, can you see it.  It's a gray car.  It's a two door

6    car.  It's a Toyota Solara.  The LPR data shows what time this

7    picture was taken, at 2:20 a.m., and the bottom part is a map

8    that shows where the picture was taken.  And what it all shows

9    together is that at 2:20 a.m. on November 26, 2018, in the

10   middle of the night, the Toyota Solara was driving into

11   New York over the George Washington Bridge.

12            Thirty minutes later, there was another LPR hit.  At

13   2:52, the Toyota Solara crossed into Queens and, again, it's

14   captured.  You can see its license plate and it's now on the

15   Queensboro.  The bottom shows that map showing where it is on

16   the Queensboro going over the bridge.

17            Now, the evidence also shows what the defendant was

18   doing while that car was traveling through New York, through

19   Manhattan towards Queens.  The defendant was searching for

20   targets.

21            This is the report that Special Agent Seth

22   Mastropaolo recreated of the search history of the defendant's

23   phone, from 1 a.m. to 7:00 a.m. on November 26, 2018, and

24   that's as Special Agent Mastropaolo testified at transcript

25   pages 723 to 725.  As you heard, Special Agent Mastropaolo

Summation - Siegel                    1012

1   testify, that report is a download from this phone, Government

2   Exhibit 311, the defendant's phone.

3          The report shows his search histories.  These are

4   searches that were done on the Chrome browser at certain times

5   on this phone.  And I've just blown up a couple but at

6   2:36 a.m., he was searching for 24 hour stores, at 2:36 and

7   26 seconds, 24 hours stores NYC.  And we can just go through

8   them.  At 2:34, he searched for a 24 hour Family Dollar.  At

9   2:34, 24 hour Family D.  2:35, again, 24 hour Family Dollar.

10  2:35, again, 24 hour Family D.  2:36, 24 hour stores New York

11  City.  And he was searching again and again and again and

12  again and again and again and again and again and again and

13  again.  He was searching for places to rob.

14         So now let's talk about his first attempted robbery,

15  the first attempted robbery at the Duane Reade and the

16  shooting at the Duane Reade, the first 24 hour store of the

17  night.  Now, the first event at the Duane Reade was at

18  3:13 a.m.  And just to orient you, that's 30 minutes after

19  they crossed the Queensboro Bridge.

20         In the background of this picture, that's Alejandro

21  Deleon.  He identified himself in this picture during his

22  testimony and that's at page 146 of the transcript.

23         On this video, you are going to see a man walk into

24  the store and I want to you pay attention because he's

25  important.

Summation - Siegel                          1013

 1              Ms. Bates, can you please play the video.

 2              (Video played.)   (Video stopped.)

 3              MR. SIEGEL:  Here's a screen shot and a blown up

 4   image of that man and from the evidence in this case, you can

 5   conclude that that man was Scott Brack.  I'm showing you the

 6   post-arrest picture of Scott Brack that was identified by

 7   Special Agent Tyler Miceli and was identified by the defendant

 8   as his cousin, Scott Brack.

 9              In addition to recognizing his face, you can

10   recognize his clothes.  I'm showing you the post arrest

11   photograph of Scott Brack that was identified by Special Agent

12   Tyler Miceli and that beanie on his head is the same.  It's

13   this beanie, Government Exhibit 315, that was taken off his

14   head at the time of the arrest, and that's at transcript

15   page 441 to 442.

16              Now, why is Scott Brack coming into this Duane Reade

17   at 3:13 in the morning?  I submit that it's part of his plan

18   with the defendant.  He is checking to make sure that the

19   coast a clear for the defendant to come in and commit this

20   robbery.

21              Just 15 minutes later, that's exactly what happened.

22   At 3:30 a.m., the defendant walked into the Duane Reade.  He

23   was wearing the same clothes that he had been wearing 12 hours

24   earlier on Hughes Avenue in the Bronx.  He's wearing this

25   jacket, Government Exhibit 306, but now with the hood up.

Summation - Siegel                                    1014

1           This is Government Exhibit 402C which is the video

2   of that robbery.  You've seen it a couple of times during this

3   trial but I'm going to play it for you again.

4           (Video played.)

5           MR. SIEGEL:  On the video, you can see the defendant

6   walk up wearing that same outfit and you can see that he is

7   pretending to buy something.  That's Mr. Deleon he's talking

8   to.  Mr. Deleon identified himself.

9           Mr. Deleon opened that cash register, the defendant

10  came around and put a gun in his face.  And you can see on the

11  video that Mr. Deleon is trying to tell him something.  He's

12  trying to tell him something about the money, about the

13  register, and that the defendant's response is to shoot him

14  hitting him in the hand.  After that first shot, Mr. Deleon

15  fought for his life and the defendant shot him in the head and

16  then ran right out.

17          (Video stopped.)

18          MR. SIEGEL:  When the defendant ran out, he didn't

19  just leave Mr. Deleon behind.  He also left evidence behind.

20  And as Detective St. Louis, the crime scene detective,

21  testified at transcript pages 85 to 89, the defendant left

22  behind the fired bullets.

23          This is JSL 4.  That's the copper jacketing that is

24  now part of Government Exhibit 300.  This is JSL 6.  That's a

25  lead core that was left in a puddle of Mr. Deleon's blood.

Summation - Siegel                              1015

1   This is JSL 9.  That's a deformed bullet that

2   Detective St. Louis found in the window and weathering strip

3   behind the cash registers.

4           These bullet fragments are important to this case

5   because they are the same bullet fragments that Detective Fox,

6   the ballistics expert, later analyzed and as he testified at

7   pages 600 to 603, he determined that they were fired from the

8   gun that was found inside the defendant's backpack.

9           And let me also show you what the defendant did not

10  leave behind when he ran out of that store.

11          Please play the video.

12          (Video played.)

13          MR. SIEGEL:  After he shot Alejandro Deleon in the

14  head and ran right out, he doesn't leave any bloody

15  footprints.  You can see it on the video.  He doesn't leave

16  any bloody footprints because he didn't wait around for a

17  puddle of blood to form.  As soon as he shot Mr. Deleon, he

18  got out of there.

19          (Video stopped.)

20          MR. SIEGEL:  I'm going to show you another angle.

21  This is Government Exhibit 402D which is in evidence.

22          As you watch this, you are going to see the

23  defendant run in from the right side of the frame and you are

24  going to see him run out.  And watch his feet, watch the

25  ground by his feet and you will see that there is no blood on

Summation - Siegel                    1016

1   his shoes, that there are no bloody footprints.

2          (Video played.)  (Video stopped.)

3          MR. SIEGEL:  When the defendant ran out, he left

4   Mr. Deleon fighting for his life, but even though the

5   defendant had just shot a man in the head, that didn't slow

6   him down.  He didn't stop there.  He got back in that Toyota

7   Solara with Scott Brack and you know that because the car was

8   caught by another LPR.

9          At 3:42 a.m., that same Toyota Solara, the same gray

10  two door Toyota Solara with the license plate that you can see

11  on the record, it was photographed right outside the

12  Duane Reade.  And I want to be very clear that when I say

13  right outside the Duane Reade, I mean outside the Duane Reade

14  on the street outside the Duane Reade.  You can compare the

15  pictures.

16         On the left is the photograph from the LPR and on

17  the right is the crime scene photograph that

18  Detective St. Louis took and he described that at page 76 of

19  the transcript.

20         I'm going to zoom in.  If you look closely at your

21  screens, on the picture on the left above that car, you can

22  see an awning, an awning that says, "The community since

23  1929."  That same awning, you can see it in the crime scene

24  photo.  When that Solara was photographed outside the Duane

25  Reade, it was in the street and you can see the buildings

Summation - Siegel                    1017

1   across the street in that photo.  And that was at 3:42 a.m.,

2   just a few minutes after the defendant shot Mr. Deleon and

3   after he ran out.

4          You can also see it from the map.  This is the map

5   from that LPR hit and it shows where that LPR was taken and

6   it's at 60th and Roosevelt.  That's exactly where the Duane

7   Reade at 60-02 Roosevelt Avenue is located.

8          So, ladies and gentlemen, just minutes after that

9   shooting, they were there and you know where they were going.

10  They were going to the next robbery at the 7-Eleven.  So let's

11  talk about that 7-Eleven robbery.  Twenty minutes after

12  defendant shot Alejandro Deleon, the defendant arrived at

13  7-Eleven.  This is a video of him walking into the store.

14         (Video played.)  (Video stopped.)

15         MR. SIEGEL:  As Mr. Saha testified -- that's

16  Mr. Saha in the left in the red -- the defendant walked right

17  past him.

18         When the defendant arrived, he was still wearing

19  Government Exhibit 306, the same jacket with the hood up, and

20  Government Exhibit 307.  You can see the zippers in the video.

21  And on his feet are those same pristine white shoes.  And you

22  know what the defendant did once he was inside the store.  As

23  Mr. Saha testified, at pages 152 to 154 of the transcript, the

24  defendant came into the store, he pretended to buy eggs and

25  then he robbed Mr. Saha at gunpoint.  It's all on the video.

CMH        OCR        RMR        CRR        FCRR

1          This is Government Exhibit 408E which you've seen

2   before.

3          (Video played.)

4          MR. SIEGEL:  The defendant walks up to the counter

5   carrying eggs and Mr. Saha comes to check it out.  As Mr. Saha

6   testified, the defendant didn't want to spend more than $1 so

7   he decided to not buy the eggs and, instead, to buy a piece of

8   candy.  Then when Mr. Saha opened the register, the defendant

9   pulled out his gun and demanded the money and Mr. Saha gave

10  him the entire cash register tray.

11         (Video stopped.)

12         MR. SIEGEL:  This is an image from Government

13  Exhibit 408D of the defendant leaving that 7-Eleven with the

14  cash register tray in his hand.  And ladies and gentlemen, pay

15  attention to that cash register tray because you are going to

16  see it again.

17         Now, the video and Mr. Saha's testimony is not the

18  only evidence of the 7-Eleven robbery because at around this

19  time, the cell site evidence shows that the defendant and

20  Scott Brack were both at the scene.

21         At 3:54 a.m., Scott Brack called the defendant and

22  both of their phones hit on towers within blocks of a

23  7-Eleven.  And keep in mind, the last time the defendant made

24  or received a call according to his call records, he and Scott

25  Brack were both in New Jersey, but now here they are at 3:54

1   in the morning right by the 7-Eleven right as this robbery is

2   taking place.

3          For that call, you should also ask yourself does it

4   make sense that Scott Brack would call the defendant at 3:54

5   in the morning if the defendant had left his phone in Scott

6   Brack's car and it doesn't make sense.  I submit that Scott

7   Brack is calling the defendant because he knows that the

8   defendant has his phone and because they're doing this

9   together.

10         After the 7-Eleven robbery, the defendant and Scott

11  Brack moved on to the first Rite Aid.  This is the Rite Aid

12  that Sharon Sanchez testified about and that's at transcript

13  pages 189 to 190.  As she testified, the robber came in,

14  pretended to buy a greeting card and then stuck a gun in her

15  face.  It's the same pattern that the defendant used with

16  Mr. Saha and it's on the video.

17         (Video played.)

18         MR. SIEGEL:  That's the defendant walking up wearing

19  the same clothes this you've seen him in and that's the

20  greeting card that he just gave Ms. Sanchez.

21         As Ms. Sanchez testified, the greeting card he

22  wanted to buy cost more than $1 so, instead, he said he was

23  going to buy something else and when Ms. Sanchez opened the

24  register, the defendant pulled out a gun and demanded the

25  money.  And as Ms. Sanchez testified, she gave him the whole

1   register till and she gave him the money that was under the

2   register till.  And, again, her testimony is at page 189 to

3   190 of the transcript.

4           (Video stopped.)

5           MR. SIEGEL:  Now, one thing you should remember

6   about this robbery is that Sharon Sanchez testified that the

7   robber took $100 bills and that there was change in the

8   register that the robber took.

9           That's on page 207 of the transcript and these are

10  questions that were asked by Mr. Farrell.

11          And the reason I mention that is because when the

12  defendant was arrested, he had a lot of $100 bills on him and

13  he had a lot of change.  He admitted that on the stand and

14  it's in the transcript at page 907 and at pages 952 to 953.

15          Now, again, the video in the store is not the only

16  evidence of the robbery because for this robbery, there's also

17  evidence, there's also videos from outside the store.

18          Right before the Rite Aid robbery and just

19  15 minutes after the 7-Eleven robbery, the Toyota Solara was

20  captured on surveillance video across the street from the

21  Rite Aid.  It's not the highest quality video so I'm going to

22  go through it slowly, but it captures some key events.

23          (Continued on next page.)

24

25

1    (Continuing.)

2         MR. SIEGEL:  And let me orient you.  This is the

3    opening still of that video.  In the lower right-hand corner,

4    in the lower right-hand corner, and I am going to circle on

5    the big screen, you can see some dumpsters and it's showing

6    the street.

7         I am showing you Government Exhibit 112B, which is

8    what Detective Julie Casale, the crime scene detective,

9    testified about at pages 225 to 226 of the transcript.  In the

10   background on the right side, that's the Rite Aid

11   (indicating), it's right across the street.  In the video that

12   you are going to watch, it's on this street and the dumpster,

13   and you can see it on the left-hand side of this picture.

14        Play the video, please.

15        (Video played.)

16        Now, this video is from minutes before the Rite Aid

17   robbery, and you are going to see a car pull up and you will

18   see someone get out of the car.  And as the person gets out of

19   the car and walks, one of the first things you will be able to

20   notice are his white shoes.  You can see that man in the white

21   shoes and the dark pants and a green hood walking right

22   towards the Rite Aid minutes before the robbery happens.  And

23   that car that pulls up, that is the Toyota Solara, the gray

24   two-door Toyota Solara.

25        Now, after that man in the white shoes and the green

Summation - Siegel                    1022

1    hood and the black pants, who I submit is the defendant going

2    for the robbery, after he walks off towards the Rite Aid you

3    are going to see the driver get out of the car.

4              (Video continues playing.)

5              MR. SIEGEL:  He gets out of the car, he carries

6    something to the dumpster, he throws it away, and he gets back

7    in the car.  That is Scott Brack.

8              (Video stopped.)

9              And how do you know it's Scott Brack?

10             Well, again, you can recognize him from his clothes.

11   He is wearing that same beanie on his head, Government Exhibit

12   315.  The same beanie he had when he was arrested.

13             You can also see in his hand he has a black object.

14   I am just circling it on the screen.  (So marked.)  The black

15   object that he takes to the dumpster to throw away.

16             So I am just going to play that one part of the

17   video one more time just so you can see it and digest it.

18             (Video played.)  (Video stopped.)

19             MR. SIEGEL:  And you remember Detective Casale's

20   testimony that she saw this video and she went to look in that

21   dumpster to see what was thrown away.  And mixed in among the

22   trash was a cash register tray.  This cash register tray

23   (indicating) Government Exhibit 321.

24             And based on the timing, this was before the Rite

25   Aid robbery, as you can see the defendant still walking

Summation - Siegel                                          1023

1    towards the Rite Aid, but this was minutes after the 7-Eleven

2    robbery.  I submit this register tray that Scott Brack threw

3    out in the dumpster was the register tray that the defendant

4    had just taken out of the 7-Eleven.

5             And why does that matter?  Because it shows that

6    they were working together.  The defendant was going in to do

7    the robberies, and Scott Brack was helping get rid of the

8    evidence and driving him from place to place.

9             And that brings us to the final robbery of the

10   night, the second Rite Aid in Jamaica, Queens.

11            Now, this is a map of all the robbery locations.

12   It's Government Exhibit 217A.  And the first three robberies,

13   that's the Duane Reade, the 7-Eleven, and that first Rite Aid

14   in the upper left-hand corner, they were all pretty close to

15   each other; but the last robbery, off in the lower right-hand

16   corner, is in Jamaica.  And to get from that first Rite Aid up

17   near Astoria to the second Rite Aid in Jamaica, the defendant

18   and Scott Brack, they had to drive.  And that's what they did.

19            And how do you know?  Because they were caught by

20   LPRs again.  At 4:31 a.m., just minutes after that first Rite

21   Aid robbery, the Toyota Solara was photographed by an LPR

22   reader on the Grand Central Parkway going east.  A minute

23   after that at 4:32, it was captured still on the Grand Central

24   Parkway going east.  And if you look up at the zoomed out map,

25   I have shown where those LPR hits are.  The first one is at

Summation - Siegel                    1024

1    that red circle 1 and the second one is the red circle 2.  And

2    in both cases going east, east towards Jamaica, Queens,

3    towards the next robbery.

4             And you don't just have the LPR data, you also have

5    the cell site data.  Because according to cell site data, by

6    5:00 a.m., Scott Brack has arrived in Jamaica.  He stayed

7    there for about an hour, and you can see that he was either

8    making or receiving calls and they were hitting on cell towers

9    in Jamaica.  And the evidence also shows what the defendant

10   was doing while he was riding to Jamaica with Scott Brack.

11   This is Government Exhibit 216 again.

12             (Exhibit published.)

13             MR. SIEGEL:  That's the extraction from his cell

14   phone to show his search history.  Just like before, the

15   defendant was searching for targets.  As they're driving on

16   the Grand Central Parkway, 4:33 a.m., "24-hour stores nyc";

17   4:34 a.m., "24-hour stores Jamaica, Queens, New York; 4:34

18   a.m., 24-hour Jamaica q," and again and again and again and

19   again and again.

20             And about an hour after that last search, the

21   defendant arrived at his last robbery of the night, the Rite

22   Aid in Jamaica, Queens.  This is the robbery that Gaspar Pena

23   testified about at transcript pages 249 to 250, and you can

24   see the video for yourself.

25             (Video played.)

Summation - Siegel                          1025

1      MR. SIEGEL:  As Mr. Pena testified, the defendant

2   approached and pretended to buy a Snickers bar.  When Mr. Pena

3   opened the cash register drawer, the defendant pulled out a

4   gun and he put it in his face and he demanded the money.

5          (Video continues playing.)

6          MR. SIEGEL:  And as you've seen in the prior videos,

7   Gaspar Pena took out the whole drawer and he gave it to the

8   defendant.

9          (Video stopped.)

10         Now, just like the last Rite Aid, in addition to

11  video inside the store, there is video from outside the store.

12  So this robbery took place at approximately 5:44 a.m. on the

13  Rite Aid's cameras.  This is video from right outside the Rite

14  Aid, and it starts at 5:46.

15         (Video played.)

16         MR. SIEGEL:  And on this video you will see the

17  defendant with his white shoes, black jeans, the green hood,

18  walk out of the Rite Aid, in his hands is the cash register

19  tray.  And he gets into that two-door gray car that is waiting

20  for him.

21         (Video stopped.)

22         MR. SIEGEL:  Now, I want to mention an additional

23  thing about this video because I've said a few times that that

24  car was consistent with the Toyota Solara, and there is proof

25  of that from the LPRs, that the LPRs show the Toyota Solara

SAM      OCR      RMR      CRR      RPR

Summation - Siegel                          1026

1   making the journey of their robberies.  And you can see from

2   the videos that it's consistent, it's gray, it's a two-door,

3   but that's not the only proof.  This is Government's

4   Exhibit 105B, which is a picture of the car after it was

5   brought back to the ATF office after the arrests that, as

6   Detective Nuzio testified at transcript page 332, and in the

7   windshield you can see that air freshener.

8           I want you to watch that video we just watched again

9   from outside the Rite Aid, and I want you to watch for that

10  air freshener.

11          (Video played.)  (Video stopped.)

12          MR. SIEGEL:  You can see it dangling in the

13  windshield.

14          After that last robbery, they got out of Queens and

15  the LPRs tracked the Solara as they went.  At 6:13 a.m. they

16  went over the Whitestone Bridge into the Bronx.  At 7:07 a.m.

17  they crossed back over the George Washington Bridge to

18  New Jersey.  And again, that's corroborated by the cell site

19  evidence because at 10:48, the defendant and Scott Brack are

20  both back in New Jersey and the defendant calls Scott Brack.

21  And you can see that they're hitting off cell towers in

22  New Jersey.

23          And that brings us to the last big event, their

24  arrests that night.  That same day in the evening they drove

25  back into the Bronx and, once again, their travel was captured

Summation - Siegel                          1027

1   by the cell site evidence because the defendant called Scott

2   Brack right near 2008 Hughes Avenue at 8:40 p.m., and that's

3   where they were caught and arrested.

4        You heard the testimony from Detective Sergeant

5   Keith Bryan, who was at the arrest, and he testified at

6   transcript pages 291 to 292 that he saw the defendant, who he

7   identified in court, he saw him get in the back seat of that

8   Toyota Solara with his backpack.  Government Exhibit 304.

9        (Exhibit published.)

10       MR. SIEGEL:  That was the picture, Government

11  Exhibit 304F, that Detective Keith Bryan said:  I recognize

12  that backpack from the back seat of the car.  And that's the

13  backpack the defendant was wearing when he got in the car.

14       When the defendant was pulled out of the car, when

15  he was arrested, that backpack was left sitting in the back.

16  Also left sitting in the back, as Special Agent Tyler Miceli

17  testified at pages 429 to 433, right where the defendant had

18  been sitting was the green and black jacket; the same one from

19  the Hughes Avenue video and the same one from the robberies.

20  This jacket (indicating) - Government Exhibit 306.

21       And right next to the jacket, as you can see on the

22  picture, is the cell phone, the defendant's cell phone,

23  Government Exhibit 311 (indicating).

24       As Detective Nuzio testified at transcript 333 to

25  338, back at the ATF headquarters the backpack was searched.

Summation - Siegel                    1028

1    Inside that bag he found the defendant's wallet with the

2    defendant's photo ID and he found the defendant's pants,

3    Government Exhibit 307, stuffed into that backpack along with

4    the other clothes.  The same pants from Hughes Avenue, the

5    same pants from the robberies.

6              Underneath the pants and right by the wallet,

7    Detective Nuzio found a gun.

8              (Exhibit published.)

9              MR. SIEGEL:  He found this gun, Government

10   Exhibit 308, at the bottom of the defendant's backpack

11   underneath his clothes.

12             In the picture in Government Exhibit 308E, you can

13   see this circle on the handle of the gun (indicating).  And

14   this is the gun that Detective Fox, the ballistics expert,

15   testified that he examined test fires from this gun and he

16   determined that this is the gun that shot Alejandro Deleon.

17   And that's the transcript 600 to 603.

18             This is also the gun that Matthew Goldstein, the DNA

19   expert, examined swabs from.  He looked at swabs from the

20   grip, which is this textured part of the handle, the place

21   where a person would hold the gun (indicating).  And he

22   testified that he determined that 94 percent of the DNA on the

23   grip was a match for the defendant.  That's at transcript

24   pages 672 to 682.

25             So now let me tell you what crimes the defendant has

1  been charged with as a result of those actions, and what I

2  expect the Court will tell you the law is for those charges.

3  But you should remember, as I go through these charges, the

4  Court is the final word on the law.  So if I say anything

5  different from what the judge is going to tell you, you should

6  listen to the judge and not to me.

7          For these robberies the defendant has been charged

8  with four types of crimes.  First, is Hobbs Act Robbery

9  conspiracy, that means he agreed with at least one other

10  person to commit all of these crimes.

11          The second type of crime he has been charged with is

12  attempted Hobbs Act Robbery, that's Count Two, and that's for

13  his attempt to rob the Duane Reade where he shot Alejandro

14  Deleon.

15          He's charged with three counts in Counts Four, Six

16  and Eight of Hobbs Act Robbery, and that's for his robberies

17  of the 7-Eleven and the two Rite Aids.

18          And he is charged with four unlawful use of firearms

19  counts.  That's Counts Three, Five, Seven and Nine.  And

20  that's for his use of a firearm, his use of that gun at each

21  of these robberies.

22          And what I'm going to do now is I am going to walk

23  you through each of these crimes and explain what they mean so

24  that you can understand what you'll be doing in your

25  deliberations and so that you can understand how little is

1  actually in dispute in this case.

2          Now, as we talk about that I just want to say at the

3  outset, I understand that the defendant is disputing that he

4  is the person who committed these crimes.  I am going to get

5  to that, but right now I want to put that to the side and I

6  want to focus on how little is in dispute about the robberies,

7  other than was the defendant that person.

8          So let me start with the Hobbs Act robberies.  That

9  has three elements or three necessary parts of the crime, and

10 those are the parts that the Government must prove beyond a

11 reasonable doubt.

12         The first element is that the defendant knowingly

13 obtained --

14         MR. FARRELL:  Excuse me, Your Honor.

15         I am going to respectfully object, notwithstanding

16 Mr. Siegel's disclaimer that the jury must take the law from

17 you.  I'm objecting, he's instructing him on the law.

18         That's my objection.

19         THE COURT:  He can comment on the law, as you can;

20 but as he has already indicated to the jury, the law will be

21 given to you, Members of the Jury, in my final instructions.

22 And it is my final instructions that control, not what any of

23 the lawyers tell you.

24         MR. SIEGEL:  Thank you, Your Honor.

25         So, just to help you understand what I expect you

1   will be required to do from the judge's instructions, the

2   first element that the Government has to prove is that the

3   defendant knowingly obtained or took the property of one or

4   more individuals or businesses.

5          The second element is that the defendant took that

6   property against the victim's will by actual or threatened

7   force, violence or fear of injury.

8          And third, that the objective of the robbery in some

9   way or degree would have affected interstate or foreign

10  commerce, or the movement of goods in interstate or foreign

11  commerce.

12         So those are the three elements.  And let me start

13  with the first one.

14         Did the robber take property from the three stores

15  that he successfully robbed; the 7-Eleven and the two Rite

16  Aids?

17         Of course; you watched him take the registers on the

18  video.  You saw that there was money in the video and the

19  victims testified that there was money in the register.  And,

20  in fact, it is stipulated, and that means that the parties

21  have agreed, that money was taken from those three stores at

22  those three robberies.  That's Government's Exhibit S-5, that

23  stipulation.  So there is no dispute that money was taken from

24  these stores by that robber.  So the first element is proven.

25         And for that second element that the defendant took

1   the property against the victim's will by actual or threatened

2   force, violence or fear of injury, you watched him stick a gun

3   in cashiers' faces.

4               (Exhibit published.)

5               MR. SIEGEL:  In the upper left-hand corner, that's

6   Mr. Deleon with a gun in his face.  In the upper right-hand

7   corner, that's Mr. Saha, and you can see him recoiling in fear

8   from that gun.  In the lower left-hand corner, that's

9   Ms. Sanchez.  And in the lower right-hand corner, that's

10  Gaspar Pena.

11              And in addition to seeing the video, you heard from

12  Mr. Pena what the defendant said to him.  At transcript pages

13  249 to 250, Gaspar Pena testified that his words, that the

14  defendant's words were:  Give me the money before I fucking

15  shoot you.  That is a threat of violence.  So yes, this

16  element is satisfied.

17              And was there an effect on interstate commerce?

18              Again, that is stipulated or agreed to by the

19  parties.  The parties have agreed that these robberies and the

20  attempted robbery had an effect or would have had an effect on

21  interstate commerce.  That is Government Exhibit S-4.  And

22  since the parties have agreed, that means that element is not

23  in dispute at all.

24              So all three of those elements have been proven.

25              And, again, that's putting aside the disputes that I

1   am going to get to about is the defendant the person in that

2   video.

3           What about the next type of robbery, the next type

4   of crime, attempted Hobbs Act Robbery?  This is for just that

5   Duane Reade robbery, the Duane Reade attempted robbery.  That

6   has two elements:  That the defendant intended to commit a

7   Hobbs Act Robbery, and that the defendant took a substantial

8   step to accomplish the crime.

9           And did the Government prove those elements beyond a

10  reasonable doubt?  Of course.  You know that the defendant

11  intended to commit a Hobbs Act Robbery at the Duane Reade

12  because he took out a gun and he demanded money.

13          And did he take a substantial step to accomplish the

14  robbery?  Well, again, I expect what the Court will instruct

15  you is that a substantial step is any action that shows an

16  intent to commit the crime and is part of the plan to commit

17  the crime.  And that standard is easily met.  He went into the

18  store with a gun; that's a substantial step.  He demanded

19  money; that's a substantial step.  He shot Alejandro Deleon

20  when Mr. Deleon didn't give him the money fast enough; that's

21  a substantial step.  Those are all substantial steps.  So,

22  again, other than the question of whether the defendant was

23  that robber in the video, there is no serious dispute about

24  Count Two, the attempted robbery.

25          What about the firearms offenses?  Those each have

Summation - Siegel                               1034

1    two elements.  The defendant must have committed or attempted

2    to commit a crime of violence, and he must have used or

3    carried a firearm during and in relation to or possessed the

4    firearm in furtherance of the commission or attempted

5    commission of the crime of violence.  And those are the

6    elements that are required for Counts Three, Five, Seven and

7    Nine.

8              Each of these firearms counts is paired with a

9    robbery count.  So Count Three is for the use of the firearm

10   in connection with the attempted robbery in Count Two.  Count

11   Five is for the use of a firearm in connection with the

12   successful robbery in Count Four.  They each come in a pair;

13   one robbery, one gun.

14             And so the question for that first element is if you

15   find the defendant committed the robbery part of the pair and

16   if you find that the defendant did commit that robbery part of

17   the pair, you go on to the next element.  So for all the

18   reasons I was just talking about for the robberies, this first

19   element is satisfied.

20             And that second element, did he use or carry or

21   possess a firearm during those robberies?  Well, it's on

22   video.  You can see the gun in the video.  So there is no

23   serious dispute about Counts Three, Five, Seven or Nine, other

24   than the question of whether this person holding a gun in the

25   video is the defendant.

SAM      OCR      RMR      CRR      RPR

Summation - Siegel                    1035

1       Now, for the firearms offenses, unlike the other

2   charges you are going to have to answer a second question.

3   You have to answer whether that firearm was brandished, which

4   means it was shown to someone in order to intimidate them.

5   And you have to determine whether the firearm was discharged,

6   which just means was it fired.

7       The defendant is charged with brandishing a firearm

8   at all four of these robberies and attempted robberies; at the

9   Duane Reade, at the 7-Eleven, and at both Rite Aids.  And he

10  is charged with a discharge only in Count Three, which is the

11  Duane Reade where he shot Alexandria Deleon.  And, again,

12  there is no real or serious dispute about the brandishing

13  because you can see him brandish the firearm at every one of

14  the robberies.  He is pointing that gun at that person, at the

15  cashier, at the victim.  He is showing it to them in order to

16  intimidate them.

17      So for all four of the firearms counts brandishing

18  is established beyond a reasonable doubt.  And the discharge,

19  keep in mind that a discharge just means that the gun was

20  fired.  So you don't need to find that the defendant shot

21  Alejandro Deleon.  You don't need to find did he shoot him in

22  the hand.  You don't need to find whether he shot him in the

23  head.  I submit that that happened, but you just need to find

24  that the firearm was fired during the attempted robbery.  And

25  there is no real dispute that firearm was fired.  You can see

Summation - Siegel                    1036

1  the smoke when it's fired on the video and you can see

2  Mr. Deleon's reaction.  And I am going to play that part of

3  the video again.

4           (Video played.)  (Video stopped.)

5           MR. SIEGEL:  In addition to seeing it on the video,

6  you've seen the bullets that were recovered at the scene.  And

7  there is a stipulation.  Government Exhibit S-11 is a

8  stipulation that this is an X-ray of bullet fragments inside

9  Mr. Deleon's skull from that shooting.

10           (Exhibit published.)

11           So there is no real dispute that the firearm was

12  discharged at the Duane Reade.

13           And that just leaves the conspiracy, Count One.  A

14  conspiracy is an agreement between two or more persons to

15  commit a crime, in this case Hobbs Act robberies.  The

16  Government must prove that two or more persons agreed to

17  commit the crimes and that the defendant joined that

18  agreement.

19           Now, I expect that Judge Vitaliano is going to tell

20  you that a conspiracy doesn't have to be a formal agreement.

21  It doesn't have to be a contract.  You don't have to sit down

22  at a table and hash it out.  It can be an understanding.  It

23  can be implied.  It's any agreement to work together to commit

24  the crimes.

25           I also expect that Judge Vitaliano will instruct you

Summation - Siegel                    1037

1    that for a conspiracy, actions speak louder than words.  So

2    what you should focus on is what the defendant did and what

3    Scott Brack did in order to determine did they have an

4    agreement to work together.

5            And what does the evidence show?  It shows that at

6    1:34 a.m., the morning of the robberies, two hours before the

7    robberies started, they were together and they were in

8    communication.  At 3:54, in the middle of the robberies, they

9    were together and they were in communication just blocks away

10   from the 7-Eleven.  At 10:48 they were together and they were

11   in communication.  The whole night and into the next morning

12   they were together and they were talking to each other.

13           What else does the evidence show?

14           It shows that Scott Brack went into the Duane Reade

15   15 minutes before the defendant did to case it, to check if

16   the coast was clear.  It shows that Scott Brack helped get rid

17   of evidence.  He helped throw out that cash register tray

18   after the defendant brought it back into the car.  What that

19   all shows is coordination.  It shows them working together.

20   That's evidence of an agreement.

21           And what else does the evidence show?  It shows that

22   there are two people; there is a shooter and there is a

23   driver.  Someone had to go in with the gun and someone had to

24   drive that car because the Toyota Solara was not driving

25   itself.  The driver drove the car from store to store, and the

Summation - Siegel                    1038

1   defendant brought in cash register trays into the car.  That's

2   a picture of him bringing in a Rite Aid cash register tray.

3   And you know he brought in the 7-Eleven cash register tray

4   because the driver later threw it out.

5          And while I submit that that driver, that that

6   person in the grainy photograph, I submit that that is Scott

7   Brack, in the end it actually doesn't even matter.  You don't

8   have to find that the defendant conspired with Scott Brack,

9   you just have to find that he conspired with somebody.  And

10  from the evidence in this case it is clear that there is

11  another person, someone was driving that car, someone was

12  helping him commit these crimes, and he agreed with someone to

13  do that.

14         Now, the second element to the conspiracy was not

15  just was there an agreement, but did the defendant join that

16  agreement.  And like I said a few times now, that's really

17  what this whole case is about.  So now, after all that, I want

18  to get to what really matters here.  The whole case is about

19  is the defendant, is Elgin Brack the man that you see on the

20  video robbing these stores?

21         And I am going to give you five reasons that you can

22  know beyond a reasonable doubt that that is Elgin Brack.

23         And the first reason is his face.  This is from the

24  surveillance footage at the 7-Eleven.  And there is really not

25  much to say.  You have now had over a week to sit and stare at

1  Elgin Brack across from you, and I submit to you that you can

2  recognize his face from that video.  And you don't just have

3  to rely on your ability to see him here, you can compare it to

4  his post-arrest photo, Government Exhibit 111 -- excuse me,

5  101.

6           (Exhibit published.)

7           MR. SIEGEL:  And take a minute to look at that

8  photograph.  Take a minute to look at his eyes, look at his

9  nose, look at his mustache.  I submit that that is his face.

10 You can see it on the video.

11          And it's not just the pictures, it's not just what

12 you see here, because you can remember what the victims said

13 in their testimony.

14          Mr. Saha said that the person who robbed him was

15 young, maybe 18 or 19.  And he thought so because he saw him

16 and he was young.  And that's at page 154 to 155 of the

17 transcript.

18          Ms. Sanchez said that the person who robbed her was

19 in his twenties.

20          Mr. Pena said that the man who robbed him was 18 to

21 25 years old.  He could tell from his face and he could tell

22 from his voice.

23          And Mr. Deleon, even after what happened to him, and

24 you saw that he has difficulty communication -- communicating

25 now, when he was asked about the age he got it almost right on

Summation - Siegel                    1040

1    the dot.  He couldn't say it, but he wrote it down.  And you

2    can see on Government Exhibit 135, he wrote down the number

3    23.

4                (Exhibit published.)

5                MR. SIEGEL:  And as the defendant testified

6    yesterday, at the time of these robberies he was 22.  And, in

7    fact, his wallet is in evidence, you can look at his driver's

8    license.  He was a month away from his twenty-third birthday.

9                Even though this was over a year ago, even though

10   each of the victims was staring at a gun, terrified, and keep

11   in mind they were looking at this gun (indicating) closer than

12   I am standing to any of you, even though they each had this

13   gun in their face, they remembered and they agreed that the

14   robber was young.

15               And that's not all they remember.  Gaspar Pena, the

16   cashier from the last Rite Aid robbery, he remembered the

17   defendant's mustache.  He remembered that the robber had a

18   mustache and not other facial hair.  You can see that mustache

19   in the video and in the defendant's post-arrest photograph.

20               (Exhibit published.)

21               MR. SIEGEL:  Now, his face standing alone, that is

22   enough for you to identify him, but that's not all you have.

23   That's just the beginning of what you have.  And that brings

24   us to the second reason:  You have the gun with the DNA on it.

25               (Continued on the following page.)

SAM      OCR      RMR      CRR      RPR

1   (continuing)

2        MR. SIEGEL:  The defendant testified that this is

3   his backpack, Government Exhibit 304.  You can see it on your

4   screens.  And he testified that he packed it himself.  You can

5   see from the picture how tightly packed it was.

6        You also heard Detective Nuzio testified at pages

7   333 to 338 that he searched the backpack and at the bottom of

8   the bag, underneath all of those clothes, he found the gun.

9   It was right there next to the defendant's wallet.  And the

10  gun wasn't just in the defendant's bag.  As I mentioned

11  earlier and as you heard in the testimony, Matthew Goldstein,

12  the DNA expert, he testified at transcript pages 672 to 682

13  that the swab was taken from the grip -- excuse me, he

14  analyzed a swab from the grip or the handle of this gun and

15  there wasn't just some DNA from the defendant.  94 percent of

16  the DNA on the grip came from the defendant.

17       Here's what else he said.  He said that the

18  likelihood ratio that the defendant's DNA was on the gun was

19  3.93 quadrillion to one.  That's a staggering number.  This is

20  not just some random gun.  This is the gun.  This is the gun

21  that was used to shoot Alejandro DeLeon.  And how do you know

22  that?  Because Detective Fox testified.  In his testimony, at

23  page 600 to 603 and at page 613, he testified that based on

24  his years of experience he was 100 percent certain that the

25  bullets that were recovered from the Duane Reade were fired

Summation - Siegel                              1042

1   from this gun or, in his words, I 100 percent believe that

2   they were fired from this firearm.

3            The reason that the defendant's DNA is on that gun,

4   the reason that gun was in his backpack is because he had been

5   using that gun 15 hours earlier.  It is because he is the man

6   who is holding the gun at these robberies.

7            I will give you a third reason that you can know

8   that the defendant is this man:  His cell phone.  His cell

9   phone, Government Exhibit 311.  This is the phone that was

10  analyzed by Special Agent Mastropaolo.  This phone was

11  registered in his name.  It has his Facebook account saved on

12  it.  And it was found right next to his backpack.  And it all

13  puts him at the robberies, because within minutes of the

14  7-Eleven robbery, at 3:54 a.m., he got a call from Scott

15  Brack.  As we have already discussed, when he got that call,

16  the cell tower that he connected to was just blocks away from

17  the 7-Eleven.

18           And there is his search history.  From 2:30 to 2:40,

19  as they're driving through Manhattan, searching, searching for

20  24-hour stores to rob, he takes a break from 2:40 to 4:30

21  while he robs those first three stores.  But, then, at 4:30,

22  he starts searching again and this time he is searching for

23  stores in Jamaica, Queens, right before he robs that last Rite

24  Aid in Jamaica, Queens.  The phone was at the robberies and

25  the phone was used to plan the robberies.

1          And you heard the defendant's testimony about

2     leaving his phone in the car and you heard Mr. Farrell's

3     opening that someone else was using the phone.  But it doesn't

4     make sense.  Scott Brack had his own phone.  That is

5     stipulated.  That is Government Exhibit S-10.  If Scott Brack

6     wanted to do searches, he had his own phone.  Commonsense

7     tells you that the person who had Elgin Brack's cell phone

8     that night was Elgin Brack.

9          The fourth reason you know that the defendant

10    committed these robberies:  His clothes.  At each of the

11    robberies, he wore the same green-hooded jacket and the same

12    black zipper pants that you have seen in Government Exhibits

13    306 and 307.  This is that jacket.  This is the jacket that

14    was found in the back seat of the car where the defendant was

15    sitting when he was arrested.  This is a picture of this

16    jacket.  You can see the red writing in the front.  Excuse me.

17    You can see the red writing on the back.  You can see it on

18    the surveillance video.  You can see it in the photograph from

19    the car.  This was right by the defendant when he was

20    arrested.

21          You can also see those jeans, Government Exhibit

22    307.  These black jeans, you can recognize from the

23    surveillance video by these copper zippers and these are the

24    jeans that were found inside his backpack.  And you remember

25    the defendant on the stand, he denied packing these jeans.  He

1    said that they weren't his and he didn't like them.  But this

2    is a picture of the backpack when it was opened.  This is

3    Government Exhibit 304-D.  You can see the brown belt from the

4    jeans sticking out in the picture.  You can see this brown

5    belt.  Just like Detective Nuzio testified, you could see the

6    jeans were in the bag.

7              In addition to the jacket and the pants, there are

8    the shoes, those bright white shoes that pop on the

9    surveillance video.  When the defendant was arrested, he was

10   still wearing those shoes.  This is a close-up of his feet

11   from his post-arrest photo.  He took off the jacket and he

12   took off the pants, but he didn't take off the shoes because

13   the only other shoes that he had with him were those

14   flip-flops in the backpack.

15             The entire outfit from the robbery was right there

16   with the defendant, the jacket on the seat, the jeans in his

17   backpack, and the shoes on his feet.  It was all there.

18             And that gets us to the final way that you know that

19   that is the defendant:  The Bronx video.  He is on video 12

20   hours before these robberies wearing every article of that

21   clothing.  He is wearing the jacket.  He is wearing the pants.

22   He is wearing the shoes and you can see his face.  You can see

23   his hair.  The only difference between the photos is that in

24   one he put his hood up.

25             In that Bronx video is the backpack, the same

Summation - Siegel                    1045

1   backpack that the gun was later found in.  The entire case can

2   be summed up with those two pictures.  These two pictures were

3   taken less than 13 hours a part.  The one from the Bronx, the

4   defendant's admits that was him.  And the other is from inside

5   the 7-Eleven.

6          The defendant's story that he took off all of these

7   clothes and that someone else put them all on to commit these

8   robberies, it doesn't make sense.  It's not plausible and I

9   submit that you should reject it.

10          Those videos, along with the evidence of the gun, of

11   the DNA, of the cell phone, of his clothes, and of all the

12   other physical evidence in this case, it all proves the

13   defendant's guilt beyond a reasonable doubt.  Everything

14   points the same way.

15          I ask you for the only verdict that is consistent

16   with the evidence:  Guilty on all counts.

17          Thank you.

18          THE COURT:  Thank you, Mr. Siegel.

19          Ladies and gentlemen, we will take a five- to

20   ten-minute break, and then we will hear from the defense.

21          Again, do not discuss the case amongst yourselves or

22   with anyone else.  Continue to keep an open mind.  We will

23   give you five to ten minutes to refresh and we will see you in

24   about five to ten minutes.

25          (Jury exits the courtroom.)

1          THE COURT:  Okay, see you in about five or ten.

2          (Recess taken.)

3          THE COURTROOM DEPUTY:  All rise.  Court is back in

4     session.

5          Counsel for both sides are present, including the

6     defendant.

7          THE COURT:  Mr. Farrell, I understand that you are

8     ready, so we will get the jury.

9          (Jury enters the courtroom.)

10         THE COURT:  Be seated, please.

11         Counsel will stipulate that the jury is present and

12    properly seated.

13         MR. SELDEN:  On behalf of the Government, yes.

14    Thank you, Your Honor.

15         MR. STEIN:  Yes, Judge.

16         THE COURT:  Thank you, counsel.

17         Ladies and gentlemen, welcome back.  We are ready to

18    resume.  As I indicated to you, the next item will be the

19    closing statement on behalf of the defendant.

20         I also indicated to you that the Government gets to

21    open and close.  So continue to pay careful attention to what

22    you hear.  When Mr. Farrell has concluded his argument, nobody

23    on the defense side will be able to get up again.  This is the

24    only opportunity the defense has to speak to you about what

25    they believe you have been shown or not shown in this case.

Summation - Farrell                    1047

1          And to make that closing argument on behalf of the
2     defendant, I call on Mr. Gary Farrell.
3          Mr. Farrell.
4          MR. FARRELL:  Thank you, Your Honor.
5          May it please the Court, Mr. Brack, Mr. Stein, Mr.
6     Bennett, gentlemen and lady from the Government, we have just
7     hit noon, so good afternoon, ladies and gentlemen.
8          Better than me, you know that they call this jury
9     duty, not jury vacation.  So I guess you don't necessarily
10    have to thank anybody for doing their duty, but I'm going to
11    do it.  Judge Vitaliano has done it also.  Thank you for your
12    promptness, for your dedication, for your attention.  In light
13    of what's a crazy time right now with this virus, you've been
14    here, you've been here on time, you've been here attentive.
15    I've been on trials where a guy fell asleep to the point that
16    he actually fell off his chair.  Nobody has done that here.
17    You know how serious this is.  We all appreciate it.
18         So let's get to it.
19         In my opening statement, I left you with a hint -- I
20    didn't want to spoil the movie -- that there would be some
21    evidence that would come out that in and of itself would
22    create a reasonable doubt.  I think by now you know what that
23    is.  Elgin Brack is left-handed.  There's no dispute of that
24    and the robber and the shooter is right-handed.  There's no
25    dispute of that.  It was even corroborated by Special Agent

Summation - Farrell                          1048

1   Miceli, certainly no friend of the defendant.  He said, you

2   know, I do remember he signed a form and he signed it

3   left-handed.  Ask yourselves, this is an interesting thing to

4   remember.  Maybe the image of a guy handcuffed with his left

5   hand to the wall reaching over to sign with his left hand was

6   embedded in his head and that's how he knew it.  However it

7   was, I don't really care.  He acknowledged and corroborated

8   that Elgin is left-handed.

9         Why is that important?  Well, hey, this gun, the 357

10  Magnum, man, is it heavy.  Feel free, under the marshal's

11  supervision, to lift it up in the jury box.  That is Dirty

12  Harry's gun.  I know I'm dating myself.  That is a powerful

13  gun.  The detective from ballistics, Detective Fox, told you

14  that.  And both of those detectives from ballistics, Nolan and

15  Fox, they said, hey, we've fired thousands of guns to test it,

16  we use our dominant hand.  We don't play around and use our

17  other hand.

18        Now, look, I get it, there is such a thing as

19  ambidexterous people.  And I'm somewhat of a baseball fan, as

20  is the judge.  I can think of classic switch hitters.  There

21  is Mickey Mantle regarded as the best switch hitter of all

22  time, Pete Rose.  But there's not that many people.  Let's

23  face it.  There's really not that many people in the world

24  that have that gift.  And even then, there's always going to

25  be a dominant hand.  So think about it, ladies and gentlemen.

Summation - Farrell                                          1049

1   Could he have really pulled this off using his opposite hand

2   with this giant powerful gun with the re-coil and all of that.

3   Think about it.

4          There is a reason that Mr. Siegel didn't mention it

5   in his thorough closing argument, because he can't say

6   anything about it, because there's nothing to say, because

7   beyond any doubt, the shooter, the robber is right-handed and

8   Brack isn't.

9          You know, I should have said there were two good

10  things that were going to come up in and of themselves and

11  create a reasonable doubt.  One I just talked about.  The

12  other came in yesterday through our witness, the first young

13  lady who testified.

14         Mr. Villanueva, is this set to go there?

15         You all know what this is.  This is the McDonald's

16  receipt from Newark, New Jersey, 8:28 in the morning, November

17  26th, just a few hours after the robbery.  Now, this

18  criminalist, Ms. Mavris, it's not her job to find evidence.

19  She analyzes evidence.  She looks to see is there blood, is

20  there hair, are there fibers.  But in this case, she did their

21  job because she did a thorough job and looked through these

22  pants and she found that receipt.  And why is this important?

23  Mr. Selden gets to go after me, as the judge just said, he

24  might say oh, come on, Mr. Farrell is just blowing smoke, this

25  is a red herring.  We know the receipt didn't mean anything

Summation - Farrell                    1050

1    because we know it didn't have any fingerprints.

2         Okay.  That's true enough.  But what about this?

3    This is in response to my colleague, Mr. Stein's question.

4    Now, what did you do -- let me get the page here.  It's 832,

5    line 4:

6         Now, what did you do with the McDonald's receipt

7    after you retrieved it from the pants pocket and made some

8    markings on it, your markings in the lower right-hand corner

9    of the receipt, what did you do with that?

10        ANSWER:  So when I found the receipt paper in front

11   of the pants pocket, I first notify a supervisor that I found

12   it.  From that point, the supervisor looked at the receipt and

13   deemed it a discrepancy.  From that point, the supervisor made

14   a call, attempted to call the investigating officer to do a

15   conferral to state that this receipt had been found.  Okay,

16   that this receipt had been found.

17        They were notified about it.

18        Ask yourselves what did they do?  We know the

19   answer.  Nothing.  What could they have done?  Everything.

20        All they had to do was go to that McDonald's in

21   Newark and say, hey, fellows, ladies, we need a video from a

22   specific time on 11/26.  And let's see who was actually

23   ordering that egg and cheese biscuit for 2.59 and a sweet tea

24   to go with it.  I don't know.  Maybe it was Elgin Brack.  That

25   would be case closed; game, set, match.

Summation - Farrell                    1051

1          It's one thing if you're seen wearing the clothes

2    before the robbery or another thing to have them in the car

3    with a bunch of people fourteen hours after the robbery, but

4    just three-and-a-half hours after the last robbery there is

5    evidence that the robber, the shooter who is wearing these

6    pants is in a store with a video camera and they don't bother

7    to go get that.  Think about that, ladies and gentlemen.

8          And think about what else Chemist Mavris had to say.

9    What else was she asked to do in this case that you really

10   didn't hear anything about until we called her and my

11   colleague, Mr. Stein, directed her to other things that she

12   did in this case.  Here we go.  Defendant's Exhibit N in

13   evidence.  This is her report.  What did she do here, black

14   distressed-style jeans and a black zip-up hoodie.  What did

15   she do?  Possible hairs, possible fibers.  Possible hairs,

16   possible fibers.  All hairs and fibers are possibly suitable

17   for DNA analysis.  She did her job.  She did her job.  She got

18   evidence from the pants, from the jacket that the robber wore.

19         Hey, look at Elgin Brack.  He's got an awful lot

20   hair there.  And maybe, just maybe, if her work got to the

21   OCME instead of sitting in a closet somewhere at the property

22   clerk's office you'd have an answer that all the hair found on

23   the Pelle Pelle jacket came from Elgin Brack.  Or maybe, just

24   maybe you'd find that there were different hairs.  They could

25   have been some of Brack's because he admitted he wore it.  You

1  can see he's wearing it the day before.  But they never

2  bothered to find out if there was anyone else's hair on that

3  jacket that would indicate someone else wore it, the same guy

4  that wore those pants and the same guy that ordered an egg and

5  cheese biscuit at McDonald's in Newark a couple of hours after

6  these crimes.

7          So, ladies and gentlemen, I think that's enough

8  reasonable doubt in this case right there.  I can go and sit

9  down and start playing Texas Hold'em with Mr. Bennett.  But

10  I'm not going to do that because there was other evidence and

11  I need to discuss it.

12          Four civilian witnesses testified here, four of

13  them, and they were all so close to the guy that robbed him,

14  physically closer than I am standing next to you guys.  We

15  know that.  Mr. Siegel said that, but not enough of the guy's

16  face was visible.  Not one of the four, when they were on this

17  witness stand looking at you testifying under oath, did they

18  ever ask the most dramatic thing you can do in any courtroom,

19  sir or madam, do you see the person that is stuck that gun in

20  your face, is he sitting in this courtroom?  Yeah, I do.  It's

21  the guy with braids.  That didn't happen here.  What's a

22  matter, guys, you thought he was going to pick me out?

23          They could have asked.  They didn't, because those

24  people couldn't make an ID, I submit, because they didn't see

25  enough of the person's face, because it was closed up.

Summation - Farrell                    1053

1          Now, Mr. DeLeon, obviously it's a sad thing what

2     happened to him.  He has to be the greatest employee ever for

3     Duane Reade, and I hope, and I'm sure you hope, that they're

4     taking care of him going forward.

5          Mr. Saha, the 7-Eleven guy, he did the right thing.

6     He didn't fight, but you saw on those videos that he was

7     really close to this guy and not all the time with a gun in

8     his face.  They were looking at each other when he came into

9     the 7-Eleven.  He doesn't make an ID.

10         Ms. Sanchez, the same thing.  She doesn't make an

11    ID.  She's very close to him.

12         Something about Ms. Sanchez that Mr. Siegel

13    mentioned that I just have to talk about here.  She told the

14    cops, the evidence would suggest, that there was $802.77 taken

15    from her store.  Mr. Siegel said she said some of that was in

16    big bills, hundreds and 50s.  Okay, some of that she did say,

17    but how much.  It's only 800 bucks tops.  Are we suggesting

18    that all hundreds were given to a Rite Aid in the off hours in

19    the morning?  Why is that important?  It's important because

20    that young man, that's all he had was hundreds.  He had a wad

21    of hundreds, $6,000 worth of hundreds.

22         Were there any rolls of change found anywhere?  Like

23    these witnesses have said, yeah, he took the whole rack, he

24    took the till.  There has to be changed.  You look in the jury

25    room.  Mr. Siegel is talking about change.  Count it up.  It's

Summation - Farrell                    1054

1   not too much, I'll tell you that.  It's not consistent with

2   what those cashiers talked about.

3          Let's look at these witnesses together in terms of

4   who they are and what they said.  The crime scene unit people,

5   there were two who testified, Detective St. Louis talked about

6   Duane Reade and Detective Casale talked about the Rite Aid

7   that Ms. Sanchez worked at.  Now, interestingly, Detective St.

8   Louis helped the defense out considerably when he talked about

9   how it was important in this case to take the Skittles that

10  were touched by the perpetrator and he said, in response to my

11  question about taking these Skittles as evidence, I said, at

12  the bottom of 132, why do that?  Why take the Skittles?

13  Because we all saw the guy was wearing gloves when he was

14  holding him.

15         He says something interesting.  Well, according to

16  the case detective, his supervisor, they basically said we

17  should take that just in case, it was seen in the video that

18  he was handling the Skittles.  I said wait a minute.  Didn't

19  you say in your report that the reason was because the suspect

20  was wearing gloves at the time that he committed the crime.

21  He might have handled the gloves before committing the crime

22  and the subject might have transferred DNA from handling

23  gloves in the past.  Isn't that what you wrote in your report?

24         ANSWER:  Correct.

25         So, that's the first time in this whole trial that

Summation - Farrell                    1055

1  we heard about transfers DNA and it's from law enforcement.

2  So apparently it's okay to transfer when it helps them.

3          I will talk about Mr. Goldstein and his position

4  about transferring, what he said about it.  But please

5  consider that, ladies and gentlemen.

6          But even more helpful to the defense was when this

7  detective admitted that he recovered that piece of lead, it

8  was covered in blood, it was a pool of blood.

9          What else did he say?  This is when Mr. Siegel was

10 questioning him, 136.  He's talking about a video that he saw,

11 Detective St. Louis.  He's asking about a footprint and what

12 the basis of his conclusion was.  He says, Mr. Siegel, so,

13 just so I make sure I understand, you said on

14 cross-examination with Mr. Farrell you watched the video?

15          ANSWER:  Correct.

16          And in that video, did you see either the

17 perpetrator or the victim step in the blood?

18          ANSWER:  I saw him struggle, slipping.  So, I'm

19 assuming that they were slipping on blood.

20          QUESTION:  And just so -- what was the basis you

21 determined that was the victim's shoe print, that was the

22 victim's print instead of the perpetrator's?

23          ANSWER:  I don't know.  I just guess watching him

24 slip and slide, just seeing just two feet.  Not my supervisor,

25 his supervisor, my case investigator and his supervisor

Summation - Farrell                    1056

1  basically said I guess that's --

2          And that's sustained.

3          Then here's the best part.  Mr. Siegel asked him:

4          QUESTION:  Did you come to a conclusion about who's

5  footprint that was in the blood?

6          ANSWER:  It could have been both.  It could have

7  been the victim or the perpetrator's.

8          QUESTION:  You were also asked about transferring

9  DNA?

10          Correct.

11          So think about that in light of what, again, they

12  didn't do.  They had Brack's sneakers, okay.  All they had to

13  do was take a look at the bottom, guys.  Was that so hard to

14  do, to take his sneakers and take a look to see if he stepped

15  in blood?  Because if he did and if Goldstein could have

16  matched it to DeLeon, again, game, set, match.  But that

17  wasn't done, ladies and gentlemen.  It wasn't done.

18          The next group of witnesses, the investigative team

19  for the Government, the Sergeant Bryan, Detective Nuzio,

20  Special Agent Miceli, Special Agent Mastropaolo.  I think I'm

21  messing his name up.  The guy who extracted the phone.

22          What does Sergeant Bryan say?  He says that I've

23  been doing this a long time.  That's what he said.  I don't

24  take any notes.  I'm testifying from memory.  I'm watching

25  this car.  I'm the closest to it, the Solara, the suspect car.

Summation - Farrell                        1057

1   And according to him, the first guy to enter it, he says was

2   Elgin Brack.  He gets in the car, goes in the back seat.  No

3   one else is in there, he says.  He says the guy is wearing all

4   gray, including a gray hood or a gray headdress.  That's what

5   he says.  We all know that's not true.  It's not true at all.

6   I tried to get him to say, listen, this guy, Elgin Brack was

7   dressed like this, wasn't he?  There is not a stitch of gray

8   on him.  He says no, I don't remember that.  I can't say

9   that's how he was dressed.  I remember him wearing all gray.

10  All right, Sergeant Bryan, if you say so.

11              (Continued on next page.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Summation - Farrell                    1058

1           MR. FARRELL:  (Continuing)  Think about what else

2   Sergeant Bryan said:  Everybody was pulled out of the car at

3   the same time.  Everybody was handcuffed.  Everybody was

4   padded down.

5           But we called Detective Finbarr Fleming to say,

6   well, you know, maybe not, Sarge, maybe not just that way.

7           Fleming said, Finbarr Fleming -- that is the

8   greatest name of any witness in the trial -- Finbarr Fleming

9   says:  Hey, I was there.  I couldn't really see much.  I saw

10  the car stop, I ran up, I took the passenger side, front and

11  back, but I didn't handcuff anybody.  I didn't pat down

12  anybody.  I said:  Well, did you see anybody get patted down?

13  Where did these guy go?  I don't know.  The next thing I knew

14  I was driving the car back.  Did you see anything noteworthy

15  in the car?  No, I didn't.

16          The last part about Sergeant Bryan, because you've

17  got to decide how much, if any, you want to believe him, he

18  was in a meeting on February 19th where he told the government

19  team:  Hey, the three guys that entered the car, they were

20  African-American.  And Tyler Miceli, to his credit, said:  I

21  don't take too many notes but I took a note of that.

22          So think about that, ladies and gentlemen, when

23  you're evaluating his credibility.  Listen to the Judge when

24  he charges you on when you can consider, when you're deciding,

25  trying to decide who's credible, who's believable.

Summation - Farrell                    1059

1          That's a good point to pick up on Detective Nuzio,

2     the guy who was in charge of the backpack search.  Let's think

3     about how that happened for a minute, think about it from a

4     new different perspective.

5          Why Nuzio?  Of all the cops that were around in the

6     case, why him?  He had nothing do with the case.  He was going

7     for a ride, essentially, he testified, with Detective Bravo

8     who did work one of the cases, I think the robbery from

9     Ms. Sanchez's store.  But anyway, why him?  There wasn't

10    enough cops there?  We know from Bryan and from Finbarr that

11    there were guys there.  Puskas was there.  Finbarr, of course,

12    was there.  Tessitore was there.  There were a bunch of guys

13    there.  Why did they need this guy to come up to search this

14    backpack?

15         And, by the way, why this backpack?  We know there

16    were other -- there was at least one other backpack and a

17    bunch of bags and a bunch of garbage back there.  What tied

18    this backpack to the robber at that point in time, ladies and

19    gentlemen?  Think about it.  At that point in time, the robber

20    didn't have a backpack.

21         We saw four videos.  We didn't see this.  Yet after

22    the fact, we saw it was Elgin Brack in North Carolina.  And

23    that's fine.  It's Elgin Brack's backpack there's a tongue

24    twister for you.  Say that five times.  Elgin Brack had this

25    backpack, that's true, but why would anyone think that they're

Summation - Farrell                    1060

1  going to, you know, find a prize in it which is really what it

2  was like?  It's like Christmas came early.

3         Detective Nuzio, why don't you go to town on it.

4  We'll set it up for you on top of the car -- not where it was

5  found, of course -- we'll put it up on top of the car and then

6  you can get busy and find out what's in there.

7         And what happened with that?  Well, he said:  I

8  proceeded to search the bag and, you know, I took these mini

9  photos, live photos, I think he called them, that are in video

10 form.  You didn't see them, did you, ladies and gentlemen?

11 They didn't want you to see them because they didn't want you

12 to hear these guys laughing like hyenas while they're

13 searching for evidence in a very important case.

14        Where Nuzio says, Yeah, I had gloves on and I'm

15 picking through, wading through clothes, but, ladies and

16 gentlemen, he didn't tell you about all the clothes that were

17 in backpack.  He made it out like this is a pretty easy fit:

18 Two pairs of jeans, a T-shirt, flip-flops and, of course, the

19 black zippered pants in there and, of course, the gun was in

20 there, but what he didn't tell you about was what Elgin Brack

21 identified for you yesterday.  All this stuff was in it:

22 Underwear, other T-shirts, socks.

23        So, ladies and gentlemen, there's the backpack which

24 I put somewhere.

25        Mr. Bennett?  Oh, I put it over here.  My eyes are

Summation - Farrell                    1061

1   going.

2           So all this stuff, there's all this stuff.  There's

3   the black jeans according to them.  It's all stuffed in this

4   backpack just sitting on top of the car and waiting for lucky

5   Detective Nuzio who has the pleasure and privilege of

6   documenting this stuff.  Ladies and gentlemen, this is a

7   backpack.  It's not a suitcase.  So think about that.

8           The testimony from Nuzio is:  I'm going through

9   this.  I'm wearing gloves.  I'm touching all his clothes, all

10  of them, I'm pulling them out and, lo and behold, there's the

11  black pants.  A little down further, there's the gun.  I had

12  my gloves on, I never changed them, and I picked the gun up by

13  one place, he says, the grip.  I picked it up by the grip and

14  pull it out with the same gloves I just touched this guy's

15  underwear with, four pairs, jeans.  And now I'm going to take

16  that gun up with the same pair of gloves and I'm going to show

17  Miceli.  Hey, look what I found.  I'm not going to bother to

18  check the pockets to see if there might be any evidence that

19  can help the case, I won't do that.

20          So think about all that, ladies and gentlemen.

21          I'm going to ask that the Pelle Pelle jacket and the

22  pants be tested by the lab for fibers.  We know they were and

23  we had to produce Criminalist Mavris to tell you all of that

24  and we did that.  And, again, that they didn't follow up with

25  those tests.  That's not on Elgin.  That's on them.  Don't

Summation - Farrell                    1062

1  accept those lame excuses that, oh, well, it got to the

2  property clerk and I don't know.

3          And Mr. Goldstein says:  I never knew about any

4  examinations that revealed hair from any evidence in the case.

5  I'm just here to talk about DNA.  We'll get to that in a

6  minute.

7          Then we got Special Agent Miceli, the case agent.

8  And if Judge Vitaliano said right now:  Listen, Mr. Farrell, I

9  think you are going to be going on a long time.  I'm going to

10  just give you four words to talk about Miceli.  I would say:

11  Judge, you're the judge, I'll do it.  Show me the money.

12  That's what I would say.  Show me the money.

13          Tom Cruise, the "Jerry Maguire" movie is applicable

14  here.  Why?  This is a robbery, guys.  They supposedly took a

15  lot of money.  Not a lot.  Actually, not a lot.  But they took

16  money, 800, 200, 300, the total is, like, 1,300 bucks.  Where

17  is any of it?  Was it in the magic backpack?  I think if you

18  go through all the evidence, there's less than a hundred

19  bucks.

20          Ask yourself, does this add up?  Elgin Brack said he

21  had $6,000 on him.  Where was it found?  Scour the record.  I

22  invite you to.  You're not going to hear one word.  As

23  Mr. Stein, my colleague, said, his first question was:  Wait a

24  second.  I didn't hear anything about the money.  Did you guys

25  plan that?  At any of your hundred meetings, that was his

Summation - Farrell                                    1063

1   testimony, I've spoken to these guys a hundred times, a

2   hundred times, so where's the money?  We know they gave back

3   $5,000.  $5,000 they gave back.  This doesn't make sense.

4          Miceli says he's the first guy to search.  I'm the

5   first guy to search.  Even though Fleming brought it in, I'm

6   doing the search.  Well, why didn't you search the backpack

7   too, one might ask.  You're the case agent.  Why bring up this

8   guy from Queens to search it who has nothing to do with the

9   case?  So what does Special Agent Miceli, when we ask him,

10  say?  Look, you searched the car.  You're the first guy to

11  search it.  I mean, even showing 304F, even Sergeant Bryan

12  said:  Yeah, I looked in the back.  I saw two backpacks.

13  Yeah, this is how it looked.  There were two.  When we showed,

14  when my colleague, Mr. Stein, showed this picture to the

15  Special Agent, case agent:  Hey, what's this?  I don't know,

16  it doesn't really look familiar to me.

17         Okay.  You know, just because the guy says it and

18  his title is Special Agent and he takes the stand and he's

19  sworn to tell the truth, you don't have to believe it and I'm

20  asking you not to believe some of his testimony.

21         We know that no gloves were found from the shooter.

22  We know the shooter, robber used gloves in every video.  They

23  weren't found.  Think about how he answered Mr. Stein's

24  questions about the black pants being in the bag.  He didn't

25  see them in there, of course, because he was downstairs in his

1    office.  I don't know what he was doing, but he was down there

2    when Nuzio says, oh, I found these pants in the backpack.  Can

3    you believe it?

4           Well, if you actually did that, that actually

5    happened, Special Agent, when you swore the complaint out,

6    when you swore multiple search warrants out, when you

7    testified in the grand jury under oath, why didn't you say

8    that?  Why didn't you say we found the pants in the backpack

9    instead of just found them in the car?

10          I mean, sure, the backpack was in the car.  So I'm

11   not saying he perjured himself but come on, guy, do it right.

12   If that's where you found it or if that's where your teammate

13   found it, say it that way.

14          What did he also say?  Hey, I found, in the car, I

15   found the phone, it was in the back seat of the car, showing

16   that phones can fall out of pockets and later on be found.

17   And, yeah, we had our Special Agent come in and extract stuff,

18   2,500 pages of stuff, pictures, searches, texts.  Okay.  Where

19   is all that stuff?  We got the one thing of the search that

20   I'll get to in a minute.  Not one text came into evidence from

21   Elgin Brack.  Not one.  Not one e-mail.  Not one photo.  Just,

22   coincidentally or not, the searches from that morning.

23          Special Agent Miceli didn't check the pants either.

24   He didn't know anything about the McDonald's slip, he says.

25   So, ladies and gentlemen, you decide how special he is, okay,

Summation - Farrell                     1065

1    when you're evaluating his testimony.

2            When Mastroangelo says:  All right.  I removed the

3    data and I see searches.  As Mr. Siegel pointed out so vividly

4    in his high tech presentation, compared to my decidedly low

5    tech presentation, there were these searches that included 24

6    hour stores in the city and a Dollar Store and searches in

7    Queens.  Okay?  And let's face it, if Elgin Brack was doing

8    those searches, that's pretty good evidence.  I'll be the

9    first to concede it.

10           You know what, ladies and gentlemen?  I want you to

11   think about something.  Elgin Brack, his bank records show --

12   and I'm going to pull them up right now.

13           Page 2 of 7, Elgin Brack bank records.  What do we

14   have here?  Well, how about that.  On October 12th, there's a

15   purchase from Family Dollar.  Okay?  Next, 10/15, Glendale.

16   That's in Queens, 10/15, Glendale.  10/15, Woodhaven.  10/15,

17   Woodhaven.  10/15, Woodhaven.  10/15, Woodhaven.  Woodhaven

18   Supermarket.  Woodhaven.  Woodhaven.  Glendale.  Woodhaven.

19           Next page.  Okay.  McDonald's.  We know he loves

20   McDonald's.  We'll get to that too.  Woodhaven.  10/19,

21   Woodhaven.  Woodhaven.  Kew Gardens.  10/22, Woodhaven.

22   Woodhaven.  Woodhaven.  Richmond Hill.  Woodhaven.  Woodhaven.

23           Next page, page 4.  10/22, McDonald's in Woodhaven.

24   Bravo Supermarket.  McDonald's at Woodhaven.  All charges.

25   Even for something like $2.70, he's charging.  He's not paying

Summation - Farrell                    1066

1   cash.  He's charging.  Jamaica Avenue, Queens.  Woodhaven.

2   Woodhaven.  That's 10/23.  10/25, Woodhaven.  Woodhaven.

3           What's the point?  The point is the guy knows

4   Queens.  He's the king of Queens.  Why would he have to search

5   for 24 hour stores in Queens?  The guy's been in Queens a

6   million times right where these robberies happened.

7           So, please, if you have any questions on this, take

8   your time, ask for the records, go over them.

9           Now, the next page shows that there is a McDonald's

10  Woodhaven purchase.  Purchase authorized, McDonald's

11  Woodhaven.  I don't even know you could get something for

12  53 cents in this day and age, but I guess you can because he

13  got it.  Charged it at McDonald's.

14          I submit people are creatures of habit, ladies and

15  gentlemen.  They have their own order and Brack's order wasn't

16  an egg and cheese biscuit.  We're creatures of habit.  He

17  charges.  Young people, that's what they do, they charge.  My

18  colleague, Mr. Bennett, I assure you if I asked him now for a

19  dollar, he wouldn't have it.  If I asked him for a quarter, he

20  doesn't have it.  Young people don't do that.  They go by

21  credit, not cash, though certainly Elgin Brack had some cash

22  on him and you know that's true because as you know, he was

23  going down to North Carolina to buy presents as the holidays

24  were approaching.

25          The only other thing that the Special Agent who did

Summation - Farrell                    1067

1   the phone could possibly testify to or did testify to is, Oh,

2   yeah, the guy had a Facebook account.  There was a picture

3   that we put in, the defense, not the government.  We put in,

4   Mr. Brack, Defense AA.  There is he is.  A stack of 20s.

5           Hey, Mr. Brack, what were you doing with that?  I

6   asked him.  Hey, look, I was young, stupid, playing around,

7   trying to impress young ladies.  Elgin was showing them the

8   money.

9           All right.  Let's talk about the experts briefly:

10  Nolan and Fox, ballistics guys.  Goldstein.  Magnuson.  I'm

11  just going to refer to him as the $33,000 man, if that's okay

12  with you, the phone guy.

13          Fox said:  Yeah, those bullets were fired.  I'm

14  pretty sure.  It's my opinion now they came from this gun.  I

15  didn't have that opinion before, I couldn't really be sure,

16  but now I'm sure.

17          Okay, that's fine, but that's only meaningful if

18  you're satisfied that Elgin Brack used this gun on

19  November 26th to shoot Mr. Deleon and robbed three other

20  people.  Otherwise, it doesn't mean anything.

21          What about Mr. Goldstein?  He's a smart young guy,

22  I'll give him that.  He uses sterilized gloves and changes

23  them often.  Page 697.  He's the opposite of Nuzio in every

24  way.  Nuzio says, Yeah, had a pair of gloves, put them on,

25  went through all the guys clothes, checked the gun with the

Summation - Farrell                    1068

1   same gloves.  Goldstein would not do that.  He changes the

2   gloves all the time and he sterilizes them too.

3          So think about how that testimony contradicted

4   Detective and impeaches Detective Nuzio's testimony and

5   affects the integrity of the evidence in this case because,

6   remember, the only brace Brack's DNA was found was where?  The

7   grip, and that's the place that Nuzio picked it up with, with

8   the same gloves that he just went through all of Brack's

9   clothes including his underwear.

10         So think about that.  Think about how this DNA

11  transferred from Elgin Brack's clothes to the grip of that

12  gun.  Think about that.  Think about Goldstein acknowledging

13  the concept of transference.  He didn't say that's all

14  garbage.  He did say, on redirect, I disagree respectfully

15  with Cynthia Cale, and he gave his reasons, and you can decide

16  to credit them or not, but he also said that, Yeah, his

17  opinion was basically, look, her thing was in a lab, it wasn't

18  really realistic conditions.  And I got up and I said, Is that

19  all?  He said, Oh, no, no, no, it was more than that she used

20  to come to her conclusions.

21         Goldstein couldn't tell you a thing about what

22  Ms. Mavris did.  He kind of made it like:  Look, I'm an OCME

23  guy.  They're criminalists.  I don't even know their names.

24  He pretty much like dismissed them.  I don't know that they

25  do.  I didn't look at any hair fibers that were recovered on

Summation - Farrell                    1069

1  any clothes.  I didn't do that.  I could have decidedly

2  obtained the hair and looked at it and just see if it came

3  from Brack or not, and that would have been a game-setting

4  match if all the hair was Brack's on those clothes but we dent

5  get to do that.

6            Now, what about the $33,000 man, what did he add to

7  the case?  He certainly had a remarkable life:  Air Force,

8  Navy, Army, chased the Italian mob, chased the cartels, and

9  now he knows an awful lot about cell phones.  I'm the first to

10 concede that.  I'm not going to even challenge any of his

11 multiple charts, graphs, pie charts, whatever you want to call

12 them, but what I would like to do is talk about one thing he

13 said.  I didn't even have to get it out of him, an expert.

14            I said, Hey, Mr. Magnuson, in your experience, do

15 people that are in the same car call each other?  Or if people

16 are together, do they call each other?  He said:  No, of

17 course not.  That's ridiculous.  You guys know that.

18            So let's look at the phone records in a different

19 way.  The government didn't really talk about the calls.  They

20 talked about the pie charts.  We'll get to that too.  Who

21 called who and for how long.  This is my one venture into the

22 government's world where I actually made up something.

23            Mr. Bennett, if you can help me here.

24            Let's look at the calls.  Okay.  This shows the

25 calls made from Scott Brack's phone with Elgin Brack's phone

Summation - Farrell                    1070

1   on November 25th.  There were four calls.  That's it.  4:22,

2   5:59, 5:59 again, 6:00 p.m.  Four calls, all about 25 seconds

3   according to the records.

4           Now, we're into the next day and Mr. Siegel is

5   definitely right.  There were three calls in the early morning

6   of 1 o'clock time period.  There was also a 3:54 a.m. call

7   here from Scott Brack's phone that's not registered in this.

8   This is not evidence, ladies and gentlemen.  This is not

9   evidence.  This is an approximation of various calls, how long

10  they took, what time they were.  The key thing is compare that

11  to Scott Brack and Edwin Vasquez and we know that's Vasquez's

12  number because Edward, because the government stipulated to

13  it.

14          So let's look at that activity on November 25th.

15          A bunch of calls from 7:02 to 9:52, mostly Scott

16  calling him, 336 seconds.  Remember, 60 seconds to a minute.

17  That's five and a half minutes.  That's two minutes, over a

18  minute, 45 seconds.  That's way more than Elgin ever talked to

19  Scott where they never went over 55 seconds, not even a

20  minute, but it gets better.  Look down here.  The next day,

21  the most important day.  All from 12:00 a.m., right when the

22  robberies are happening, outgoing phone calls.  All outgoing.

23  Scott to Edwin.  429, 562, 249.  One incoming from Vasquez,

24  5:00 in the morning.

25          Ladies and gentlemen, what are these guys talking

Summation - Farrell                    1071

1   about?  This is scheming Scott Brack and Edward Vasquez.

2   Remember him?  You saw a picture of him.  They say, Oh, it

3   wasn't how he looked then.  What do you think, it's his

4   college graduation picture?  Use your common sense.  It's

5   Vasquez and scheming Scott Brack.

6          What are they talking about for minutes and minutes

7   and minutes right as the robberies are taking place?  Were

8   they talking about Eli Manning, does he have another season in

9   him?  Are they talking about the Jets, are they going to stink

10  up the joint again?  What are these guys talking about during

11  the time Scott Brack is committing robberies?

12         Maybe Vasquez has an interest in these robberies

13  because his car is there.  Remember, Vasquez is the same guy

14  that Special Agent Miceli was looking for and couldn't find.

15  They had him there.  They let him go.  They took his phone and

16  gave it back to him.  They didn't bother looking at it.  Then

17  when they tried to subpoena him, lo and behold, he's in the

18  wind, he's a ghost.  They wanted to get his DNA because,

19  remember, there's three guys in that mix on that gun.  They

20  wanted to get Vasquez to see if he was one of them but they

21  never did.

22         Ask yourselves, ladies and gentlemen, what's going

23  on here?  What's going on with Scott Brack who Elgin

24  testified, look, this guy did 20 years, I was just trying to

25  get to know him again.  Scheming Scott Brack and Edward

Summation - Farrell                 1072

1    Vasquez, think about them.

2         Elgin Brack testified yesterday and he said that guy

3    in the video, that's not me, but it doesn't end there.  I

4    agree with Mr. Siegel.  There's certainly, as the old "I love

5    Lucy" show, Elgin, you got some explaining to do.  You got to

6    explain Hughes Avenue and the clothes.  You got to explain

7    your DNA on the gun.  You got to explain the phone.  Well,

8    ladies and gentlemen, I submit he did that.  He gave logical

9    answers to those very serious issues.

10        Let's start with Hughes Avenue first.  Mr. Brack

11   certainly didn't shy away from it.  He played it for you three

12   times yesterday and he admitted, those are my, those are the

13   clothes I was wearing, no doubt.  Why is he wearing those

14   clothes?  He says his jeans got messed up.  You know, he's in

15   New York in November, he wore the pants, he wore the shirt.  I

16   submit, as he testified, Hey, they're not my style, I had to

17   get rid of those clothes as soon as I possibly could so in

18   that video, I'm headed to go shopping.

19        He did go shopping and he bought some other stuff

20   and he got rid of those clothes as soon as he could.  Look at

21   him.  Look at his clothes.  He's a jean and T-shirt guy just

22   like he said.  No bling.  That's not me.  Look at his Facebook

23   photo.  He's in the T-shirt.  He's not wearing cool pants.  I

24   guess these are cool.  Zippers?  Come on.  That's not Elgin

25   Brack.  He's a T-shirt guy.  Pelle Pelle sweatshirt, that's

Summation - Farrell                    1073

1   for old dudes, I'm not wearing that other than for that brief

2   moment in time.

3            The gun -- and the government might say how

4   convenient, oh, my God, he just at that point in time had to

5   borrow those clothes, oh, my God.  Well, ladies and gentlemen,

6   I submit that happens.  Stuff like that in life happens.  He's

7   dealing with a sketchy crowd here and I said you can't pick --

8   you can pick your friends but not your family.  It's not his

9   fault this is who Scott Brack hangs out with, guys like

10  Vasquez and Eddie, Vasquez's man, and they're able to get

11  close to a guy in a Section 8 house but he's really not in

12  Section 8.  I mean, this happens in their world, in the life

13  that Scott Brack was in.

14           Next, how did the gun get in his bag?  I'm sure the

15  government will say, Well, maybe it flew in there on its own

16  and it just happened to get in his bag.  Well, ladies and

17  gentlemen, I submit that's not what happened, of course.

18           Elgin told you:  Hey, I saw this gun before.  I'm

19  not saying I didn't.  I saw the gun.  I saw it in Vasquez's

20  car when Eddie was there but I didn't care.  I was there to

21  smoke weed.  That's what Elgin is into, ladies and gentlemen.

22  He's into smoking weed and that's what he was doing and that's

23  when he saw that gun.

24           How does his DNA get on it?  Well, we've been

25  through that I think enough.  Because of Nuzio, Nuzio's hands

CMH        OCR        RMR        CRR        FCRR

Summation - Farrell                      1074

1   is all up in his stuff and then touching the gun.  It's DNA

2   transference.

3           How about the phone?  How did his phone end up

4   making those calls?  Again, the government is going to say,

5   Oh, my God, another coincidence, you just happened to lose

6   your phone at that time?  Well, yeah, people lose phones.  It

7   happens.  It sure does happen.

8           As Elgin Brack said, Look -- and the phone records,

9   the phone records show, the phone records show something very

10  interesting.  This is from Elgin Brack's phone.  On the

11  evening of November 25th, Elgin makes a series of texts to

12  Ebony.  What are those texts about?  He goes:  I don't know.

13  I would have to see them.  He looked at them.  He says:  Oh,

14  yeah, she was trying to help me get a bus ride home to North

15  Carolina.  That's all that was about.

16          You see the last entry on November 25th from Elgin's

17  phone is, the time is -- see this, guys?  9:06.  That's Elgin.

18  Yes, 9:06 p.m.  All these texts, all to Ebony.  9:06 p.m.

19          Ladies and gentlemen, the guy's 22.  Come on.  We

20  can use our common sense here.  My daughter is 24.  The

21  phone's never out of her hand.  She would never sign off at

22  9:06.  That early?  Why would he do that?  It's because he

23  didn't have his phone anymore.  And you know what else?  He

24  told you that, he said:  Man, I was trying -- did I leave it

25  at a store.  Then he said:  I'm going to have Ebony call Scott

Summation - Farrell                    1075

1   and see if he has it.

2          Well, wouldn't you know, when you look at Scott's

3   phone records, right here, 10:22, 10:34, 25 second calls,

4   Ebony calling Scott.  I submit you can infer from those

5   records that that corroborates Elgin when he said:  Listen, I

6   tried to get my phone back, that's all this was about, and I

7   asked Ebony to help me and she did by calling Scott.

8          Now, if Scott didn't want to come back to Jersey at

9   that point, I submit, that's an inference you can draw because

10  Scott does what he wants.

11         Now, I submit that the $33,000 man helped us for the

12  1 a.m. to 1:24 calls.

13         I'm going to put those up, Mr. Bennett, the calls on

14  Scott's phone at approximately 1 a.m.

15         There are two calls back and forth from him and

16  Elgin's phone.  Well, they're both in New Jersey.  Mr. Siegel

17  is right there about that.  So my question is Elgin Brack, no

18  car, how does he get to Jersey without Scott?  Why is Scott

19  calling him if they're in the same car, if they're together?

20  Scott is Elgin's ride from Vasquez's car.  That's the

21  undisputed testimony in this case.  Why is there a call to his

22  phone?

23         Now, if somebody else had Elgin's phone -- if Scott,

24  scheming Scott, knowing that Elgin's phone is in his custody,

25  in his car, meaning Vasquez's car, he gives the phone to some

Summation - Farrell                     1076

1   guy, well, then it makes a little more sense.  It makes no

2   sense that he's calling Elgin if he's supposedly with him

3   about to roll into Queens to commit this robbery.

4          Then look into the next set of calls.  It doesn't

5   come until 10 something in the morning.

6          Put that up, Mr. Bennett.

7          Elgin's calls the morning of the 26th.  You'll see

8   the first call is 10:38.  Who does he call?  Scott, because

9   now he's in Jersey with Scott but they're trying to get

10  Vasquez.  Vasquez is not ready.  He drops Elgin off at the

11  bank.  And then Elgin says:  Okay, I'm ready.  Scott's, like:

12  Oh, I can't find you.

13         And then there's another call -- you got that up,

14  Mr. Bennett -- on the morning of the 26th.

15         Elgin's phone calls Scott at 10:38 a.m. and then

16  about an hour later, Scott calls him.  And you heard Elgin

17  tell the story:  Hey, I had to take mass transit back to the

18  Bronx because I couldn't deal with this guy and he didn't want

19  to deal with me.  So I submit that supports Elgin's testimony.

20  At 8:40 p.m., of course, they're both in the Bronx.  Elgin's

21  calling him to say:  Dude, where are you?  I'm looking to go.

22  I got to catch a bus.  Come on.

23         And you look at Scott Brack's calls, right, these

24  calls here, were charted by Mr. Magnuson, those two 1 a.m.

25  calls, and they were shown to be in Jersey.  So why are these

Summation - Farrell                    1077

1    guys apart in Jersey?  Doesn't it make more sense that Scott

2    was trying to find the guy that had Elgin's phone at that

3    point who he was getting to do this crime with him?  Think

4    about that, ladies and gentlemen.

5              Look at the number of calls Scott makes.  It's twice

6    as many, twice as many as Elgin over the two day period.

7    Twice as many.  There's six sheets of calls for scheming Scott

8    Brack.

9              Ladies and gentlemen, Judge Vitaliano is going to

10   charge you about how you can consider the lack of motive in a

11   case and that you can consider lack of motive and I submit

12   Elgin Brack had no motive to commit these crimes.  You know

13   had six grand in his pocket and he had over 4,000 in the bank.

14   You know that.  This was all for what, 1,300 bucks that he

15   presumably had to split with scheming Scott?  6,000 in cash,

16   4,000 in the bank on November 26th.  His posts on Facebook

17   spreading out the money.  You saw that.  This is a young man

18   who didn't need the money.

19             Think about his testimony.  Think about the match up

20   of AUSA Philip Selden versus Elgin Brack.  Elgin Brack can use

21   an off color expression.  That doesn't mean he's a bad guy.

22   It doesn't mean he's guilty.

23             I submit, Mr. Selden believed -- thank you,

24   Mr. Bennett -- that he had Elgin Brack, he had his, what I

25   would call his Tom Cruise moment in "A Few Good Men," when he

Summation - Farrell                        1078

1   had Jack Nicholson on the stand and he got him to admit, "I

2   ordered the code red, you better believe I did and I would do

3   it again."  He broke the witness.   Tom Cruise broke the

4   witness.

5          I submit Phil Selden thought he broke the witness

6   when he said:  Hey, wait a minute.  Mr. Brack, didn't you do a

7   search on the evening of November 26th how to win a case in

8   2018?  Do you remember how Elgin reacted?  He said:  No, I

9   didn't do that.  I don't remember that.  I have no idea what

10  you're talking about.  He said:  Here, here's an extraction

11  from your phone.

12          At first, it looked like, Oh, this is it, Selden is

13  having a Tom Cruise moment.  Who'd a thought?  But then when

14  Elgin looked at what he's shown, it wasn't a search by Elgin.

15  It was an ad that he pressed.  Then I was able to ask him a

16  question:  Did you have misdemeanor case in Brooklyn at the

17  time?  Yeah, I did.  Did you want to win it?  Yeah, I did.  So

18  much for the Tom Cruise moment.

19          Ladies and gentlemen, that stipulation about the,

20  where the car went, the LPR stipulation -- Mr. Bennett, I'm

21  going to try to find the LPR stipulation, two pages -- can

22  tell us, I believe, with reasonably good certainty -- that's

23  not it.  It's off color, Stipulation 1.

24          It's going to show you when he gets it up that after

25  the robberies, the car was seen heading to the Bronx, back to

Summation - Farrell                              1079

1   the Bronx.  Why?  Scott Brack just had pulled off these

2   robberies.

3           This is the stipulation S-1 in evidence by the

4   government.  All right.  Let's take a look at this.

5           At 6:13, that car is on the Whitestone Bridge,

6   Bronx bound.  Why?  Because Scott knew he had to meet his

7   cousin because he had his cousin's phone and that's exactly

8   what Elgin Brack said, that they met sometime in the morning

9   and that Elgin was taking a ride to Jersey with this guy

10  because he knew he needed a ride later to the bus stop.

11          (Continued on next page.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Summation - Farrell                    1080

1  (Continuing.)

2          MR. FARRELL:  So, and they're in Jersey all day

3  until 5:28.  The car is seen coming back on the GW Bridge.

4          Ladies and gentlemen, this case has left you with

5  more questions than answers, I submit.  I said in my opening,

6  I'm going to say it now, and I'm in the home stretch here,

7  this is it, it's about lunchtime, bring the movies to life,

8  ladies and gentlemen.

9          How guilty did Harrison Ford look in The Fugitive?

10          How guilty did the guy look like in Shawshank

11  Redemption?

12          How guilty did Joe Pesci's cousin look in My Cousin

13  Vinny?

14          I know that's the movies, but, ladies and gentlemen,

15  it happens in real life too.

16          What about Hurricane Carter?  What about the Central

17  Park Five?  What about Duke lacrosse?  They looked guilty, but

18  they weren't.

19          Ladies and gentlemen, I submit reasonable doubt has

20  flooded this courtroom throughout the trial.  Take it with you

21  in the jury room, breathe it in, embrace it.  It's not enough

22  to say Brack looks like the robber, and I submit the robber is

23  not Asian, he's not Caucasian.  He's African-American, and so

24  it Brack.  But I submit if you look closely, the skin tone is

25  off, the mustache is off.  Oh yeah, he's got white sneakers.

Summation - Farrell                         1081

1   Wow, I guess that makes his guilty, having white sneakers.

2   Because we're not in the could be's, maybe's, probablies, that

3   doesn't cut it.  It's proof beyond a reasonable doubt.

4   Wearing clothes before doesn't make you guilty of doing the

5   crime.

6            Well, ladies and gentlemen, that's it for me.  I

7   find myself caught in between -- caught in the middle of a

8   Jon Siegel, Phil Selden sandwich, and that's not my favorite

9   kind of sandwich, I can telling you that.  These guys are

10  good, they're pros, and Phil Selden is going to get up and

11  he's going to do a good job.  And I can't get back up, Joel

12  Stein can't get back up and answer him, so we're asking you to

13  do it.  What would we say to rebut this evidence?  What

14  arguments would we make to show there's reasonable doubt here?

15           I beseech, I beg you, do it.  Do it for that young

16  man sitting over there (indicating).

17           Ladies and gentlemen, listen carefully to Judge

18  Vitaliano when he charges you on you law of reasonable doubt,

19  the presumption of innocence, the bedrock of our jury system.

20  This isn't another country, like Judge said when he first met

21  you, or maybe it was Judge Orenstein during voir dire.

22  There's no system like this.  He doesn't have to prove he's

23  innocent.  They have to prove he's guilty.  And they didn't.

24  So find him not guilty, ladies and gentlemen.

25           Thank you very much.

SAM      OCR      RMR      CRR      RPR

Summation - Farrell                    1082

1    THE COURT:  Thank you, Mr. Farrell.

2    Ladies and gentlemen, we will take another break

3    before we get the rebuttal argument by Mr. Selden.

4    Again, very short, five or ten minutes, give you a

5    chance to refresh.  And again, continue to keep an open mind.

6    Do not discuss the case amongst yourselves or with anyone else

7    and we will be with you in about five minutes.

8    (Jury exits.)

9    (In open court.)

10   THE COURT:  Okay, we will give you that break.  It

11   is still my hope, I don't know how long Mr. Selden will be,

12   but that we will be able to charge and let them eat and

13   deliberate at the same time.  It will save us an awful lot of

14   time, but if it becomes a little too ludicrous, then we will

15   have to re-evaluate that.

16   MR. SELDEN:  Thank you, Your Honor.

17   (Judge [!JUDGE NAME] exited the courtroom.)

18   (Recess taken.)

19   THE COURTROOM DEPUTY:  All rise.

20   (Judge [!JUDGE NAME] entered the courtroom.)

21   (In open court - jury not present.)

22   THE COURT:  Mr. Selden, are you ready?

23   MR. SELDEN:  We are, Your Honor.

24   THE COURT:  Then we will get our jury.

25   (Pause.)

Rebuttal - Selden                                    1083

1          (Jury enters.)

2          THE COURT:  Be seated, please.

3          Counsel will stipulate that the jury is present and

4    properly seated.

5          MR. SELDEN:  On behalf of the Government, yes.

6    Thank you, Your Honor.

7          MR. STEIN:  Yes, Judge.

8          THE COURT:  Thank you, counsel.

9          Ladies and gentlemen, we are ready to proceed with

10   the rebuttal argument that will be made for the Government by

11   Assistant United States Attorney Phil Selden.

12         Mr. Selden, it is all you.

13         MR. SELDEN:  Thank you, Your Honor.

14                   <u>REBUTTAL BY MR. SELDEN</u>

15         MR. SELDEN:  A movie, closing credits, My Cousin

16   Vinny?  There's nothing about this case that is a movie,

17   ladies and gentlemen.  There is nothing about this case that

18   is a game, a set or a match.  For Alejandro Deleon there are

19   no credits.  For Alejandro Deleon there is no next role.  The

20   evidence in this case has proven beyond a reasonable doubt

21   that defendant Elgin Brack is responsible for these crimes.

22         Ladies and gentlemen, we are not going to quote to

23   you from headlines or make nicknames, we are going to focus on

24   the evidence.  Mr. Farrell, during his closing argument,

25   impassionately questioned credibility, questioned

Rebuttal - Selden                    1084

1  corroboration, and he questioned common sense.  Let's walk

2  through those three things because when you consider the

3  credibility of the witnesses, when you consider the

4  corroboration of the evidence, and when you utilize your

5  common sense, it supports the only verdict:  Guilty.

6          Let's talk about the credibility of the witnesses,

7  ladies and gentlemen.  Again, this is not a movie.

8  Mr. Farrell questioned the credibility of the Government's

9  witnesses.  Whether or not it was Ms. Sanchez not knowing the

10 difference between 800 or a thousand dollars; that didn't have

11 to do with whether or not she knew a gun was in her face.

12 Whether or not it was the Special Agent's, Detective Sergeant

13 Bryan describing the defendant a year-and-a-half ago.  You

14 should ask yourselves, if he didn't remember every aspect of

15 the closing that he was wearing, is that a reason not to

16 credit him, or would you question if he knew every single step

17 for a case that he described he really wasn't on?  He saw a

18 guy with a backpack.  And that guy and that backpack was

19 defendant Elgin Brack walking into that Toyota Solara.

20         Beyond the credibility you should consider, and the

21 judge will instruct you on that, you should think about

22 defendant Elgin Brack's testimony.  Do you find him credible?

23 Did he answer the same way when posed questions by the defense

24 as he did when posed questions by the Government to

25 cross-examination?

Rebuttal - Selden                    1085

1      We would submit that even on the most basic

2  questions, he fought back.  Even on the most basic questions,

3  he struggled to answer.  And he knew every call on a

4  particular day, but did he know every detail when asked not in

5  a leading question about call detail records sitting right in

6  front of him?  We would submit that he didn't.

7      Ladies and gentlemen, when you consider the

8  credibility of the witnesses, you also will consider the

9  credibility of Elgin Brack's testimony.  But there's more in

10  this case to think about.  The corroboration of the evidence.

11  Let's walk through that corroboration.

12      He wears the clothing before each one of these

13  crimes.  The videos capture him in each one of the stores.

14  He's seen in North Carolina with the backpack on a week

15  before.  He's got 94 percent of the DNA mixture on the grip of

16  the gun that is his.

17      There's a lot of talk of Scott Brack.  There's a lot

18  of talk of Edward Vasquez.  Well, they're not on trial, ladies

19  and gentlemen, but Scott Brack is excluded from that DNA.

20  Alejandro Deleon, he's excluded from that DNA.

21      But beyond that credibility and beyond that

22  corroboration, ladies and gentlemen, use your common sense.

23  You all come from different walks of life, different parts of

24  New York, but you all share one thing in common, and that's

25  common sense.  If you're to take Mr. Farrell's arguments, and

Rebuttal - Selden                                    1086

1    they are only that, to their logical end, then no one with

2    more than, let's say, $10,000 could be responsible for crimes.

3    That's the cut-off point because there's no motive.  But

4    common sense would tell you that doesn't make sense.

5           If you were to take Mr. Farrell's arguments to their

6    logical end, you'd have to overlook that the evidence supports

7    that Elgin Brack is guilty beyond a reasonable doubt.

8           If you follow those arguments based on movies, based

9    on nicknames, based on attacks, ladies and gentlemen, then you

10   overlook that Elgin Brack would have to be the unluckiest man

11   in the world.  And it's not just one thing that he's unlucky

12   on, it's many.  It's the clothes that are used in an armed

13   robbery spree, he just happens to be walking down Hughes

14   Avenue 12 hours before in those exact clothes.  They fit him.

15   Well, he's the unluckiest man in the world.  He borrowed them

16   from a guy and that they were things that he put on, but they

17   really aren't things that he likes to wear, so he got rid of

18   them.  He had $6,000, but he had to borrow clothes from

19   someone in Section 8.

20          Now, there is nothing wrong with Section 8, ladies

21   and gentlemen, and there is no evidence about that beyond the

22   defendant's testimony.

23          Ladies and gentlemen, this is not a case about a car

24   or clutter, this is a case about evidence, about, as the

25   defense would have you believe, an unlucky man.

Rebuttal - Selden                           1087

1    You can look at those videos.  There's a series of

2    points, and Mr. Farrell dramatically walked up to the actual

3    witness stand and talked about identification.  He's correct,

4    none of the witnesses were asked to identify Elgin Brack, but

5    their descriptions did.  Their descriptions described a young

6    man in his twenties, African-American, mustache on his face, a

7    young man's voice.  And ask yourself, were they focused on

8    something other than just those moments?  Yes.  They were

9    focused on the .357 revolver in their faces.

10   But, ladies and gentlemen, you know who can identify

11   Elgin Brack?  You.

12   Beyond being the unluckiest man who's captured on

13   those videos, ladies and gentlemen, the gun from the robbery

14   shows up in his backpack.  Again, to believe Mr. Farrell's

15   arguments, he's just unlucky.  It's his bag, but the gun is in

16   there.

17   Oh, and there's DNA from him on the gun because

18   again, he's that unlucky that DNA happens to transfer onto

19   that gun.  Well, that wasn't testified by the OCME's expert;

20   no, it was 94 percent of the mixture from that gun was Elgin

21   Brack.

22   It doesn't stop there because he has to be the

23   unluckiest man in the world, because it just so happens that

24   at the time this robbery spree is happening, he loses his

25   phone.  And respectfully, this case is not about all young

Rebuttal - Selden                    1088

1  people or any of the people that Mr. Farrell talked about,

2  it's about Elgin Brack.  And he just happened to lose his

3  phone that night?  There just happened to be searches for

4  24-hour stores.  He just happened to be found in the same car

5  that was used for the robberies with the same jacket that was

6  captured on those videos with the same pants in his bag.

7         I started off talking about people and movies.

8  Well, ladies and gentlemen, you are going to get a chance to

9  watch the videos from those stores.  No one was acting, and

10  when Elgin Brack pulled out that gun, watch the videos.  His

11  left hand, his right hand.  Well, as Detective Fox explained,

12  it's not a left-handed or right-handed gun, it can be used in

13  both, but watch.  He actually gestures with, as he's

14  describing, his dominant hand.  He's controlling that scene,

15  but he does so after he stumbles and fumbles with that gun,

16  ladies and gentlemen.  Whether or not it was his left hand or

17  his right hand, it was Elgin Brack.

18         Mr. Farrell talked a great deal about the things

19  that law enforcement should have done.  He challenged whether

20  or not they could have done more and what they should have

21  done, but they're not on trial here today.  And ask yourself,

22  did they find license plate readers?  Yes.

23         Did they collect videos from North Carolina of

24  Hughes Avenue from the stores?  Yes.

25         Did they look for cell site data?  Yes.

Rebuttal - Selden                                    1089

1          Did they search his phone?  Yes.

2          Did they find the gun and the clothing?  Yes.

3          And, ladies and gentlemen, this was done, in part,

4   less than twenty-four hours after this robbery, but continued

5   on.  Why is their focus on Special Agent Miceli?  Thomas

6   Nuzio?  Keith Bryan?  Why is their focus on them when the

7   stores that were impacted and, most importantly, the people

8   that were impacted.

9          I'm struck by something that Mr. Farrell talked

10  about during the course of his closing, even going back to his

11  opening.  He quoted and referenced the movie, My Cousin Vinny.

12  Ladies and gentlemen, Anjan Saha quit his job the next day and

13  moved out of New York, not because of a movie, but because of

14  real life at the hands of the defendant.

15         Sharon Sanchez couldn't remember 800 or a thousand

16  dollars, not because of a movie, but because of the actions of

17  the defendant with a gun in her face.

18         Gaspar Penna was told:  Give me the money, quote, or

19  I'll fucking shoot you.  Those are the defendant's words.

20         Ladies and gentlemen, Alejandro Deleon testified

21  here.  He testified using a notepad.  He has to write numbers

22  on that notepad now.  He explained that he is 50 years old,

23  that he worked at Duane Reade for 12 years, and that the man

24  who shot him was 23.  Elgin Brack was one month from being

25  23 years old.  And for Alejandro Deleon there are no movie

SAM      OCR      RMR      CRR      RPR

Charge by Order of the Court                    1090

1  credits, this isn't a television program, and there is not

2  another role.

3          Hold defendant Elgin Brack accountable.  Find him

4  guilty.

5          Thank you.

6          THE COURT:  Thank you, Mr. Selden.

7          Ladies and gentlemen, that concludes the arguments

8  that have been made by counsel.  The next of the building

9  blocks is the Court's instructions to you on the law, and I

10  will ask my deputy clerk and law clerk, Anthony LoMonaco, to

11  read my final instructions to you on the law.

12          And, ladies and gentlemen, you will also receive a

13  copy of these instructions to bring into the jury room with

14  you.

15                    <u>CHARGE OF THE COURT</u>

16          THE LAW CLERK:  Members of the jury, now that the

17  evidence in this case has been presented and the attorneys for

18  the Government and the Defendant have concluded their closing

19  arguments, it is my responsibility to instruct you as to the

20  law that governs this case.  Before I do so, I want to thank

21  you for your patience and your cooperation.

22          My instructions will be in three parts:

23          First:  I will instruct you regarding the general

24  rules that define and govern the duties of a jury in a

25  criminal case;

Charge by Order of the Court                    1091

1          Second:  I will instruct you as to the legal

2    elements of the crimes charged in the Indictment; that is, the

3    specific elements that the Government must prove beyond a

4    reasonable doubt to warrant a finding of guilt; and

5          Third:  I will give you some general rules regarding

6    your deliberations.

7          By way of a refresher -- you have now heard all of

8    the evidence in the case, as well as the final arguments of

9    the lawyers for the parties.

10          It is your duty to find the facts from all the

11    evidence in this case.  You are the sole judges of the facts,

12    and it is, therefore, for you and you alone to pass upon the

13    weight of the evidence; to resolve such conflicts as may have

14    appeared in the evidence; and to draw such inferences as you

15    deem to be reasonable and warranted from the evidence or lack

16    of evidence in this case.

17          With respect to any question concerning the facts,

18    it is your recollection of the evidence that controls.

19          To the facts as you find them, you must apply the

20    law in accordance with my instructions.  While the lawyers may

21    have commented on some of these legal rules, you must be

22    guided only by what I instruct you about them.  You must

23    follow all the rules as I explain them to you.  You may not

24    follow some and ignore others; even if you disagree with or do

25    not understand the reasons for some of the rules, you are

Charge by Order of the Court 1092

1  bound to follow them.

2       I express no view whether the defendant is guilty or

3  not guilty or as to any fact.  You should not draw any

4  inference or reach any conclusion as to whether the defendant

5  is guilty or not guilty from anything I may have said or done.

6  You will decide the case solely on the facts you find and the

7  law as I give it to you.

8       In reaching your verdict, you are to perform the

9  duty of finding the facts without bias or prejudice as to any

10  party.  You must remember that all parties stand equal before

11  a jury in the courts of the United States.  The fact that the

12  Government is a party and the prosecution is brought in the

13  name of the United States does not entitle the Government or

14  its witnesses to any greater consideration than that accorded

15  to any defendant.  By the same token, you must give it no less

16  consideration.  Your verdict must be base solely on the

17  evidence or lack of evidence.

18       For the same reasons, the personalities and the

19  conduct of counsel are not in any way in issue.  If you formed

20  reactions of any kind to any of the lawyers in the case,

21  favorable or unfavorable, whether you approved or disapproved

22  of their behavior, those reactions must not enter into your

23  deliberations.

24       It is the duty of the attorneys to offer evidence

25  and press objections on behalf of their side.  It is my

SAM     OCR     RMR     CRR     RPR

Charge by Order of the Court                    1093

1    function to cut off counsel from an improper line of argument

2    or questioning, and to strike answers when I think it is

3    necessary.  But you should draw no inference from that.

4         The Indictment that was filed against the defendant

5    is the means by which the Government gives him notice of the

6    charges against him and brings him before the Court.  The

7    Indictment is an accusation and nothing more.  The Indictment

8    is not evidence and you are to give it no weight in arriving

9    at your verdict.

10        The defendant, in response to the Indictment,

11   pleaded "not guilty" to each charge of the Indictment.  The

12   defendant is presumed to be innocent unless and until his

13   guilt has been proven beyond a reasonable doubt, and that

14   presumption alone, unless and until overcome, is sufficient to

15   acquit him.

16        The Government has the burden, that is the

17   obligation, of proving guilt beyond a reasonable doubt.  This

18   burden never shifts to the defendant.  The defendant does not

19   have to prove his innocence; he need not submit any evidence

20   at all.

21        Since, in order to convict the defendant of a given

22   charge, the Government is required to prove that charge beyond

23   a reasonable doubt, the question then is:  What is reasonable

24   doubt?

25        The words almost define themselves.  It is the doubt

Charge by Order of the Court                    1094

1 based upon reason.  It is a doubt that a reasonable person has

2 after carefully weighing all of the evidence or lack of

3 evidence.  It is a doubt that would cause a reasonable person

4 to hesitate to act in a matter of importance in his or her

5 personal life.  Proof of a reasonable doubt must, therefore,

6 be proof of a convincing character that a reasonable person

7 would not hesitate to rely upon in making an important

8 decision.

9          A reasonable doubt is not a caprice or whim.  It is

10 not speculation or suspicion.  It is not an excuse to avoid

11 the performance of an unpleasant duty.  The law does not

12 require that the Government prove guilt beyond all possible

13 doubt; proof beyond a reasonable doubt is sufficient to

14 convict.  But bear in mind that a criminal case is different

15 from a civil case.

16          If, after fair and impartial consideration of the

17 evidence or lack of evidence, you have a reasonable doubt as

18 to the defendant's guilt with respect to a particular charge

19 against him, you must find the defendant not guilty of that

20 charge.  On the other hand, if after fair and impartial

21 consideration of all the evidence you are satisfied beyond a

22 reasonable doubt of the defendant's guilt with respect to a

23 particular charge against him, you should find the defendant

24 guilty of that charge.

25          I wish to expand now on the instructions I gave you

Charge by Order of the Court                    1095

1   at the beginning of the trial as to what is evidence and how

2   you should consider it.   Evidence comes in several forms,

3   including:

4           A.   Sworn testimony of witnesses, both on direct and

5   cross-examination, and regardless of who called the witness;

6           B.   Exhibits that have been received in evidence by

7   the Court; and

8           C.   Facts to which all of the lawyers have agreed or

9   stipulated.

10          The parties have stipulated to certain facts in this

11  case.   Such a stipulation is an agreement among the parties

12  that a certain fact is true.   You must consider such

13  stipulated facts as true.

14          As I said at the beginning of the trial, certain

15  things are not evidence and are to be disregarded by you when

16  deciding what the facts are.   They are as follows:

17          First, arguments or statements by lawyers are not

18  evidence.

19          Questions put to the witness are not evidence.   It

20  is the question combined with the answer that is evidence.

21          In addition to the lawyers' questions, I

22  occasionally may have asked questions for purposes of

23  clarification.   Please do not assume that the questions are

24  evidence or that I hold any opinion on the matters to which

25  any questions may have related.   I do not.   Those questions

Charge by Order of the Court                    1096

1    were asked solely in an effort or attempt to make something

2    clearer.

3              Similarly, objections to questions or to offered

4    exhibits are not evidence.  In this regard, attorneys have a

5    duty to their client to object when they believe evidence

6    should not be received.  You should not be influenced by the

7    objection or by the Court's ruling on it.  If the objection

8    was sustained, ignore the question.  If the question was

9    overruled, treat the answer like any other answer.

10             Of course, testimony that has been stricken or that

11   you have been instructed to disregard is not evidence and must

12   be disregarded.

13             Equally obvious, anything you may have seen or heard

14   outside of the courtroom is not evidence.

15             Finally, it would be improper for you to consider,

16   in reaching your decision as to whether the Government

17   sustained its burden of proof, any personal feelings you may

18   have about the defendant's race, religion, national origin,

19   ethnic background, sex, gender orientation or age.  All

20   persons are entitled to the presumption of innocence and the

21   Government has the burden of proof.  In addition, it would be

22   equally improper for you to allow any feelings you might have

23   about the Government or the United States or the nature of the

24   crime charged to interfere with your decision-making process.

25             To repeat, your verdict must be based exclusively

Charge by Order of the Court                    1097

1  upon the evidence or the lack of evidence in the case.

2          I told you that evidence comes in various forms,

3  such as the sworn testimony of witnesses, exhibits and

4  stipulations.  There are, in addition, two different kinds of

5  evidence; direct and circumstantial.

6          Direct evidence is the communication of a fact by a

7  witness who testified to the knowledge of that fact as having

8  been obtained through one of the five senses.  For example, a

9  witness who testified to knowledge of a fact because he saw

10  it, heard it, smelled it, tasted it or touched it is giving

11  evidence which is direct.  What remains is your responsibility

12  to pass upon the credibility of the testimony that witness

13  gave.

14          Circumstantial evidence is evidence which tends to

15  prove a fact in issue by proof of other facts from which the

16  fact in issue may be inferred.  The word "infer" or the

17  expression "to draw an inference" means to find that a fact

18  exists from proof of another fact.  For example, if a fact in

19  issue is whether it is raining at the moment, none of us can

20  testify directly to that fact sitting as we are in what is

21  essentially a windowless courtroom.  Assume, however, that as

22  we are sitting here, a person walks into the courtroom wearing

23  a raincoat that is dripping wet and carrying an umbrella that

24  is dripping water.  We may infer from those facts that it is

25  raining outside.  In other words, the fact of rain is an

Charge by Order of the Court                1098

1  inference that could be drawn from the wet raincoat and the

2  dripping umbrella.

3          However, from the direct evidence of your

4  observation of a person entering the courtroom wearing a wet

5  raincoat and carrying a wet umbrella alone, you could not

6  infer exactly when the rain had started or for how long it had

7  rained.

8          An inference is to be drawn only if it is logical

9  and reasonable to do so.  In deciding whether to draw an

10 inference, you must look at and consider all the facts in the

11 light of reason, common sense and experience.  Whether a given

12 inference is or is not to be drawn is entirely a matter for

13 you, the jury, to decide.  Please bear in mind, however, that

14 an inference is not to be drawn by guesswork or speculation.

15         I remind you once again that you may not convict the

16 defendant unless you are satisfied of his guilt beyond a

17 reasonable doubt, whether based on direct evidence,

18 circumstantial evidence, or the logical inferences to be drawn

19 from such evidence.

20         Circumstantial evidence does not necessarily prove

21 less than direct evidence, nor does it necessarily prove more.

22 You are to consider all the evidence in the case, direct and

23 circumstantial, in determining what the facts are and in

24 arriving at your verdict.

25         I will now instruct you further about inferences.

SAM      OCR      RMR      CRR      RPR

Charge by Order of the Court                          1099

1      During the trial you may have heard the attorneys

2  use the term "inference," and in their arguments they may have

3  asked you to infer, on the basis of your reason, experience

4  and common sense, from one or more proven facts the existence

5  of some other facts.

6          An inference is not a suspicion or a guess.  It is a

7  logical conclusion that a disputed fact exists that we reach

8  in light of another fact which has been shown to exist.  There

9  are times when different inferences may be drawn from facts,

10  whether proved by direct or circumstantial evidence.  It is

11  for you, and you alone, to decide what inferences you will

12  draw.

13          In this case, I have permitted witnesses to express

14  opinions about certain matters that are in issue.  A witness

15  may be permitted to testify to an opinion on those matters

16  about which he or she has special knowledge, skill, experience

17  and training.  Such testimony is presented to you on the

18  theory that someone who is experienced and knowledgeable in

19  the field can assist you in understanding the evidence or in

20  reaching an independent decision on the facts.

21          In weighing this opinion testimony, you may consider

22  the witness's qualifications, opinions, and reasons for

23  testifying, as well as all of the other considerations that

24  ordinarily apply when you are deciding whether or not to

25  believe a witness's testimony.  You may give the opinion

Charge by Order of the Court 1100

1   whatever weight, if any, you find it deserves in light of all

2   the evidence in this case.  You should not, however, accept

3   opinion testimony merely because I allowed these witnesses to

4   testify concerning that opinion.  Nor should you substitute it

5   for your own reason, judgment and common sense.  The

6   determination of the facts in this case rests solely with you.

7           During the trial, you heard testimony from active or

8   retired law enforcement employees.  The testimony of these

9   witnesses should be evaluated in the same manner as the

10  testimony of other witnesses.  The mere fact that a witness is

11  employed by law enforcement does not mean that his or her

12  testimony is deserving of more or less consideration or

13  greater or lesser weight than that of an ordinary witness.  It

14  is for you to decide, after weighing all the evidence and in

15  light of the instructions I have given you about the factors

16  relevant to determining the credibility of any witness,

17  whether to accept the testimony of a law enforcement witness,

18  and what weight, if any, that testimony deserves.

19          At the same time, it is quite legitimate for the

20  defense counsel to try to attack the credibility of a law

21  enforcement witness on the grounds that his or her testimony

22  may be colored by a personal or professional interest in the

23  outcome of the case.

24          You should consider the testimony of a law

25  enforcement employee just as you would any other evidence in

Charge by Order of the Court                1101

1   the case and evaluate his or her credibility just as you would

2   that of any other witness.  After reviewing all the evidence,

3   you will decide whether to accept the testimony of a law

4   enforcement employee, and what weight, if any, that testimony

5   deserves.

6           The defendant in a criminal case never has any duty

7   to testify or come forward with any evidence.  This is

8   because, as I have told you, the burden of proof beyond a

9   reasonable doubt remains on the Government at all times, and

10  the defendant is presumed innocent.  In this case, the

11  defendant did testify and he was subject to cross-examination

12  like any other witness.  You should examine and evaluate the

13  testimony just as you would the testimony of any other

14  witness.

15          During the course of trial, you heard testimony that

16  attorneys interviewed witnesses when preparing for and during

17  the trial.  You must not draw any unfavorable inference from

18  that fact.

19          On the contrary, attorneys are obliged to prepare

20  their case as thoroughly as possible and, in the discharge of

21  that responsibility, properly interview witnesses in

22  preparation for the trial and from time to time as may be

23  required during the course of the trial.

24          The fact that one side or the other called more

25  witnesses or introduced more evidence does not mean that you

Charge by Order of the Court                    1102

1   should find the facts in favor of the side who called more

2   witnesses.  You must not permit the number of witnesses or

3   documents supplied or the amount of time taken in examining a

4   witness to overwhelm your judgment.  The weight of the

5   evidence is by no means determined by the number of witnesses

6   or the length of their testimony or the quantity of documents.

7   You must keep in mind that the burden of proof is always on

8   the Government and the defendant is not required to call any

9   witness or offer any evidence because the defendant is

10  presumed to be innocent.

11          By the same token, you do not have to accept the

12  testimony of any witness who has not been contradicted or

13  impeached, if you find the witness not to be credible.  You

14  also have to decide which witnesses to believe and which facts

15  are true.  To do this, you must look at all the evidence,

16  drawing upon your own common sense and personal experience.

17  But, again, you must keep in mind that the burden of proof is

18  always on the Government and the defendant is not required to

19  call any witnesses or offer any evidence because he is

20  presumed to be innocent.

21          In deciding what the facts are, you must decide

22  which testimony to believe and which testimony not to believe.

23  In making that decision, you should use the same reason you

24  would employ in making determinations important in your own

25  affairs that are based on information given to you by others.

Charge by Order of the Court                1103

1   There are a number of factors you may take into account in

2   determining whether the testimony of a witness is believable,

3   including the following:

4              1.   Did the witness impress you as honest?

5              2.   Did the witness have any particular reason not

6   to tell the truth?

7              3.   Did the witness have an interest in the outcome

8   of the case?

9              4.   Did the witness seem to have a good memory?

10             5.   Did the witness have the opportunity and ability

11  to observe accurately the things he testified about?

12             6.   Did the witness appear to understand the

13  questions clearly and answer them directly?

14             7.   Did the witness's testimony differ from the

15  testimony of other witnesses?

16             People sometimes forget things.  A contradiction may

17  be an innocent lapse of memory or it may be an intentional

18  falsehood.  Consider, therefore, whether the contradiction, if

19  there was one, has to do with an important fact or only a

20  small detail.

21             Different people observing an event may remember it

22  differently and, therefore, testify about it differently.

23  But, if any witness is shown to have willfully lied about any

24  material matter, you have the right to conclude that the

25  witness also lied about other matters.  You may either

Charge by Order of the Court                    1104

1  disregard all of that witness's testimony, or you may accept

2  whatever part of it you think deserves to be believed.

3

4                (Continued on the following page.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SAM      OCR      RMR      CRR      RPR

Charge by Order of the Court                    1105

1  (continuing)

2         THE LAW CLERK:  You may consider the factors I have

3  just discussed with you in deciding how much weight to give to

4  the testimony.

5         You have heard evidence that a witness made a

6  statement on an earlier occasion which counsel argues is

7  inconsistent with the witness's trial testimony.  Evidence of

8  what is arguably a prior inconsistent statement was placed

9  before you for the limited purpose of helping you to decide

10  whether to believe the trial testimony of the witness who

11  contradicted himself or herself.  If you find that the witness

12  made an earlier statement that conflicts with his or her trial

13  testimony, you may consider that fact in deciding how much of

14  his or her trial testimony, if any, to believe.

15         In making this determination, you may consider

16  whether the witness purposefully made a false statement or

17  whether it was an innocent mistake; whether the inconsistency

18  concerns an important fact, or whether it had to do with a

19  small detail; whether the witness had an explanation for the

20  inconsistency, and whether that explanation appealed to your

21  commonsense.

22         It is exclusively your duty, based upon all the

23  evidence and your own good judgment, to determine whether the

24  prior statement was inconsistent, and if so, how much, if any,

25  weight should be given to the inconsistent statement in

Charge by Order of the Court                    1106

1  determining whether to believe all, part, or none of the

2  witness's testimony.

3          The law does not require any party to call as

4  witnesses all persons who may have been present at any time or

5  place involved in the case or who may appear to have some

6  knowledge of the matter at issue at this trial.  Nor does the

7  law require any party to produce as exhibits all papers and

8  things mentioned during the course of the trial.  And, of

9  course, the defendant in a criminal case is not required to

10 call any witnesses or produce any evidence at all.

11         In this case, the defendant presented evidence on

12 his own behalf.  This evidence is to be considered by you in

13 the same way as other evidence presented in this case.  The

14 fact that the defendant presented evidence does not shift the

15 burden of proof to the defendant.  It remains with the

16 Government at all times.

17         During the trial you have heard argument by counsel

18 that the Government did not utilize specific investigative

19 techniques or exhaustively pursue every piece of information.

20 You may consider these facts in deciding whether the

21 Government has met its burden of proof, because, as I told

22 you, you should look at all of the evidence or lack of

23 evidence in deciding whether the Government has proven a

24 particular charge beyond a reasonable doubt.

25         However, you are also instructed that there is no

Charge by Order of the Court                    1107

1  legal requirement that the Government use any specific

2  investigative technique or pursue every investigative lead to

3  prove its case.  Law enforcement techniques are not your

4  concern.

5          Your concern is to determine whether or not, based

6  on all of the evidence presented in the case, the Government

7  has proven the defendant is guilty beyond a reasonable doubt.

8          You may not draw any inference, favorable or

9  unfavorable, toward the Government or the defendant on trial

10 from the fact that certain persons were not named as

11 defendants in the indictment or that certain persons were

12 names as co-conspirators but not indicted.  You should draw no

13 inference from the fact that any other person is not present

14 at this trial.  Your concern is solely the defendant on trial

15 before you.

16         That other individuals are not on trial before you

17 is not a matter of concern to you.  You should not speculate

18 as to the reasons these individuals are not on trial before

19 you.  The fact that these individuals are not on trial before

20 you should not control or influence your verdict with

21 reference to the defendants who are on trial.

22         Although proof of motive is not a necessary element

23 of any of the crimes with which the defendant is charged, in

24 determining whether the Government has proved the defendant

25 guilty beyond a reasonable doubt, you may consider evidence

1   of, or the lack of evidence of, motive.

2          Proof of motive does not establish guilt, nor does a

3   lack of proof of motive establish that a defendant is not

4   guilty.

5          If the guilt of a defendant is shown beyond a

6   reasonable doubt, it is immaterial what the motive for the

7   crime may be, or whether any motive be shown, but the presence

8   or absence of motive is a circumstance you may consider.

9          You have heard of testimony about evidence seized

10  from the defendant pursuant to search warrants during searches

11  of the defendant's cell phone or car in which he was a

12  passenger and of the backpack found in the car.  Evidence

13  obtained from these searches was properly admitted in this

14  case and may be consider by you.  Whether you approve or

15  disapprove of how the evidence was obtained should not enter

16  into your deliberations because I now instruct you that the

17  Government's use of this evidence is entirely lawful.

18         You must, therefore, regardless your personal

19  opinions, give this evidence full consideration, along with

20  all the other evidence in this case in determining whether the

21  Government has proved the defendant is guilty beyond a

22  reasonable doubt.

23         The Government has offered evidence in the form of

24  video recordings.  It is for the jury to decide what and who

25  is depicted on the video.  Whether you approve or disapprove

Charge by Order of the Court          1109

1   of the recording of this video, I instruct you that the

2   recordings were lawfully made.  You must, therefore,

3   regardless of any personal opinions, give this evidence the

4   weight you believe it deserves along with all the other

5   evidence in the case in determining whether the Government has

6   proved beyond a reasonable doubt the guilt of the defendant.

7          The Government has presented exhibits in the form of

8   charts, maps, and summaries.  I decided to admit these charts,

9   maps, and summaries in place of the underlying documents that

10  they represent in order to save time and avoid unnecessary

11  inconvenience.  You should consider these charts, maps, and

12  summaries as you would any other evidence.

13         I will now turn to the second part of this charge --

14  and will, as I said indicated at the outset, instruct you as

15  to the specific elements of crimes charged that the defendant

16  must prove beyond a reasonable doubt to warrant findings of

17  guilt in this case.

18         The defendant is formally charged in an indictment.

19  As I instructed you at the beginning of this case, an

20  indictment is a charge or accusation.  The indictment in this

21  case consists of nine counts.

22         You must, as a matter of law, consider each count of

23  the indictment separately and you must return a separate

24  verdict for each count on which he is charged.  To repeat, an

25  indictment is merely an accusation in writing.  It is not

Charge by Order of the Court                    1110

1    evidence of guilt.  It is entitled to no weight in your

2    determination of the facts.  The defendant has pleaded not

3    guilty, thereby placing in issue each allegation in the

4    indictment.

5            The indictment charges "On or about," certain dates.

6    It does not matter if the indictment charges that a specific

7    act occurred on or about a certain date and the evidence

8    indicates that, in fact, it was on another date.  The law only

9    requires substantial similarity between dates alleged in the

10   indictment and the date established by testimony or exhibits.

11           One or more of the counts of the indictment may

12   accuse the defendant of violating the same statute in more

13   than one way.  In other words, the indictment may allege that

14   the statute in question was violated by various acts which are

15   in the indictment joined by the conjunctive word "and," while

16   the statute and the elements of the offense are stated in the

17   disjunctive, using the word "or."  in these instances, it is

18   sufficient for a finding of guilt if the evidence established

19   beyond a reasonable doubt the violation of the statute by any

20   one of the acts charged.

21           During these instructions on the elements of the

22   crimes charged, you will hear me use the words "knowingly" and

23   "intentionally" from time to time.  These terms refer to the

24   state of a person's mind.

25           A person acts "knowingly" if he acts intentionally

Charge by Order of the Court                 1111

1   and voluntarily, and not because of ignorance, mistake,

2   accident, or carelessness.  Whether the defendant acted

3   knowingly may be proven by his conduct and by all of the facts

4   and circumstances surrounding the case.

5          A person acts "intentionally" if he acts

6   deliberately and purposefully.  That is, the acts must have

7   been the product of his conscious objective rather than the

8   product of a mistake or accident.  The person need not be

9   aware of the specific law or rule that his conduct may be

10  violating, but he must act with the specific intent to do

11  whatever it is the law forbids.

12         These issues of knowledge and intent require you to

13  make a determination about the defendant's state of mind,

14  something that can rarely be proved directly.  A wise and

15  careful consideration of all the circumstances before you may,

16  however, permit you to make a determination as to the

17  defendant's state of mind.  Indeed, in your everyday affairs,

18  you are frequently called upon to determine a person's state

19  of mind from his or her words and actions in given

20  circumstances.  You are asked to do the same here.

21         I will now discuss the applicable law before turning

22  to the counts charged in the indictment.

23         Count One of the indictment charges the defendant

24  with conspiracy to commit Hobbs Act robbery.  I will first

25  explain the crime of conspiracy generally before turning to

1   the alleged objects of the charged conspiracy that is, of

2   Hobbs Act robbery.

3         A conspiracy is an agreement by two or more persons

4   to accomplish some unlawful purpose.  It is sometimes referred

5   to as a criminal partnership.  The crime of conspiracy is an

6   offense separate from the crime the alleged conspirators

7   intended to commit.  If a conspiracy exists, even if it fails

8   to achieve its purpose, it is still punishable as a crime.

9         In order to prove the crime of conspiracy, the

10  Government must prove two elements beyond a reasonable doubt:

11        First, that two or more persons entered into the

12  charged conspiracy; and second, that the defendant knowingly

13  and intentionally became a member of the conspiracy.

14        The first element that the Government must prove

15  beyond a reasonable doubt to establish the offense of

16  conspiracy is that two or more persons entered the unlawful

17  agreement charged in the indictment.

18        In order for the Government to satisfy this element,

19  you need not find that the alleged members of the conspiracy

20  met together and entered into any express or formal agreement.

21  Similarly, you need not find that the alleged conspirators

22  stated, in words or writing, what the scheme was, its object

23  or purpose, or every precise detail of the scheme or the means

24  by which its object or purpose was to be accomplished.  What

25  the Government must prove is that there was a mutual

Charge by Order of the Court                    1113

1   understanding, either spoken or unspoken, between two or more

2   people to cooperate with each other to accomplish an unlawful

3   act.

4           You may, of course, find that the existence of an

5   agreement to disobey or disregard the law has been established

6   by direct proof.  However, since conspiracy is, by its very

7   nature, characterized by secrecy, you may also infer its

8   existence from the circumstances of this case and the conduct

9   of the parties involved.

10          In a very real sense, then, in the context of

11  conspiracy cases, actions often speak louder than words.  In

12  this regard, you may, in determining whether an agreement

13  existed here, consider the actions and statements of all of

14  those you find to be participants as proof that a common

15  design existed on the part of the persons charged to act

16  together to accomplish an unlawful act.

17          The second element that the Government must prove

18  beyond a reasonable doubt to establish the offense of

19  conspiracy is that the defendant knowingly and intentionally

20  became a member of the conspiracy.

21          If you are satisfied that the conspiracy charged in

22  the indictment existed, you must next ask yourselves who the

23  members of that conspiracy were.  In deciding whether the

24  defendant whom you are considering was, in fact, a member of

25  the conspiracy, you should consider whether the defendant

1   knowingly and intentionally joined the conspiracy.  Did he

2   participate in it with knowledge of its unlawful purpose and

3   with the specific intention furthering its business or

4   objection as an associate or worker?

5           In that regard, it has been said that in order for a

6   defendant to be deemed a participant in a conspiracy, he must

7   have had a stake in the venture or its outcome.  You are

8   instructed that, while proof of a financial interest in the

9   outcome of a scheme is not essential, if you find that the

10  defendant had such an interest, that is a factor that you may

11  properly consider in determining whether or not the defendant

12  was a member of the conspiracy charged in the indictment.

13          As I mentioned a moment ago, before the defendant

14  can be found to have been a conspirator, you must first find

15  that he knowingly joined in the unlawful agreement or plan.

16  The key question, therefore, is whether the defendant joined

17  the conspiracy with an awareness of at least some of the basic

18  aims and purposes of the unlawful agreement.

19          It is important for you to note that the defendant's

20  participation in the conspiracy must be established by

21  independent evidence of his own acts or statements, as well as

22  those of the other alleged co-conspirators, and the reasonable

23  inferences that may be drawn from them.

24          The defendant's knowledge is a matter of inference

25  from the facts proved.  In that connection, i instruct you

Charge by Order of the Court                    1115

1   that to become a member of the conspiracy, the defendant need

2   not have known the identities of each and every other member,

3   nor need he have been apprised of all of their activities.

4   Moreover, the defendant need not have been fully informed as

5   to all of the details, or the scope, of the conspiracy in

6   order to justify an inference of knowledge on his part.

7   Furthermore, the defendant need not have joined in all of the

8   conspiracy's unlawful objectives.

9           The extent of a defendant's participation has no

10  bearing on the issue of a defendant's guilt.  A conspirator's

11  liability is not measured by the extent or duration of his

12  participation.  Indeed, each member may perform separate and

13  distinct acts and may perform them at different times.  Some

14  conspirators play major roles, while others play minor parts

15  in the scheme.  An equal role is not what the law requires.

16  In fact, even a single act may be sufficient to draw the

17  defendant within the ambit of the conspiracy.

18          I want to caution you, however, that the defendant's

19  mere presence at the scene of the alleged crime does not, by

20  itself, make him a member of the conspiracy.  Similarly, mere

21  association with one or more members of the conspiracy does

22  not automatically make the defendant a member.  A person may

23  know, or be friendly with, a criminal, without being a

24  criminal himself.  Mere similarity of conduct or the fact that

25  they may have assembled together and discussed common aims and

Charge by Order of the Court                1116

1   interests does not necessarily establish membership in the

2   conspiracy.

3           I also want to caution you that mere knowledge or

4   acquiescence, without participation, in the unlawful plan is

5   not sufficient.  Moreover, the fact that the acts of a

6   defendant, without knowledge, merely happen to further the

7   purposes or objectives of the conspiracy, does not make the

8   defendant a member.  More is required under the law.  What is

9   necessary is that the defendant must have participated with

10  knowledge of at least some of the purposes or objectives of

11  the conspiracy and with the intention of aiding in the

12  accomplishment of those unlawful ends.

13          In sum, the defendant, with an understanding of the

14  unlawful character of the conspiracy, must have intentionally

15  engaged, advised or assisted in it for the purpose of

16  furthering the illegal undertaking.  He thereby becomes a

17  knowing and intentional participant in the unlawful agreement

18  -- that is to say, a conspirator.

19          The first count charges the defendant with

20  conspiring to commit Hobbs Act robbery.  The relevant statute

21  is 18 U.S.C. Section 1951(a), which, in pertinent part,

22  provides.

23          Whoever in any way or degree obstructs, delays, or

24  affects commerce or the movement of an article or commodity in

25  commerce, by robbery...or attempts or conspires so to do, or

Charge by Order of the Court                    1117

1   commits or threatens physical violence to any person or

2   property in furtherance of a plan or purpose to do anything in

3   violation of this section commits a crime.

4           Specifically, the defendant is charged with

5   conspiring to obstruct, delay, and affect commerce by the

6   robbery of united states currency from one or more employees

7   from one or more convenience stores in Queens, New York.

8           Count One reads as follows:

9           On or about November 26, 2018, within the Eastern

10  District of New York and elsewhere, the defendant Elgin Brack,

11  together with others, did knowingly and intentionally conspire

12  to obstruct, delay and affect commerce, and the movement of

13  articles and commodities in commerce, by the robbery of united

14  states currency from one or more employees of one or more

15  convenience stores in Queens, New York.

16          In order for you to determine whether the Government

17  has proven the charged conspiracy, i need to explain the

18  meaning of "robbery" under the Hobbs Act.  The Hobbs Act

19  defines "robbery" as:

20          The unlawful taking or obtaining of personal

21  property from the person or in the presence of another,

22  against his or her will, by means of actual or threatened

23  force, or violence, or fear of injury, immediate or future, to

24  his or her person or property in his or her custody or

25  possession, or the person or property of anyone in his or her

Charge by Order of the Court                    1118

1  company at the timing of the taking or obtaining.

2         The elements of Hobbs Act robbery are:  First, that

3     the defendant knowingly obtained or took the property of

4  one or more individuals or businesses.

5         Second, that the defendant took this property

6  against the victim's will, by actual or threatened force,

7  violence or fear of injury.

8         And third, that the objective of the robbery in some

9  way or degree would have affected interstate or foreign

10  commerce, or the movement of goods in interstate or foreign

11  commerce.  Even a slight affect on commerce suffices.

12         The term "property" includes money and other

13  tangible and intangible things of value that are capable of

14  being transferred from one person to another.

15         "Force" means violent force that is, force capable

16  of causing physical pain or injury to another person.  You

17  should give the words "violence" or "fear" their common and

18  ordinary meaning, and understand them as you normally would in

19  your everyday lives.  Fear of injury exists where a victim

20  experienced anxiety, concern or worry over expected personal

21  harm or business loss.

22         Interstate or foreign commerce simply means commerce

23  between any two or more states or between one state and the

24  District of Columbia, or commerce within on state that goes

25  through any place outside that state.  The effect on

1   interstate commerce can be minimal.  It does not need to be a

2   direct effect and does not need to be immediate.  Furthermore,

3   the defendant need not have intended or anticipated an effect

4   on interstate or foreign commerce.

5          If you decide that interstate commerce would

6   potentially or probably be affected if the defendant had

7   successfully and fully completed his actions, then the element

8   of affecting interstate commerce is satisfied.  You do not

9   have to find that interstate commerce was actually affected.

10  However, if the defendant has finished his actions, and done

11  all he intended to do, and you determine there has been no

12  effect on interstate commerce, then you cannot find the

13  defendant guilty.

14         I remind you again that this count does not allege

15  that a Hobbs Act robbery was actually committed and the

16  Government does not need to prove that the Hobbs Act robbery

17  was successful.  Rather, Count One charges the defendant with

18  conspiring to commit Hobbs Act robberies.

19         Count Two charges the defendant with attempting to

20  commit a Hobbs Act robbery of a Duane Reade store located at

21  60-02 Roosevelt Avenue in Queens, New York.

22         Count Two reads as follows:

23         On or about November 26, 2018, within the Eastern

24  District of New York, the defendant Elgin Brack, together with

25  others, did knowingly and intentionally attempt to obstruct,

1  delay and affect commerce, and the movement of articles and

2  commodities in commerce, by the robbery of united states

3  currency from one or more employees of a Duane Reade store

4  located at 60-02 Roosevelt Avenue in Queens, New York.

5        To prove the defendant attempted to commit a Hobbs

6  Act robbery, the Government must establish the following two

7  elements beyond a reasonable doubt:

8        First, the defendant intended to commit a Hobbs Act

9  robbery; and second, the defendant did some act that was a

10  substantial step in an effort to bring about or accomplish the

11  crime.

12        The first element the Government must prove beyond a

13  reasonable doubt is that the defendant intended to commit a

14  Hobbs Act robbery on or about November 26, 2018.  You should

15  apply my previous instruction as to the elements of a Hobbs

16  Act robbery.

17        The second element the Government must prove is that

18  the defendant took a "substantial step" toward his goal of

19  committing a Hobbs Act robbery.  Mere intention to commit a

20  specific crime does not amount to an attempt.  To convict the

21  defendant of an attempt, you must find beyond a reasonable

22  doubt that the defendant intended to commit the crime charged,

23  and that he took some action that was a substantial step

24  toward the commission of that crime.

25        In determining whether the defendant's actions

1   amounted to a substantial step toward the commission of the

2   crime, it is necessary to distinguish between mere preparation

3   on the one hand, and the actual doing of the criminal deed on

4   the other.  Mere preparation, which may consist of planning

5   the offense, or of devising, obtaining or arranging a means

6   for its commission, is not an attempt, although some

7   preparations may amount to an attempt.  The acts of a person

8   who intends to commit a crime will constitute an attempt when

9   the acts themselves clearly indicate an intent to commit the

10  crime, and the acts are a substantial step in the course of

11  conduct planned to culminate in the commission of the crime.

12          Counts Four, Six and Eight charge the defendant with

13  other Hobbs Act robberies.

14          Count Four charges the defendant with a Hobbs Act

15  robbery of a 7-Eleven store, located at 50-92 northern

16  boulevard in Queens, New York and reads as follows:

17          On or about November 26, 2018, within the Eastern

18  District of New York, the defendant Elgin Brack, together with

19  others, did knowingly and intentionally obstruct, delay and

20  affect commerce, and the movement of articles and commodities

21  in commerce, by the robbery of united states currency from one

22  or more employees of a 7-Eleven store located at 50-92

23  northern boulevard in Queens, New York.

24          Count Six charges the defendant with a Hobbs Act

25  robbery of a rite aid store located 33- 01 30th Avenue in

Charge by Order of the Court                    1122

1    Queens, New York and reads as follows:

2              On or about November 26, 2018, within the Eastern

3    District of New York, the defendant Elgin Brack, together with

4    others, did knowingly and intentionally obstruct, delay and

5    affect commerce, and the movement of articles and commodities

6    in commerce, by the robbery of united states currency from one

7    or more employees of a rite aid store located at 33-01 30th

8    Avenue in Queens, New York.

9              Count Eight charges the defendant with a Hobbs Act

10   robbery of a rite aid store located at 115-10 Merrick

11   Boulevard in Queens, New York and reads as follows:

12             On or about November 26, 2018, within the Eastern

13   District of New York, the defendant Elgin Brack, together with

14   others, did knowingly and intentionally obstruct, delay and

15   affect commerce, and the movement of articles and commodities

16   in commerce, by the robbery of United States currency from one

17   or more employees of a Rite Aid store located at 115-10

18   Merrick Boulevard in Queens, New York.

19             I have already instructed you on the elements of

20   Hobbs Act robbery and on the definitions of property, force,

21   violence and fear.  I have likewise instructed you on the

22   meaning of interstate or foreign commerce.  You should apply

23   those instructions here.

24             In Counts Four, Six and Eight, the defendant is also

25   charged under Section 2 of Title 18 of the United States code.

Charge by Order of the Court                1123

1   That statute provides that:

2          A, whoever commits an offense...or aids, abets,

3   counsels, commands, induces or procures its commission, is

4   punishable as a principal.

5          B, whoever willfully causes an act to be done, which

6   if directly performed by him or another would be an offense

7   against the United States, is punishable as a principal.

8          As a result, under 18 U.S.C. Section 2, there are

9   two additional ways that the Government may establish the

10  defendant's guilt on Counts Four, Six and Eight.

11         Under this statute, it is not necessary for the

12  Government to show that the defendant himself was a principal

13  of the crime, or someone who physically committed the charged

14  crime in order for you to find him guilty.  This is because,

15  under the law, a person who aids or abets another to commit an

16  offense or willfully causes another to commit a crime is just

17  as guilty of that crime as if he committed himself.  That is,

18  as though he were a principal of the crime, as referenced in

19  the statute.

20         Accordingly, you may find the defendant guilty of

21  the Hobbs Act robberies charged in Counts Four, Six and Eight

22  if you find beyond a reasonable doubt that the Government has

23  proven that another person or persons actually physically

24  committed the robbery, and that the defendant aided or abetted

25  that person or persons in the commission of the robbery or

Charge by Order of the Court                    1124

1  caused them to commit the robbery.

2          With respect to aiding and abetting, in order to aid

3  or abet another to commit a crime, it is necessary that the

4  defendant knowingly associate himself in some way with the

5  crime, and that he participate in the crime by doing some act

6  to help make the crime succeed.

7          To establish that the defendant knowingly associated

8  himself with the crime, the Government must establish that the

9  defendant knew and intended that the crimes charged in Counts

10  Four, Six and Eight would be committed.

11          To establish that the defendant participated in the

12  commission of the crime, the Government must prove that the

13  defendant engaged in some affirmative conduct or overt act for

14  the specific purpose of bringing about that crime.

15          The mere presence of a defendant where a crime is

16  being committed, even coupled with knowledge by the defendant

17  that a crime is being committed, or merely associating with

18  others who were committing a crime is not sufficient to

19  establish aiding and abetting.  One who has no knowledge that

20  a crime is being committed or is about to be committed but

21  inadvertently does something that aids in the commission of

22  that crime is not an aider and abettor.  An aider and abettor

23  must know that the crime is being committed and act in a way

24  that is intended to bring about the success of the criminal

25  venture.

Charge by Order of the Court                    1125

1        To determine whether a defendant aided or abetted

2   the commission of the crime with which he is charged, ask

3   yourself these questions:

4        Did he participate in the crime charged as something

5   he wished to bring about?

6        Did he knowingly associate himself with the criminal

7   venture?

8        Did he seek by his actions to make the criminal

9   venture succeed?

10       If he did, then the defendant is an aider and

11  abettor, and therefore guilty of the offense.  If, on the

12  other hand, your answer to any one of.

13       These questions is "no," then the defendant is not

14  an aider and abettor, and you must find him not guilty.

15       With respect to willfully causing a crime to be

16  committed, the phrase "willfully caused" does not mean that

17  the defendant himself need have physically committed the crime

18  or supervised or participated in the actual criminal conduct

19  charged in the indictment.

20       The meaning of the term "willfully caused" can be

21  found in the answers to the following questions:

22       Did the defendant know that a Hobbs Act robbery was

23  going to occur?  That is, did he know that a victim's personal

24  property was going to be obtained against that victim's will,

25  by use of actual or threatened force, violence, or fear of

1   injury and intend for that crime to occur?

2          Did the defendant intentionally cause another person

3   to obtain a victim's personal property against that victim's

4   will by use of actual or threatened force, violence, or fear

5   of injury?

6          If you are persuaded beyond a reasonable doubt that

7   the answer to both of these questions is "yes," then the

8   defendant is guilty of the crime charged just as if he himself

9   had actually committed it and you should find the defendant

10  committed Hobbs Act robbery with respect to the relevant

11  count.

12         Count Three charges the defendant with using and

13  carrying a firearm during and in relation to, and possessing a

14  firearm in furtherance of a crime of violence, specifically

15  the attempted Hobbs Act robbery charged in Count Two.  Count

16  Three reads as follows:

17         On or about November 26, 2018, within the Eastern

18  District of New York, the defendant Elgin Brack, together with

19  others, did knowingly and intentionally use and carry one or

20  more firearms during and in relation to a crime of violence,

21  to wit:  The crime charged in Count Two, and did knowingly and

22  intentionally possess such firearm in furtherance of such

23  crime of violence, one or more of which firearms were

24  brandished and discharged.

25         The relevant statute on this subject is Title 18,

Charge by Order of the Court                    1127

1    United States Code Section 924(c), which provides:

2            Any person who, during and in relation to any crime

3    of violence or drug trafficking crime … for which the person

4    may be prosecuted in a court of the United States, uses or

5    carries a firearm, or who, in furtherance of any such crime,

6    possesses a firearm, shall be guilty of a crime.

7            If upon all of the evidence you find that the

8    Government has failed to prove Count Two beyond a reasonable

9    doubt, then you will not consider Count Two.  Count Three is

10   to be considered only if you first find the defendant guilty

11   under Count Two as charged.

12           The Government must prove each of the following

13   elements beyond a reasonable doubt to sustain its burden of

14   proving the defendant guilty of the crime in Count Three:

15           First, that the defendant committed or attempted to

16   commit a crime of violence for which he might be prosecuted in

17   a court of United States.

18           Second, that the defendant knowingly and

19   intentionally used or carried a firearm during and in relation

20   to, or possessed a firearm in furtherance of, the commission

21   or attempted commission of the specific crime charged in Count

22   Two.

23           The first element the Government must prove beyond a

24   reasonable doubt is that the defendant committed a crime of

25   violence for which he might be prosecuted in a court of the

Charge by Order of the Court                1128

1   United States.

2        The defendant is charged in Count Two of the

3   indictment with committing the crime of attempted Hobbs Act

4   robbery.  I instruct you that attempted Hobbs Act robbery is a

5   crime of violence.  However, it is for you to determine

6   whether the Government has proven beyond a reasonable doubt

7   that the defendant committed the crime as charged.

8        The second element the Government must prove beyond

9   a reasonable doubt is that the defendant knowingly used or

10  carried a firearm during and in relation to, or that the

11  defendant knowingly possessed a firearm in furtherance of, the

12  commission of the crime charged in Count Two.

13       A firearm is any weapon that will or is designed to

14  or may be readily converted to expel a projectile by the

15  action of an explosive.

16       In order to prove that the defendant carried the

17  firearm, the Government must prove beyond a reasonable doubt

18  that the defendant had the weapon within his control in such a

19  way that it furthered the commission of the crime of violence

20  or was an integral part of the commission of the crime.  The

21  defendant did not necessarily have to hold the firearm

22  physically, that is, have actual possession of it on his

23  person.

24       In order to prove that the defendant used the

25  firearm, the Government must prove beyond a reasonable doubt

Charge by Order of the Court                    1129

1   an active employment of the firearm by the defendant during

2   and in relation to the commission of the crime of violence.

3   This does not mean that the defendant must actually fire or

4   attempt to fire the weapon, although those would obviously

5   constitute use of the weapon.  Brandishing, displaying, or

6   even referring to the weapon so that others present knew that

7   the defendant had the firearm available if needed all

8   constitute use of the firearm.  However, the mere possession

9   of a firearm at or near the site of the crime without active

10  employment as I just described it is not sufficient to

11  constitute a use of the firearm.  To prove that the defendant

12  possessed the firearm in furtherance of the crime, the

13  Government must prove that the defendant had possession of the

14  firearm and such possession was in furtherance of that crime.

15           (Continued on next page.)

16

17

18

19

20

21

22

23

24

25

Charge by Order of the Court                    1130

1      THE LAW CLERK:  (Continuing)  Possession means that

2   defendant, that the defendant either had physical possession

3   of the firearm on his person or that he had dominion and

4   control over the place where the firearm is located and had

5   the power and intention to exercise control over the firearm.

6          To possess a firearm in furtherance of the crime

7   means that the firearm helped forward, advance or promote the

8   commission of a crime.  The mere possession of the firearm at

9   the scene of the crime is not sufficient under this

10  definition.  The firearm must have played some part in

11  furthering the crime in order for this element to be

12  satisfied.

13         Finally, the government must also prove beyond a

14  reasonable doubt that the defendant acted knowingly.  This

15  means that he carried the firearm purposefully and voluntarily

16  and not by accident or mistake.  It also means that he knew

17  the weapon was a firearm as we commonly use the word.

18  However, the government is not required to prove that the

19  defendant knew that he was breaking the law.

20         If you find the defendant guilty of using or

21  carrying a firearm in furtherance of Count Two, then you must

22  decide whether the government has proven beyond a reasonable

23  doubt that the defendant brandished or discharged the firearm.

24         To brandish a firearm means to display all or part

25  of the firearm or otherwise make the presence of the firearm

Charge by Order of the Court                    1131

1   known to another person in order to intimidate that person

2   regardless of whether the firearm is directly visible to that

3   person.  Discharge simply means that the firearm was fired.

4           There will be separate spaces on the verdict sheet

5   for you to indicate on your findings as to whether the

6   defendant brandished or discharged a firearm or both.

7           Counts Five, Seven and Nine charge the defendant

8   with using one or more firearms during and in relation to, and

9   possessing a firearm in furtherance of, a crime of violence,

10  specifically, and respectively, the Hobbs Act robberies

11  charged in Counts Four, Six and Eight.

12          Count Five charges the defendant with using one or

13  more firearms during the Hobbs Act robbery of the 7-Eleven

14  store located at 50-92 Northern Boulevard in Queens, New York

15  and reads as follows.

16          On or about November 26, 2018, within the Eastern

17  District of New York and elsewhere, the defendant Elgin Brack,

18  together with others, did knowingly and intentionally use and

19  carry one or more firearms during and in relation to a crime

20  of violence, to wit, the crime charged in Count Four, and did

21  knowingly and intentionally possess such firearms in

22  furtherance of said crime of violence, one or more of which

23  firearms were brandished.

24          Count Seven charges the defendant with using one or

25  more firearms during the Hobbs Act robbery of the Rite Aid

1  store located 33-01 30th Avenue in Queens, New York, and reads

2  as follows.

3          On or about November 26, 2018, within the Eastern

4  District of New York and elsewhere, the defendant Elgin Brack,

5  together with others, did knowingly and intentionally use and

6  carry one or more firearms during and in relation to a crime

7  of violence, to wit, the crime charged in Count Six and did

8  knowingly and intentionally possess such firearms in

9  furtherance of said crime of violence, one or more of which

10  firearms were brandished.

11          Count Nine charges the defendant with using one or

12  more firearms during the Hobbs Act robbery of the Rite Aid

13  store located at 155-10 Merrick Boulevard in Queens, New York

14  and reads as follows.

15          On or about November 26, 2018, within the Eastern

16  District of New York and elsewhere, the defendant Elgin Brack,

17  together with others, did knowingly and intentionally use and

18  carry one or more firearms during and in relation to a crime

19  of violence, to wit, the crime charged in Count Eight, and did

20  knowingly and intentionally possess such firearms in

21  furtherance of said crimes of violence, one more of which

22  firearms were brandished.

23          I have already instructed you on the elements of

24  using, carrying or possessing a firearm during and in

25  furtherance of a crime of violence.  You should apply those

Charge by Order of the Court                    1133

1   instructions here.

2          I have also already instructed you on the

3   definitions of a firearm, carried and used in connection with

4   the possessing, brandishing and discharging a firearm during a

5   crime of violence count.  I have likewise instructed you on

6   the meaning of knowing and intentionally.  You should apply

7   those instructions here.

8          Should you find that the government has satisfied

9   the first two elements of Counts Five, Seven and Nine, you

10  must determine whether the firearm or firearms in question

11  were brandished during the commission of that crime.  I have

12  already instructed you on the definition of brandished and you

13  should apply those instructions here.  On the verdict sheet,

14  you will be simply asked to indicate whether the government's

15  proof has established beyond a reasonable doubt that one or

16  more firearms were possessed, brandished or both, during the

17  commission of one or more of the charged crimes in

18  Counts Five, Seven and Nine.

19         As with the elements of the offenses I have already

20  described for you, your decision on these questions should be

21  unanimous and you should apply the beyond a reasonable doubt

22  standard.

23         With regard to the crimes charged in Counts Three,

24  Five, Seven and Nine, the defendant is charged as both a

25  principal, someone who has committed the crime himself, and as

1  someone who either aided and abetted another in the commission

2  of the crime or caused another to commit the crime.

3         I have already instructed you on that -- I have

4  already instructed you that, under the law, individuals who

5  aid and abet a crime or cause a crime to be committed are

6  responsible for that crime as a principal.

7         You should apply those instructions to Counts Three,

8  Five, Seven and Nine.  Even if you find that the defendant did

9  not himself use or carry a firearm in furtherance of the

10 underlying crimes of violence in these counts, you may still

11 find him guilty, if you find that he aided or abetted another

12 person in using or carrying a firearm curing the underlying

13 crimes of violence, Hobbs Act robbery, or caused another

14 person to do so.

15        You are about to go into the jury room, members of

16 the jury, to begin your deliberations.  That brings us to the

17 third and final part of my charge which provides some general

18 rules regarding your deliberations.

19        In order that your deliberations may proceed in an

20 orderly fashion, first you should have a foreperson.

21 Traditionally Juror Number One acts as a foreperson.  Of

22 course, his or her voice is entitled to no greater weight than

23 that of any other juror.

24        Keep in mind that nothing I have said in these

25 instructions is intended to suggest to you in any way what I

Charge by Order of the Court                    1135

1  think your verdict should be.  That is entirely for you to

2  decide.

3          By way of a reminder, I charge you once again that

4  it is your responsibility to judge the facts in this case from

5  the evidence presented during the trial and to apply the law,

6  as I have given it to you, to the facts as you find them from

7  the evidence.

8          When you retire, it is your duty to discuss the case

9  for the purpose of reaching agreement if you can do so.  Each

10 of you must decide the case for yourself but should only do so

11 after considering all the evidence, listening to the views of

12 your fellow jurors, and discussing it fully.  It is important

13 that you reach a verdict if you can do so conscientiously.

14 You should not hesitate to reconsider your opinions from time

15 to time and to change them if you are convinced that they are

16 wrong.  However, do not surrender an honest conviction as to

17 the weight and effect of the evidence simply to arrive at a

18 verdict.

19         Any verdict you reach must be unanimous.  That is,

20 with respect to each count, you must all agree as to whether

21 your verdict is guilty or not guilty as to that count.

22         Deliberations are to take place only in the jury

23 room.  You will not discuss this case with anyone outside the

24 jury room.  And that includes your fellow jurors.  You will

25 only discuss the case when all twelve deliberating jurors are

1  together, in the jury room, with no one else present, behind

2  the closed door.  At no other time is there to be any

3  discussion about the merits of this case.  Period.

4       I want to remind you once again about one of the

5  cardinal principles of America's commitment to the rule of

6  law.  You cannot allow a consideration of the punishment which

7  may be imposed upon the defendant, if convicted, to influence

8  your verdict in any way or to enter into your deliberations.

9       The duty of imposing a sentence rests exclusively

10  with me.  Your duty is to weigh the evidence in this case and

11  to determine whether the government has proven every element

12  beyond a reasonable doubt solely upon such evidence and upon

13  the law without being influenced by any assumption,

14  conjecture, sympathy or inference not warranted by the facts.

15       In reaching a decision, are you to rely solely on

16  the testimony of the witnesses, the stipulations and the

17  physical evidence admitted at trial.  You are not to do any

18  investigation on your own.  This means that, among other

19  things, you must not conduct any research whatsoever on the

20  internet or any other media including, but not limited to,

21  print media.

22       As I am sure you can imagine, it is very important

23  that you not communicate with anyone outside the jury room,

24  including the lawyers and the Court, about your deliberations

25  or about anything touching this case.  There is only one

1    exception to this rule.  If it becomes necessary during your

2    deliberations to communicate with me, you may send a note,

3    through the marshal, signed by your foreperson or by one or

4    more members of the jury.  No member of the jury should ever

5    attempt to communicate with me except by a signed writing, and

6    I will never communicate with any member of the jury on any

7    subject touching the merits of the case other than in writing,

8    or orally here in open court.  If you send any notes to the

9    Court, do not disclose anything about your deliberations,

10   specifically, do not disclose to anyone, not even to me, how

11   the jury stands, numerically or otherwise, until after you

12   have reached a unanimous verdict on each count or have been

13   discharged.

14          Keep in mind too that in deliberations, the jury's

15   recollection governs, nobody else's, not the Court's, if I

16   have made reference to the testimony, and not counsel's

17   recollection.  It is your recollection that must govern during

18   your deliberations.  If necessary, during those deliberations,

19   you may request by jury note a receipt reading from the trial

20   transcript that may refresh your recollection.

21          Please, as best as you can, try to be as specific as

22   possible in your requests for readbacks.  In other words, if

23   you are interested in only a particular part of a witness'

24   testimony, please indicate that to us.  It may take some time

25   for us to locate the testimony in the transcript so please be

Charge by Order of the Court                          1138

1   patient.  And as a general matter, if there is ever a delay in

2   responding to a jury note, please understand there is a reason

3   for it.  None of us goes anywhere.  As soon as a jury note is

4   delivered to the Court by the marshal, we turn our attention

5   to it immediately.

6            In the same way, if you have any questions about the

7   applicable law or you want a further explanation from me, send

8   me a note.  We will provide a response as soon as we can.

9            I have provided the jury with the verdict sheet

10  which is self-explanatory.  Needless to say, however, if you

11  have any questions about the verdict sheet, do not hesitate to

12  send the Court a note asking for further instructions.

13           With respect to each count, you are to resolve

14  individually the issue of whether the government has

15  established beyond a reasonable doubt the essential elements

16  of the offense as I have described them to you.  That is, you

17  must all agree unanimously as to whether your verdict is

18  guilty or not guilty.

19           If you find the defendant guilty of Counts Three,

20  Five, Seven and Nine, you must also answer the questions

21  listed directly below them.  I remind that the verdict form

22  must reflect your unanimous verdict as to each count and each

23  question on the verdict form.

24           When you have reached a decision, have the

25  foreperson record the answers, sign the verdict form, and put

Charge by Order of the Court                    1139

1   the date on it, and notify the marshal by note that you have

2   reached a verdict.  Bring the completed verdict sheet with you

3   when summoned by the court.

4           Keep in mind that you must not be influenced by

5   sympathy, prejudice or public opinion.  I remind you at the

6   outset that each of you has undertaken a solemn obligation, a

7   sworn obligation, to decide this case solely on the evidence.

8   You must carefully and impartially consider the evidence,

9   follow the law as I state it, and reach a just verdict,

10  regardless of the consequences.

11          As you being your deliberations, remember your oath

12  sums your duty, and that is, without fear or favor to any

13  person or party, you will well and truly try the issues in

14  this case according the evidence given to you in court and in

15  the laws of the United States.

16          In a few minutes, I am going to excuse our alternate

17  jurors.  As I told you before, your services were required as

18  a safeguard against the possibility that one of the regular

19  jurors might be unable to complete his or her service.  I

20  commend the alternative jurors for their faithful attendance

21  and attention.  On behalf of the Court and the parties, I

22  thank you for your service.

23          Members of the jury, I ask your patience for a few

24  moments longer.  It may be necessary for me to spend a few

25  moments with counsel and the reporter at the sidebar.  If so,

Charge by Order of the Court                    1140

1    I will ask you to remain patiently in the box without speaking

2    to each other and we will return in just a moment to submit

3    the case to you.

4         Thank you for your time and attentiveness.

5         (The following occurred at sidebar.)

6         THE COURT:  Any objections or exceptions to the

7    charge as read?

8         MR. STEIN:  No.

9         MR. SELDEN:  Not on behalf of the government.  Thank

10   you, Your Honor.

11        THE COURT:  Okay.  Thank you, Counsel.

12        (In open court; sidebar ends.)

13        THE COURT:  The clerk will swear the marshal.

14        THE CLERK:  Raise your right hand.

15        (Marshal sworn.)

16        THE COURT:  Now, ladies and gentlemen, I am going to

17   put you in the custody of the marshal.  You will be taken back

18   to the jury room.

19        The alternates will go back to the jury room, secure

20   their lunch and their belongings and you will return to the

21   courtroom.

22        The deliberating jurors will be able to begin their

23   deliberations while they eat their lunch.  You will be given a

24   copy of the charge that Mr. LoMonaco read.  You will also be

25   given a copy of the verdict sheet that you will complete and

1    that will be your verdict.

2            I am going to ask counsel in the interim to try to

3    gather up all of the written or photo documents, the exhibits

4    that are in evidence, and we'll try to send them in directly

5    to you as soon as they are gathered together.

6            Again, we thank you for your patience and

7    cooperation.  We look further to your deliberations.  Hope you

8    enjoy your lunch.

9            We look forward to the alternates' return to the

10   courtroom as soon as you get back.

11              (Jury exits at 2:30 p.m.)

12              (Alternate jurors enter.)

13   THE COURT:  We want to thank our alternate jurors

14   for their faithful attendance and participation in this

15   process.  The word is, however, is that your job is not over

16   yet.

17           No one can predict how long a jury will take to

18   deliberate and what we know, unfortunately, from this case

19   already, that no one can predict whether or not some great

20   calamity may come to pass which would preclude one of our

21   deliberating jurors from continuing their deliberations.

22           So I don't keep you here.  Some judges actually will

23   sequester you here in a separate place, separate and apart

24   from the rest of the jury.  But I do instruct you that you

25   must continue to adhere to all of the instructions that you

1142

1   have been getting throughout the trial.  So you continue just

2   under the same instructions not to discuss the case amongst

3   yourselves and certainly not to discuss it with your fellow

4   jurors who are deliberating.

5           Continue to keep an open mind because you're not in

6   the deliberation room.  One of the instructions is to start to

7   form your opinions after you've had an opportunity to talk

8   with other members of the jury and you're not going to have

9   that opportunity.

10          You're not to use the time your in recess, not here

11  in the courtroom, to conduct any research or to visit any of

12  the scenes.  Again, be careful about social media or any kind

13  of media.  If there are any accounts of this case while you're

14  on recess, you are to totally tune them out.  Again, I

15  encourage you not to listen to media accounts of any legal

16  proceeding for fear that you might pick up something that

17  would confuse you about what your role would be here in case

18  you did get substituted as one of the jurors.  You remain on

19  radio silence, not only not communicating with each other face

20  to face, not communicating with anyone by any means about

21  anything that remotely touches on this case, directly,

22  certainly, touches on this case or the fact that you're doing

23  jury service or that you've been coming to Brooklyn.

24          So you have to keep yourself available to come back.

25  William will have your number and we'll give you as much

1   notice as we can.  You can otherwise go about your normal

2   business, conduct your normal affairs.  Again, we will keep

3   you posted on any requirements we have of your services and

4   when the case is over, we will also advise you of that fact of

5   what the result was and at that point, you'll also be

6   instructed that all of the rules I have just given you will no

7   longer apply.  You can do any of the things that I've told you

8   that you can't do now, you'll be free to do that then.

9          Again, we certainly, all of us, appreciate your

10  service.  I think you as the other jurors will come to know

11  when I described it as a very difficult and demanding act of

12  citizenship, I think, for most jurors, that's exactly what

13  they experience.  It was demanding which is why we're also

14  appreciative of the service that you provided.

15         So thank you.  Good luck.  We may see you before

16  this case is over or we may see you at some other time if

17  we're lucky enough to have you back as a juror.  From all of

18  us again, thank you, and have a pleasant afternoon and we'll

19  see you.

20         (Alternate jurors exit.)

21         THE COURT:  So, Counsel, if there's any issue as to

22  whether something is in evidence or goes back, I'll be in

23  chambers.  Otherwise, we'll let you go get your own sustenance

24  and we try to hold notes if we can for the first half hour,

25  45 minutes or so.

1144

1        The key thing is to make sure that William has your,

2   at least one of you, your cell phone number so that he can be

3   immediately in contact with you if you're not back here before

4   we do have a note that we want to address.

5        So, again, as I said to you yesterday, it's been a

6   pleasure to have your advocacy.  Continued good luck to both

7   sides and we'll see you on the first note.

8        MR. SELDEN:  Thank you, Your Honor.

9        MR. SIEGEL:  Thank you, Your Honor.

10       MR. FARRELL:  Thanks.

11       (Court is in recess awaiting verdict of the jury.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1145

```
1              (In open court; outside the presence of the jury.)
2          THE CLERK:  Counsel for both sides are present
3    including defendant.
4          THE COURT:  Be seated, please.
5          We have received a note that the clerk will mark as
6    Court Exhibit 3 and read it into the record.
7          THE CLERK:  "Your Honor, can we see all the videos
8    and post arrest photos?  Can we see the weapon used?"
9          THE COURT:  Now, which want do you want to handle?
10         Let me first inquire, I assume that the second item,
11   the post arrest photos, were part of the exhibits that went
12   back to them already, correct?
13         MR. SELDEN:  That is correct, Your Honor.
14         THE COURT:  So they have that.
15         MR. SELDEN:  Yes, Your Honor.
16         THE COURT:  I assume if they want number three, that
17   they want to see the firearm, that somebody on the government
18   side can display the firearm to the jury if they come back in.
19         MR. STEIN:  Judge, I'm sorry.  I have a question as
20   to the --
21         THE COURT:  Yes?
22         MR. STEIN:  I have a question as to the first
23   question.
24         MR. FARRELL:  He's going in reverse order.
25         THE COURT:  I'm going reverse order, Joel.
```

1146

1      MR. STEIN:  I thought you already asked about the

2  arrest photos.

3      THE COURT:  That was two.

4      MR. STEIN:  But you already spoke about them.

5      THE COURT:  The video is one.

6      MR. STEIN:  Right.

7      THE COURT:  Still photos, two.

8      MR. STEIN:  Correct.  I thought you already said

9  something about the arrest photo.

10      THE COURT:  I'm told by Mr. Selden in response to my

11  inquiry that they've already gone back to the jury.

12      MR. STEIN:  That's exactly my point.

13      THE COURT:  Okay.

14      MR. STEIN:  So the question --

15      THE COURT:  They asked for the post arrest photos.

16      MR. STEIN:  It says, "Post arrest photo," singular.

17      THE COURT:  Singular.

18      MR. STEIN:  Well, there were at least two arrest

19  photos, plural, that I remember.  One was a post arrest photo

20  of Scott Brack.  There was another one, of course, of our

21  client.  So I'm not sure what the question means, frankly,

22  because "photo" is singular.

23      THE COURT:  It doesn't matter because they have them

24  all.

25      MR. FARRELL:  Right.

1147

1       MR. STEIN:  Okay.  Correct, Judge.

2       THE COURT:  They have them all.  We're not sending

3  anything in.

4       MR. STEIN:  Okay.

5       THE COURT:  That was the point of my inquiry.  They

6  all went back.

7       MR. STEIN:  Okay.

8       THE COURT:  So whatever it is they're looking for,

9  they already have.

10       MR. STEIN:  Okay.

11       THE COURT:  Then I went to three which is the next

12  easiest which is the firearm.  I assume we can display the

13  firearm to the jury when they come back.

14       MR. SELDEN:  Your Honor, the government's request to

15  the Court, obviously with permission by the United States

16  Marshals Service, is to actually have the firearm handed

17  through the jury box.  It's been made safe and it's actually

18  sitting at the government's counsel table right now and is

19  available.

20       THE COURT:  Then we can do that.  I don't believe

21  the Marshals will have any issue with that.

22       THE MARSHAL:  No, Judge.

23       THE COURT:  Okay.  So we'll do that.

24       The first item I left for last because it is the one

25  that's the most complicated since there are a lot of videos.

1148

1     You know, there are videos, there are the Bronx videos and

2     there's also videos from the incidents.  I don't know if there

3     are other videos but those are the ones that I can recall.

4            MR. SELDEN:  Your Honor, there are additional videos

5     including, but not limited to, the video from North Carolina.

6            THE COURT:  Oh, the North Carolina one.

7            MR. SELDEN:  The government's proposal would be, and

8     we conferred with counsel for Mr. Brack, would be actually to

9     have the Court inquire if the jury, in light of the fact that

10    they now have the stipulation which includes sort of a list,

11    if you will, of the videos, just inquire which videos they'd

12    like.  We have the videos here now and if there's a specific

13    video that they wanted to play in the courtroom, we'll be

14    happy to cue it up if they want that.

15           THE COURT:  Well, ultimately, the problem is that

16    the sands of time for today are very close to running out

17    completely so I don't know if we get to videos before the

18    sands of time run out.

19           MR. SELDEN:  Of course, Your Honor.

20           THE COURT:  That's ultimately the problem, but we

21    can, what we'll do is we'll certainly make that inquiry and

22    they can go back into the deliberation room and decide amongst

23    themselves which videos they are interested in and come up

24    with a list for us.  Attend to that, you have overnight to get

25    them set up.

1    All right.  So what I propose to do is to tell them

2  that and to advise them that they have the photos and then

3  give them an opportunity for the firearm to be passed among

4  the jurors and then send them back for the listing of videos.

5  All right?

6    MR. SELDEN:  That works well for the government.

7  Thank you, Your Honor.

8    THE COURT:  All concur?

9    MR. FARRELL:  Yes, defense concurs.

10    THE COURT:  Let's have the jury summoned.

11    MR. SELDEN:  Your Honor, just to direct the Court's

12  inquiry, is the Court referring to the stipulation as the

13  framework for a starting off point?

14    THE COURT:  Is there a specific number?

15    MR. SELDEN:  There's a full list, S-9.

16    THE COURT:  S-9?

17    MR. SELDEN:  Which they have.  It was provided back.

18    THE COURT:  Okay.  I'll tell them they have a list.

19    MR. SELDEN:  A roadmap, if you will.

20    (Jury enters at 4:35 p.m.)

21    THE COURT:  Be seated, please.

22    Counsel will stipulate that the jury is present and

23  properly seated.

24    MR. STEIN:  Yes.

25    MR. SELDEN:  On behalf of the government, yes,

1150

1    Your Honor.

2            THE COURT:  Thank you, Counsel.

3            Ladies and gentlemen, welcome back to the courtroom.

4    I appreciate your continued deliberations.

5            We have your note.  We have some answers, some

6    inquiries also for you and we will start in the order in which

7    we've discerned what it is that you're asking of us.

8            You've requested videos.  There are obviously

9    numerous videos that have been received in evidence and we're

10   going to refer you to a handy dandy little item that's

11   Government's Exhibit Stipulation 9 which is a complete listing

12   of all the videos that have been received in evidence and you

13   can use that to refresh your recollection about all of them

14   and then we'll ask you to create, on a separate piece of

15   paper, a listing of the videos among them that you wish to

16   receive, meaning an opportunity to view them in the courtroom.

17   So when viewing comes, you'll actually come back into the

18   courtroom to view them.

19           Now, with respect to the second inquiry that you

20   make, that's with respect to post arrest photos, all of those

21   photos, including any post arrest photos of anybody that were

22   received in evidence, are among the exhibits that were sent

23   back to you already.  So those photos you have available,

24   photo, or whichever.  If there's one or more that you're

25   interested in, they're all among the exhibits that have

1   already been sent back to you.  As I indicated we would do at

2   the beginning of the deliberations, counsel had gotten

3   together, identified the ones that are in evidence and they've

4   been sent back to you.

5          Thirdly, the request to have an opportunity to see

6   more closely the firearm, we're going to grant that request as

7   well and I will take this opportunity to remind you that we

8   have a closing window for today's deliberations between a

9   quarter to 5 and 5 o'clock so we're going to be closing in on

10  that.

11         So, productively, the last thing that we will be

12  doing today is giving you, the members of the jury now in the

13  jury box, an opportunity to see and feel the firearm and then

14  we're going to ask you to go back to the deliberation room

15  thereafter and create the list for us, sort of like homework,

16  so we can have that all teed up for you when we return to

17  continue deliberations tomorrow morning.

18         So, Mr. Selden, the firearm, I guess, is in

19  possession of the government at this time?

20         MR. SELDEN:  It is.  Thank you, Your Honor.

21  Your Honor, at this time, would you like me to provide it to

22  Mr. Villanueva or would you like me to tender it to the jury?

23         THE COURT:  You can tender it directly to the jury.

24  You can begin with the foreperson.

25         Again, you get an opportunity to look at it, feel it

1152

1    and pass it on to your next fellow juror.

2            MR. SELDEN:  Absolutely, Your Honor.  With the

3    Court's permission, may I approach the jury?

4            THE COURT:  You may.

5            MR. SELDEN:  Thank you, Your Honor.

6            (Pause.)

7            THE COURT:  All right.  Ladies and gentlemen, thank

8    you very much.

9            We are going to send you back in the custody of the

10   marshal, of course, to give you a chance to fish out

11   Government's Stipulation S-9.  Take a look at that list and

12   create a list for us and give us another knock and we'll be

13   able to proceed from there.

14           Thank you very much.

15           (Jury exits at 4:40 p.m.)

16           THE COURT:  All right.  We'll wait for the jury to

17   deliver our list.  You never know when that's going to be.

18   One way or the other, it's going to be around 4:45.

19           (Court is in recess.)

20           (In open court; outside the presence of the jury.)

21           THE CLERK:  Counsel for both sides are present

22   including defendant.

23           THE COURT:  All right.  Be seated, please.

24           We have a response to our inquiry which we marked as

25   Court's 4 and they sent us another note in addition to that

1   which will be Court's 5.  The clerk will read that.

2          THE CLERK:  The first note reads:  "Your Honor, for

3   Thursday morning, request to see the following videos," and

4   they list a number of videos on this note.

5          The following note reads:  "Your Honor, for Thursday

6   morning, A. Deleon testimony, Elgin Brack testimony, adjusted

7   timestamps of video evidence."

8          MR. STEIN:  What was the last one?

9          THE CLERK:  "Adjusted timestamps of video evidence."

10          THE COURT:  I think that may have been a stipulation

11   I sort of remember you reading, Mr. Siegel.

12          MR. SIEGEL:  That's right.  That's S-9.

13          THE COURT:  I don't know what number it is but I

14   think that's what they're referring to.

15          All right.  So you all have your homework.

16   Mr. Deleon's testimony wasn't that long.  They're not specific

17   about Mr. Brack's testimony.  I assume you'll have all of that

18   copied, transcripts copied.

19          MR. SELDEN:  On behalf of the government, we do,

20   Your Honor.

21          MR. STEIN:  We do.

22          THE COURT:  So counsel can work on trying to come up

23   with an agreed purified version of the transcripts of that

24   testimony, removing the usual sidebars or objections and the

25   like, and you'll have until tomorrow.

1    Also, to alert you, the Court has an obligation

2  early in the morning tomorrow so I'm not bringing the jury in

3  until around 11:15 so you'll have an extra hour to work on all

4  of that.  So we'll bring the jury in now and discharge them

5  for the night and we'll go from there.

6    William is going to provide everybody a list, a copy

7  of the notes.

8    (Jury enters at 5:10 p.m.)

9    THE COURT:  Be seated, please.

10    Counsel will stipulate that the jury is present and

11  properly seated.

12    MR. SELDEN:  On behalf of the government, yes.

13  Thank you, Your Honor.

14    MR. STEIN:  Yes, Judge.

15    THE COURT:  Thank you, Counsel.

16    Ladies and gentlemen, we have your notes and so we

17  have our homework assignments to do.  We'll have try to get

18  this material ready for you so you'll have them for your

19  continued deliberations.  Again, we thank you for your

20  attentiveness and continued sacrifice and service.

21    Now, we're going to adjourn for the evening, and

22  principally, the instructions are the same.  The one revision

23  is that now that you've begun your deliberations, you can

24  reflect on what you've been discussing among yourselves but

25  only reflect internally so you can think about it some more,

1  you're always encouraged to think about it some more, and be

2  ready to deliberate and consult each other but, again, not

3  until all of you are in this jury room, all twelve of you

4  together, in the custody of the marshal behind the closed

5  door.

6          Otherwise, everything else remains the same.  You

7  are not to discuss the case amongst yourselves or with anyone

8  else.  You're not to do any outside research into any of the

9  issues, personalities or anything that remotely touches upon

10  the case.  To the extent that there's any media coverage

11  including that broader definition of media, the social media,

12  you're to avert your attention, your eyes and your ears.

13  Again, I encourage you not to listen to media accounts of any

14  legal proceedings for fear that you might hear something or

15  see something that confuses you about your responsibilities

16  here.

17          Again, the no communication rule is really a radio

18  silence rule so not only are you not talking to each other or

19  anyone else directly, it's also not communicating by phone or

20  electronically or by any other medium about anything that

21  directly or indirectly touches on this case, personalities,

22  the issues, the names, the fact that you're a juror or the

23  fact that you come to a courthouse in Brooklyn.

24          So the beginning part of the drill is the same.  You

25  will report first to the Central Jury Room and when all of you

1   are together, you'll be escorted up to the deliberation room.

2           The only, and this is obviously a significant

3   difference as well, our starting time tomorrow because of

4   other obligations will be slightly different.  We are going to

5   ask you to come to the Central Jury Room at around 11:15 or

6   so.  So we'll get started between 11:15 and 11:30, where we

7   can all be assembled.  Then we will work in a similar fashion

8   as today except there is nothing at the end of the day like

9   there is today that short circuits our work and to the extent

10  that we haven't concluded deliberations at, you know, a

11  reasonable time, past 5, we will then go over to deliberations

12  on Friday.

13          As I told you at the very start of the proceedings

14  this morning, there's no rush to justice here.  Take as much

15  time and as long as you need to review everything you think

16  you, the jury, should review and work diligently towards

17  listening to each other and then hopefully coming up with the

18  unanimous verdict with respect to each of the counts and

19  questions that have been referred to you.

20          So with all of that, we certainly, again, on behalf

21  of all of us, appreciate your patience, your cooperation, your

22  attentiveness, the sacrifice that you make.  We wish you a

23  pleasant evening and look forward to seeing you tomorrow and

24  your continued deliberations in this case.

25          Thank you again.  Have a pleasant night.

1        (Jury exits at 5:15 p.m.)

2        THE COURT:  To the extent you all can agree,

3   hopefully, that will work itself out transcript-wise.  To the

4   extent that there are issues, I can resolve them after I

5   arrive tomorrow morning.

6        The first order of business will be to show the

7   videos.  I don't if they've left any out based on what William

8   is telling me about the list, but we'll just show them

9   seriatim.

10       I think, Mr. Selden, they were grouped

11  chronologically.

12       MR. SELDEN:  Yes.

13       THE COURT:  So if we do them that way, there's some

14  logic as to what we show.

15       All right.  So, again, have a good evening all and

16  we'll see you tomorrow.

17       MR. SELDEN:  Thank you, Your Honor.

18       THE COURT:  You're welcome.

19       (Matter adjourned to March 12, 2010 at 11:15 a.m.)

20

21

22

23

24

25

1158

I N D E X

Exhibits:

Court Exhibit 2                    1005

Court Exhibit 3                    1145

Court Exhibit 4                    1152

Court Exhibit 5                    1153

\*        \*        \*        \*

CMH       OCR       RMR       CRR       FCRR

## $

**$10,000** [1] - 1086:2
**$100** [2] - 1020:7, 1020:12
**$2.70** [1] - 1065:25
**$33,000** [3] - 1067:11, 1069:6, 1075:11
**$5,000** [2] - 1063:3
**$6,000** [3] - 1053:21, 1062:21, 1086:18
**$802.77** [1] - 1053:14

## 0

**01** [1] - 1121:25

## 1

**1** [10] - 1011:23, 1018:6, 1019:22, 1024:1, 1070:6, 1075:12, 1075:14, 1076:24, 1078:23, 1103:4
**1,300** [2] - 1062:16, 1077:14
**10** [1] - 1076:5
**10/15** [6] - 1065:15, 1065:16, 1065:17
**10/19** [1] - 1065:20
**10/22** [2] - 1065:21, 1065:23
**10/23** [1] - 1066:2
**10/25** [1] - 1066:2
**100** [2] - 1041:24, 1042:1
**1005** [1] - 1158:6
**101** [1] - 1039:5
**105B** [1] - 1026:4
**10:00** [1] - 1002:8
**10:22** [1] - 1075:3
**10:34** [1] - 1075:3
**10:38** [2] - 1076:8, 1076:15
**10:48** [2] - 1026:19, 1037:10
**11** [1] - 1002:7
**11/26** [1] - 1050:22
**111** [1] - 1039:4
**112B** [1] - 1021:7
**1145** [1] - 1158:7
**115-10** [2] - 1122:10, 1122:17
**1152** [1] - 1158:8
**1153** [1] - 1158:9
**11:15** [4] - 1154:3, 1156:5, 1156:6, 1157:19
**11:30** [1] - 1156:6

**12** [7] - 1008:6, 1008:21, 1013:23, 1044:19, 1086:14, 1089:23, 1157:19
**12:00** [1] - 1070:21
**12:21** [1] - 1009:24
**12th** [1] - 1065:14
**13** [1] - 1045:3
**132** [1] - 1054:12
**135** [1] - 1040:2
**136** [1] - 1055:10
**146** [1] - 1012:22
**15** [5] - 1008:13, 1013:21, 1020:19, 1037:15, 1042:5
**152** [1] - 1017:23
**154** [2] - 1017:23, 1039:16
**155** [1] - 1039:16
**155-10** [1] - 1132:13
**18** [6] - 1039:15, 1039:20, 1116:21, 1122:25, 1123:8, 1126:25
**18-CR-684** [1] - 1003:5
**18-CR-684(ENV** [1] - 1002:4
**189** [2] - 1019:13, 1020:2
**19** [1] - 1039:15
**190** [2] - 1019:13, 1020:3
**1929** [1] - 1016:23
**1951(a** [1] - 1116:21
**19th** [1] - 1058:18
**1:24** [1] - 1075:12
**1:30** [1] - 1010:7
**1:34** [2] - 1010:4, 1037:6

## 2

**2** [7] - 1005:1, 1024:1, 1065:13, 1103:5, 1122:25, 1123:8, 1158:6
**2,500** [1] - 1064:18
**2.59** [1] - 1050:23
**20** [2] - 1008:10, 1071:24
**200** [1] - 1062:16
**2008** [1] - 1027:2
**2010** [1] - 1157:19
**2018** [16] - 1007:1, 1007:9, 1008:2, 1011:9, 1011:23, 1078:8, 1117:9, 1119:23, 1120:14, 1121:17, 1122:2, 1122:12, 1126:17,

1131:16, 1132:3, 1132:15
**2020** [1] - 1002:7
**207** [1] - 1020:9
**20s** [1] - 1067:4
**216** [1] - 1024:11
**217A** [1] - 1023:12
**22** [2] - 1040:6, 1074:19
**225** [2] - 1002:22, 1021:9
**226** [1] - 1021:9
**23** [3] - 1040:3, 1089:24, 1089:25
**24** [11] - 1012:6, 1012:7, 1012:8, 1012:9, 1012:10, 1012:16, 1065:5, 1066:5, 1074:20
**24-hour** [5] - 1024:16, 1024:17, 1024:18, 1042:20, 1088:4
**249** [3] - 1024:23, 1032:13, 1070:23
**25** [5] - 1008:2, 1008:10, 1039:21, 1070:2, 1075:3
**250** [2] - 1024:23, 1032:13
**25th** [6] - 1007:8, 1008:21, 1070:1, 1070:14, 1074:11, 1074:16
**26** [14] - 1007:1, 1011:9, 1011:23, 1012:7, 1117:9, 1119:23, 1120:14, 1121:17, 1122:2, 1122:12, 1126:17, 1131:16, 1132:3, 1132:15
**26th** [8] - 1007:9, 1010:4, 1049:17, 1067:19, 1076:7, 1076:14, 1077:16, 1078:7
**271** [1] - 1002:17
**291** [1] - 1027:6
**292** [1] - 1027:6
**2:20** [2] - 1011:7, 1011:9
**2:30** [2] - 1042:18, 1141:11
**2:34** [2] - 1012:8, 1012:9
**2:35** [2] - 1012:9, 1012:10
**2:36** [3] - 1012:6, 1012:10
**2:40** [2] - 1042:18,

1042:20
**2:52** [1] - 1011:13
**2A** [1] - 1005:3

## 3

**3** [3] - 1103:7, 1145:6, 1158:7
**3.93** [1] - 1041:19
**30** [2] - 1008:15, 1012:18
**300** [2] - 1014:24, 1062:16
**304** [3] - 1009:13, 1027:8, 1041:3
**304-D** [1] - 1044:3
**304F** [2] - 1027:11, 1063:11
**306** [5] - 1009:8, 1013:25, 1017:19, 1027:20, 1043:13
**307** [5] - 1009:12, 1017:20, 1028:3, 1043:13, 1043:22
**308** [1] - 1028:10
**308E** [1] - 1028:12
**30th** [3] - 1121:25, 1122:7, 1132:1
**311** [3] - 1012:2, 1027:23, 1042:9
**315** [2] - 1013:13, 1022:12
**321** [1] - 1022:23
**33** [1] - 1121:25
**33-01** [2] - 1122:7, 1132:1
**332** [1] - 1026:6
**333** [2] - 1027:24, 1041:7
**336** [1] - 1070:16
**338** [2] - 1027:25, 1041:7
**357** [2] - 1048:9, 1087:9
**3:00** [2] - 1008:2, 1008:20
**3:07** [1] - 1008:20
**3:13** [2] - 1012:18, 1013:17
**3:30** [2] - 1008:8, 1013:22
**3:42** [2] - 1016:9, 1017:1
**3:54** [6] - 1018:21, 1018:25, 1019:4, 1037:8, 1042:14, 1070:6

## 4

**4** [6] - 1014:23, 1050:5, 1065:23, 1103:9, 1152:25, 1158:8
**4,000** [2] - 1077:13, 1077:16
**402C** [1] - 1014:1
**402D** [1] - 1015:21
**408D** [1] - 1018:13
**408E** [1] - 1018:1
**417A** [1] - 1008:17
**429** [2] - 1027:17, 1070:23
**433** [1] - 1027:17
**441** [1] - 1013:15
**442** [1] - 1013:15
**45** [2] - 1070:18, 1143:25
**452** [1] - 1008:20
**454** [1] - 1008:20
**4:22** [1] - 1070:1
**4:30** [2] - 1042:20, 1042:21
**4:31** [1] - 1023:20
**4:32** [1] - 1023:23
**4:33** [1] - 1024:16
**4:34** [2] - 1024:17
**4:35** [1] - 1149:20
**4:40** [1] - 1152:15
**4:45** [3] - 1005:22, 1005:23, 1152:18

## 5

**5** [7] - 1005:23, 1103:10, 1151:9, 1153:1, 1156:11, 1158:9
**50** [1] - 1089:22
**50-92** [3] - 1121:15, 1121:22, 1131:14
**50s** [1] - 1053:16
**53** [1] - 1066:12
**55** [1] - 1070:19
**562** [1] - 1070:23
**5:00** [2] - 1024:6, 1070:24
**5:10** [1] - 1154:8
**5:15** [1] - 1157:1
**5:28** [1] - 1080:3
**5:44** [1] - 1025:12
**5:46** [1] - 1025:14
**5:59** [2] - 1070:2

## 6

**6** [2] - 1014:24, 1103:12

**6,000** [1] - 1077:15
**60** [1] - 1070:16
**60-02** [3] - 1017:7, 1119:21, 1120:4
**600** [3] - 1015:7, 1028:17, 1041:23
**603** [3] - 1015:7, 1028:17, 1041:23
**60th** [1] - 1017:6
**613** [1] - 1041:23
**613-2643** [1] - 1002:23
**672** [2] - 1028:24, 1041:12
**682** [2] - 1028:24, 1041:12
**697** [1] - 1067:23
**6:00** [1] - 1070:2
**6:13** [2] - 1026:15, 1079:5

---

**7**

**7** [2] - 1065:13, 1103:14
**7-Eleven** [27] - 1008:10, 1017:10, 1017:11, 1017:13, 1018:13, 1018:18, 1018:23, 1019:1, 1019:10, 1020:19, 1023:1, 1023:4, 1023:13, 1029:17, 1031:15, 1035:9, 1037:10, 1038:3, 1038:24, 1042:14, 1042:17, 1045:5, 1053:5, 1053:9, 1121:15, 1121:22, 1131:13
**718** [1] - 1002:23
**723** [1] - 1011:25
**725** [1] - 1011:25
**76** [1] - 1016:18
**765** [1] - 1009:21
**7:00** [1] - 1011:23
**7:02** [1] - 1070:15
**7:07** [1] - 1026:16

---

**8**

**8** [4] - 1073:11, 1073:12, 1086:19, 1086:20
**800** [4] - 1053:17, 1062:16, 1084:10, 1089:15
**832** [1] - 1050:4
**85** [1] - 1014:21
**89** [1] - 1014:21
**8:28** [1] - 1049:16

**8:40** [2] - 1027:2, 1076:20

---

**9**

**9** [2] - 1015:1, 1150:11
**907** [1] - 1020:14
**924(c** [1] - 1127:1
**94** [4] - 1028:22, 1041:15, 1085:15, 1087:20
**952** [1] - 1020:14
**953** [1] - 1020:14
**9:06** [4] - 1074:17, 1074:18, 1074:22
**9:52** [1] - 1070:15

---

**A**

**a.m** [30] - 1002:8, 1008:8, 1010:4, 1011:7, 1011:9, 1011:23, 1012:6, 1012:18, 1013:22, 1016:9, 1017:1, 1018:21, 1023:20, 1024:6, 1024:16, 1024:17, 1024:18, 1025:12, 1026:15, 1026:16, 1037:6, 1042:14, 1070:6, 1070:21, 1075:12, 1075:14, 1076:15, 1076:24, 1157:19
**AA** [1] - 1067:4
**abet** [2] - 1124:3, 1134:5
**abets** [2] - 1123:2, 1123:15
**abetted** [4] - 1123:24, 1125:1, 1134:1, 1134:11
**abetting** [2] - 1124:2, 1124:19
**abettor** [4] - 1124:22, 1125:11, 1125:14
**ability** [2] - 1039:3, 1103:10
**able** [10] - 1004:6, 1006:14, 1007:21, 1021:19, 1046:23, 1073:10, 1078:15, 1082:12, 1140:22, 1152:13
**absence** [1] - 1108:8
**absolutely** [2] - 1004:25, 1152:2
**accept** [6] - 1062:1, 1100:2, 1100:17, 1101:3, 1102:11,

1104:1
**accident** [3] - 1111:2, 1111:8, 1130:16
**accompanying** [1] - 1005:2
**accomplish** [6] - 1033:8, 1033:13, 1112:4, 1113:2, 1113:16, 1120:10
**accomplished** [1] - 1112:24
**accomplishment** [1] - 1116:12
**accordance** [1] - 1091:20
**accorded** [1] - 1092:14
**according** [7] - 1018:24, 1024:5, 1054:15, 1057:1, 1061:3, 1070:3, 1139:14
**accordingly** [1] - 1123:20
**account** [3] - 1042:11, 1067:2, 1103:1
**accountable** [1] - 1090:3
**accounts** [3] - 1142:13, 1142:15, 1155:13
**accurately** [1] - 1103:11
**accusation** [3] - 1093:7, 1109:20, 1109:25
**accuse** [1] - 1110:12
**achieve** [1] - 1112:8
**acknowledge** [1] - 1004:4
**acknowledged** [1] - 1048:7
**acknowledging** [1] - 1068:12
**acquiescence** [1] - 1116:4
**acquit** [1] - 1093:15
**act** [13] - 1094:4, 1110:7, 1111:10, 1113:3, 1113:15, 1113:16, 1115:16, 1120:9, 1123:5, 1124:5, 1124:13, 1124:23, 1143:11
**Act** [39] - 1029:8, 1029:12, 1029:16, 1030:8, 1033:4, 1033:7, 1033:11, 1036:15, 1111:24, 1112:2, 1116:20,

1117:18, 1118:2, 1119:15, 1119:16, 1119:18, 1119:20, 1120:6, 1120:8, 1120:14, 1120:16, 1120:19, 1121:13, 1121:14, 1121:24, 1122:9, 1122:20, 1123:21, 1125:22, 1126:10, 1126:15, 1128:3, 1128:4, 1131:10, 1131:13, 1131:25, 1132:12, 1134:13
**acted** [2] - 1111:2, 1130:14
**acting** [1] - 1088:9
**action** [3] - 1033:15, 1120:23, 1128:15
**actions** [10] - 1029:1, 1037:1, 1089:16, 1111:19, 1113:11, 1113:13, 1119:7, 1119:10, 1120:25, 1125:8
**active** [1] - 1100:7, 1129:1, 1129:9
**activities** [1] - 1115:3
**activity** [1] - 1070:14
**acts** [14] - 1110:14, 1110:20, 1110:25, 1111:5, 1111:6, 1114:21, 1115:13, 1116:5, 1121:7, 1121:9, 1121:10, 1134:21
**actual** [10] - 1031:6, 1032:1, 1087:2, 1117:22, 1118:6, 1121:3, 1125:18, 1125:25, 1126:4, 1128:22
**ad** [1] - 1078:15
**add** [2] - 1062:20, 1069:6
**addition** [9] - 1013:9, 1025:10, 1032:11, 1036:5, 1044:7, 1095:21, 1096:21, 1097:4, 1152:25
**additional** [3] - 1025:22, 1123:9, 1148:4
**address** [1] - 1144:4
**adhere** [1] - 1141:25
**adjourn** [1] - 1154:21
**adjourned** [1] - 1157:19
**adjusted** [2] - 1153:6, 1153:9

**admit** [2] - 1078:1, 1109:8
**admits** [1] - 1045:4
**admitted** [7] - 1009:7, 1020:13, 1051:25, 1055:7, 1072:12, 1108:13, 1136:17
**advance** [1] - 1130:7
**advise** [2] - 1143:4, 1149:2
**advised** [1] - 1116:15
**advocacy** [1] - 1144:6
**affairs** [3] - 1102:25, 1111:17, 1143:2
**affect** [7] - 1117:5, 1117:12, 1118:11, 1120:1, 1121:20, 1122:5, 1122:15
**affected** [4] - 1031:9, 1118:9, 1119:6, 1119:9
**affecting** [1] - 1119:8
**affects** [2] - 1068:5, 1116:24
**African** [3] - 1058:20, 1080:23, 1087:6
**African-American** [3] - 1058:20, 1080:23, 1087:6
**afternoon** [4] - 1009:19, 1010:2, 1047:7, 1143:18
**age** [3] - 1039:25, 1066:12, 1096:19
**Agent** [21] - 1008:18, 1011:21, 1011:24, 1011:25, 1013:7, 1013:11, 1027:16, 1042:10, 1047:25, 1056:20, 1062:7, 1063:9, 1063:15, 1063:18, 1064:5, 1064:17, 1064:23, 1066:25, 1071:14, 1089:5
**agent** [3] - 1062:7, 1063:7, 1063:15
**Agent's** [1] - 1084:12
**ago** [3] - 1040:9, 1084:13, 1114:13
**agree** [4] - 1072:4, 1135:20, 1138:17, 1157:2
**agreed** [10] - 1029:9, 1031:21, 1032:18, 1032:19, 1032:22, 1036:16, 1038:12, 1040:13, 1095:8, 1153:23
**agreement** [18] -

1036:14, 1036:18,
1036:20, 1036:23,
1037:4, 1037:20,
1038:15, 1038:16,
1095:11, 1112:3,
1112:17, 1112:20,
1113:5, 1113:12,
1114:15, 1114:18,
1116:17, 1135:9
**ahead** [1] - 1005:25
**aid** [5] - 1121:25,
1122:7, 1122:10,
1124:2, 1134:5
**Aid** [30] - 1008:11,
1008:12, 1019:11,
1020:18, 1020:21,
1021:10, 1021:16,
1021:22, 1022:2,
1022:25, 1023:1,
1023:10, 1023:13,
1023:16, 1023:17,
1023:21, 1024:22,
1025:10, 1025:14,
1025:18, 1026:9,
1038:2, 1040:16,
1042:24, 1053:18,
1054:6, 1122:17,
1131:25, 1132:12
**Aid's** [1] - 1025:13
**aided** [5] - 1002:25,
1123:24, 1125:1,
1134:1, 1134:11
**aider** [4] - 1124:22,
1125:10, 1125:14
**aiding** [3] - 1116:11,
1124:2, 1124:19
**Aids** [3] - 1029:17,
1031:16, 1035:9
**aids** [3] - 1123:2,
1123:15, 1124:21
**aims** [2] - 1114:18,
1115:25
**air** [2] - 1026:7,
1026:10
**Air** [1] - 1069:7
**Alejandro** [14] -
1008:9, 1012:20,
1015:13, 1017:12,
1028:16, 1029:13,
1033:19, 1035:21,
1041:21, 1083:18,
1083:19, 1085:20,
1089:20, 1089:25
**alert** [1] - 1154:1
**Alexandria** [1] -
1035:11
**allegation** [1] - 1110:3
**allege** [2] - 1110:13,
1119:14
**alleged** [7] - 1110:9,

1112:1, 1112:6,
1112:19, 1112:21,
1114:22, 1115:19
**allow** [2] - 1096:22,
1136:6
**allowed** [1] - 1100:3
**almost** [2] - 1039:25,
1093:25
**alone** [5] - 1040:21,
1091:12, 1093:14,
1098:5, 1099:11
**alternate** [4] -
1139:16, 1141:12,
1141:13, 1143:20
**alternates** [1] -
1140:19
**alternates'** [1] -
1141:9
**alternative** [1] -
1139:20
**ambidexterous** [1] -
1048:19
**ambit** [1] - 1115:17
**AMERICA** [1] - 1002:4
**America's** [1] - 1136:5
**American** [3] -
1058:20, 1080:23,
1087:6
**amount** [3] - 1102:3,
1120:20, 1121:7
**amounted** [1] - 1121:7
**analysis** [1] - 1051:17
**analyzed** [3] - 1015:6,
1041:14, 1042:10
**analyzes** [1] - 1049:19
**angle** [1] - 1015:20
**Anjan** [1] - 1089:12
**ANSWER** [6] -
1050:10, 1054:24,
1055:15, 1055:18,
1055:23, 1056:6
**answer** [14] - 1035:2,
1035:3, 1050:19,
1051:22, 1081:12,
1084:23, 1085:3,
1095:20, 1096:9,
1103:13, 1125:12,
1126:7, 1138:20
**answered** [2] -
1004:15, 1063:23
**answers** [6] - 1072:9,
1080:5, 1093:2,
1125:21, 1138:25,
1150:5
**Anthony** [1] - 1090:10
**anticipated** [1] -
1119:3
**anxiety** [1] - 1118:20
**anyway** [1] - 1059:9
**apart** [2] - 1077:1,

1141:23
**appealed** [1] -
1105:20
**appear** [2] - 1103:12,
1106:5
**appearance** [1] -
1003:6
**APPEARANCES** [1] -
1002:13
**appeared** [1] -
1091:14
**applicable** [3] -
1062:13, 1111:21,
1138:7
**apply** [11] - 1091:19,
1099:24, 1120:15,
1122:22, 1132:25,
1133:6, 1133:13,
1133:21, 1134:7,
1135:5, 1143:7
**appreciate** [6] -
1005:15, 1047:17,
1143:9, 1150:4,
1156:21
**appreciative** [1] -
1143:14
**apprised** [1] - 1115:3
**approach** [1] - 1152:3
**approached** [1] -
1025:2
**approaching** [1] -
1066:24
**approve** [2] - 1108:14,
1108:25
**approved** [1] -
1092:21
**approximation** [1] -
1070:9
**area** [3] - 1009:23,
1009:24, 1010:1
**arguably** [1] - 1105:8
**argues** [1] - 1105:6
**argument** [14] -
1004:21, 1004:22,
1006:3, 1006:6,
1006:18, 1007:22,
1046:22, 1047:1,
1049:5, 1082:3,
1083:10, 1083:24,
1093:1, 1106:17
**arguments** [11] -
1006:1, 1081:14,
1085:25, 1086:5,
1086:8, 1087:15,
1090:7, 1090:19,
1091:8, 1095:17,
1099:2
**armed** [2] - 1006:25,
1086:12
**Army** [1] - 1069:8

**arranging** [1] - 1121:5
**arrest** [18] - 1008:13,
1013:6, 1013:10,
1013:14, 1027:5,
1039:4, 1040:19,
1044:11, 1045:8,
1145:11, 1146:2,
1146:9, 1146:15,
1146:16, 1146:18,
1146:19, 1150:20,
1150:21
**arrested** [8] - 1010:15,
1020:12, 1022:12,
1027:3, 1027:15,
1043:15, 1043:20,
1044:9
**arrests** [2] - 1026:5,
1026:24
**arrive** [2] - 1135:17,
1157:5
**arrived** [4] - 1017:12,
1017:18, 1024:6,
1024:21
**arriving** [2] - 1093:8,
1098:24
**article** [2] - 1044:20,
1116:24
**articles** [5] - 1117:13,
1120:1, 1121:20,
1122:5, 1122:15
**Asian** [1] - 1080:23
**aside** [1] - 1032:25
**asleep** [1] - 1047:15
**aspect** [1] - 1084:14
**assembled** [2] -
1115:25, 1156:7
**assignments** [1] -
1154:17
**assist** [1] - 1099:19
**assistance** [1] -
1003:25
**Assistant** [5] -
1002:17, 1003:9,
1003:10, 1006:19,
1083:11
**assisted** [1] - 1116:15
**associate** [3] - 1114:4,
1124:4, 1125:6
**associated** [1] -
1124:7
**associating** [1] -
1124:17
**association** [1] -
1115:21
**assume** [4] - 1095:23,
1097:21, 1145:10,
1145:16, 1147:12,
1153:17
**assuming** [1] -
1055:19

**assumption** [1] -
1136:13
**assure** [1] - 1066:18
**Astoria** [1] - 1023:17
**ATF** [2] - 1026:5,
1027:25
**attack** [1] - 1100:20
**attacks** [1] - 1086:9
**attempt** [10] - 1029:13,
1096:1, 1119:25,
1120:20, 1120:21,
1121:6, 1121:7,
1121:8, 1129:4,
1137:5
**attempted** [20] -
1008:9, 1012:14,
1012:15, 1029:12,
1032:20, 1033:4,
1033:5, 1033:24,
1034:1, 1034:4,
1034:10, 1035:8,
1035:24, 1050:14,
1120:5, 1126:15,
1127:15, 1127:21,
1128:3, 1128:4
**attempting** [1] -
1119:19
**attempts** [1] - 1116:25
**attend** [1] - 1148:24
**attendance** [2] -
1139:20, 1141:14
**attention** [7] -
1012:24, 1018:15,
1046:21, 1047:12,
1138:4, 1139:21,
1155:12
**attentive** [1] - 1047:14
**attentiveness** [4] -
1005:16, 1140:4,
1154:20, 1156:22
**Attorney** [4] -
1002:15, 1003:9,
1006:19, 1083:11
**attorneys** [6] -
1090:17, 1092:24,
1096:4, 1099:1,
1101:16, 1101:19
**Attorneys** [2] -
1002:17, 1003:10
**AUSA** [1] - 1077:20
**authorized** [1] -
1066:10
**automatically** [1] -
1115:22
**available** [4] - 1129:7,
1142:24, 1147:19,
1150:23
**Avenue** [18] - 1008:19,
1008:23, 1010:1,
1013:24, 1017:7,

1027:2, 1027:19, 1028:4, 1066:1, 1072:6, 1072:10, 1086:14, 1088:24, 1119:21, 1120:4, 1121:25, 1122:8, 1132:1
**avert** [1] - 1155:12
**avoid** [2] - 1094:10, 1109:10
**awaiting** [1] - 1144:11
**aware** [1] - 1111:9
**awareness** [1] - 1114:17
**awful** [3] - 1051:19, 1069:9, 1082:13
**awning** [3] - 1016:22, 1016:23

## B

**background** [3] - 1012:20, 1021:10, 1096:19
**backpack** [43] - 1009:13, 1009:14, 1015:8, 1027:8, 1027:12, 1027:13, 1027:15, 1027:25, 1028:3, 1028:10, 1041:3, 1041:7, 1042:4, 1042:12, 1043:24, 1044:2, 1044:14, 1044:17, 1044:25, 1045:1, 1059:2, 1059:14, 1059:15, 1059:16, 1059:18, 1059:20, 1059:23, 1059:25, 1060:17, 1060:23, 1061:4, 1061:7, 1062:17, 1063:6, 1064:2, 1064:8, 1064:10, 1084:18, 1085:14, 1087:14, 1108:12
**backpacks** [1] - 1063:12
**bad** [1] - 1077:21
**bag** [10] - 1028:1, 1041:8, 1041:10, 1044:6, 1060:8, 1063:24, 1073:14, 1073:16, 1087:15, 1088:6
**bags** [1] - 1059:17
**ballistics** [5] - 1015:6, 1028:14, 1048:13, 1048:14, 1067:10
**bank** [5] - 1065:11,

1065:13, 1076:11, 1077:13, 1077:16
**bar** [1] - 1025:2
**base** [1] - 1092:16
**baseball** [1] - 1048:19
**based** [12] - 1022:24, 1041:23, 1086:8, 1086:9, 1094:1, 1096:25, 1098:17, 1102:25, 1105:22, 1107:5, 1157:7
**basic** [4] - 1008:1, 1085:1, 1085:2, 1114:17
**basis** [3] - 1055:12, 1055:20, 1099:3
**Bates** [4] - 1003:12, 1006:21, 1008:24, 1013:1
**batting** [2] - 1004:16, 1004:18
**be's** [1] - 1081:2
**beanie** [4] - 1013:12, 1013:13, 1022:11, 1022:12
**bear** [2] - 1094:14, 1098:13
**bearing** [1] - 1115:10
**became** [2] - 1112:13, 1113:20
**become** [1] - 1115:1
**becomes** [3] - 1082:14, 1116:16, 1137:1
**bedrock** [1] - 1081:19
**BEFORE** [1] - 1002:11
**beg** [1] - 1081:15
**begin** [4] - 1006:17, 1134:16, 1140:22, 1151:24
**beginning** [6] - 1040:23, 1095:1, 1095:14, 1109:19, 1151:2, 1155:24
**begun** [1] - 1154:23
**behalf** [19] - 1003:8, 1003:24, 1005:9, 1006:3, 1006:5, 1006:6, 1006:18, 1046:13, 1046:19, 1047:1, 1083:5, 1092:25, 1106:12, 1139:21, 1140:9, 1149:25, 1153:19, 1154:12, 1156:20
**behavior** [1] - 1092:22
**behind** [7] - 1014:19, 1014:22, 1015:3, 1015:10, 1136:1, 1155:4

**behold** [2] - 1061:10, 1071:17
**believable** [2] - 1058:25, 1103:2
**belongings** [1] - 1140:20
**below** [1] - 1138:21
**belt** [2] - 1044:3, 1044:5
**Bennett** [11] - 1004:7, 1047:6, 1052:9, 1060:25, 1066:18, 1069:23, 1075:13, 1076:6, 1076:14, 1077:24, 1078:20
**beseech** [1] - 1081:15
**best** [3] - 1048:21, 1056:3, 1137:21
**better** [3] - 1047:8, 1070:20, 1078:2
**between** [14] - 1004:12, 1005:22, 1006:7, 1036:14, 1044:23, 1081:7, 1084:10, 1110:9, 1113:1, 1118:23, 1121:2, 1151:8, 1156:6
**beyond** [53] - 1006:24, 1030:10, 1033:9, 1035:18, 1038:22, 1045:13, 1049:7, 1081:3, 1083:20, 1084:20, 1085:21, 1086:7, 1086:21, 1087:12, 1091:3, 1093:13, 1093:17, 1093:22, 1094:12, 1094:13, 1094:21, 1098:16, 1101:8, 1106:24, 1107:7, 1107:25, 1108:5, 1108:21, 1109:6, 1109:16, 1110:19, 1112:10, 1112:15, 1113:18, 1120:7, 1120:12, 1120:21, 1123:22, 1126:6, 1127:8, 1127:13, 1127:23, 1128:6, 1128:8, 1128:17, 1128:25, 1130:13, 1130:22, 1133:15, 1133:21, 1136:12, 1138:15
**bias** [1] - 1092:9
**big** [3] - 1021:5, 1026:23, 1053:16
**bills** [3] - 1020:7, 1020:12, 1053:16

**birthday** [1] - 1040:8
**biscuit** [3] - 1050:23, 1052:5, 1066:16
**bit** [1] - 1004:10
**black** [16] - 1009:9, 1009:11, 1009:15, 1022:1, 1022:13, 1022:14, 1025:17, 1027:18, 1043:12, 1043:22, 1051:13, 1051:14, 1060:19, 1061:3, 1061:11, 1063:24
**bling** [1] - 1072:22
**blocks** [4] - 1018:22, 1037:9, 1042:16, 1090:9
**blood** [10] - 1014:25, 1015:17, 1015:25, 1049:19, 1055:8, 1055:17, 1055:19, 1056:5, 1056:15
**bloody** [3] - 1015:14, 1015:16, 1016:1
**blowing** [1] - 1049:24
**blown** [2] - 1012:5, 1013:3
**boil** [1] - 1007:11
**borrow** [2] - 1073:5, 1086:18
**borrowed** [1] - 1086:15
**bother** [3] - 1051:6, 1061:17, 1071:16
**bothered** [1] - 1052:2
**bottom** [6] - 1011:7, 1011:15, 1028:10, 1041:7, 1054:12, 1056:13
**bought** [1] - 1072:19
**boulevard** [2] - 1121:16, 1121:23
**Boulevard** [4] - 1122:11, 1122:18, 1131:14, 1132:13
**bound** [2] - 1079:6, 1092:1
**box** [4] - 1048:11, 1140:1, 1147:17, 1151:13
**brace** [1] - 1068:6
**Brack** [116] - 1003:4, 1003:16, 1003:18, 1003:20, 1006:25, 1008:22, 1009:3, 1009:18, 1009:23, 1010:5, 1010:8, 1013:5, 1013:6, 1013:8, 1013:11, 1013:16, 1016:7,

1018:20, 1018:21, 1018:25, 1019:4, 1019:7, 1019:11, 1022:7, 1022:9, 1023:2, 1023:7, 1023:18, 1024:6, 1024:10, 1026:19, 1026:20, 1027:2, 1037:3, 1037:14, 1037:16, 1038:7, 1038:8, 1038:19, 1038:22, 1039:1, 1042:15, 1043:4, 1043:5, 1043:8, 1047:5, 1047:23, 1049:8, 1050:24, 1051:19, 1051:23, 1057:2, 1057:6, 1059:22, 1059:24, 1060:20, 1062:20, 1064:21, 1065:7, 1065:11, 1065:13, 1066:21, 1067:4, 1067:5, 1067:18, 1069:3, 1070:11, 1071:1, 1071:5, 1071:11, 1071:23, 1071:25, 1072:2, 1072:10, 1072:25, 1073:9, 1073:13, 1074:8, 1075:17, 1077:8, 1077:12, 1077:20, 1077:24, 1078:6, 1079:1, 1079:8, 1080:22, 1080:24, 1083:21, 1084:19, 1085:17, 1085:19, 1086:7, 1086:10, 1087:4, 1087:11, 1087:21, 1088:2, 1088:10, 1088:17, 1089:24, 1090:3, 1117:10, 1119:24, 1121:18, 1122:3, 1122:13, 1126:18, 1131:17, 1132:4, 1132:16, 1146:20, 1148:8, 1153:6
**BRACK** [1] - 1002:7
**Brack's** [18] - 1019:6, 1043:7, 1051:25, 1056:12, 1059:23, 1066:15, 1068:6, 1068:8, 1068:11, 1069:4, 1069:25, 1070:7, 1074:10, 1076:23, 1084:22, 1085:9, 1153:17
**braids** [1] - 1052:21
**brandish** [2] -

1035:13, 1130:24
**brandished** [10] - 1035:3, 1126:24, 1130:23, 1131:6, 1131:23, 1132:10, 1132:22, 1133:11, 1133:12, 1133:16
**brandishing** [5] - 1035:7, 1035:12, 1035:17, 1129:5, 1133:4
**Bravo** [2] - 1059:7, 1065:24
**break** [6] - 1004:8, 1006:7, 1042:20, 1045:20, 1082:2, 1082:10
**breaking** [1] - 1130:19
**breaks** [1] - 1004:11
**breathe** [1] - 1080:21
**Bridge** [6] - 1011:11, 1012:19, 1026:16, 1026:17, 1079:5, 1080:3
**bridge** [1] - 1011:16
**brief** [1] - 1073:1
**briefly** [1] - 1067:9
**bright** [2] - 1009:6, 1044:8
**bring** [9] - 1005:3, 1063:7, 1080:7, 1090:13, 1120:10, 1124:24, 1125:5, 1139:2, 1154:4
**bringing** [3] - 1038:2, 1124:14, 1154:2
**brings** [5] - 1023:9, 1026:23, 1040:23, 1093:6, 1134:16
**broader** [1] - 1155:11
**broke** [3] - 1078:3, 1078:5
**Bronx** [20] - 1008:3, 1008:13, 1008:17, 1008:19, 1008:23, 1009:18, 1009:25, 1010:1, 1013:24, 1026:16, 1026:25, 1044:19, 1044:25, 1045:3, 1076:18, 1076:20, 1078:25, 1079:1, 1079:6, 1148:1
**Brooklyn** [6] - 1002:6, 1002:18, 1002:23, 1078:16, 1142:23, 1155:23
**brought** [6] - 1026:5, 1037:18, 1038:1, 1038:3, 1063:5,

1092:12
**brown** [2] - 1044:3, 1044:4
**browser** [1] - 1012:4
**Bryan** [11] - 1027:5, 1027:11, 1056:19, 1056:22, 1057:10, 1058:2, 1058:16, 1059:10, 1063:11, 1084:13, 1089:6
**bucks** [4] - 1053:17, 1062:16, 1062:19, 1077:14
**building** [1] - 1090:8
**buildings** [1] - 1016:25
**bullet** [4] - 1015:1, 1015:4, 1015:5, 1036:8
**bullets** [4] - 1014:22, 1036:6, 1041:25, 1067:13
**bunch** [6] - 1008:5, 1051:3, 1059:12, 1059:17, 1070:15
**burden** [10] - 1093:16, 1093:18, 1096:17, 1096:21, 1101:8, 1102:7, 1102:17, 1106:15, 1106:21, 1127:13
**bus** [3] - 1074:14, 1076:22, 1079:10
**business** [4] - 1114:3, 1118:21, 1143:2, 1157:6
**businesses** [2] - 1031:4, 1118:4
**busy** [1] - 1060:6
**buy** [9] - 1014:7, 1017:24, 1018:7, 1019:14, 1019:22, 1019:23, 1025:2, 1066:23
**buying** [2] - 1006:12
**BY** [2] - 1002:15, 1083:14

## C

**Cadman** [2] - 1002:17, 1002:22
**calamity** [1] - 1141:20
**Cale** [1] - 1068:15
**calendar** [1] - 1003:4
**camera** [1] - 1051:6
**cameras** [1] - 1025:13
**candy** [1] - 1018:8
**cannot** [2] - 1119:12, 1136:6

**capable** [2] - 1118:13, 1118:15
**caprice** [1] - 1094:9
**capture** [1] - 1085:13
**captured** [7] - 1010:19, 1011:14, 1020:20, 1023:23, 1026:25, 1087:12, 1088:6
**captures** [1] - 1020:22
**car** [67] - 1010:12, 1010:13, 1010:14, 1010:16, 1010:23, 1010:25, 1011:4, 1011:5, 1011:6, 1011:18, 1016:7, 1016:21, 1019:6, 1021:17, 1021:18, 1021:19, 1021:23, 1022:3, 1022:5, 1022:7, 1025:19, 1025:24, 1026:4, 1027:12, 1027:13, 1027:14, 1037:18, 1037:24, 1037:25, 1038:1, 1038:11, 1043:2, 1043:14, 1043:19, 1051:2, 1056:25, 1057:2, 1058:2, 1058:10, 1058:14, 1058:15, 1058:19, 1060:4, 1060:5, 1061:4, 1063:10, 1064:9, 1064:10, 1064:14, 1064:15, 1069:15, 1071:13, 1073:20, 1075:18, 1075:19, 1075:20, 1075:25, 1078:20, 1078:25, 1079:5, 1080:3, 1086:23, 1088:4, 1108:11, 1108:12
**card** [2] - 1019:14, 1019:20, 1019:21
**cardinal** [1] - 1136:5
**care** [3] - 1048:7, 1053:4, 1073:20
**careful** [3] - 1046:21, 1111:15, 1142:12
**carefully** [3] - 1081:17, 1094:2, 1139:8
**carelessness** [1] - 1111:2
**Carolina** [9] - 1009:22, 1009:23, 1059:22, 1066:23, 1074:15, 1085:14, 1088:23, 1148:5, 1148:6

**carried** [6] - 1034:3, 1127:19, 1128:10, 1128:16, 1130:15, 1133:3
**carries** [2] - 1022:5, 1127:5
**carry** [6] - 1034:20, 1126:19, 1131:19, 1132:6, 1132:18, 1134:9
**carrying** [7] - 1018:5, 1097:23, 1098:5, 1126:13, 1130:21, 1132:24, 1134:12
**cartels** [1] - 1069:8
**Carter** [1] - 1080:16
**Casale** [2] - 1021:8, 1054:6
**Casale's** [1] - 1022:19
**case** [110] - 1003:4, 1006:9, 1008:1, 1008:14, 1013:4, 1015:4, 1030:1, 1036:15, 1037:15, 1038:10, 1038:17, 1038:18, 1045:1, 1045:12, 1045:21, 1046:25, 1049:20, 1050:25, 1051:9, 1051:12, 1052:8, 1054:9, 1054:16, 1054:17, 1055:25, 1059:6, 1060:13, 1061:19, 1062:4, 1062:7, 1063:7, 1063:9, 1063:15, 1068:5, 1069:7, 1075:21, 1077:11, 1078:7, 1078:16, 1080:4, 1082:6, 1083:16, 1083:17, 1083:20, 1084:17, 1085:10, 1086:23, 1086:24, 1087:25, 1090:17, 1090:20, 1090:25, 1091:8, 1091:11, 1091:16, 1092:6, 1092:20, 1094:14, 1094:15, 1095:11, 1097:1, 1098:22, 1099:13, 1100:2, 1100:6, 1100:23, 1101:1, 1101:6, 1101:10, 1101:20, 1103:8, 1106:5, 1106:9, 1106:11, 1106:13, 1107:3, 1107:6, 1108:14, 1108:20, 1109:5, 1109:17,

1109:19, 1109:21, 1111:4, 1113:8, 1135:4, 1135:8, 1135:10, 1135:23, 1135:25, 1136:3, 1136:10, 1136:25, 1137:7, 1139:7, 1139:14, 1140:3, 1141:18, 1142:2, 1142:13, 1142:17, 1142:21, 1142:22, 1143:4, 1143:16, 1155:7, 1155:10, 1155:21, 1156:24
**Case** [1] - 1003:5
**cases** [3] - 1024:2, 1059:8, 1113:11
**cash** [17] - 1014:9, 1015:3, 1018:10, 1018:14, 1018:15, 1022:22, 1025:3, 1025:18, 1037:17, 1038:1, 1038:2, 1038:3, 1066:1, 1066:21, 1077:15
**cashier** [2] - 1035:15, 1040:16
**cashiers** [1] - 1054:2
**cashiers'** [1] - 1032:3
**catch** [2] - 1006:13, 1076:22
**Caucasian** [1] - 1080:23
**caught** [5] - 1016:8, 1023:19, 1027:3, 1081:7
**caused** [3] - 1124:1, 1134:2, 1134:13
**caused"** [2] - 1125:16, 1125:20
**causes** [2] - 1123:5, 1123:16
**causing** [2] - 1118:16, 1125:15
**caution** [2] - 1115:18, 1116:3
**cell** [24] - 1009:19, 1009:20, 1009:25, 1010:3, 1010:8, 1018:19, 1024:5, 1024:8, 1024:13, 1026:18, 1026:21, 1027:1, 1027:22, 1042:8, 1042:16, 1043:7, 1045:11, 1069:9, 1088:25, 1108:11, 1144:2
**Central** [6] - 1023:22, 1023:23, 1024:16, 1080:16, 1155:25,

1156:5
**cents** [1] - 1066:12
**certain** [10] - 1012:4, 1041:24, 1095:10, 1095:12, 1095:14, 1099:14, 1107:10, 1107:11, 1110:5, 1110:7
**certainly** [10] - 1048:1, 1066:21, 1069:7, 1072:4, 1072:11, 1142:3, 1142:22, 1143:9, 1148:21, 1156:20
**certainty** [1] - 1078:22
**chair** [1] - 1047:16
**challenge** [1] - 1069:10
**challenged** [1] - 1088:19
**chambers** [1] - 1143:23
**chance** [3] - 1082:5, 1088:8, 1152:10
**change** [5] - 1020:7, 1020:13, 1053:22, 1053:25, 1135:15
**changed** [2] - 1053:24, 1061:12
**changes** [3] - 1004:2, 1067:22, 1068:1
**character** [2] - 1094:6, 1116:14
**characterized** [1] - 1113:7
**CHARGE** [1] - 1090:15
**charge** [21] - 1005:2, 1059:2, 1066:17, 1077:10, 1082:12, 1093:11, 1093:22, 1094:18, 1094:20, 1094:23, 1094:24, 1106:24, 1109:13, 1109:20, 1121:12, 1131:7, 1134:17, 1135:3, 1140:7, 1140:24
**charged** [48] - 1029:1, 1029:7, 1029:11, 1029:15, 1029:18, 1035:7, 1035:10, 1066:13, 1091:2, 1096:24, 1107:23, 1109:15, 1109:18, 1109:24, 1110:20, 1110:22, 1111:22, 1112:1, 1112:12, 1112:17, 1113:15, 1113:21, 1114:12, 1117:4, 1117:17,

1120:22, 1122:25, 1123:13, 1123:21, 1124:9, 1125:2, 1125:4, 1125:19, 1126:8, 1126:15, 1126:21, 1127:11, 1127:21, 1128:2, 1128:7, 1128:12, 1131:11, 1131:20, 1132:7, 1132:19, 1133:17, 1133:23, 1133:24
**charges** [22] - 1007:9, 1029:2, 1029:3, 1035:2, 1058:24, 1065:24, 1066:17, 1081:18, 1093:6, 1110:5, 1110:6, 1111:23, 1116:19, 1119:17, 1119:19, 1121:14, 1121:24, 1122:9, 1126:12, 1131:12, 1131:24, 1132:11
**charging** [2] - 1065:25, 1066:1
**Charleane** [1] - 1002:22
**charted** [1] - 1076:24
**charts** [6] - 1069:11, 1069:20, 1109:8, 1109:11
**chased** [2] - 1069:8
**check** [4] - 1018:5, 1037:15, 1061:18, 1064:23
**checked** [1] - 1067:25
**checking** [1] - 1013:18
**cheese** [3] - 1050:23, 1052:5, 1066:16
**Chemist** [1] - 1051:8
**Christmas** [1] - 1060:2
**Chrome** [1] - 1012:4
**chronologically** [1] - 1157:11
**circle** [4] - 1021:4, 1024:1, 1028:13
**circling** [1] - 1022:14
**circuits** [1] - 1156:9
**circumstance** [1] - 1108:8
**circumstances** [4] - 1111:4, 1111:15, 1111:20, 1113:8
**circumstantial** [6] - 1097:5, 1097:14, 1098:18, 1098:20, 1098:23, 1099:10
**citing** [1] - 1007:19

**citizenship** [1] - 1143:12
**city** [1] - 1065:6
**City** [1] - 1012:11
**civil** [1] - 1094:15
**civilian** [1] - 1052:12
**claims** [1] - 1010:6
**clarification** [1] - 1095:23
**classic** [1] - 1048:20
**clear** [5] - 1007:15, 1013:19, 1016:12, 1037:16, 1038:10
**clearer** [1] - 1096:2
**clearly** [2] - 1103:13, 1121:9
**clerk** [7] - 1005:1, 1062:2, 1090:10, 1140:13, 1145:5, 1153:1
**CLERK** [11] - 1003:2, 1003:21, 1090:16, 1105:2, 1130:1, 1140:14, 1145:2, 1145:7, 1152:21, 1153:2, 1153:9
**clerk's** [1] - 1051:22
**client** [2] - 1096:5, 1146:21
**close** [11] - 1004:24, 1006:2, 1010:9, 1023:14, 1044:10, 1046:21, 1052:13, 1053:7, 1053:11, 1073:11, 1148:16
**close-up** [1] - 1044:10
**closed** [4] - 1050:25, 1052:25, 1136:2, 1155:4
**closely** [4] - 1009:5, 1016:20, 1080:24, 1151:6
**closer** [2] - 1040:11, 1052:14
**closest** [1] - 1056:25
**closet** [1] - 1051:21
**closing** [13] - 1004:21, 1006:1, 1006:18, 1046:19, 1047:1, 1049:5, 1083:15, 1083:24, 1084:15, 1089:10, 1090:18, 1151:8, 1151:9
**clothes** [31] - 1008:3, 1013:10, 1013:23, 1019:19, 1022:10, 1028:4, 1028:11, 1041:8, 1043:10, 1045:7, 1045:11, 1051:1, 1060:15,

1060:16, 1061:9, 1067:25, 1068:9, 1068:11, 1069:1, 1069:4, 1072:6, 1072:13, 1072:14, 1072:17, 1072:20, 1072:21, 1073:5, 1081:4, 1086:12, 1086:14, 1086:18
**clothing** [3] - 1044:21, 1085:12, 1089:2
**clutter** [1] - 1086:24
**co** [2] - 1107:12, 1114:22
**co-conspirators** [2] - 1107:12, 1114:22
**coast** [2] - 1013:19, 1037:16
**Code** [1] - 1127:1
**code** [4] - 1009:23, 1009:24, 1078:2, 1122:25
**coil** [1] - 1049:2
**coincidence** [1] - 1074:5
**coincidentally** [1] - 1064:22
**colleague** [5] - 1050:3, 1051:11, 1062:23, 1063:14, 1066:18
**collect** [1] - 1088:23
**college** [1] - 1071:4
**color** [2] - 1077:21, 1078:23
**colored** [1] - 1100:22
**Columbia** [1] - 1118:24
**combined** [1] - 1095:20
**coming** [4] - 1013:16, 1080:3, 1142:23, 1156:17
**commands** [1] - 1123:3
**commend** [1] - 1139:20
**comment** [1] - 1030:19
**commented** [1] - 1091:21
**commerce** [30] - 1031:10, 1031:11, 1032:17, 1032:21, 1116:24, 1116:25, 1117:5, 1117:12, 1117:13, 1118:10, 1118:11, 1118:22, 1118:24, 1119:1, 1119:4, 1119:5,

1119:8, 1119:9, 1119:12, 1120:1, 1120:2, 1121:20, 1121:21, 1122:5, 1122:6, 1122:15, 1122:16, 1122:22
**commission** [21] - 1034:4, 1034:5, 1120:24, 1121:1, 1121:6, 1121:11, 1123:3, 1123:25, 1124:12, 1124:21, 1125:2, 1127:20, 1127:21, 1128:12, 1128:19, 1128:20, 1129:2, 1130:8, 1133:11, 1133:17, 1134:1
**commit** [34] - 1010:11, 1013:19, 1029:10, 1033:6, 1033:11, 1033:16, 1034:2, 1034:16, 1036:15, 1036:17, 1036:23, 1038:12, 1045:7, 1076:3, 1077:12, 1111:24, 1112:7, 1116:20, 1119:18, 1119:20, 1120:5, 1120:8, 1120:13, 1120:19, 1120:22, 1121:8, 1121:9, 1123:15, 1123:16, 1124:1, 1124:3, 1127:16, 1134:2
**commitment** [1] - 1136:5
**commits** [3] - 1117:1, 1117:3, 1123:2
**committed** [25] - 1007:13, 1030:4, 1034:1, 1034:15, 1043:10, 1054:20, 1119:15, 1123:13, 1123:17, 1123:24, 1124:10, 1124:16, 1124:17, 1124:20, 1124:23, 1125:16, 1125:17, 1126:9, 1126:10, 1127:15, 1127:24, 1128:7, 1133:25, 1134:5
**committing** [5] - 1054:21, 1071:11, 1120:19, 1124:18, 1128:3
**commodities** [5] - 1117:13, 1120:2, 1121:20, 1122:5, 1122:15

**commodity** [1] - 1116:24
**common** [15] - 1071:4, 1074:20, 1084:1, 1084:5, 1085:22, 1085:24, 1085:25, 1086:4, 1098:11, 1099:4, 1100:5, 1102:16, 1113:14, 1115:25, 1118:17
**commonly** [1] - 1130:17
**commonsense** [2] - 1043:6, 1105:21
**communicate** [4] - 1136:23, 1137:2, 1137:5, 1137:6
**communicating** [4] - 1039:24, 1142:19, 1142:20, 1155:19
**communication** [6] - 1037:8, 1037:9, 1037:11, 1039:24, 1097:6, 1155:17
**community** [1] - 1016:22
**company** [1] - 1118:1
**compare** [3] - 1016:14, 1039:3, 1070:10
**compared** [1] - 1065:4
**complaint** [1] - 1064:5
**complete** [3] - 1139:19, 1140:25, 1150:11
**completed** [3] - 1005:21, 1119:7, 1139:2
**completely** [1] - 1148:17
**complicated** [1] - 1147:25
**computer** [1] - 1002:25
**computer-aided** [1] - 1002:25
**concede** [2] - 1065:9, 1069:10
**concept** [1] - 1068:13
**concern** [5] - 1107:4, 1107:5, 1107:14, 1107:17, 1118:20
**concerning** [2] - 1091:17, 1100:4
**concerns** [1] - 1105:18
**conclude** [2] - 1013:5, 1103:24
**concluded** [5] - 1005:23, 1046:22,

1090:18, 1156:10
**concludes** [1] - 1090:7
**conclusion** [4] - 1055:12, 1056:4, 1092:4, 1099:7
**conclusions** [1] - 1068:20
**concur** [1] - 1149:8
**concurs** [1] - 1149:9
**conditions** [1] - 1068:18
**conduct** [11] - 1092:19, 1111:3, 1111:9, 1113:8, 1115:24, 1121:11, 1124:13, 1125:18, 1136:19, 1142:11, 1143:2
**conducting** [2] - 1004:21, 1004:22
**conferral** [1] - 1050:15
**conferred** [1] - 1148:8
**conflicts** [2] - 1091:13, 1105:12
**confuse** [1] - 1142:17
**confuses** [1] - 1155:15
**conjecture** [1] - 1136:14
**conjunctive** [1] - 1110:15
**connected** [1] - 1042:16
**connection** [4] - 1034:10, 1034:11, 1114:25, 1133:3
**conscientiously** [1] - 1135:13
**conscious** [1] - 1111:7
**consequences** [1] - 1139:10
**consider** [31] - 1055:5, 1058:24, 1077:10, 1077:11, 1084:2, 1084:3, 1084:20, 1085:7, 1085:8, 1095:2, 1095:12, 1096:15, 1098:10, 1098:22, 1099:21, 1100:24, 1103:18, 1105:2, 1105:13, 1105:15, 1106:20, 1107:25, 1108:8, 1108:14, 1109:11, 1109:22, 1113:13, 1113:25, 1114:11, 1127:9, 1139:8
**considerably** [1] -

1054:8
**consideration** [8] - 1092:14, 1092:16, 1094:16, 1094:21, 1100:12, 1108:19, 1111:15, 1136:6
**considerations** [1] - 1099:23
**considered** [2] - 1106:12, 1127:10
**considering** [2] - 1113:24, 1135:11
**consist** [1] - 1121:4
**consistent** [4] - 1025:24, 1026:2, 1045:15, 1054:1
**consists** [1] - 1109:21
**conspiracy** [39] - 1029:9, 1036:13, 1036:14, 1036:20, 1037:1, 1038:14, 1111:24, 1111:25, 1112:1, 1112:3, 1112:5, 1112:7, 1112:9, 1112:12, 1112:13, 1112:16, 1112:19, 1113:6, 1113:11, 1113:19, 1113:20, 1113:21, 1113:23, 1113:25, 1114:1, 1114:6, 1114:12, 1114:17, 1114:20, 1115:1, 1115:5, 1115:17, 1115:20, 1115:21, 1116:2, 1116:7, 1116:11, 1116:14, 1117:17
**conspiracy's** [1] - 1115:8
**conspirator** [2] - 1114:14, 1116:18
**conspirator's** [1] - 1115:10
**conspirators** [5] - 1107:12, 1112:6, 1112:21, 1114:22, 1115:14
**conspire** [1] - 1117:11
**conspired** [2] - 1038:8, 1038:9
**conspires** [1] - 1116:25
**conspiring** [3] - 1116:20, 1117:5, 1119:18
**constitute** [4] - 1121:8, 1129:5, 1129:8, 1129:11
**consult** [1] - 1155:2

**contact** [1] - 1144:3
**context** [1] - 1113:10
**continue** [7] - 1045:22, 1046:21, 1082:5, 1141:25, 1142:1, 1142:5, 1151:17
**continued** [8] - 1020:23, 1079:11, 1089:4, 1144:6, 1150:4, 1154:19, 1154:20, 1156:24
**Continued** [4] - 1040:25, 1057:11, 1104:4, 1129:15
**continues** [2] - 1022:4, 1025:5
**Continuing** [4] - 1021:1, 1058:1, 1080:1, 1130:1
**continuing** [3] - 1041:1, 1105:1, 1141:21
**contract** [1] - 1036:21
**contradicted** [3] - 1068:3, 1102:12, 1105:11
**contradiction** [2] - 1103:16, 1103:18
**contrary** [1] - 1101:19
**control** [5] - 1030:22, 1107:20, 1128:18, 1130:4, 1130:5
**controlling** [1] - 1088:14
**controls** [1] - 1091:18
**convenience** [2] - 1117:7, 1117:15
**convenient** [1] - 1073:4
**converted** [1] - 1128:14
**convict** [4] - 1093:21, 1094:14, 1098:15, 1120:20
**convicted** [1] - 1136:7
**conviction** [1] - 1135:16
**convinced** [1] - 1135:15
**convincing** [1] - 1094:6
**cool** [2] - 1072:23, 1072:24
**cooperate** [1] - 1113:2
**cooperation** [3] - 1090:21, 1141:7, 1156:21
**coordination** [1] - 1037:19

**copied** [2] - 1153:18
**copper** [3] - 1009:11, 1014:23, 1043:23
**cops** [3] - 1053:14, 1059:5, 1059:10
**copy** [4] - 1090:13, 1140:24, 1140:25, 1154:6
**core** [1] - 1014:25
**corner** [9] - 1021:3, 1021:4, 1023:14, 1023:16, 1032:5, 1032:7, 1032:8, 1032:9, 1050:8
**correct** [8] - 1054:24, 1055:15, 1056:10, 1087:3, 1145:12, 1145:13, 1146:8, 1147:1
**corroborated** [3] - 1026:18, 1047:25, 1048:7
**corroborates** [1] - 1075:5
**corroboration** [5] - 1084:1, 1084:4, 1085:10, 1085:11, 1085:22
**cost** [1] - 1019:22
**counsel** [25] - 1003:6, 1003:7, 1003:21, 1005:7, 1046:5, 1046:11, 1046:16, 1083:3, 1083:8, 1090:8, 1092:19, 1093:1, 1100:20, 1105:6, 1106:17, 1139:25, 1141:2, 1145:2, 1147:18, 1148:8, 1149:22, 1151:2, 1152:21, 1153:22, 1154:10
**Counsel** [5] - 1005:12, 1140:11, 1143:21, 1150:2, 1154:15
**counsel's** [1] - 1137:16
**counsels** [1] - 1123:3
**Count** [34] - 1029:12, 1033:24, 1034:9, 1034:10, 1034:12, 1035:10, 1036:13, 1111:23, 1117:8, 1119:17, 1119:19, 1119:22, 1121:14, 1121:24, 1122:9, 1126:12, 1126:15, 1126:21, 1127:8, 1127:9, 1127:11, 1127:14, 1127:21,

1128:2, 1128:12, 1130:21, 1131:12, 1131:20, 1131:24, 1132:7, 1132:19

**count** [14] - 1034:9, 1053:25, 1109:22, 1109:24, 1116:19, 1119:14, 1126:11, 1132:11, 1133:5, 1135:20, 1135:21, 1137:12, 1138:13, 1138:22

**counter** [1] - 1018:4

**country** [1] - 1081:20

**counts** [10] - 1029:15, 1029:19, 1034:8, 1035:17, 1045:16, 1109:21, 1110:11, 1111:22, 1134:10, 1156:18

**Counts** [16] - 1029:15, 1029:19, 1034:6, 1034:23, 1121:12, 1122:24, 1123:10, 1123:21, 1124:9, 1131:7, 1131:11, 1133:9, 1133:18, 1133:23, 1134:7, 1138:19

**couple** [4] - 1005:18, 1012:5, 1014:2, 1052:5

**coupled** [1] - 1124:16

**course** [24] - 1004:23, 1006:13, 1031:17, 1033:10, 1059:11, 1060:5, 1060:18, 1060:19, 1063:25, 1069:17, 1073:17, 1076:20, 1089:10, 1096:10, 1101:15, 1101:23, 1106:8, 1106:9, 1113:4, 1121:10, 1134:22, 1146:20, 1148:19, 1152:10

**COURT** [74] - 1002:1, 1003:13, 1003:19, 1003:23, 1004:11, 1004:15, 1004:18, 1004:23, 1005:1, 1005:6, 1005:12, 1030:19, 1045:18, 1046:1, 1046:7, 1046:10, 1046:16, 1082:1, 1082:10, 1082:22, 1082:24, 1083:2, 1083:8, 1090:6, 1090:15, 1140:6, 1140:11,

1140:13, 1140:16, 1141:13, 1143:21, 1145:4, 1145:9, 1145:14, 1145:16, 1145:21, 1145:25, 1146:3, 1146:5, 1146:7, 1146:10, 1146:13, 1146:15, 1146:17, 1146:23, 1147:2, 1147:5, 1147:8, 1147:11, 1147:20, 1147:23, 1148:6, 1148:15, 1148:20, 1149:8, 1149:10, 1149:14, 1149:16, 1149:18, 1149:21, 1150:2, 1151:23, 1152:4, 1152:7, 1152:16, 1152:23, 1153:10, 1153:13, 1153:22, 1154:9, 1154:15, 1157:2, 1157:13, 1157:18

**court** [16] - 1003:1, 1006:22, 1027:7, 1046:3, 1082:9, 1082:21, 1127:4, 1127:17, 1127:25, 1137:8, 1139:3, 1139:14, 1140:12, 1144:11, 1145:1, 1152:20

**Court** [24] - 1002:22, 1005:1, 1007:10, 1029:2, 1029:4, 1033:14, 1047:5, 1093:6, 1095:7, 1136:24, 1137:9, 1138:4, 1138:12, 1139:21, 1145:6, 1147:15, 1148:9, 1149:12, 1152:19, 1154:1, 1158:6, 1158:7, 1158:8, 1158:9

**Court's** [10] - 1005:3, 1006:8, 1006:21, 1090:9, 1096:7, 1137:15, 1149:11, 1152:3, 1152:25, 1153:1

**courthouse** [1] - 1155:23

**Courthouse** [1] - 1002:5

**courtroom** [19] - 1004:1, 1045:25, 1046:9, 1052:18, 1052:20, 1080:20,

1082:17, 1082:20, 1096:14, 1097:21, 1097:22, 1098:4, 1140:21, 1141:10, 1142:11, 1148:13, 1150:3, 1150:16, 1150:18

**COURTROOM** [2] - 1046:3, 1082:19

**courts** [1] - 1092:11

**Cousin** [1] - 1080:12, 1083:15, 1089:11

**cousin** [3] - 1013:8, 1079:7, 1080:12

**cousin's** [1] - 1079:7

**coverage** [1] - 1155:10

**covered** [1] - 1055:8

**crazy** [1] - 1047:13

**create** [5] - 1047:22, 1049:11, 1150:14, 1151:15, 1152:12

**creatures** [2] - 1066:14, 1066:16

**credibility** [13] - 1058:23, 1083:25, 1084:3, 1084:6, 1084:8, 1084:20, 1085:8, 1085:9, 1085:21, 1097:12, 1100:16, 1100:20, 1101:1

**credible** [3] - 1058:25, 1084:22, 1102:13

**credit** [4] - 1058:20, 1066:21, 1068:16, 1084:16

**credits** [3] - 1083:15, 1083:19, 1090:1

**crime** [103] - 1014:20, 1016:17, 1016:23, 1021:8, 1029:11, 1030:9, 1033:4, 1033:8, 1033:16, 1033:17, 1034:2, 1034:5, 1036:15, 1054:4, 1054:20, 1054:21, 1077:3, 1081:5, 1096:24, 1108:7, 1111:25, 1112:5, 1112:6, 1112:8, 1112:9, 1115:19, 1117:3, 1120:11, 1120:20, 1120:22, 1120:24, 1121:2, 1121:8, 1121:10, 1121:11, 1123:13, 1123:14, 1123:16, 1123:17, 1123:18, 1124:3,

1124:5, 1124:6, 1124:8, 1124:12, 1124:14, 1124:15, 1124:17, 1124:18, 1124:20, 1124:22, 1124:23, 1125:2, 1125:4, 1125:15, 1125:17, 1126:1, 1126:8, 1126:14, 1126:20, 1126:21, 1126:23, 1127:2, 1127:3, 1127:5, 1127:6, 1127:14, 1127:16, 1127:21, 1127:24, 1128:3, 1128:5, 1128:7, 1128:12, 1128:19, 1128:20, 1129:2, 1129:9, 1129:12, 1129:14, 1130:6, 1130:8, 1130:9, 1130:11, 1131:9, 1131:19, 1131:20, 1131:22, 1132:6, 1132:7, 1132:9, 1132:18, 1132:19, 1132:25, 1133:5, 1133:11, 1133:25, 1134:2, 1134:5, 1134:6

**crimes** [23] - 1028:25, 1029:8, 1029:10, 1029:23, 1030:4, 1036:17, 1036:24, 1038:12, 1052:6, 1077:12, 1083:21, 1085:13, 1086:2, 1091:2, 1107:23, 1109:15, 1110:22, 1124:9, 1132:21, 1133:17, 1133:23, 1134:10, 1134:13

**criminal** [12] - 1090:25, 1094:14, 1101:6, 1106:9, 1112:5, 1115:23, 1115:24, 1121:3, 1124:24, 1125:6, 1125:8, 1125:18

**criminalist** [1] - 1049:18

**Criminalist** [1] - 1061:23

**criminalists** [1] - 1068:23

**cross** [4] - 1055:14, 1084:25, 1095:5, 1101:11

**cross-examination** [4] - 1055:14, 1084:25,

1095:5, 1101:11

**crossed** [3] - 1011:13, 1012:19, 1026:17

**crowd** [1] - 1073:7

**Cruise** [5] - 1062:13, 1077:25, 1078:3, 1078:13, 1078:18

**cue** [1] - 1148:14

**culminate** [1] - 1121:11

**curing** [1] - 1134:12

**currency** [6] - 1117:6, 1117:14, 1120:3, 1121:21, 1122:6, 1122:16

**custody** [5] - 1075:24, 1117:24, 1140:17, 1152:9, 1155:4

**cut** [3] - 1081:3, 1086:3, 1093:1

**cut-off** [1] - 1086:3

**Cynthia** [1] - 1068:15

## D

**dandy** [1] - 1150:10

**dangling** [1] - 1026:12

**dark** [1] - 1021:21

**data** [6] - 1011:6, 1024:4, 1024:5, 1065:3, 1088:25

**date** [4] - 1110:7, 1110:8, 1110:10, 1139:1

**dates** [2] - 1110:5, 1110:9

**dating** [1] - 1048:12

**daughter** [1] - 1074:20

**Dave** [1] - 1009:20

**days** [1] - 1006:11

**deal** [3] - 1076:18, 1076:19, 1088:18

**dealing** [1] - 1073:7

**debate** [1] - 1006:3

**decide** [19] - 1058:17, 1058:25, 1064:25, 1068:15, 1092:6, 1098:13, 1099:11, 1100:14, 1101:3, 1102:14, 1102:21, 1105:9, 1108:24, 1119:5, 1130:22, 1135:2, 1135:10, 1139:7, 1148:22

**decided** [2] - 1018:7, 1109:8

**decidedly** [3] - 1004:5, 1065:4, 1069:1

**deciding** [10] - 1058:24, 1095:16,

1098:9, 1099:24, 1102:21, 1105:3, 1105:13, 1106:20, 1106:23, 1113:23
**decision** [8] - 1094:8, 1096:16, 1096:24, 1099:20, 1102:23, 1133:20, 1136:15, 1138:24
**decision-making** [1] - 1096:24
**dedication** [1] - 1047:12
**deed** [1] - 1121:3
**deem** [1] - 1091:15
**deemed** [2] - 1050:13, 1114:6
**Defendant** [3] - 1002:8, 1002:19, 1090:18
**defendant** [263] - 1003:22, 1006:5, 1006:25, 1007:12, 1008:2, 1008:7, 1009:2, 1009:3, 1009:6, 1009:18, 1009:21, 1010:5, 1010:6, 1011:17, 1011:19, 1013:7, 1013:18, 1013:19, 1013:22, 1014:5, 1014:9, 1014:15, 1014:18, 1014:21, 1015:9, 1015:23, 1016:3, 1016:5, 1017:2, 1017:12, 1017:16, 1017:18, 1017:22, 1017:24, 1018:4, 1018:6, 1018:8, 1018:13, 1018:19, 1018:21, 1018:23, 1019:4, 1019:5, 1019:7, 1019:8, 1019:10, 1019:15, 1019:18, 1019:24, 1020:12, 1022:1, 1022:25, 1023:3, 1023:6, 1023:17, 1024:9, 1024:15, 1024:21, 1025:1, 1025:3, 1025:8, 1025:17, 1026:19, 1026:20, 1027:1, 1027:6, 1027:13, 1027:14, 1027:17, 1028:23, 1028:25, 1029:7, 1030:3, 1030:7, 1030:12, 1031:3, 1031:5, 1031:25,

1032:12, 1033:1, 1033:6, 1033:7, 1033:10, 1033:22, 1034:1, 1034:15, 1034:16, 1034:25, 1035:7, 1035:20, 1036:17, 1037:2, 1037:15, 1037:18, 1038:1, 1038:8, 1038:15, 1038:19, 1040:5, 1041:2, 1041:15, 1041:16, 1042:8, 1043:9, 1043:14, 1043:19, 1043:25, 1044:9, 1044:16, 1044:19, 1046:6, 1046:19, 1047:2, 1048:1, 1083:21, 1084:13, 1084:19, 1084:22, 1089:14, 1089:17, 1090:3, 1092:2, 1092:4, 1092:15, 1093:4, 1093:10, 1093:12, 1093:18, 1093:21, 1094:19, 1094:23, 1098:16, 1101:6, 1101:10, 1101:11, 1102:8, 1102:9, 1102:18, 1106:9, 1106:11, 1106:14, 1106:15, 1107:7, 1107:9, 1107:14, 1107:23, 1107:24, 1108:3, 1108:5, 1108:10, 1108:21, 1109:6, 1109:15, 1109:18, 1110:2, 1110:12, 1111:2, 1111:23, 1112:12, 1113:19, 1113:24, 1113:25, 1114:6, 1114:10, 1114:11, 1114:13, 1114:16, 1115:1, 1115:4, 1115:7, 1115:17, 1115:22, 1116:6, 1116:8, 1116:9, 1116:13, 1116:19, 1117:4, 1117:10, 1118:3, 1118:5, 1119:3, 1119:6, 1119:10, 1119:13, 1119:17, 1119:19, 1119:24, 1120:5, 1120:8, 1120:9, 1120:13, 1120:18, 1120:21, 1120:22, 1121:12, 1121:14, 1121:18, 1121:24, 1122:3,

1122:9, 1122:13, 1122:24, 1123:12, 1123:20, 1123:24, 1124:4, 1124:7, 1124:9, 1124:11, 1124:13, 1124:15, 1124:16, 1125:1, 1125:10, 1125:13, 1125:17, 1125:22, 1126:2, 1126:8, 1126:9, 1126:12, 1126:18, 1127:10, 1127:14, 1127:15, 1127:18, 1127:24, 1128:2, 1128:7, 1128:9, 1128:11, 1128:16, 1128:18, 1128:21, 1128:24, 1129:1, 1129:3, 1129:7, 1129:11, 1129:13, 1130:2, 1130:14, 1130:19, 1130:20, 1130:23, 1131:6, 1131:7, 1131:12, 1131:17, 1131:24, 1132:4, 1132:11, 1132:16, 1133:24, 1134:8, 1136:7, 1138:19, 1145:3, 1152:22
**defendant's** [36] - 1009:23, 1011:22, 1012:2, 1014:13, 1015:8, 1027:22, 1028:1, 1028:2, 1028:10, 1032:14, 1040:17, 1040:19, 1041:9, 1041:10, 1041:18, 1042:3, 1043:1, 1045:4, 1045:6, 1045:13, 1086:22, 1089:19, 1094:18, 1094:22, 1096:18, 1108:11, 1111:13, 1111:17, 1114:19, 1114:24, 1115:9, 1115:10, 1115:18, 1120:25, 1123:10
**Defendant's** [1] - 1051:12
**defendants** [2] - 1107:11, 1107:21
**defense** [10] - 1045:20, 1046:23, 1046:24, 1054:8, 1055:6, 1067:3, 1084:23, 1086:25, 1100:20, 1149:9
**Defense** [1] - 1067:4

**define** [2] - 1090:24, 1093:25
**defines** [1] - 1117:19
**definitely** [1] - 1070:5
**definition** [3] - 1130:10, 1133:12, 1155:11
**definitions** [2] - 1122:20, 1133:3
**deformed** [1] - 1015:1
**degree** [3] - 1031:9, 1116:23, 1118:9
**delay** [7] - 1117:5, 1117:12, 1120:1, 1121:19, 1122:4, 1122:14, 1138:1
**delays** [1] - 1116:23
**Deleon** [31] - 1008:9, 1012:21, 1014:7, 1014:8, 1014:9, 1014:11, 1014:14, 1014:19, 1015:13, 1015:17, 1016:4, 1017:2, 1017:12, 1028:16, 1029:14, 1032:6, 1033:19, 1033:20, 1035:11, 1035:21, 1039:23, 1041:21, 1053:1, 1056:16, 1067:19, 1083:18, 1083:19, 1085:20, 1089:20, 1089:25, 1153:6
**Deleon's** [4] - 1014:25, 1036:2, 1036:9, 1153:16
**deliberate** [5] - 1006:14, 1007:21, 1082:13, 1141:18, 1155:2
**deliberately** [1] - 1111:6
**deliberating** [4] - 1135:25, 1140:22, 1141:21, 1142:4
**deliberation** [6] - 1005:19, 1006:10, 1142:6, 1148:22, 1151:14, 1156:1
**deliberations** [29] - 1007:24, 1029:25, 1091:6, 1092:23, 1108:16, 1134:16, 1134:18, 1134:19, 1135:22, 1136:8, 1136:24, 1137:2, 1137:9, 1137:14, 1137:18, 1139:11, 1140:23, 1141:7, 1141:21, 1150:4,

1151:2, 1151:8, 1151:17, 1154:19, 1154:23, 1156:10, 1156:11, 1156:24
**deliver** [1] - 1152:17
**delivered** [2] - 1006:9, 1138:4
**demanded** [5] - 1018:9, 1019:24, 1025:4, 1033:12, 1033:18
**demanding** [2] - 1143:11, 1143:13
**denied** [1] - 1043:25
**dent** [1] - 1069:4
**depicted** [1] - 1108:25
**deputy** [1] - 1090:10
**DEPUTY** [2] - 1046:3, 1082:19
**described** [7] - 1016:18, 1084:17, 1087:5, 1129:10, 1133:20, 1138:16, 1143:11
**describing** [2] - 1084:13, 1088:14
**descriptions** [2] - 1087:5
**deserves** [5] - 1100:1, 1100:18, 1101:5, 1104:2, 1109:4
**deserving** [1] - 1100:12
**design** [1] - 1113:15
**designed** [1] - 1128:13
**despite** [1] - 1010:6
**detail** [5] - 1085:4, 1085:5, 1103:20, 1105:19, 1112:23
**details** [1] - 1115:5
**Detective** [32] - 1003:12, 1009:14, 1014:20, 1015:2, 1015:5, 1016:18, 1021:8, 1022:19, 1026:6, 1027:4, 1027:11, 1027:24, 1028:7, 1028:14, 1041:6, 1041:22, 1044:5, 1048:13, 1054:5, 1054:6, 1054:7, 1055:11, 1056:19, 1058:5, 1059:1, 1059:7, 1060:3, 1061:5, 1068:4, 1084:12, 1088:11
**detective** [5] - 1014:20, 1021:8,

1048:13, 1054:16, 1055:7

**detectives** [1] - 1048:14

**determination** [5] - 1100:6, 1105:15, 1110:2, 1111:13, 1111:16

**determinations** [1] - 1102:24

**determine** [11] - 1035:5, 1037:3, 1105:23, 1107:5, 1111:18, 1117:16, 1119:11, 1125:1, 1128:5, 1133:10, 1136:11

**determined** [5] - 1015:7, 1028:16, 1028:22, 1055:21, 1102:5

**determining** [10] - 1098:23, 1100:16, 1103:2, 1106:1, 1107:24, 1108:20, 1109:5, 1113:12, 1114:11, 1120:25

**devising** [1] - 1121:5

**differ** [1] - 1103:14

**difference** [3] - 1044:23, 1084:10, 1156:3

**different** [12] - 1029:5, 1051:24, 1059:4, 1069:18, 1085:23, 1094:14, 1097:4, 1099:9, 1103:21, 1115:13, 1156:4

**differently** [2] - 1103:22

**difficult** [1] - 1143:11

**difficulty** [1] - 1039:24

**digest** [1] - 1022:17

**diligently** [1] - 1156:16

**dire** [1] - 1081:21

**direct** [12] - 1095:4, 1097:5, 1097:6, 1097:11, 1098:3, 1098:17, 1098:21, 1098:22, 1099:10, 1113:6, 1119:2, 1149:11

**directed** [1] - 1051:11

**directly** [11] - 1097:20, 1103:13, 1111:14, 1123:6, 1131:2, 1138:21, 1141:4, 1142:21, 1151:23, 1155:19, 1155:21

**Dirty** [1] - 1048:11

**disagree** [2] - 1068:14, 1091:24

**disapprove** [2] - 1108:15, 1108:25

**disapproved** [1] - 1092:21

**discerned** [1] - 1150:7

**discharge** [6] - 1035:10, 1035:18, 1035:19, 1101:20, 1131:3, 1154:4

**discharged** [6] - 1035:5, 1036:12, 1126:24, 1130:23, 1131:6, 1137:13

**discharging** [1] - 1133:4

**disclaimer** [1] - 1030:16

**disclose** [2] - 1137:9, 1137:10

**discrepancy** [1] - 1050:13

**discuss** [10] - 1045:21, 1052:11, 1082:6, 1111:21, 1135:8, 1135:23, 1135:25, 1142:2, 1142:3, 1155:7

**discussed** [3] - 1042:15, 1105:3, 1115:25

**discussing** [2] - 1135:12, 1154:24

**discussion** [1] - 1136:3

**disjunctive** [1] - 1110:17

**dismissed** [1] - 1068:24

**disobey** [1] - 1113:5

**display** [3] - 1130:24, 1145:18, 1147:12

**displaying** [1] - 1129:5

**dispute** [11] - 1030:1, 1030:6, 1031:23, 1032:23, 1033:23, 1034:23, 1035:12, 1035:25, 1036:11, 1047:23, 1047:25

**disputed** [1] - 1099:7

**disputes** [1] - 1032:25

**disputing** [1] - 1030:3

**disregard** [3] - 1096:11, 1104:1, 1113:5

**disregarded** [2] - 1095:15, 1096:12

**distinct** [1] - 1115:13

**distinguish** [1] - 1121:2

**distressed** [1] - 1051:14

**distressed-style** [1] - 1051:14

**District** [7] - 1117:10, 1118:24, 1119:24, 1121:18, 1122:3, 1122:13, 1126:18, 1131:17, 1132:4, 1132:16

**DISTRICT** [3] - 1002:1, 1002:1, 1002:11

**DNA** [25] - 1028:18, 1028:22, 1040:24, 1041:12, 1041:15, 1041:16, 1041:18, 1042:3, 1045:11, 1051:17, 1054:22, 1055:1, 1056:9, 1062:5, 1068:6, 1068:10, 1071:18, 1072:7, 1073:24, 1074:1, 1085:15, 1085:19, 1085:20, 1087:17, 1087:18

**documenting** [1] - 1061:6

**documents** [4] - 1102:3, 1102:6, 1109:9, 1141:3

**dollar** [1] - 1066:19

**Dollar** [4] - 1012:8, 1012:9, 1065:6, 1065:15

**dollars** [2] - 1084:10, 1089:16

**dominant** [3] - 1048:16, 1048:25, 1088:14

**dominion** [1] - 1130:3

**done** [15] - 1004:9, 1004:14, 1012:4, 1047:11, 1047:16, 1050:19, 1056:17, 1088:19, 1088:20, 1088:21, 1089:3, 1092:5, 1119:10, 1123:5

**DONOGHUE** [1] - 1002:14

**door** [8] - 1010:14, 1011:5, 1016:10, 1021:24, 1025:19, 1026:2, 1136:2, 1155:5

**dot** [1] - 1040:1

**doubt** [62] - 1006:24,

1030:11, 1033:10, 1035:18, 1038:22, 1045:13, 1047:22, 1049:7, 1049:11, 1052:8, 1072:13, 1080:19, 1081:3, 1081:14, 1081:18, 1083:20, 1086:7, 1091:4, 1093:13, 1093:17, 1093:23, 1093:24, 1093:25, 1094:1, 1094:3, 1094:5, 1094:9, 1094:13, 1094:17, 1094:22, 1098:17, 1101:9, 1106:24, 1107:7, 1107:25, 1108:6, 1108:22, 1109:6, 1109:16, 1110:19, 1112:10, 1112:15, 1113:18, 1120:7, 1120:13, 1120:22, 1123:22, 1126:6, 1127:9, 1127:13, 1127:24, 1128:6, 1128:9, 1128:17, 1128:25, 1130:14, 1130:23, 1133:15, 1133:21, 1136:12, 1138:15

**down** [15] - 1007:11, 1009:12, 1016:6, 1036:21, 1040:1, 1040:2, 1052:9, 1058:4, 1058:11, 1058:12, 1061:11, 1064:1, 1066:23, 1070:20, 1086:13

**download** [1] - 1012:1

**downloaded** [1] - 1008:19

**downstairs** [1] - 1063:25

**dramatic** [1] - 1052:18

**dramatically** [1] - 1087:2

**draw** [11] - 1075:9, 1091:14, 1092:3, 1093:3, 1097:17, 1098:9, 1099:12, 1101:17, 1107:8, 1107:12, 1115:16

**drawer** [2] - 1025:3, 1025:7

**drawing** [1] - 1102:16

**drawn** [7] - 1098:1, 1098:8, 1098:12, 1098:14, 1098:18, 1099:9, 1114:23

**dressed** [2] - 1057:7,

1057:9

**drill** [1] - 1155:24

**dripping** [3] - 1097:23, 1097:24, 1098:2

**drive** [2] - 1023:18, 1037:24

**driver** [5] - 1022:3, 1037:23, 1037:25, 1038:4, 1038:5

**driver's** [1] - 1040:7

**driving** [7] - 1011:10, 1023:8, 1024:15, 1037:24, 1038:11, 1042:19, 1058:14

**drops** [1] - 1076:10

**drove** [3] - 1010:17, 1026:24, 1037:25

**drug** [1] - 1127:3

**Duane** [27] - 1008:8, 1012:15, 1012:16, 1012:17, 1013:16, 1013:22, 1016:12, 1016:13, 1016:14, 1016:24, 1017:6, 1023:13, 1029:13, 1033:5, 1033:11, 1035:9, 1035:11, 1036:12, 1037:14, 1041:25, 1053:3, 1054:6, 1089:23, 1119:20, 1120:3

**dude** [1] - 1076:21

**dudes** [1] - 1073:1

**Duke** [1] - 1080:17

**dumpster** [5] - 1021:12, 1022:6, 1022:15, 1022:21, 1023:3

**dumpsters** [1] - 1021:5

**duration** [1] - 1115:11

**During** [1] - 1110:21

**during** [42] - 1007:18, 1007:22, 1007:24, 1008:4, 1012:21, 1014:2, 1034:3, 1034:21, 1035:24, 1071:10, 1081:21, 1083:24, 1089:10, 1099:1, 1100:7, 1101:15, 1101:16, 1101:23, 1106:8, 1106:17, 1108:10, 1126:13, 1126:20, 1127:2, 1127:19, 1128:10, 1129:1, 1131:8, 1131:13, 1131:19, 1131:25, 1132:6, 1132:12, 1132:18, 1132:24,

1133:4, 1133:11, 1133:16, 1135:5, 1137:1, 1137:17, 1137:18
**duties** [1] - 1090:24
**duty** [13] - 1047:9, 1047:10, 1091:10, 1092:9, 1092:24, 1094:11, 1096:5, 1101:6, 1105:22, 1135:8, 1136:9, 1136:10, 1139:12

## E

**e-mail** [1] - 1064:21
**early** [4] - 1060:2, 1070:5, 1074:22, 1154:2
**ears** [1] - 1155:12
**easiest** [1] - 1147:12
**easily** [1] - 1033:17
**east** [4] - 1023:22, 1023:24, 1024:2
**East** [2] - 1002:17, 1002:22
**Eastern** [9] - 1117:9, 1119:23, 1121:17, 1122:2, 1122:12, 1126:17, 1131:16, 1132:3, 1132:15
**EASTERN** [1] - 1002:1
**easy** [1] - 1060:17
**eat** [3] - 1006:14, 1082:12, 1140:23
**Ebony** [5] - 1074:12, 1074:18, 1074:25, 1075:4, 1075:7
**Eddie** [2] - 1073:10, 1073:20
**Edward** [5] - 1010:13, 1070:12, 1071:1, 1071:25, 1085:18
**Edwin** [2] - 1070:11, 1070:23
**effect** [8] - 1032:17, 1032:20, 1118:25, 1119:2, 1119:3, 1119:12, 1135:17
**effort** [2] - 1096:1, 1120:10
**egg** [3] - 1050:23, 1052:4, 1066:16
**eggs** [3] - 1017:24, 1018:5, 1018:7
**Eight** [9] - 1029:16, 1121:12, 1122:9, 1122:24, 1123:10, 1123:21, 1124:10, 1131:11, 1132:19

**either** [7] - 1024:7, 1055:16, 1064:23, 1103:25, 1113:1, 1130:2, 1134:1
**electronically** [1] - 1155:20
**element** [23] - 1030:12, 1031:2, 1031:5, 1031:24, 1031:25, 1032:16, 1032:22, 1034:14, 1034:17, 1034:19, 1034:20, 1038:14, 1107:22, 1112:14, 1112:18, 1113:17, 1119:7, 1120:12, 1120:17, 1127:23, 1128:8, 1130:11, 1136:11
**elements** [22] - 1030:9, 1031:12, 1032:24, 1033:6, 1033:9, 1034:1, 1034:6, 1091:2, 1091:3, 1109:15, 1110:16, 1110:21, 1112:10, 1118:2, 1120:7, 1120:15, 1122:19, 1127:13, 1132:23, 1133:9, 1133:19, 1138:15
**Elgin** [83] - 1003:4, 1003:16, 1003:18, 1006:25, 1008:22, 1038:19, 1038:22, 1039:1, 1043:7, 1043:8, 1047:23, 1048:8, 1050:24, 1051:19, 1051:23, 1057:2, 1057:6, 1059:22, 1059:23, 1059:24, 1060:20, 1061:25, 1062:20, 1064:21, 1065:7, 1065:11, 1065:13, 1066:21, 1067:7, 1067:18, 1068:11, 1069:25, 1070:18, 1071:23, 1072:2, 1072:5, 1072:24, 1073:18, 1073:21, 1074:8, 1074:10, 1074:11, 1074:17, 1075:5, 1075:17, 1076:2, 1076:10, 1076:11, 1076:16, 1077:6, 1077:12, 1077:20, 1077:24, 1078:8, 1078:14, 1079:8, 1079:9,

1083:21, 1084:19, 1084:22, 1085:9, 1086:7, 1086:10, 1087:4, 1087:11, 1087:20, 1088:2, 1088:10, 1088:17, 1089:24, 1090:3, 1117:10, 1119:24, 1121:18, 1122:3, 1122:13, 1126:18, 1131:17, 1132:4, 1132:16, 1153:6
**ELGIN** [1] - 1002:7
**Elgin's** [10] - 1074:16, 1075:16, 1075:20, 1075:23, 1075:24, 1076:7, 1076:15, 1076:19, 1076:20, 1077:2
**Eli** [1] - 1071:8
**Elicia** [1] - 1003:11
**ELMO** [1] - 1004:6
**elsewhere** [4] - 1117:10, 1131:17, 1132:4, 1132:16
**embedded** [1] - 1048:6
**embrace** [1] - 1080:21
**employ** [1] - 1102:24
**employed** [1] - 1100:11
**employee** [3] - 1053:2, 1100:25, 1101:4
**employees** [7] - 1100:8, 1117:6, 1117:14, 1120:3, 1121:22, 1122:7, 1122:17
**employment** [2] - 1129:1, 1129:10
**encourage** [2] - 1142:15, 1155:13
**encouraged** [1] - 1155:1
**end** [7] - 1005:22, 1038:7, 1072:3, 1074:3, 1086:1, 1086:6, 1156:8
**ends** [2] - 1116:12, 1140:12
**enforcement** [9] - 1055:1, 1088:19, 1100:8, 1100:11, 1100:17, 1100:21, 1100:25, 1101:4, 1107:3
**engaged** [2] - 1116:15, 1124:13
**enjoy** [1] - 1141:8
**enter** [5] - 1057:1,

1092:22, 1108:15, 1136:8, 1141:12
**entered** [5] - 1058:19, 1082:20, 1112:11, 1112:16, 1112:20
**entering** [1] - 1098:4
**enters** [5] - 1005:5, 1046:9, 1083:1, 1149:20, 1154:8
**entire** [3] - 1018:10, 1044:15, 1045:1
**entirely** [3] - 1098:12, 1108:17, 1135:1
**entitle** [1] - 1092:13
**entitled** [3] - 1096:20, 1110:1, 1134:22
**entry** [1] - 1074:16
**equal** [2] - 1092:10, 1115:15
**equally** [2] - 1096:13, 1096:22
**Eric** [1] - 1003:2
**ERIC** [1] - 1002:11
**escorted** [1] - 1156:1
**ESQ** [2] - 1002:19, 1002:20
**essential** [2] - 1114:9, 1138:15
**essentially** [2] - 1059:7, 1097:21
**establish** [1] - 1108:2, 1108:3, 1112:15, 1113:18, 1116:1, 1120:6, 1123:9, 1124:7, 1124:8, 1124:11, 1124:19
**established** [7] - 1035:18, 1110:10, 1110:18, 1113:5, 1114:20, 1133:15, 1138:15
**ethnic** [1] - 1096:19
**evaluate** [3] - 1082:15, 1101:1, 1101:12
**evaluated** [1] - 1100:9
**evaluating** [2] - 1058:23, 1065:1
**evening** [6] - 1026:24, 1074:11, 1078:7, 1154:21, 1156:23, 1157:15
**event** [4] - 1008:16, 1012:17, 1026:23, 1103:21
**events** [2] - 1006:7, 1020:22
**everyday** [2] - 1111:17, 1118:19
**evidence** [166] -

1007:2, 1007:3, 1007:5, 1007:6, 1007:14, 1007:16, 1007:17, 1007:20, 1007:22, 1008:5, 1009:17, 1009:19, 1010:3, 1010:13, 1011:17, 1013:4, 1014:19, 1015:21, 1018:18, 1018:19, 1020:16, 1020:17, 1023:8, 1024:9, 1026:19, 1027:1, 1037:5, 1037:13, 1037:17, 1037:20, 1037:21, 1038:10, 1040:7, 1045:10, 1045:12, 1045:16, 1047:21, 1049:18, 1049:19, 1051:5, 1051:13, 1051:18, 1052:10, 1053:14, 1061:18, 1062:4, 1062:18, 1064:20, 1065:8, 1068:5, 1070:8, 1070:9, 1079:3, 1081:13, 1083:20, 1083:24, 1084:4, 1085:10, 1086:6, 1086:21, 1086:24, 1090:17, 1091:8, 1091:11, 1091:13, 1091:14, 1091:15, 1091:16, 1091:18, 1092:17, 1092:24, 1093:8, 1093:19, 1094:2, 1094:3, 1094:17, 1094:21, 1095:1, 1095:2, 1095:6, 1095:15, 1095:18, 1095:19, 1095:20, 1095:24, 1096:4, 1096:5, 1096:11, 1096:14, 1097:1, 1097:2, 1097:5, 1097:6, 1097:11, 1097:14, 1098:3, 1098:17, 1098:18, 1098:19, 1098:20, 1098:21, 1098:22, 1099:10, 1099:19, 1100:2, 1100:14, 1100:25, 1101:2, 1101:7, 1101:25, 1102:5, 1102:9, 1102:15, 1102:19, 1105:5, 1105:7, 1105:23, 1106:10, 1106:11, 1106:12,

1106:13, 1106:14, 1106:22, 1106:23, 1107:6, 1107:25, 1108:1, 1108:9, 1108:12, 1108:15, 1108:17, 1108:19, 1108:20, 1108:23, 1109:3, 1109:5, 1109:12, 1110:1, 1110:7, 1110:18, 1114:21, 1127:7, 1135:5, 1135:7, 1135:11, 1135:17, 1136:10, 1136:12, 1136:17, 1139:7, 1139:8, 1139:14, 1141:4, 1143:22, 1150:9, 1150:12, 1150:22, 1151:3, 1153:7, 1153:9

**exact** [1] - 1086:14

**exactly** [6] - 1013:21, 1017:6, 1079:7, 1098:6, 1143:12, 1146:12

**examination** [4] - 1055:14, 1084:25, 1095:5, 1101:11

**examinations** [1] - 1062:4

**examine** [1] - 1101:12

**examined** [2] - 1028:15, 1028:19

**examining** [1] - 1102:3

**example** [2] - 1097:8, 1097:18

**excellent** [1] - 1004:13

**except** [2] - 1137:5, 1156:8

**exception** [1] - 1137:1

**exceptions** [1] - 1140:6

**excluded** [2] - 1085:19, 1085:20

**exclusively** [3] - 1096:25, 1105:22, 1136:9

**excuse** [6] - 1030:14, 1039:4, 1041:13, 1043:16, 1094:10, 1139:16

**excuses** [1] - 1062:1

**exercise** [1] - 1130:5

**exhaustively** [1] - 1106:19

**Exhibit** [53] - 1005:1, 1008:17, 1009:8, 1009:12, 1009:13, 1012:2, 1013:13,

1013:25, 1014:1, 1014:24, 1015:21, 1017:19, 1017:20, 1018:1, 1018:13, 1021:7, 1022:11, 1022:23, 1023:12, 1024:11, 1024:12, 1026:4, 1027:8, 1027:9, 1027:11, 1027:20, 1027:23, 1028:3, 1028:8, 1028:10, 1028:12, 1031:22, 1032:4, 1032:21, 1036:7, 1036:10, 1039:4, 1039:6, 1040:2, 1040:4, 1040:20, 1041:3, 1042:9, 1043:5, 1043:21, 1044:3, 1051:12, 1145:6, 1150:11, 1158:6, 1158:7, 1158:8, 1158:9

**exhibit** [3] - 1007:23, 1007:24

**Exhibits** [2] - 1043:12, 1158:4

**exhibits** [11] - 1007:19, 1095:6, 1096:4, 1097:3, 1106:7, 1109:7, 1110:10, 1141:3, 1145:11, 1150:22, 1150:25

**exist** [1] - 1099:8

**existed** [3] - 1113:13, 1113:15, 1113:22

**existence** [3] - 1099:4, 1113:4, 1113:8

**exists** [4] - 1097:18, 1099:7, 1112:7, 1118:19

**exit** [1] - 1143:20

**exited** [1] - 1082:17

**exits** [5] - 1045:25, 1082:8, 1141:11, 1152:15, 1157:1

**expand** [1] - 1094:25

**expect** [6] - 1007:10, 1029:2, 1030:25, 1033:14, 1036:19, 1036:25

**expected** [1] - 1118:20

**expel** [1] - 1128:14

**experience** [2] - 1041:24, 1069:14, 1098:11, 1099:3, 1099:16, 1102:16, 1143:13

**experienced** [2] -

1099:18, 1118:20

**expert** [7] - 1009:20, 1015:6, 1028:14, 1028:19, 1041:12, 1069:13, 1087:19

**experts** [1] - 1067:9

**explain** [8] - 1007:9, 1029:23, 1072:6, 1072:7, 1091:23, 1111:25, 1117:17

**explained** [2] - 1088:11, 1089:22

**explaining** [1] - 1072:5

**explanation** [3] - 1105:19, 1105:20, 1138:7

**explanatory** [1] - 1138:10

**explosive** [1] - 1128:15

**express** [3] - 1092:2, 1099:13, 1112:20

**expression** [2] - 1077:21, 1097:17

**extent** [6] - 1115:9, 1115:11, 1155:10, 1156:9, 1157:2, 1157:4

**extra** [1] - 1154:3

**extract** [1] - 1064:17

**extracted** [1] - 1056:21

**extraction** [2] - 1024:13, 1078:10

**eyes** [3] - 1039:8, 1060:25, 1155:12

# F

**face** [23] - 1013:9, 1014:10, 1019:15, 1025:4, 1032:6, 1038:23, 1039:2, 1039:9, 1039:21, 1040:13, 1040:21, 1044:22, 1048:23, 1052:16, 1052:20, 1052:25, 1053:8, 1065:7, 1084:11, 1087:6, 1089:17, 1142:19, 1142:20

**Facebook** [4] - 1042:11, 1067:2, 1072:22, 1077:16

**faces** [2] - 1032:3, 1087:9

**facial** [1] - 1040:18

**fact** [38] - 1031:20, 1040:7, 1059:22,

1092:3, 1092:11, 1095:12, 1097:6, 1097:7, 1097:9, 1097:15, 1097:16, 1097:17, 1097:18, 1097:20, 1097:25, 1099:7, 1099:8, 1100:10, 1101:18, 1101:24, 1103:19, 1105:13, 1105:18, 1106:14, 1107:10, 1107:13, 1107:19, 1110:8, 1113:24, 1115:16, 1115:24, 1116:5, 1142:22, 1143:4, 1148:9, 1155:22, 1155:23

**factor** [1] - 1114:10

**factors** [3] - 1100:15, 1103:1, 1105:2

**facts** [29] - 1091:10, 1091:11, 1091:17, 1091:19, 1092:6, 1092:9, 1095:8, 1095:10, 1095:13, 1095:16, 1097:15, 1097:24, 1098:10, 1098:23, 1099:4, 1099:5, 1099:9, 1099:20, 1100:6, 1102:1, 1102:14, 1102:21, 1106:20, 1110:2, 1111:3, 1114:25, 1135:4, 1135:6, 1136:14

**failed** [1] - 1127:8

**fails** [1] - 1112:7

**fair** [2] - 1094:16, 1094:20

**faithful** [2] - 1139:20, 1141:14

**fall** [2] - 1004:8, 1064:16

**false** [1] - 1105:16

**falsehood** [1] - 1103:18

**familiar** [1] - 1063:16

**Family** [5] - 1012:8, 1012:9, 1012:10, 1065:15

**family** [1] - 1073:8

**fan** [1] - 1048:19

**FARRELL** [13] - 1002:20, 1003:17, 1004:4, 1004:13, 1004:17, 1030:14, 1047:4, 1058:1, 1080:2, 1144:10, 1145:24, 1146:25, 1149:9

**Farrell** [17] - 1003:17, 1003:25, 1020:10, 1046:7, 1046:22, 1047:2, 1047:3, 1049:24, 1055:14, 1062:8, 1082:1, 1083:24, 1084:8, 1087:2, 1088:1, 1088:18, 1089:9

**Farrell's** [4] - 1043:2, 1085:25, 1086:5, 1087:14

**fashion** [2] - 1134:20, 1156:7

**fast** [1] - 1033:20

**fault** [1] - 1073:9

**favor** [2] - 1102:1, 1139:12

**favorable** [2] - 1092:21, 1107:8

**favorite** [1] - 1081:8

**fear** [12] - 1031:7, 1032:2, 1032:7, 1117:23, 1118:7, 1118:19, 1122:21, 1125:25, 1126:4, 1139:12, 1142:16, 1155:14

**February** [1] - 1058:18

**feelings** [2] - 1096:17, 1096:22

**feet** [6] - 1015:24, 1015:25, 1017:21, 1044:10, 1044:17, 1055:24

**fell** [2] - 1047:15, 1047:16

**fellow** [4] - 1135:12, 1135:24, 1142:3, 1152:1

**fellows** [1] - 1050:21

**Few** [1] - 1077:25

**few** [8] - 1010:12, 1017:2, 1025:23, 1038:16, 1049:17, 1139:16, 1139:23, 1139:24

**fibers** [6] - 1049:20, 1051:15, 1051:16, 1061:22, 1068:25

**field** [1] - 1099:19

**fight** [1] - 1053:6

**fighting** [1] - 1016:4

**filed** [1] - 1093:4

**final** [11] - 1005:2, 1006:8, 1023:9, 1029:4, 1030:21, 1030:22, 1044:18, 1090:11, 1091:8, 1134:17

Case 1:18-cr-00684-ENV   Document 178   Filed 03/13/20   Page 170 of 189 PageID #: 2368

**finally** [3] - 1007:11, 1096:15, 1130:13
**financial** [1] - 1114:8
**Finbarr** [5] - 1058:5, 1058:7, 1058:8, 1059:10, 1059:11
**findings** [2] - 1109:16, 1131:5
**fine** [2] - 1059:23, 1067:17
**finer** [1] - 1005:14
**fingerprints** [1] - 1050:1
**finished** [1] - 1119:10
**fire** [2] - 1129:3, 1129:4
**firearm** [67] - 1029:20, 1034:3, 1034:4, 1034:9, 1034:11, 1034:21, 1035:3, 1035:5, 1035:7, 1035:13, 1035:24, 1035:25, 1036:11, 1042:2, 1126:13, 1126:14, 1126:22, 1127:5, 1127:6, 1127:19, 1127:20, 1128:10, 1128:11, 1128:13, 1128:17, 1128:21, 1128:25, 1129:1, 1129:7, 1129:8, 1129:9, 1129:11, 1129:12, 1129:14, 1130:3, 1130:4, 1130:5, 1130:6, 1130:7, 1130:8, 1130:10, 1130:15, 1130:17, 1130:21, 1130:23, 1130:24, 1130:25, 1131:2, 1131:3, 1131:6, 1131:9, 1132:24, 1133:3, 1133:4, 1133:10, 1134:9, 1134:12, 1145:17, 1145:18, 1147:12, 1147:13, 1147:16, 1149:3, 1151:6, 1151:13, 1151:18
**firearms** [22] - 1029:18, 1033:25, 1034:8, 1035:1, 1035:17, 1126:20, 1126:23, 1131:8, 1131:13, 1131:19, 1131:21, 1131:23, 1131:25, 1132:6, 1132:8, 1132:10, 1132:12, 1132:18,

1132:20, 1132:22, 1133:10, 1133:16
**fired** [12] - 1014:22, 1015:7, 1035:6, 1035:20, 1035:24, 1035:25, 1036:1, 1041:25, 1042:2, 1048:15, 1067:13, 1131:3
**fires** [1] - 1028:15
**First** [1] - 1095:17
**first** [61] - 1004:9, 1007:4, 1008:11, 1008:16, 1012:14, 1012:15, 1012:16, 1012:17, 1014:14, 1019:11, 1021:19, 1023:12, 1023:13, 1023:16, 1023:20, 1023:25, 1029:8, 1030:12, 1031:2, 1031:13, 1031:24, 1034:14, 1034:18, 1038:23, 1042:21, 1049:12, 1050:11, 1054:25, 1057:1, 1062:23, 1063:4, 1063:5, 1063:10, 1065:9, 1069:9, 1072:10, 1076:8, 1078:12, 1081:20, 1090:23, 1111:24, 1112:11, 1112:14, 1114:14, 1116:19, 1118:2, 1120:8, 1120:12, 1127:10, 1127:15, 1127:23, 1133:9, 1134:20, 1143:24, 1144:7, 1145:10, 1145:22, 1147:24, 1153:2, 1155:25, 1157:6
**fish** [1] - 1152:10
**fit** [2] - 1060:17, 1086:14
**five** [11] - 1007:11, 1038:21, 1045:19, 1045:23, 1045:24, 1046:1, 1059:24, 1070:17, 1082:4, 1082:7, 1097:8
**Five** [12] - 1029:19, 1034:6, 1034:11, 1034:23, 1080:17, 1131:7, 1131:12, 1133:9, 1133:18, 1133:24, 1134:8, 1138:20
**Fleming** [5] - 1058:5, 1058:7, 1058:8,

1063:5
**flew** [1] - 1073:15
**flip** [2] - 1044:14, 1060:18
**flip-flops** [2] - 1044:14, 1060:18
**flooded** [1] - 1080:20
**flops** [2] - 1044:14, 1060:18
**focus** [5] - 1030:6, 1037:2, 1083:23, 1089:5, 1089:6
**focused** [2] - 1087:7, 1087:9
**follow** [6] - 1061:24, 1086:8, 1091:23, 1091:24, 1092:1, 1139:9
**followed** [2] - 1006:4, 1006:5
**following** [9] - 1040:25, 1103:3, 1104:4, 1120:6, 1125:21, 1127:12, 1140:5, 1153:3, 1153:5
**follows** [10] - 1095:16, 1117:8, 1119:22, 1121:16, 1122:1, 1122:11, 1126:16, 1131:15, 1132:2, 1132:14
**font** [1] - 1011:4
**footage** [1] - 1038:24
**footprint** [2] - 1055:11, 1056:14
**footprints** [3] - 1015:15, 1015:16, 1016:1
**forbids** [1] - 1111:11
**force** [9] - 1031:7, 1032:2, 1117:23, 1118:6, 1118:15, 1122:20, 1125:25, 1126:4
**Force** [1] - 1069:7
**Ford** [1] - 1080:9
**foreign** [7] - 1031:9, 1031:10, 1118:9, 1118:10, 1118:22, 1119:4, 1122:22
**foreperson** [5] - 1134:20, 1134:21, 1137:3, 1138:25, 1151:24
**forget** [1] - 1103:16
**form** [9] - 1015:17, 1048:2, 1060:10, 1108:23, 1109:7, 1138:21, 1138:23,

1138:25, 1142:7
**formal** [2] - 1036:20, 1112:20
**formally** [1] - 1109:18
**formed** [1] - 1092:19
**forms** [2] - 1095:2, 1097:2
**forth** [1] - 1075:15
**forward** [5] - 1053:4, 1101:7, 1130:7, 1141:9, 1156:23
**fought** [2] - 1014:15, 1085:2
**four** [13] - 1029:8, 1029:18, 1035:8, 1035:17, 1052:12, 1052:16, 1059:21, 1061:15, 1062:10, 1070:1, 1070:2, 1089:4
**Four** [10] - 1029:15, 1034:12, 1121:12, 1121:14, 1122:24, 1123:10, 1123:21, 1124:10, 1131:11, 1131:20
**fourteen** [1] - 1051:3
**fourth** [1] - 1043:9
**Fox** [8] - 1015:5, 1028:14, 1041:22, 1048:13, 1048:15, 1067:10, 1067:13, 1088:11
**fragments** [3] - 1015:4, 1015:5, 1036:8
**frame** [1] - 1015:23
**framework** [1] - 1149:13
**frankly** [1] - 1146:21
**free** [2] - 1048:10, 1143:8
**frequently** [1] - 1111:18
**freshener** [2] - 1026:7, 1026:10
**Friday** [1] - 1156:12
**friend** [1] - 1048:1
**friendly** [1] - 1115:23
**friends** [1] - 1073:8
**front** [4] - 1043:16, 1050:10, 1058:10, 1085:6
**fucking** [2] - 1032:14, 1089:19
**Fugitive** [1] - 1080:9
**full** [2] - 1108:19, 1149:15
**fully** [3] - 1115:4, 1119:7, 1135:12

**fumbles** [1] - 1088:15
**function** [1] - 1093:1
**furtherance** [17] - 1034:4, 1117:2, 1126:14, 1126:22, 1127:5, 1127:20, 1128:11, 1129:12, 1129:14, 1130:6, 1130:21, 1131:9, 1131:22, 1132:9, 1132:21, 1132:25, 1134:9
**furthered** [1] - 1128:19
**furthering** [3] - 1114:3, 1116:16, 1130:11
**furthermore** [2] - 1115:7, 1119:2
**future** [1] - 1117:23

## G

**game** [4] - 1050:25, 1056:16, 1069:3, 1083:18
**game-setting** [1] - 1069:3
**garbage** [2] - 1059:17, 1068:14
**Gardens** [1] - 1065:21
**Gary** [2] - 1003:17, 1047:2
**GARY** [1] - 1002:20
**Gaspar** [6] - 1024:22, 1025:7, 1032:10, 1032:13, 1040:15, 1089:18
**gather** [1] - 1141:3
**gathered** [1] - 1141:5
**gender** [1] - 1096:19
**general** [4] - 1090:23, 1091:5, 1134:17, 1138:1
**generally** [1] - 1111:25
**gentlemen** [65] - 1005:13, 1006:23, 1017:8, 1018:14, 1045:19, 1046:17, 1047:6, 1047:7, 1048:25, 1051:7, 1052:7, 1055:5, 1056:17, 1058:22, 1059:19, 1060:10, 1060:16, 1060:23, 1061:6, 1061:20, 1064:25, 1065:10, 1066:15, 1070:8, 1070:25, 1071:22,

Case 1:18-cr-00684-ENV   Document 178   Filed 03/13/20   Page 171 of 189 PageID #: 2369

1072:8, 1073:5,
1073:17, 1073:21,
1074:19, 1077:4,
1077:9, 1078:19,
1080:4, 1080:8,
1080:14, 1080:19,
1081:6, 1081:17,
1081:24, 1082:2,
1083:9, 1083:17,
1083:22, 1084:7,
1085:7, 1085:19,
1085:22, 1086:9,
1086:21, 1086:23,
1087:10, 1087:13,
1088:8, 1088:16,
1089:3, 1089:12,
1089:20, 1090:7,
1090:12, 1140:16,
1150:3, 1152:7,
1154:16
**George** [2] - 1011:11,
1026:17
**gestures** [1] - 1088:13
**ghost** [1] - 1071:18
**giant** [1] - 1049:2
**gift** [1] - 1048:24
**given** [14] - 1005:21,
1030:21, 1053:18,
1093:21, 1098:11,
1100:15, 1102:25,
1105:25, 1111:19,
1135:6, 1139:14,
1140:23, 1140:25,
1143:6
**Glendale** [3] -
1065:15, 1065:16,
1065:18
**gloves** [16] - 1054:13,
1054:20, 1054:21,
1054:23, 1060:14,
1061:9, 1061:12,
1061:14, 1061:16,
1063:21, 1063:22,
1067:22, 1067:24,
1068:1, 1068:2,
1068:8
**goal** [1] - 1120:18
**God** [3] - 1073:4,
1073:5, 1074:5
**gold** [1] - 1009:11
**Goldstein** [10] -
1028:18, 1041:11,
1055:3, 1056:15,
1062:3, 1067:10,
1067:21, 1068:1,
1068:12, 1068:21
**goods** [2] - 1031:10,
1118:10
**govern** [2] - 1090:24,
1137:17

**Government** [97] -
1002:14, 1008:17,
1009:8, 1009:12,
1009:13, 1012:1,
1013:13, 1013:25,
1014:1, 1014:24,
1015:21, 1017:19,
1017:20, 1018:1,
1018:12, 1021:7,
1022:11, 1022:23,
1023:12, 1024:11,
1027:8, 1027:10,
1027:20, 1027:23,
1028:3, 1028:9,
1028:12, 1030:10,
1031:2, 1032:21,
1033:9, 1036:7,
1036:16, 1039:4,
1040:2, 1041:3,
1042:9, 1043:5,
1043:12, 1043:21,
1044:3, 1046:13,
1046:20, 1047:6,
1056:19, 1083:5,
1083:10, 1084:24,
1090:18, 1091:3,
1092:12, 1092:13,
1093:5, 1093:16,
1093:22, 1094:12,
1096:16, 1096:21,
1096:23, 1101:9,
1102:8, 1102:18,
1106:16, 1106:18,
1106:21, 1106:23,
1107:1, 1107:6,
1107:9, 1107:24,
1108:21, 1108:23,
1109:5, 1109:7,
1112:10, 1112:14,
1112:18, 1112:25,
1113:17, 1117:16,
1119:16, 1120:6,
1120:12, 1120:17,
1123:9, 1123:12,
1123:22, 1124:8,
1124:12, 1127:8,
1127:12, 1127:23,
1128:6, 1128:8,
1128:17, 1128:25,
1129:13
**government** [30] -
1003:7, 1003:24,
1004:5, 1005:9,
1006:2, 1006:4,
1006:6, 1006:18,
1006:24, 1058:18,
1067:3, 1069:19,
1070:12, 1073:3,
1073:15, 1074:4,
1079:4, 1130:13,
1130:18, 1130:22,

1133:8, 1136:11,
1138:14, 1140:9,
1145:17, 1149:6,
1149:25, 1151:19,
1153:19, 1154:12
**government's** [8] -
1004:9, 1004:21,
1004:22, 1069:22,
1133:14, 1147:14,
1147:18, 1148:7
**Government's** [6] -
1026:3, 1031:22,
1084:8, 1108:17,
1150:11, 1152:11
**governs** [2] - 1090:20,
1137:15
**gracious** [1] - 1004:4
**graduation** [1] -
1071:4
**grainy** [1] - 1038:6
**Grand** [3] - 1023:22,
1023:23, 1024:16
**grand** [2] - 1064:7,
1077:13
**grant** [1] - 1151:6
**graphs** [1] - 1069:11
**gray** [12] - 1009:3,
1010:14, 1011:5,
1016:9, 1021:23,
1025:19, 1026:2,
1057:4, 1057:7,
1057:9
**great** [2] - 1088:18,
1141:19
**greater** [3] - 1092:14,
1100:13, 1134:22
**greatest** [2] - 1053:2,
1058:8
**green** [7] - 1009:7,
1009:8, 1021:21,
1021:25, 1025:17,
1027:18, 1043:11
**green-hooded** [1] -
1043:11
**greeting** [3] - 1019:14,
1019:20, 1019:21
**grip** [10] - 1028:20,
1028:23, 1041:13,
1041:14, 1041:16,
1061:13, 1068:7,
1068:11, 1085:15
**ground** [1] - 1015:25
**grounds** [1] - 1100:21
**group** [1] - 1056:18
**grouped** [1] - 1157:10
**guess** [8] - 1047:9,
1055:23, 1056:1,
1066:12, 1072:24,
1081:1, 1099:6,
1151:18

**guesswork** [1] -
1098:14
**guided** [1] - 1091:22
**guilt** [16] - 1045:13,
1091:4, 1093:13,
1093:17, 1094:12,
1094:18, 1094:22,
1098:16, 1108:2,
1108:5, 1109:6,
1109:17, 1110:1,
1110:18, 1115:10,
1123:10
**guilty** [42] - 1045:16,
1077:22, 1080:9,
1080:10, 1080:12,
1080:17, 1081:1,
1081:4, 1081:23,
1081:24, 1084:5,
1086:7, 1090:4,
1092:2, 1092:3,
1092:5, 1093:11,
1094:19, 1094:24,
1107:7, 1107:25,
1108:4, 1108:21,
1110:3, 1119:13,
1123:14, 1123:17,
1123:20, 1125:11,
1125:14, 1126:8,
1127:6, 1127:10,
1127:14, 1130:20,
1134:11, 1135:21,
1138:18, 1138:19
**gun** [79] - 1009:16,
1014:10, 1015:8,
1018:9, 1019:14,
1019:24, 1025:4,
1028:7, 1028:9,
1028:13, 1028:14,
1028:15, 1028:16,
1028:18, 1028:21,
1029:20, 1032:2,
1032:6, 1032:8,
1033:12, 1033:18,
1034:13, 1034:22,
1034:24, 1035:14,
1035:19, 1037:23,
1040:10, 1040:11,
1040:13, 1040:24,
1041:8, 1041:10,
1041:14, 1041:18,
1041:20, 1042:1,
1042:3, 1042:4,
1042:5, 1042:6,
1045:1, 1045:10,
1048:9, 1048:12,
1048:13, 1049:2,
1052:19, 1053:7,
1060:19, 1061:11,
1061:12, 1061:16,
1067:14, 1067:18,

1067:25, 1068:12,
1071:19, 1072:7,
1073:3, 1073:14,
1073:18, 1073:19,
1073:23, 1074:1,
1084:11, 1085:16,
1087:13, 1087:15,
1087:17, 1087:19,
1087:20, 1088:10,
1088:12, 1088:15,
1089:2, 1089:17
**gunpoint** [1] - 1017:25
**guns** [1] - 1048:15
**guy** [42] - 1047:15,
1048:4, 1052:3,
1052:4, 1052:13,
1052:21, 1053:5,
1053:7, 1054:13,
1056:21, 1057:1,
1057:3, 1057:6,
1058:13, 1059:2,
1059:13, 1063:4,
1063:5, 1063:8,
1063:10, 1063:17,
1064:11, 1066:3,
1067:2, 1067:12,
1067:21, 1068:23,
1071:13, 1071:24,
1072:2, 1072:21,
1072:25, 1073:11,
1076:1, 1076:18,
1077:2, 1077:21,
1079:9, 1080:10,
1084:18, 1086:16
**guys** [20] - 1052:14,
1052:22, 1056:13,
1058:19, 1059:11,
1059:12, 1060:12,
1062:14, 1062:24,
1063:1, 1067:10,
1067:25, 1069:17,
1070:25, 1071:10,
1071:19, 1073:9,
1074:17, 1077:1,
1081:9
**GW** [1] - 1080:3

## H

**habit** [2] - 1066:14,
1066:16
**hair** [10] - 1040:18,
1044:23, 1049:20,
1051:20, 1051:22,
1052:2, 1062:4,
1068:25, 1069:2,
1069:4
**hairs** [4] - 1051:15,
1051:16, 1051:24
**half** [5] - 1008:12,

1051:4, 1070:17, 1084:13, 1143:24
**hand** [30] - 1014:14, 1018:14, 1021:3, 1021:4, 1021:13, 1022:13, 1023:14, 1023:15, 1032:5, 1032:6, 1032:8, 1032:9, 1035:22, 1048:5, 1048:16, 1048:17, 1048:25, 1049:1, 1050:8, 1074:21, 1088:11, 1088:14, 1088:16, 1088:17, 1094:20, 1121:3, 1125:12, 1140:14
**handcuff** [1] - 1058:11
**handcuffed** [2] - 1048:4, 1058:3
**handed** [8] - 1047:23, 1047:24, 1048:3, 1048:8, 1049:7, 1088:12, 1147:16
**handle** [4] - 1028:13, 1028:20, 1041:14, 1145:9
**handled** [1] - 1054:21
**handling** [2] - 1054:18, 1054:22
**hands** [3] - 1025:18, 1073:25, 1089:14
**handy** [1] - 1150:10
**hangs** [1] - 1073:9
**happy** [2] - 1004:1, 1148:14
**hard** [1] - 1056:13
**harm** [1] - 1118:21
**Harrison** [1] - 1080:9
**Harry's** [1] - 1048:12
**hash** [1] - 1036:22
**head** [8] - 1013:12, 1013:14, 1014:15, 1015:14, 1016:5, 1022:11, 1035:23, 1048:6
**headdress** [1] - 1057:4
**headed** [1] - 1072:18
**Heading** [1] - 1002:22
**heading** [1] - 1078:25
**headlines** [1] - 1083:23
**headquarters** [1] - 1027:25
**hear** [9] - 1005:18, 1045:20, 1046:22, 1051:10, 1060:12, 1062:22, 1062:24, 1110:22, 1155:14

**heard** [20] - 1007:18, 1008:5, 1011:25, 1027:4, 1032:11, 1041:6, 1041:11, 1043:1, 1043:2, 1055:1, 1076:16, 1091:7, 1096:13, 1097:10, 1099:1, 1100:7, 1101:15, 1105:5, 1106:17, 1108:9
**heavy** [1] - 1048:10
**help** [8] - 1006:22, 1007:3, 1030:25, 1061:19, 1069:23, 1074:14, 1075:7, 1124:6
**helped** [5] - 1037:16, 1037:17, 1054:8, 1075:11, 1130:7
**helpful** [1] - 1055:6
**helping** [3] - 1023:7, 1038:12, 1105:9
**helps** [1] - 1055:2
**herring** [1] - 1049:25
**herself** [1] - 1105:11
**hesitate** [4] - 1094:4, 1094:7, 1135:14, 1138:11
**high** [1] - 1065:4
**highest** [1] - 1020:21
**Hilaire** [1] - 1003:12
**Hill** [1] - 1065:22
**himself** [17] - 1009:2, 1009:7, 1012:21, 1014:8, 1041:4, 1064:11, 1105:11, 1115:24, 1123:12, 1123:17, 1124:4, 1124:8, 1125:6, 1125:17, 1126:8, 1133:25, 1134:9
**hint** [1] - 1047:19
**histories** [1] - 1012:3
**history** [3] - 1011:22, 1024:14, 1042:18
**hit** [5] - 1009:25, 1011:12, 1017:5, 1018:22, 1047:7
**hits** [1] - 1023:25
**hitter** [1] - 1048:21
**hitters** [1] - 1048:20
**hitting** [4] - 1010:9, 1014:14, 1024:8, 1026:21
**Hobbs** [39] - 1029:8, 1029:12, 1029:16, 1030:8, 1033:4, 1033:7, 1033:11, 1036:15, 1111:24,

1112:2, 1116:20, 1117:18, 1118:2, 1119:15, 1119:16, 1119:18, 1119:20, 1120:5, 1120:8, 1120:14, 1120:15, 1120:19, 1121:13, 1121:14, 1121:24, 1122:9, 1122:20, 1123:21, 1125:22, 1126:10, 1126:15, 1128:3, 1128:4, 1131:10, 1131:13, 1131:25, 1132:12, 1134:13
**hold** [5] - 1028:21, 1090:3, 1095:24, 1128:21, 1143:24
**Hold'em** [1] - 1052:9
**holding** [3] - 1034:24, 1042:6, 1054:14
**holidays** [1] - 1066:23
**home** [2] - 1074:14, 1080:6
**homework** [3] - 1151:15, 1153:15, 1154:17
**honest** [2] - 1103:4, 1135:16
**Honor** [37] - 1003:8, 1003:15, 1004:4, 1004:20, 1004:25, 1005:10, 1006:20, 1006:21, 1030:14, 1030:24, 1046:14, 1047:4, 1082:16, 1082:23, 1083:6, 1083:13, 1140:10, 1144:8, 1144:9, 1145:7, 1145:13, 1145:15, 1147:14, 1148:4, 1148:19, 1149:7, 1149:11, 1150:1, 1151:20, 1151:21, 1152:2, 1152:5, 1153:2, 1153:5, 1153:20, 1154:13, 1157:17
**HONORABLE** [1] - 1002:11
**Honorable** [1] - 1003:2
**hood** [7] - 1013:25, 1017:19, 1021:21, 1022:1, 1025:17, 1044:24, 1057:4
**hooded** [3] - 1009:7, 1009:9, 1043:11
**hoodie** [1] - 1051:14
**hope** [6] - 1004:8,

1005:13, 1053:3, 1082:11, 1141:7
**hopefully** [2] - 1156:17, 1157:3
**hour** [15] - 1008:11, 1012:6, 1012:8, 1012:9, 1012:10, 1012:16, 1024:7, 1024:20, 1065:6, 1066:5, 1076:16, 1143:24, 1154:3
**hours** [18] - 1008:6, 1008:13, 1008:15, 1008:21, 1010:12, 1012:7, 1013:23, 1037:6, 1042:5, 1044:20, 1045:3, 1049:17, 1051:3, 1051:4, 1052:5, 1053:18, 1086:14, 1089:4
**house** [1] - 1073:11
**housekeeping** [1] - 1003:23
**Hughes** [11] - 1008:19, 1008:23, 1010:1, 1013:24, 1027:2, 1027:19, 1028:4, 1072:6, 1072:10, 1086:13, 1088:24
**hundred** [4] - 1062:18, 1062:25, 1063:1, 1063:2
**hundreds** [5] - 1053:16, 1053:18, 1053:20, 1053:21
**Hurricane** [1] - 1080:16
**HYC8724** [2] - 1011:1, 1011:2
**hyenas** [1] - 1060:12

**I**

**ID** [4] - 1028:2, 1052:24, 1053:9, 1053:11
**idea** [1] - 1078:9
**identification** [1] - 1087:3
**identified** [8] - 1012:21, 1013:6, 1013:7, 1013:11, 1014:8, 1027:7, 1060:21, 1151:3
**identify** [3] - 1040:22, 1087:4, 1087:10
**identities** [1] - 1115:2
**ignorance** [1] - 1111:1

**ignore** [2] - 1091:24, 1096:8
**illegal** [1] - 1116:16
**image** [3] - 1013:4, 1018:12, 1048:4
**imagine** [1] - 1136:22
**immaterial** [1] - 1108:6
**immediate** [2] - 1117:23, 1119:2
**immediately** [2] - 1138:5, 1144:3
**impacted** [2] - 1089:7, 1089:8
**impartial** [2] - 1094:16, 1094:20
**impartially** [1] - 1139:8
**impassionately** [1] - 1083:25
**impeached** [1] - 1102:13
**impeaches** [1] - 1068:4
**implied** [1] - 1036:23
**importance** [1] - 1094:4
**important** [17] - 1008:4, 1012:25, 1015:4, 1048:9, 1049:22, 1053:19, 1054:9, 1060:13, 1070:21, 1094:7, 1102:24, 1103:19, 1105:18, 1114:19, 1135:12, 1136:22
**importantly** [1] - 1089:7
**imposed** [1] - 1136:7
**imposing** [1] - 1136:9
**impress** [2] - 1067:7, 1103:4
**improper** [3] - 1093:1, 1096:15, 1096:22
**inadvertently** [1] - 1124:21
**incidents** [1] - 1148:2
**included** [1] - 1065:5
**includes** [3] - 1118:12, 1135:24, 1148:10
**including** [13] - 1003:21, 1046:5, 1057:4, 1068:9, 1095:3, 1103:3, 1136:20, 1136:24, 1145:3, 1148:5, 1150:21, 1152:22, 1155:11
**incoming** [1] -

1070:23
**inconsistency** [2] -
  1105:17, 1105:20
**inconsistent** [4] -
  1105:7, 1105:8,
  1105:24, 1105:25
**inconvenience** [1] -
  1109:11
**indeed** [2] - 1111:17,
  1115:12
**independent** [2] -
  1099:20, 1114:21
**indicate** [5] - 1052:3,
  1121:9, 1131:5,
  1133:14, 1137:24
**indicated** [5] -
  1030:20, 1046:18,
  1046:20, 1109:14,
  1151:1
**indicates** [1] - 1110:8
**indicating** [4] -
  1021:11, 1022:23,
  1027:20, 1040:11
**indicating** [4] -
  1027:23, 1028:13,
  1028:21, 1081:16
**indicted** [1] - 1107:12
**Indictment** [6] -
  1091:2, 1093:4,
  1093:7, 1093:10,
  1093:11
**indictment** [20] -
  1107:11, 1109:18,
  1109:20, 1109:23,
  1109:25, 1110:4,
  1110:5, 1110:6,
  1110:10, 1110:11,
  1110:13, 1110:15,
  1111:22, 1111:23,
  1112:17, 1113:22,
  1114:12, 1125:19,
  1128:3
**indirectly** [1] -
  1155:21
**individually** [1] -
  1138:14
**individuals** [6] -
  1031:4, 1107:16,
  1107:18, 1107:19,
  1118:4, 1134:4
**induces** [1] - 1123:3
**infer** [6] - 1075:4,
  1097:16, 1097:24,
  1098:6, 1099:3,
  1113:7
**inference** [17] -
  1075:9, 1092:4,
  1093:3, 1097:17,
  1098:1, 1098:8,
  1098:10, 1098:12,

1098:14, 1099:2,
  1099:6, 1101:17,
  1107:8, 1107:13,
  1114:24, 1115:6,
  1136:14
**inferences** [6] -
  1091:14, 1098:18,
  1098:25, 1099:9,
  1099:11, 1114:23
**inferred** [1] - 1097:16
**influence** [2] -
  1107:20, 1136:7
**influenced** [3] -
  1096:6, 1136:13,
  1139:4
**information** [3] -
  1011:3, 1102:25,
  1106:19
**informed** [1] - 1115:4
**injury** [8] - 1031:7,
  1032:2, 1117:23,
  1118:7, 1118:16,
  1118:19, 1126:1,
  1126:5
**innocence** [3] -
  1081:19, 1093:19,
  1096:20
**innocent** [7] -
  1081:23, 1093:12,
  1101:10, 1102:10,
  1102:20, 1103:17,
  1105:17
**inquire** [3] - 1145:10,
  1148:9, 1148:11
**inquiries** [1] - 1150:6
**inquiry** [6] - 1146:11,
  1147:5, 1148:21,
  1149:12, 1150:19,
  1152:24
**inside** [9] - 1009:15,
  1009:16, 1015:8,
  1017:22, 1025:11,
  1028:1, 1036:8,
  1043:24, 1045:4
**instances** [1] -
  1110:17
**instead** [5] - 1018:7,
  1019:22, 1051:21,
  1055:22, 1064:9
**instruct** [14] -
  1033:14, 1036:25,
  1084:21, 1090:19,
  1090:23, 1091:1,
  1091:22, 1098:25,
  1108:16, 1109:1,
  1109:14, 1114:25,
  1128:4, 1141:24
**instructed** [3] -
  1096:11, 1106:25,
  1109:19, 1114:8,

1122:19, 1122:21,
  1132:23, 1133:2,
  1133:5, 1133:12,
  1134:3, 1134:4,
  1143:6
**instructing** [1] -
  1030:17
**instruction** [1] -
  1120:15
**instructions** [24] -
  1006:2, 1006:8,
  1030:21, 1030:22,
  1031:1, 1090:9,
  1090:11, 1090:13,
  1090:22, 1091:20,
  1094:25, 1100:15,
  1110:21, 1122:23,
  1133:1, 1133:7,
  1133:13, 1134:7,
  1134:25, 1138:12,
  1141:25, 1142:2,
  1142:6, 1154:22
**intangible** [1] -
  1118:13
**integral** [1] - 1128:20
**integrity** [1] - 1068:5
**intend** [1] - 1126:1
**intended** [11] - 1033:6,
  1033:11, 1112:7,
  1119:3, 1119:11,
  1120:8, 1120:13,
  1120:22, 1124:9,
  1124:24, 1134:25
**intends** [1] - 1121:8
**intent** [4] - 1033:16,
  1111:10, 1111:12,
  1121:9
**intention** [4] - 1114:3,
  1116:11, 1120:19,
  1130:5
**intentional** [2] -
  1103:17, 1116:17
**intentionally** [21] -
  1110:25, 1112:13,
  1113:19, 1114:1,
  1116:14, 1117:11,
  1119:25, 1121:19,
  1122:4, 1122:14,
  1126:2, 1126:19,
  1126:22, 1127:19,
  1131:18, 1131:21,
  1132:5, 1132:8,
  1132:17, 1132:20,
  1133:6
**interest** [5] - 1071:12,
  1100:22, 1103:7,
  1114:8, 1114:10
**interested** [3] -
  1137:23, 1148:23,
  1150:25

**interesting** [3] -
  1048:3, 1054:15,
  1074:10
**interestingly** [1] -
  1054:7
**interests** [1] - 1116:1
**interfere** [1] - 1096:24
**interim** [1] - 1141:2
**internally** [1] -
  1154:25
**internet** [1] - 1136:20
**interstate** [14] -
  1031:9, 1031:10,
  1032:17, 1032:21,
  1118:9, 1118:10,
  1118:22, 1119:1,
  1119:4, 1119:5,
  1119:8, 1119:9,
  1119:12, 1122:22
**interview** [1] - 1101:21
**interviewed** [1] -
  1101:16
**intimidate** [3] -
  1035:4, 1035:16,
  1131:1
**introduced** [1] -
  1101:25
**investigating** [1] -
  1050:14
**investigation** [1] -
  1136:18
**investigative** [4] -
  1056:18, 1106:18,
  1107:2
**investigator** [1] -
  1055:25
**invite** [1] - 1062:22
**involved** [2] - 1106:5,
  1113:9
**issue** [13] - 1004:8,
  1007:11, 1092:19,
  1097:15, 1097:16,
  1097:19, 1099:14,
  1106:6, 1110:3,
  1115:10, 1138:14,
  1143:21, 1147:21
**issues** [6] - 1072:9,
  1111:12, 1139:13,
  1155:9, 1155:22,
  1157:4
**Italian** [1] - 1069:8
**item** [4] - 1046:18,
  1145:10, 1147:24,
  1150:10
**itself** [4] - 1037:25,
  1047:21, 1115:20,
  1157:3

**J**

**Jack** [1] - 1078:1
**jacket** [20] - 1009:7,
  1009:9, 1013:25,
  1017:19, 1027:18,
  1027:20, 1027:21,
  1043:11, 1043:13,
  1043:16, 1044:7,
  1044:11, 1044:16,
  1044:21, 1051:18,
  1051:23, 1052:3,
  1061:21, 1088:5
**jacketing** [1] - 1014:23
**Jamaica** [14] -
  1008:12, 1023:10,
  1023:16, 1023:17,
  1024:2, 1024:6,
  1024:9, 1024:10,
  1024:17, 1024:18,
  1024:22, 1042:23,
  1042:24, 1066:1
**jean** [1] - 1072:21
**jeans** [16] - 1009:9,
  1009:11, 1009:15,
  1025:17, 1043:21,
  1043:22, 1043:24,
  1043:25, 1044:4,
  1044:6, 1044:16,
  1051:14, 1060:18,
  1061:3, 1061:15,
  1072:14
**Jerry** [1] - 1062:13
**Jersey** [15] - 1010:10,
  1010:11, 1010:18,
  1018:25, 1026:18,
  1026:20, 1026:22,
  1049:16, 1075:8,
  1075:16, 1075:18,
  1076:9, 1076:25,
  1077:1, 1079:9,
  1080:2
**Jets** [1] - 1071:9
**job** [8] - 1049:18,
  1049:21, 1051:17,
  1081:11, 1089:12,
  1141:15
**Joe** [1] - 1080:12
**JOEL** [1] - 1002:19
**Joel** [3] - 1003:15,
  1081:11, 1145:25
**join** [1] - 1038:15
**joined** [7] - 1003:10,
  1036:17, 1110:15,
  1114:1, 1114:15,
  1114:16, 1115:7
**joint** [1] - 1071:10
**joke** [1] - 1066:11
**Jon** [1] - 1081:8
**Jonathan** [3] -

1003:11, 1006:19
**JONATHAN** [2] - 1002:16, 1002:16
**journey** [1] - 1026:1
**JSL** [3] - 1014:23, 1014:24, 1015:1
**judge** [8] - 1029:5, 1029:6, 1048:20, 1049:23, 1062:11, 1084:21, 1135:4, 1145:19
**JUDGE** [3] - 1002:11, 1082:17, 1082:20
**Judge** [20] - 1003:17, 1004:8, 1005:11, 1036:19, 1036:25, 1046:15, 1047:11, 1058:23, 1062:8, 1062:11, 1077:9, 1081:17, 1081:20, 1081:21, 1082:17, 1082:20, 1083:7, 1147:1, 1147:22, 1154:14
**judge's** [1] - 1031:1
**judges** [2] - 1091:11, 1141:22
**judgment** [4] - 1005:19, 1100:5, 1102:4, 1105:23
**Julie** [1] - 1021:8
**Juror** [1] - 1134:21
**juror** [4] - 1134:23, 1143:17, 1152:1, 1155:22
**jurors** [17] - 1006:14, 1135:12, 1135:24, 1135:25, 1139:17, 1139:19, 1139:20, 1140:22, 1141:12, 1141:13, 1141:21, 1142:4, 1142:18, 1143:10, 1143:12, 1143:20, 1149:4
**jury** [75] - 1002:11, 1003:1, 1003:5, 1005:3, 1005:5, 1005:7, 1005:20, 1006:15, 1030:16, 1030:20, 1046:8, 1046:9, 1046:11, 1047:8, 1047:9, 1048:11, 1053:24, 1064:7, 1080:21, 1081:19, 1082:21, 1082:24, 1083:3, 1090:13, 1090:16, 1090:24, 1092:11, 1098:13, 1108:24, 1134:15, 1134:16,

1135:22, 1135:24, 1136:1, 1136:23, 1137:4, 1137:6, 1137:11, 1137:19, 1138:2, 1138:3, 1138:9, 1139:23, 1140:18, 1140:19, 1141:17, 1141:24, 1142:8, 1142:23, 1144:11, 1145:1, 1145:18, 1146:11, 1147:13, 1147:17, 1148:9, 1149:10, 1149:20, 1149:22, 1151:12, 1151:13, 1151:22, 1151:23, 1152:3, 1152:15, 1152:16, 1152:20, 1154:2, 1154:4, 1154:8, 1154:10, 1155:3, 1156:16, 1157:1
**Jury** [7] - 1030:21, 1045:25, 1082:8, 1083:1, 1141:11, 1155:25, 1156:5
**jury's** [1] - 1137:14
**justice** [1] - 1156:14
**justify** [1] - 1115:6

## K

**keep** [14] - 1018:23, 1035:19, 1040:10, 1045:22, 1082:5, 1102:7, 1102:17, 1134:24, 1137:14, 1139:4, 1141:22, 1142:5, 1142:24, 1143:2
**Keith** [3] - 1027:5, 1027:11, 1089:6
**Kew** [1] - 1065:21
**key** [5] - 1007:11, 1020:22, 1070:10, 1114:16, 1144:1
**kind** [4] - 1068:22, 1081:9, 1092:20, 1142:12
**kinds** [1] - 1097:4
**king** [1] - 1066:4
**knock** [1] - 1152:12
**knowing** [4] - 1075:24, 1084:9, 1116:17, 1133:6
**knowingly** [28] - 1030:12, 1031:3, 1111:3, 1112:12, 1113:19, 1114:1, 1114:15, 1117:11,

1118:3, 1119:25, 1121:19, 1122:4, 1122:14, 1124:4, 1124:7, 1125:6, 1126:19, 1126:21, 1127:18, 1128:9, 1128:11, 1130:14, 1131:18, 1131:21, 1132:5, 1132:8, 1132:17, 1132:20
**knowledge** [13] - 1097:7, 1097:9, 1099:16, 1106:6, 1111:12, 1114:2, 1114:24, 1115:6, 1116:3, 1116:6, 1116:10, 1124:16, 1124:19
**knowledgeable** [1] - 1099:18
**known** [2] - 1115:2, 1131:1
**knows** [3] - 1019:7, 1066:3, 1069:9

## L

**lab** [2] - 1061:22, 1068:17
**lack** [10] - 1077:10, 1077:11, 1091:15, 1092:17, 1094:2, 1094:17, 1097:1, 1106:22, 1108:1, 1108:3
**lacrosse** [1] - 1080:17
**ladies** [66] - 1005:13, 1006:23, 1017:8, 1018:14, 1045:19, 1046:17, 1047:7, 1048:25, 1050:21, 1051:7, 1052:7, 1055:5, 1056:17, 1058:22, 1059:18, 1060:10, 1060:15, 1060:23, 1061:6, 1061:20, 1064:25, 1065:10, 1066:14, 1067:7, 1070:8, 1070:25, 1071:22, 1072:8, 1073:5, 1073:16, 1073:21, 1074:19, 1077:4, 1077:9, 1078:19, 1080:4, 1080:8, 1080:14, 1080:19, 1081:6, 1081:17, 1081:24, 1082:2, 1083:9, 1083:17, 1083:22, 1084:7, 1085:7, 1085:18,

1085:22, 1086:9, 1086:20, 1086:23, 1087:10, 1087:13, 1088:8, 1088:16, 1089:3, 1089:12, 1089:20, 1090:7, 1090:12, 1140:16, 1150:3, 1152:7, 1154:16
**lady** [2] - 1047:6, 1049:13
**lame** [1] - 1062:1
**lapse** [1] - 1103:17
**last** [17] - 1006:23, 1011:1, 1018:23, 1023:15, 1024:20, 1024:21, 1025:10, 1026:14, 1026:23, 1040:16, 1042:23, 1051:4, 1058:16, 1074:16, 1147:24, 1151:11, 1153:8
**laughing** [1] - 1060:12
**LAW** [3] - 1090:16, 1105:2, 1130:1
**law** [43] - 1006:9, 1007:10, 1029:2, 1029:4, 1030:16, 1030:17, 1030:19, 1030:20, 1055:1, 1081:18, 1088:19, 1090:9, 1090:10, 1090:11, 1090:20, 1091:20, 1092:7, 1094:11, 1100:8, 1100:11, 1100:17, 1100:20, 1100:24, 1101:3, 1106:3, 1106:7, 1107:3, 1109:22, 1110:8, 1111:9, 1111:11, 1111:21, 1113:5, 1115:15, 1116:8, 1123:15, 1130:19, 1134:4, 1135:5, 1136:6, 1136:13, 1138:7, 1139:9
**lawful** [1] - 1108:17
**lawfully** [1] - 1109:2
**laws** [1] - 1139:15
**lawyers** [7] - 1030:23, 1091:9, 1091:20, 1092:20, 1095:8, 1095:17, 1136:24
**lawyers'** [1] - 1095:21
**Lax** [1] - 1003:11
**LAX** [1] - 1002:16
**lead** [3] - 1014:25, 1055:7, 1107:2
**leading** [1] - 1085:5

**least** [6] - 1029:9, 1059:16, 1114:17, 1116:10, 1144:2, 1146:18
**leave** [5] - 1014:19, 1015:10, 1015:14, 1015:15, 1074:24
**leaves** [1] - 1036:13
**leaving** [2] - 1018:13, 1043:2
**left** [27] - 1010:24, 1014:19, 1014:21, 1014:25, 1016:3, 1016:16, 1016:21, 1017:16, 1019:5, 1021:13, 1023:14, 1027:15, 1027:16, 1032:5, 1032:8, 1047:19, 1047:23, 1048:3, 1048:4, 1048:5, 1048:8, 1080:4, 1088:11, 1088:12, 1088:16, 1147:24, 1157:7
**left-hand** [4] - 1021:13, 1023:14, 1032:5, 1032:8
**left-handed** [4] - 1047:23, 1048:3, 1048:8, 1088:12
**legal** [5] - 1091:1, 1091:21, 1107:1, 1142:15, 1155:14
**legitimate** [1] - 1100:19
**length** [1] - 1102:6
**less** [6] - 1045:3, 1062:18, 1089:4, 1092:15, 1098:21, 1100:12
**lesser** [1] - 1100:13
**liability** [1] - 1115:11
**license** [8] - 1010:19, 1010:24, 1010:25, 1011:2, 1011:14, 1016:10, 1040:8, 1088:22
**lied** [2] - 1103:23, 1103:25
**lies** [1] - 1005:25
**life** [10] - 1014:15, 1016:4, 1069:7, 1073:6, 1073:12, 1080:7, 1080:15, 1085:23, 1089:14, 1094:5
**lift** [1] - 1048:11
**light** [7] - 1047:12, 1056:11, 1098:11, 1099:8, 1100:1,

1100:15, 1148:9
**likelihood** [1] -
1041:18
**likewise** [2] - 1122:21,
1133:5
**limited** [3] - 1105:9,
1136:20, 1148:5
**line** [2] - 1050:5,
1093:1
**list** [11] - 1148:10,
1148:24, 1149:15,
1149:18, 1151:15,
1152:11, 1152:12,
1152:17, 1153:4,
1154:6, 1157:8
**listed** [1] - 1138:21
**listen** [7] - 1029:6,
1057:6, 1058:23,
1062:8, 1081:17,
1142:15, 1155:13
**Listen** [1] - 1075:5
**listening** [2] -
1135:11, 1156:17
**listing** [3] - 1149:4,
1150:11, 1150:15
**live** [1] - 1060:9
**lives** [1] - 1118:19
**lo** [2] - 1061:10,
1071:17
**locate** [1] - 1137:25
**located** [13] - 1017:7,
1119:20, 1120:4,
1121:15, 1121:22,
1121:25, 1122:7,
1122:10, 1122:17,
1130:4, 1131:14,
1132:1, 1132:13
**locations** [1] -
1023:11
**logic** [1] - 1157:14
**logical** [6] - 1072:8,
1086:1, 1086:6,
1098:8, 1098:18,
1099:7
**LoMonaco** [2] -
1090:10, 1140:24
**Look** [2] - 1068:22,
1074:8
**look** [49] - 1009:5,
1011:4, 1016:20,
1022:20, 1023:24,
1039:7, 1039:8,
1039:9, 1040:7,
1048:18, 1051:19,
1053:24, 1054:3,
1056:13, 1056:14,
1061:17, 1063:10,
1063:16, 1067:6,
1068:17, 1068:25,
1069:18, 1069:24,

1070:14, 1070:20,
1071:24, 1072:20,
1072:21, 1072:22,
1075:2, 1076:4,
1076:23, 1077:5,
1079:4, 1080:9,
1080:10, 1080:12,
1080:24, 1087:1,
1088:25, 1098:10,
1102:15, 1106:22,
1141:7, 1141:9,
1151:25, 1152:11,
1156:23
**looked** [11] - 1028:19,
1049:21, 1050:12,
1063:12, 1063:13,
1069:2, 1071:3,
1074:13, 1078:12,
1078:14, 1080:17
**looking** [7] - 1040:11,
1052:17, 1053:8,
1071:14, 1071:16,
1076:21, 1147:8
**looks** [3] - 1005:17,
1049:19, 1080:22
**lose** [3] - 1074:5,
1074:6, 1088:2
**loses** [1] - 1087:24
**loss** [1] - 1118:21
**lost** [1] - 1010:6
**louder** [2] - 1037:1,
1113:11
**Louis** [6] - 1014:20,
1015:2, 1016:18,
1054:5, 1054:8,
1055:11
**love** [1] - 1072:4
**loves** [1] - 1065:19
**low** [2] - 1004:5,
1065:4
**lower** [6] - 1021:3,
1021:4, 1023:15,
1032:8, 1032:9,
1050:8
**LPR** [12] - 1010:21,
1011:6, 1011:12,
1016:8, 1016:16,
1017:5, 1023:21,
1023:25, 1024:4,
1078:20, 1078:21
**LPRs** [5] - 1010:20,
1023:20, 1025:25,
1026:15
**luck** [2] - 1143:15,
1144:6
**lucky** [2] - 1061:4,
1143:17
**Lucy** [1] - 1072:5
**ludicrous** [1] -
1082:14

**lunch** [7] - 1006:12,
1006:14, 1006:16,
1140:20, 1140:23,
1141:8
**lunchtime** [1] - 1080:7

## M

**madam** [1] - 1052:19
**magic** [1] - 1062:17
**Magnum** [1] - 1048:10
**Magnuson** [5] -
1009:20, 1009:22,
1067:10, 1069:14,
1076:24
**Maguire** [1] - 1062:13
**mail** [1] - 1064:21
**major** [1] - 1115:14
**Man** [1] - 1074:24
**man** [25] - 1012:23,
1013:4, 1013:5,
1016:5, 1021:20,
1021:25, 1038:19,
1039:20, 1042:5,
1042:8, 1048:10,
1053:20, 1067:11,
1069:6, 1073:10,
1075:11, 1077:17,
1081:16, 1086:10,
1086:15, 1086:25,
1087:6, 1087:12,
1087:23, 1089:23
**man's** [1] - 1087:7
**manage** [1] - 1004:6
**Manhattan** [2] -
1011:19, 1042:19
**manner** [1] - 1100:9
**Manning** [1] - 1065:18
**Mantle** [1] - 1048:21
**map** [7] - 1010:8,
1011:7, 1011:15,
1017:4, 1023:11,
1023:24
**maps** [3] - 1109:8,
1109:9, 1109:11
**March** [2] - 1002:7,
1157:19
**mark** [2] - 1005:1,
1145:5
**marked** [3] - 1005:4,
1022:14, 1152:24
**markings** [2] - 1050:8
**MARSHAL** [1] -
1147:22
**marshal** [8] - 1137:3,
1138:4, 1139:1,
1140:13, 1140:15,
1140:17, 1152:10,
1155:4
**marshal's** [1] -

1048:10
**Marshals** [2] -
1147:16, 1147:21
**mass** [1] - 1076:17
**Mastroangelo** [1] -
1065:2
**Mastropaolo** [5] -
1011:22, 1011:24,
1011:25, 1042:10,
1056:20
**match** [6] - 1028:23,
1050:25, 1056:16,
1069:4, 1077:19,
1083:18
**matched** [1] - 1056:16
**material** [2] - 1103:24,
1154:18
**matter** [14] - 1023:5,
1038:7, 1052:22,
1094:4, 1098:12,
1103:24, 1106:6,
1107:17, 1109:22,
1110:6, 1114:24,
1138:1, 1146:23,
1157:19
**matters** [6] - 1007:21,
1038:18, 1095:24,
1099:14, 1099:15,
1103:25
**Matthew** [2] - 1028:18,
1041:11
**Mavris** [4] - 1049:18,
1051:8, 1061:23,
1068:22
**maybe's** [1] - 1081:2
**McDonald's** [12] -
1049:15, 1050:6,
1050:20, 1052:5,
1064:24, 1065:19,
1065:20, 1065:23,
1065:24, 1066:9,
1066:10, 1066:13
**mean** [13] - 1016:13,
1029:23, 1049:25,
1063:11, 1064:10,
1067:20, 1073:12,
1077:21, 1077:22,
1100:11, 1101:25,
1125:16, 1129:3
**meaning** [7] -
1075:25, 1117:18,
1118:18, 1122:22,
1125:20, 1133:6,
1150:16
**meaningful** [1] -
1067:17
**means** [23] - 1029:9,
1031:20, 1032:22,
1035:4, 1035:6,
1035:19, 1093:5,

1097:17, 1102:5,
1112:23, 1117:22,
1118:15, 1118:22,
1121:5, 1130:1,
1130:7, 1130:15,
1130:16, 1130:24,
1131:3, 1136:18,
1142:20, 1146:21
**measured** [1] -
1115:11
**mechanical** [1] -
1002:24
**media** [9] - 1136:20,
1136:21, 1142:12,
1142:13, 1142:15,
1155:10, 1155:11,
1155:13
**medium** [1] - 1155:20
**meet** [1] - 1079:6
**meeting** [1] - 1058:18
**meetings** [1] -
1062:25
**member** [12] -
1112:13, 1113:20,
1113:24, 1114:12,
1115:1, 1115:2,
1115:12, 1115:20,
1115:22, 1116:8,
1137:4, 1137:6
**members** [9] -
1090:16, 1112:19,
1113:23, 1115:21,
1134:15, 1137:4,
1139:23, 1142:8,
1151:12
**Members** [1] -
1030:21
**membership** [1] -
1116:1
**memory** [3] - 1056:24,
1103:9, 1103:17
**Men** [1] - 1077:25
**mention** [3] - 1020:11,
1025:22, 1049:4
**mentioned** [4] -
1041:10, 1053:13,
1106:8, 1114:13
**mere** [11] - 1100:10,
1115:19, 1115:20,
1115:24, 1116:3,
1120:19, 1121:2,
1121:4, 1124:15,
1129:8, 1130:8
**merely** [4] - 1100:3,
1109:25, 1116:6,
1124:17
**merits** [2] - 1136:3,
1137:7
**Merrick** [3] - 1122:10,
1122:18, 1132:13

**messed** [1] - 1072:14
**messing** [1] - 1056:21
**met** [5] - 1033:17, 1079:8, 1081:20, 1106:21, 1112:20
**Miceli** [15] - 1008:18, 1013:7, 1013:12, 1027:16, 1048:1, 1056:20, 1058:20, 1061:17, 1062:7, 1062:10, 1063:4, 1063:9, 1064:23, 1071:14, 1089:5
**Mickey** [1] - 1048:21
**middle** [3] - 1011:10, 1037:8, 1081:7
**might** [13] - 1011:4, 1049:24, 1054:21, 1054:22, 1061:18, 1063:7, 1073:3, 1096:22, 1127:16, 1127:25, 1139:19, 1142:16, 1155:14
**million** [1] - 1066:6
**mind** [17] - 1018:23, 1035:19, 1040:11, 1045:22, 1082:5, 1094:14, 1098:13, 1102:7, 1102:17, 1110:24, 1111:13, 1111:17, 1111:19, 1134:24, 1137:14, 1139:4, 1142:5
**mini** [1] - 1060:8
**minimal** [1] - 1119:1
**minor** [1] - 1115:14
**minute** [12] - 1023:22, 1039:7, 1039:8, 1045:20, 1054:18, 1059:3, 1062:6, 1064:20, 1070:16, 1070:18, 1070:20, 1078:6
**minutes** [26] - 1008:10, 1011:12, 1012:18, 1013:21, 1017:2, 1017:8, 1017:11, 1020:19, 1021:16, 1021:22, 1023:1, 1023:20, 1037:15, 1042:13, 1045:23, 1045:24, 1070:17, 1071:6, 1071:7, 1082:4, 1082:7, 1139:16, 1143:25
**misdemeanor** [1] - 1078:16
**mistake** [4] - 1105:17, 1111:1, 1111:8,

1130:16
**mix** [1] - 1071:19
**mixed** [1] - 1022:21
**mixture** [2] - 1085:15, 1087:20
**mob** [1] - 1069:8
**moment** [7] - 1073:2, 1077:25, 1078:13, 1078:18, 1097:19, 1114:13, 1140:2
**moments** [3] - 1087:8, 1139:24, 1139:25
**money** [24] - 1014:12, 1018:9, 1019:25, 1020:1, 1025:4, 1031:18, 1031:19, 1031:21, 1031:23, 1032:14, 1033:12, 1033:19, 1033:20, 1062:11, 1062:12, 1062:15, 1062:16, 1062:24, 1063:2, 1067:8, 1077:17, 1077:18, 1089:18, 1118:12
**month** [2] - 1040:8, 1089:24
**moreover** [2] - 1115:4, 1116:5
**morning** [29] - 1003:8, 1003:13, 1003:14, 1003:15, 1003:17, 1003:19, 1003:20, 1006:23, 1010:7, 1013:17, 1019:1, 1019:5, 1037:6, 1037:11, 1049:16, 1053:19, 1064:22, 1070:5, 1070:24, 1076:5, 1076:7, 1076:14, 1079:8, 1151:17, 1153:3, 1153:6, 1154:2, 1156:14, 1157:5
**most** [7] - 1052:18, 1070:21, 1085:1, 1085:2, 1089:7, 1143:12, 1147:25
**mostly** [1] - 1070:15
**motive** [11] - 1077:10, 1077:11, 1077:12, 1086:3, 1107:22, 1108:1, 1108:2, 1108:3, 1108:6, 1108:7, 1108:8
**moved** [2] - 1019:11, 1089:13
**movement** [8] - 1031:10, 1116:24, 1117:12, 1118:10,

1120:1, 1121:20, 1122:5, 1122:15
**movie** [9] - 1047:20, 1062:13, 1083:15, 1083:16, 1084:7, 1089:11, 1089:13, 1089:16, 1089:25
**movies** [4] - 1080:7, 1080:14, 1086:8, 1088:7
**MR** [103] - 1003:8, 1003:14, 1003:15, 1003:17, 1003:24, 1004:4, 1004:13, 1004:17, 1004:20, 1004:25, 1005:9, 1005:11, 1006:20, 1009:1, 1009:5, 1013:3, 1014:5, 1014:18, 1015:13, 1015:20, 1016:3, 1017:15, 1018:4, 1018:12, 1019:18, 1020:5, 1021:2, 1022:5, 1022:19, 1024:13, 1025:1, 1025:6, 1025:16, 1025:22, 1026:12, 1027:10, 1028:9, 1030:14, 1030:24, 1032:5, 1036:5, 1039:7, 1040:5, 1040:21, 1041:2, 1046:13, 1046:15, 1047:4, 1058:1, 1080:2, 1082:16, 1082:23, 1083:5, 1083:7, 1083:13, 1083:14, 1083:15, 1140:8, 1140:9, 1144:8, 1144:9, 1144:10, 1145:13, 1145:15, 1145:19, 1145:22, 1145:24, 1146:1, 1146:4, 1146:6, 1146:8, 1146:12, 1146:14, 1146:16, 1146:18, 1146:25, 1147:1, 1147:4, 1147:7, 1147:10, 1147:14, 1148:4, 1148:7, 1148:19, 1149:6, 1149:9, 1149:11, 1149:15, 1149:17, 1149:19, 1149:24, 1149:25, 1151:20, 1152:2, 1152:5, 1153:8, 1153:12, 1153:19, 1153:21, 1154:12, 1154:14,

1157:12, 1157:17
**multiple** [2] - 1064:6, 1069:11
**must** [72] - 1030:10, 1030:16, 1034:1, 1034:2, 1036:16, 1091:3, 1091:19, 1091:21, 1091:22, 1092:10, 1092:15, 1092:16, 1092:22, 1094:5, 1094:19, 1095:12, 1096:11, 1096:25, 1098:10, 1101:17, 1102:2, 1102:7, 1102:15, 1102:17, 1102:21, 1108:18, 1109:2, 1109:16, 1109:22, 1109:23, 1111:6, 1111:10, 1112:10, 1112:14, 1112:25, 1113:17, 1113:22, 1114:6, 1114:14, 1114:20, 1116:9, 1116:14, 1120:6, 1120:12, 1120:17, 1120:21, 1124:8, 1124:12, 1124:23, 1125:14, 1127:12, 1127:23, 1128:8, 1128:17, 1128:25, 1129:3, 1129:13, 1130:10, 1130:13, 1130:21, 1133:10, 1135:10, 1135:19, 1135:20, 1136:19, 1137:17, 1138:17, 1138:20, 1138:22, 1139:4, 1139:8, 1141:25
**mustache** [6] - 1039:9, 1040:17, 1040:18, 1080:25, 1087:6
**mutual** [1] - 1112:25

**N**

**NAME** [2] - 1082:17, 1082:20
**name** [4] - 1042:11, 1056:21, 1058:8, 1092:13
**named** [1] - 1107:10
**names** [3] - 1068:23, 1107:12, 1155:22
**national** [1] - 1096:18
**nature** [2] - 1096:23, 1113:7
**Navy** [1] - 1069:8

**near** [3] - 1023:17, 1027:2, 1129:9
**necessarily** [5] - 1047:9, 1098:20, 1098:21, 1116:1, 1128:21
**necessary** [10] - 1030:9, 1093:3, 1107:22, 1116:9, 1121:2, 1123:11, 1124:3, 1137:1, 1137:18, 1139:24
**need** [23] - 1035:20, 1035:21, 1035:22, 1035:23, 1050:21, 1052:11, 1059:13, 1077:18, 1093:19, 1111:8, 1112:19, 1112:21, 1115:1, 1115:3, 1115:4, 1115:7, 1117:17, 1119:1, 1119:2, 1119:3, 1119:16, 1125:17, 1156:15
**needed** [4] - 1003:25, 1010:12, 1079:10, 1129:7
**needless** [1] - 1138:10
**never** [11] - 1052:1, 1061:12, 1062:3, 1070:19, 1071:21, 1074:21, 1093:18, 1101:6, 1137:6, 1152:17
**NEW** [1] - 1002:1
**new** [1] - 1059:4
**New** [43] - 1002:6, 1002:18, 1002:23, 1009:24, 1010:10, 1010:11, 1010:18, 1011:11, 1011:18, 1012:10, 1018:25, 1024:17, 1026:18, 1026:20, 1026:22, 1049:16, 1072:15, 1075:16, 1085:24, 1089:13, 1117:7, 1117:10, 1117:15, 1119:21, 1119:24, 1120:4, 1121:16, 1121:18, 1121:23, 1122:1, 1122:3, 1122:8, 1122:11, 1122:13, 1122:18, 1126:18, 1131:14, 1131:17, 1132:1, 1132:4, 1132:13, 1132:16
**Newark** [3] - 1049:16, 1050:21, 1052:5

**next** [32] - 1005:22, 1017:10, 1020:23, 1024:3, 1027:21, 1033:3, 1034:17, 1037:11, 1041:9, 1042:12, 1046:18, 1052:14, 1056:18, 1057:11, 1058:13, 1065:15, 1065:19, 1065:23, 1066:9, 1070:4, 1070:20, 1073:14, 1076:4, 1079:11, 1083:19, 1089:12, 1090:8, 1113:22, 1129:15, 1147:11, 1152:1

**Nicholson** [1] - 1078:1

**nicknames** [2] - 1083:23, 1086:9

**night** [13] - 1007:13, 1010:4, 1010:17, 1011:10, 1012:17, 1023:10, 1024:21, 1026:24, 1037:11, 1043:8, 1088:3, 1154:5, 1156:25

**nine** [1] - 1109:21

**Nine** [10] - 1029:19, 1034:7, 1034:23, 1131:7, 1132:11, 1133:9, 1133:18, 1133:24, 1134:8, 1138:20

**nobody** [3] - 1006:12, 1046:22, 1137:15

**Nobody** [1] - 1047:16

**Nolan** [2] - 1048:14, 1067:10

**none** [4] - 1087:4, 1097:19, 1106:1, 1138:3

**noon** [1] - 1047:7

**normal** [2] - 1143:1, 1143:2

**normally** [1] - 1118:18

**North** [9] - 1009:22, 1009:23, 1059:22, 1066:23, 1074:14, 1085:14, 1088:23, 1148:5, 1148:6

**Northern** [1] - 1131:14

**northern** [2] - 1121:15, 1121:23

**nose** [1] - 1039:9

**note** [18] - 1003:6, 1058:21, 1114:19, 1137:2, 1137:19, 1138:2, 1138:3, 1138:8, 1138:12, 1139:1, 1144:4,

1144:7, 1145:5, 1150:5, 1152:25, 1153:2, 1153:4, 1153:5

**notepad** [2] - 1089:21, 1089:22

**notes** [6] - 1056:24, 1058:21, 1137:8, 1143:24, 1154:7, 1154:16

**noteworthy** [1] - 1058:14

**nothing** [11] - 1007:16, 1049:6, 1050:19, 1059:6, 1063:8, 1083:16, 1083:17, 1086:20, 1093:7, 1134:24, 1156:8

**notice** [3] - 1021:20, 1093:5, 1143:1

**notified** [1] - 1050:17

**notify** [2] - 1050:11, 1139:1

**notwithstanding** [1] - 1030:15

**November** [26] - 1007:1, 1007:8, 1008:2, 1008:21, 1010:4, 1011:9, 1011:23, 1049:16, 1067:19, 1070:1, 1070:14, 1072:15, 1074:11, 1074:16, 1077:16, 1078:7, 1117:9, 1119:23, 1120:14, 1121:17, 1122:2, 1122:12, 1126:17, 1131:16, 1132:3, 1132:15

**number** [13] - 1040:2, 1041:19, 1070:12, 1077:5, 1102:2, 1102:5, 1103:1, 1142:25, 1144:2, 1145:16, 1149:14, 1153:4, 1153:13

**Number** [2] - 1003:5, 1134:21

**numbers** [1] - 1089:21

**numerically** [1] - 1137:11

**numerous** [1] - 1150:9

**Nuzio** [19] - 1009:14, 1026:6, 1027:24, 1028:7, 1041:6, 1044:5, 1056:19, 1059:1, 1059:5, 1060:3, 1060:14, 1061:5, 1061:8,

1064:2, 1067:23, 1067:24, 1068:7, 1073:25, 1089:6

**Nuzio's** [2] - 1068:4, 1073:25

**nyc** [1] - 1024:16

**NYC** [1] - 1012:7

---

# O

**o'clock** [3] - 1002:8, 1070:6, 1151:9

**oath** [3] - 1052:17, 1064:7, 1139:11

**object** [6] - 1022:13, 1022:15, 1030:15, 1096:5, 1112:22, 1112:24

**objecting** [1] - 1030:17

**objection** [4] - 1030:18, 1096:7, 1114:4

**objections** [4] - 1092:25, 1096:3, 1140:6, 1153:24

**objective** [3] - 1031:8, 1111:7, 1118:8

**objectives** [3] - 1115:8, 1116:7, 1116:10

**objects** [1] - 1112:1

**obligation** [4] - 1093:17, 1139:6, 1139:7, 1154:1

**obligations** [1] - 1156:4

**obliged** [1] - 1101:19

**observation** [1] - 1098:4

**observe** [1] - 1103:11

**observing** [1] - 1103:21

**obstruct** [6] - 1117:5, 1117:12, 1119:25, 1121:19, 1122:4, 1122:14

**obstructs** [1] - 1116:23

**obtain** [1] - 1126:3

**obtained** [8] - 1030:13, 1031:3, 1069:2, 1097:8, 1108:13, 1108:15, 1118:3, 1125:24

**obtaining** [3] - 1117:20, 1118:1, 1118:2

**obvious** [1] - 1096:13

**obviously** [5] -

1053:1, 1129:4, 1147:15, 1150:8, 1156:2

**occasion** [1] - 1105:6

**occasionally** [1] - 1095:22

**occasions** [1] - 1005:18

**occur** [2] - 1125:23, 1126:1

**occurred** [2] - 1110:7, 1140:5

**OCME** [2] - 1051:21, 1068:22

**OCME's** [1] - 1087:19

**October** [1] - 1065:14

**OF** [4] - 1002:1, 1002:4, 1002:10, 1090:15

**offense** [9] - 1110:16, 1112:6, 1112:15, 1113:18, 1121:5, 1123:6, 1123:16, 1125:11, 1138:16

**offense...or** [1] - 1123:2

**offenses** [3] - 1033:25, 1035:1, 1133:19

**offer** [4] - 1004:5, 1092:24, 1102:9, 1102:19

**offered** [2] - 1096:3, 1108:23

**office** [3] - 1026:5, 1051:22, 1064:1

**officer** [1] - 1050:14

**often** [2] - 1067:23, 1113:11

**old** [5] - 1039:21, 1072:4, 1073:1, 1089:22, 1089:25

**once** [5] - 1017:22, 1026:25, 1098:15, 1135:3, 1136:4

**One** [5] - 1036:13, 1111:23, 1117:8, 1119:17, 1134:21

**one** [99] - 1004:15, 1020:5, 1021:19, 1022:16, 1022:17, 1023:25, 1024:1, 1027:18, 1027:19, 1029:9, 1031:3, 1031:13, 1034:13, 1035:13, 1041:19, 1044:24, 1045:3, 1049:11, 1051:1, 1052:16, 1057:3, 1059:8, 1059:16,

1061:13, 1062:22, 1063:7, 1064:19, 1064:20, 1064:21, 1069:12, 1069:21, 1070:23, 1071:20, 1085:12, 1085:13, 1085:24, 1086:1, 1086:11, 1088:9, 1089:24, 1097:8, 1099:4, 1101:24, 1103:19, 1110:11, 1110:13, 1110:20, 1115:21, 1117:6, 1117:7, 1117:14, 1118:4, 1118:14, 1118:23, 1120:3, 1121:3, 1121:21, 1122:6, 1122:16, 1124:19, 1125:12, 1126:19, 1126:23, 1131:8, 1131:12, 1131:19, 1131:22, 1131:24, 1132:6, 1132:9, 1132:11, 1132:18, 1132:21, 1133:15, 1133:17, 1136:1, 1136:4, 1136:25, 1137:3, 1139:18, 1141:17, 1141:19, 1141:20, 1142:6, 1142:18, 1144:2, 1146:5, 1146:19, 1146:20, 1147:24, 1148:6, 1150:24, 1152:18, 1153:8, 1154:22

**ones** [2] - 1148:3, 1151:3

**open** [12] - 1003:1, 1006:2, 1045:22, 1046:21, 1082:5, 1082:9, 1082:21, 1137:8, 1140:12, 1142:5, 1145:1, 1152:20

**opened** [5] - 1014:9, 1018:8, 1019:23, 1025:3, 1044:2

**opening** [7] - 1006:1, 1006:3, 1021:3, 1043:3, 1047:19, 1080:5, 1089:11

**opinion** [10] - 1067:14, 1067:15, 1068:17, 1095:24, 1099:15, 1099:21, 1099:25, 1100:3, 1100:4, 1139:5

**opinions** [6] - 1099:14, 1099:22,

1108:19, 1109:3, 1135:14, 1142:7

**opportunity** [10] - 1046:24, 1103:10, 1142:7, 1142:9, 1149:3, 1150:16, 1151:5, 1151:7, 1151:13, 1151:25

**opposite** [2] - 1049:1, 1067:23

**orally** [1] - 1137:8

**order** [25] - 1004:16, 1004:18, 1035:4, 1035:15, 1037:3, 1066:15, 1093:21, 1109:10, 1112:9, 1112:18, 1114:5, 1115:6, 1117:16, 1123:14, 1124:2, 1128:16, 1128:24, 1130:11, 1131:1, 1134:19, 1145:24, 1145:25, 1150:6, 1157:6

**ordered** [2] - 1052:4, 1078:2

**ordering** [1] - 1050:23

**orderly** [1] - 1134:20

**ordinarily** [1] - 1099:24

**ordinary** [2] - 1100:13, 1118:18

**Orenstein** [1] - 1081:21

**orient** [2] - 1012:18, 1021:2

**orientation** [1] - 1096:19

**origin** [1] - 1096:18

**otherwise** [6] - 1067:20, 1130:25, 1137:11, 1143:1, 1143:23, 1155:6

**outcome** [4] - 1100:23, 1103:7, 1114:7, 1114:9

**outfit** [2] - 1014:6, 1044:15

**outgoing** [2] - 1070:22

**outset** [3] - 1030:3, 1109:14, 1139:6

**outside** [18] - 1003:1, 1016:11, 1016:13, 1016:14, 1016:24, 1020:17, 1025:11, 1025:13, 1026:9, 1096:14, 1097:25, 1118:25, 1135:23, 1136:23, 1145:1, 1152:20, 1155:8

**overcome** [1] - 1093:14

**overlook** [2] - 1086:6, 1086:10

**overnight** [1] - 1148:24

**overruled** [1] - 1096:9

**overt** [1] - 1124:13

**overwhelm** [1] - 1102:4

**overwhelming** [1] - 1007:1

**own** [12] - 1043:4, 1043:6, 1066:15, 1073:15, 1100:5, 1102:16, 1102:24, 1105:23, 1106:12, 1114:21, 1136:18, 1143:23

---

**P**

---

**p.m** [13] - 1008:2, 1008:20, 1009:24, 1027:2, 1070:2, 1074:18, 1076:20, 1141:11, 1149:20, 1152:15, 1154:8, 1157:1

**packed** [2] - 1041:4, 1041:5

**packing** [1] - 1043:25

**padded** [1] - 1058:4

**page** [23] - 1012:22, 1013:15, 1016:18, 1020:2, 1020:9, 1020:14, 1020:23, 1026:6, 1039:16, 1040:25, 1041:23, 1050:4, 1057:11, 1065:13, 1065:19, 1065:23, 1066:9, 1067:23, 1079:11, 1104:4, 1129:15

**pages** [17] - 1008:20, 1011:25, 1014:21, 1015:7, 1017:23, 1019:13, 1020:14, 1021:9, 1024:23, 1027:6, 1027:17, 1028:24, 1032:12, 1041:6, 1041:12, 1064:18, 1078:21

**pain** [1] - 1118:16

**pair** [5] - 1034:12, 1034:15, 1034:17, 1061:16, 1067:24

**paired** [1] - 1034:8

**pairs** [2] - 1060:18, 1061:15

**pants** [27] - 1009:10, 1021:21, 1022:1, 1028:2, 1028:4, 1028:5, 1028:6, 1043:12, 1044:7, 1044:12, 1044:21, 1049:22, 1050:7, 1050:11, 1051:6, 1051:18, 1052:4, 1060:19, 1061:11, 1061:22, 1063:24, 1064:2, 1064:8, 1064:23, 1072:15, 1072:23, 1088:6

**paper** [2] - 1050:10, 1150:15

**papers** [1] - 1106:7

**Paralegal** [1] - 1003:11

**Park** [1] - 1080:17

**Parkway** [3] - 1023:22, 1023:24, 1024:16

**part** [27] - 1010:22, 1011:7, 1013:17, 1014:24, 1022:16, 1028:20, 1033:16, 1034:15, 1034:16, 1036:2, 1045:3, 1056:3, 1058:16, 1089:3, 1104:2, 1106:1, 1109:13, 1113:15, 1115:6, 1116:21, 1128:20, 1130:10, 1130:24, 1134:17, 1137:23, 1145:11, 1155:24

**participant** [2] - 1114:6, 1116:17

**participants** [1] - 1113:14

**participate** [3] - 1114:2, 1124:5, 1125:4

**participated** [3] - 1116:9, 1124:11, 1125:18

**participation** [5] - 1114:20, 1115:9, 1115:12, 1116:4, 1141:14

**particular** [6] - 1085:4, 1094:18, 1094:23, 1103:5, 1106:24, 1137:23

**parties** [5] - 1031:20, 1032:19, 1032:22, 1091:9, 1092:10, 1095:10, 1095:11, 1113:9, 1139:21

**partnership** [1] -

1112:5

**parts** [5] - 1030:9, 1030:10, 1085:23, 1090:22, 1115:14

**party** [5] - 1092:10, 1092:12, 1106:3, 1106:7, 1139:13

**pass** [4] - 1091:12, 1097:12, 1141:20, 1152:1

**passed** [1] - 1149:3

**passenger** [2] - 1058:10, 1108:12

**past** [3] - 1017:17, 1054:23, 1156:11

**pat** [1] - 1058:11

**patience** [4] - 1090:21, 1139:23, 1141:6, 1156:21

**patient** [1] - 1138:1

**patiently** [1] - 1140:1

**patted** [1] - 1058:12

**pattern** [1] - 1019:15

**pause** [1] - 1082:25

**Pause** [1] - 1152:6

**pay** [3] - 1012:24, 1018:14, 1046:21

**paying** [1] - 1065:25

**Pelle** [6] - 1051:23, 1061:21, 1072:25

**Pena** [9] - 1024:22, 1025:1, 1025:2, 1025:7, 1032:10, 1032:12, 1032:13, 1039:20, 1040:15

**Penna** [1] - 1089:18

**people** [22] - 1009:2, 1037:22, 1048:19, 1048:22, 1048:23, 1051:3, 1052:24, 1054:4, 1066:14, 1066:17, 1066:20, 1067:20, 1069:15, 1074:6, 1088:1, 1088:7, 1089:7, 1103:16, 1103:21, 1113:2

**percent** [6] - 1028:22, 1041:15, 1041:24, 1042:1, 1085:15, 1087:20

**perform** [3] - 1092:8, 1115:12, 1115:13

**performance** [1] - 1094:11

**performed** [1] - 1123:6

**period** [3] - 1070:6, 1077:6, 1136:3

**perjured** [1] - 1064:11

**permission** [3] - 1006:21, 1147:15, 1152:3

**permit** [2] - 1102:2, 1111:16

**permitted** [2] - 1099:13, 1099:15

**perpetrator** [2] - 1054:10, 1055:17

**perpetrator's** [2] - 1055:22, 1056:7

**person** [46] - 1007:13, 1021:18, 1028:21, 1029:10, 1030:4, 1030:7, 1033:1, 1034:24, 1035:14, 1038:6, 1038:11, 1039:14, 1039:18, 1043:7, 1052:19, 1094:1, 1094:3, 1094:6, 1097:22, 1098:4, 1107:13, 1110:25, 1111:5, 1111:8, 1115:22, 1117:1, 1117:21, 1117:24, 1117:25, 1118:14, 1118:16, 1121:7, 1123:15, 1123:23, 1123:25, 1126:2, 1127:2, 1127:3, 1128:23, 1130:3, 1131:1, 1131:3, 1134:12, 1134:14, 1139:13

**person's** [3] - 1052:25, 1110:24, 1111:18

**personal** [10] - 1094:5, 1096:17, 1100:22, 1102:16, 1108:18, 1109:3, 1117:20, 1118:20, 1125:23, 1126:3

**personalities** [3] - 1092:18, 1155:9, 1155:21

**persons** [12] - 1036:14, 1036:16, 1096:20, 1106:4, 1107:10, 1107:11, 1112:3, 1112:11, 1112:16, 1113:15, 1123:23, 1123:25

**perspective** [1] - 1059:4

**persuaded** [1] - 1126:6

**pertinent** [1] - 1116:21

**Pesci's** [1] - 1080:12

**Pete** [1] - 1048:22

**Phil** [5] - 1003:9, 1078:5, 1081:8, 1081:10, 1083:11
**PHILIP** [1] - 1002:15
**Philip** [1] - 1077:20
**phone** [63] - 1009:22, 1009:24, 1010:6, 1010:7, 1011:23, 1012:1, 1012:2, 1012:5, 1019:5, 1019:8, 1024:14, 1027:22, 1042:8, 1042:9, 1042:10, 1042:24, 1042:25, 1043:2, 1043:3, 1043:4, 1043:6, 1043:7, 1045:11, 1056:21, 1064:15, 1067:1, 1067:12, 1069:18, 1069:25, 1070:7, 1070:22, 1071:15, 1072:7, 1074:3, 1074:6, 1074:8, 1074:9, 1074:10, 1074:17, 1074:23, 1075:3, 1075:6, 1075:14, 1075:16, 1075:22, 1075:23, 1075:24, 1075:25, 1076:15, 1077:2, 1078:11, 1079:7, 1087:25, 1088:3, 1089:1, 1108:11, 1144:2, 1155:19
**phone's** [1] - 1074:21
**phones** [5] - 1010:9, 1018:22, 1064:16, 1069:9, 1074:6
**photo** [13] - 1016:24, 1017:1, 1028:2, 1039:4, 1044:11, 1064:21, 1072:23, 1141:3, 1146:9, 1146:16, 1146:19, 1146:22, 1150:24
**photograph** [10] - 1010:23, 1010:24, 1013:11, 1016:16, 1016:17, 1038:6, 1039:8, 1040:19, 1043:18
**photographed** [4] - 1010:25, 1016:11, 1016:24, 1023:21
**photos** [14] - 1044:23, 1060:9, 1145:8, 1145:11, 1146:2, 1146:7, 1146:15, 1146:19, 1149:2,

1150:20, 1150:21, 1150:23
**phrase** [1] - 1125:16
**physical** [5] - 1045:12, 1117:1, 1118:16, 1130:2, 1136:17
**physically** [5] - 1052:14, 1123:13, 1123:23, 1125:17, 1128:22
**pick** [6] - 1005:24, 1052:22, 1059:1, 1073:7, 1073:8, 1142:16
**picked** [3] - 1061:12, 1061:13, 1068:7
**picking** [1] - 1060:15
**picture** [21] - 1007:23, 1011:7, 1011:8, 1012:20, 1012:21, 1013:6, 1016:21, 1021:13, 1026:4, 1027:10, 1027:22, 1028:12, 1038:2, 1041:5, 1043:15, 1044:2, 1044:4, 1063:14, 1067:2, 1071:2, 1071:4
**pictures** [5] - 1016:15, 1039:11, 1045:2, 1064:18
**pie** [2] - 1069:11, 1069:20
**piece** [5] - 1007:6, 1018:7, 1055:7, 1106:19, 1150:14
**place** [14] - 1019:2, 1023:8, 1025:12, 1028:20, 1061:13, 1068:7, 1071:7, 1106:5, 1109:9, 1118:25, 1130:4, 1135:22, 1141:23
**placed** [1] - 1105:8
**places** [1] - 1012:13
**placing** [1] - 1110:3
**Plaintiff** [1] - 1002:5
**plan** [7] - 1013:17, 1033:16, 1042:25, 1062:25, 1114:15, 1116:4, 1117:2
**planned** [1] - 1121:11
**planning** [1] - 1121:4
**plate** [7] - 1010:19, 1010:24, 1010:25, 1011:2, 1011:14, 1016:10, 1088:22
**plausible** [1] - 1045:8
**play** [11] - 1008:24, 1013:1, 1014:3,

1015:11, 1021:14, 1022:16, 1036:2, 1048:16, 1115:14, 1148:13
**played** [16] - 1008:25, 1013:2, 1014:4, 1015:12, 1016:2, 1017:14, 1018:3, 1019:17, 1021:15, 1022:18, 1024:25, 1025:15, 1026:11, 1036:4, 1072:11, 1130:10
**playing** [4] - 1022:4, 1025:5, 1052:9, 1067:6
**Plaza** [2] - 1002:17, 1002:22
**pleaded** [2] - 1093:11, 1110:2
**pleasant** [3] - 1143:18, 1156:23, 1156:25
**pleasure** [2] - 1061:5, 1144:6
**plural** [1] - 1146:19
**pocket** [3] - 1050:7, 1050:11, 1077:13
**pockets** [2] - 1061:18, 1064:16
**point** [16] - 1047:15, 1050:12, 1050:13, 1059:1, 1059:18, 1059:19, 1066:3, 1073:4, 1075:9, 1077:3, 1086:3, 1143:5, 1146:12, 1147:5, 1149:13
**pointed** [1] - 1065:3
**pointing** [1] - 1035:14
**points** [2] - 1045:14, 1087:2
**pool** [1] - 1055:8
**pop** [1] - 1044:8
**posed** [2] - 1084:23, 1084:24
**position** [1] - 1055:3
**possess** [6] - 1034:21, 1126:22, 1130:6, 1131:21, 1132:8, 1132:20
**possessed** [5] - 1034:3, 1127:20, 1128:11, 1129:12, 1133:16
**possesses** [1] - 1127:6
**possessing** [4] - 1126:13, 1131:9, 1132:24, 1133:4

**possession** [8] - 1117:25, 1128:22, 1129:8, 1129:13, 1129:14, 1130:2, 1130:8, 1151:19
**Possession** [1] - 1130:1
**possibility** [1] - 1139:18
**possible** [7] - 1051:15, 1051:16, 1094:12, 1101:20, 1137:22
**possibly** [3] - 1051:16, 1067:1, 1072:17
**Post** [1] - 1146:16
**post** [11] - 1013:6, 1013:10, 1039:4, 1040:19, 1044:11, 1145:8, 1145:11, 1146:15, 1146:19, 1150:20, 1150:21
**post-arrest** [4] - 1013:6, 1039:4, 1040:19, 1044:11
**posted** [1] - 1143:3
**posts** [1] - 1077:16
**potentially** [1] - 1119:6
**power** [1] - 1130:5
**powerful** [2] - 1048:12, 1049:2
**precise** [1] - 1112:23
**preclude** [1] - 1141:20
**predict** [2] - 1141:17, 1141:19
**prejudice** [2] - 1092:9, 1139:5
**preparation** [3] - 1101:22, 1121:2, 1121:4
**preparations** [1] - 1121:7
**prepare** [1] - 1101:19
**preparing** [1] - 1101:16
**presence** [9] - 1003:1, 1005:16, 1108:7, 1115:19, 1117:21, 1124:15, 1130:25, 1145:1, 1152:20
**present** [14] - 1003:21, 1005:7, 1046:5, 1046:11, 1082:21, 1083:3, 1106:4, 1107:13, 1129:6, 1136:1, 1145:2, 1149:22, 1152:21, 1154:10
**presentation** [2] -

1065:4, 1065:5
**presented** [8] - 1090:17, 1099:17, 1106:11, 1106:13, 1106:14, 1107:6, 1109:7, 1135:5
**presents** [1] - 1066:23
**presiding** [1] - 1003:3
**press** [1] - 1092:25
**pressed** [1] - 1078:15
**presumably** [1] - 1077:15
**presumed** [4] - 1093:12, 1101:10, 1102:10, 1102:20
**presumption** [3] - 1081:19, 1093:14, 1096:20
**pretended** [3] - 1017:24, 1019:14, 1025:2
**pretending** [1] - 1014:7
**pretty** [5] - 1023:14, 1060:17, 1065:8, 1067:14, 1068:24
**previous** [1] - 1120:15
**principal** [6] - 1123:4, 1123:7, 1123:12, 1123:18, 1133:25, 1134:6
**principally** [1] - 1154:22
**principles** [1] - 1136:5
**print** [3] - 1055:21, 1055:22, 1136:21
**pristine** [1] - 1017:21
**privilege** [1] - 1061:5
**prize** [1] - 1060:1
**probablies** [1] - 1081:2
**problem** [2] - 1148:15, 1148:20
**proceed** [3] - 1083:9, 1134:19, 1152:13
**proceeded** [1] - 1060:8
**proceeding** [1] - 1142:16
**Proceedings** [1] - 1002:24
**proceedings** [2] - 1155:14, 1156:13
**process** [2] - 1096:24, 1141:15
**procures** [1] - 1123:3
**produce** [3] - 1061:23, 1106:7, 1106:10
**produced** [1] - 1002:25

Case 1:18-cr-00684-ENV   Document 178   Filed 03/13/20   Page 180 of 189 PageID #: 2378

**product** [2] - 1111:7, 1111:8
**productively** [1] - 1151:11
**professional** [1] - 1100:22
**program** [1] - 1090:1
**projectile** [1] - 1128:14
**promote** [1] - 1130:7
**promptness** [1] - 1047:12
**proof** [21] - 1025:24, 1026:3, 1081:3, 1094:6, 1094:13, 1096:17, 1096:21, 1097:15, 1097:15, 1101:8, 1102:7, 1102:17, 1106:15, 1106:21, 1107:22, 1108:2, 1108:3, 1113:6, 1113:14, 1114:8, 1133:15
**Proof** [1] - 1094:5
**properly** [8] - 1005:8, 1046:12, 1083:4, 1101:21, 1108:13, 1114:11, 1149:23, 1154:11
**property** [15] - 1031:3, 1031:6, 1031:14, 1032:1, 1051:21, 1062:2, 1117:2, 1117:21, 1117:24, 1117:25, 1118:3, 1118:5, 1122:20, 1125:24, 1126:3
**proposal** [1] - 1148:7
**propose** [1] - 1149:1
**pros** [1] - 1081:10
**prosecuted** [3] - 1127:4, 1127:16, 1127:25
**prosecution** [1] - 1092:12
**prove** [37] - 1030:10, 1031:2, 1033:9, 1036:16, 1081:22, 1081:23, 1091:3, 1093:19, 1093:22, 1094:12, 1097:15, 1098:20, 1098:21, 1107:3, 1109:16, 1112:9, 1112:10, 1112:14, 1112:25, 1113:17, 1119:16, 1120:5, 1120:12, 1120:17, 1124:12, 1127:8, 1127:12, 1127:23, 1128:8,

1128:16, 1128:17, 1128:24, 1128:25, 1129:11, 1129:13, 1130:13, 1130:18
**proved** [6] - 1099:10, 1107:24, 1108:21, 1109:6, 1111:14, 1114:25
**proven** [14] - 1006:24, 1031:24, 1032:24, 1083:20, 1093:13, 1099:4, 1106:23, 1107:7, 1111:3, 1117:17, 1123:23, 1128:6, 1130:22, 1136:11
**proves** [1] - 1045:12
**provide** [3] - 1138:8, 1151:21, 1154:6
**provided** [3] - 1138:9, 1143:14, 1149:17
**provides** [4] - 1116:22, 1123:1, 1127:1, 1134:17
**proving** [2] - 1093:17, 1127:14
**public** [1] - 1139:5
**published** [8] - 1024:12, 1027:9, 1028:8, 1032:4, 1036:10, 1039:6, 1040:4, 1040:20
**puddle** [2] - 1014:25, 1015:17
**pull** [3] - 1021:17, 1061:14, 1065:12
**pulled** [8] - 1018:9, 1019:24, 1025:3, 1027:14, 1049:1, 1058:2, 1079:1, 1088:10
**pulling** [1] - 1061:10
**pulls** [1] - 1021:23
**punishable** [3] - 1112:8, 1123:4, 1123:7
**punishment** [1] - 1136:6
**purchase** [3] - 1065:15, 1066:10
**purified** [1] - 1153:23
**purpose** [10] - 1105:9, 1112:4, 1112:8, 1112:23, 1112:24, 1114:2, 1116:15, 1117:2, 1124:14, 1135:9
**purposefully** [3] - 1105:16, 1111:6, 1130:15

**purposes** [4] - 1095:22, 1114:18, 1116:7, 1116:10
**pursuant** [1] - 1108:10
**pursue** [2] - 1106:19, 1107:2
**Puskas** [1] - 1059:11
**put** [19] - 1007:3, 1007:22, 1014:10, 1025:4, 1030:5, 1044:24, 1045:7, 1060:5, 1060:24, 1060:25, 1067:3, 1067:24, 1075:13, 1076:6, 1086:16, 1095:19, 1138:25, 1140:17
**puts** [1] - 1042:13
**putting** [1] - 1032:25

## Q

**quadrillion** [1] - 1041:19
**qualifications** [1] - 1099:22
**quality** [1] - 1020:21
**quantity** [1] - 1102:6
**quarter** [2] - 1066:19, 1151:9
**Queens** [33] - 1008:8, 1010:11, 1011:13, 1011:19, 1023:10, 1024:2, 1024:17, 1024:22, 1026:14, 1042:23, 1042:24, 1063:8, 1065:7, 1065:16, 1066:1, 1066:4, 1066:5, 1076:3, 1117:7, 1117:15, 1119:21, 1120:4, 1121:16, 1121:23, 1122:1, 1122:8, 1122:11, 1122:18, 1131:14, 1132:1, 1132:13
**Queensboro** [3] - 1011:15, 1011:16, 1012:19
**QUESTION** [3] - 1055:20, 1056:4, 1056:8
**questioned** [4] - 1083:25, 1084:1, 1084:8
**questioning** [2] - 1055:10, 1093:2
**questions** [25] - 1020:10, 1063:24, 1066:7, 1080:5,

1084:23, 1084:24, 1085:2, 1095:19, 1095:21, 1095:22, 1095:23, 1095:25, 1096:3, 1103:13, 1125:3, 1125:13, 1125:21, 1126:7, 1133:20, 1138:6, 1138:11, 1138:20, 1156:19
**quit** [1] - 1089:12
**quite** [1] - 1100:19
**quote** [2] - 1083:22, 1089:18
**quoted** [1] - 1089:11

## R

**race** [1] - 1096:18
**rack** [1] - 1053:23
**radio** [2] - 1142:19, 1155:17
**rain** [2] - 1097:25, 1098:6
**raincoat** [3] - 1097:23, 1098:1, 1098:5
**rained** [1] - 1098:7
**raining** [2] - 1097:19, 1097:25
**raise** [1] - 1140:14
**ran** [7] - 1014:16, 1014:18, 1015:10, 1015:14, 1016:3, 1017:3, 1058:10
**random** [1] - 1041:20
**rarely** [1] - 1111:14
**rather** [2] - 1111:7, 1119:17
**ratio** [1] - 1041:18
**ray** [1] - 1036:8
**re** [2] - 1049:2, 1082:15
**re-coil** [1] - 1049:2
**re-evaluate** [1] - 1082:15
**reach** [5] - 1092:4, 1099:7, 1135:13, 1135:19, 1139:9
**reached** [3] - 1137:12, 1138:24, 1139:2
**reaching** [6] - 1048:5, 1092:8, 1096:16, 1099:20, 1135:9, 1136:15
**reacted** [1] - 1078:8
**reaction** [1] - 1036:2
**reactions** [2] - 1092:20, 1092:22
**read** [6] - 1005:2, 1090:11, 1140:7,

1140:24, 1145:6, 1153:1
**readbacks** [1] - 1137:22
**Reade** [27] - 1008:8, 1012:15, 1012:16, 1012:17, 1013:16, 1013:22, 1016:12, 1016:13, 1016:14, 1016:25, 1017:7, 1023:13, 1029:13, 1033:5, 1033:11, 1035:9, 1035:11, 1036:12, 1037:14, 1041:25, 1053:3, 1054:6, 1089:23, 1119:20, 1120:3
**reader** [1] - 1023:22
**readers** [2] - 1010:19, 1088:22
**readily** [1] - 1128:14
**reading** [2] - 1137:19, 1153:11
**reads** [11] - 1117:8, 1119:22, 1121:16, 1122:1, 1122:11, 1126:16, 1131:15, 1132:1, 1132:14, 1153:2, 1153:5
**ready** [9] - 1006:17, 1046:8, 1046:17, 1076:10, 1076:11, 1082:22, 1083:9, 1154:18, 1155:2
**real** [6] - 1035:12, 1035:25, 1036:11, 1080:15, 1089:14, 1113:10
**realistic** [1] - 1068:18
**really** [14] - 1038:16, 1038:18, 1038:24, 1048:7, 1048:23, 1049:1, 1051:9, 1053:7, 1058:9, 1060:1, 1063:16, 1067:15, 1068:18, 1069:19, 1073:11, 1084:17, 1086:17, 1155:17
**reason** [18] - 1007:20, 1020:11, 1038:23, 1040:24, 1042:3, 1042:4, 1042:7, 1043:9, 1049:4, 1054:19, 1084:15, 1094:1, 1098:11, 1099:3, 1100:5, 1102:23, 1103:5, 1138:2
**reasonable** [63] -

1006:24, 1030:11,
1033:10, 1035:18,
1038:22, 1045:13,
1047:22, 1049:11,
1052:8, 1080:19,
1081:3, 1081:14,
1081:18, 1083:20,
1086:7, 1091:4,
1091:15, 1093:13,
1093:17, 1093:23,
1094:1, 1094:3,
1094:5, 1094:6,
1094:9, 1094:13,
1094:17, 1094:22,
1098:9, 1098:17,
1101:9, 1106:24,
1107:7, 1107:25,
1108:6, 1108:22,
1109:6, 1109:16,
1110:19, 1112:10,
1112:15, 1113:18,
1114:22, 1120:7,
1120:13, 1120:21,
1123:22, 1126:6,
1127:8, 1127:13,
1127:24, 1128:6,
1128:9, 1128:17,
1128:25, 1130:14,
1130:22, 1133:15,
1133:21, 1136:12,
1138:15, 1156:11
**reasonably** [1] -
1078:22
**reasons** [7] - 1034:18,
1038:21, 1068:15,
1091:25, 1092:18,
1099:22, 1107:18
**rebut** [1] - 1081:13
**rebuttal** [6] - 1004:22,
1004:24, 1006:5,
1082:3, 1083:10
**REBUTTAL** [1] -
1083:14
**receipt** [10] - 1049:16,
1049:22, 1049:25,
1050:6, 1050:9,
1050:10, 1050:12,
1050:15, 1050:16,
1137:19
**receive** [2] - 1090:12,
1150:16
**received** [7] - 1018:24,
1095:6, 1096:6,
1145:5, 1150:9,
1150:12, 1150:22
**receiving** [1] - 1024:8
**recess** [5] - 1082:18,
1142:10, 1142:14,
1144:11, 1152:19
**Recess** [1] - 1046:2

**recognize** [5] -
1013:10, 1022:10,
1027:11, 1039:2,
1043:22
**recognizing** [1] -
1013:9
**recoiling** [1] - 1032:7
**recollection** [6] -
1091:18, 1137:15,
1137:17, 1137:20,
1150:13
**reconsider** [1] -
1135:14
**record** [7] - 1010:21,
1010:22, 1011:3,
1016:11, 1062:21,
1138:25, 1145:6
**recorded** [1] - 1002:24
**recording** [1] - 1109:1
**recordings** [2] -
1108:24, 1109:2
**records** [12] -
1018:24, 1065:11,
1065:13, 1066:8,
1069:18, 1070:3,
1074:8, 1074:9,
1075:3, 1075:5,
1085:5
**recovered** [4] -
1036:6, 1041:25,
1055:7, 1068:25
**recreated** [1] -
1011:22
**red** [7] - 1017:16,
1024:1, 1043:16,
1043:17, 1049:25,
1078:2
**Redemption** [1] -
1080:11
**redirect** [1] - 1068:14
**refer** [3] - 1067:11,
1110:23, 1150:10
**reference** [2] -
1107:21, 1137:16
**referenced** [2] -
1089:11, 1123:18
**referred** [2] - 1112:4,
1156:19
**referring** [3] - 1129:6,
1149:12, 1153:14
**reflect** [3] - 1138:22,
1154:24, 1154:25
**refresh** [4] - 1045:23,
1082:5, 1137:20,
1150:13
**refresher** [1] - 1091:7
**regard** [4] - 1096:4,
1113:12, 1114:5,
1133:23
**regarded** [1] - 1048:21

**regarding** [3] -
1090:23, 1091:5,
1134:18
**regardless** [5] -
1095:5, 1108:18,
1109:3, 1131:2,
1139:10
**register** [21] - 1014:9,
1014:13, 1018:8,
1018:10, 1018:14,
1018:15, 1019:24,
1020:1, 1020:2,
1020:8, 1022:22,
1023:2, 1023:3,
1025:3, 1025:18,
1031:19, 1037:17,
1038:1, 1038:2,
1038:3
**registered** [2] -
1042:11, 1070:7
**registers** [2] - 1015:3,
1031:17
**regular** [1] - 1139:18
**reject** [1] - 1045:9
**related** [1] - 1095:25
**relation** [11] - 1034:3,
1126:13, 1126:20,
1127:2, 1127:19,
1128:10, 1129:2,
1131:8, 1131:19,
1132:6, 1132:18
**relevant** [4] - 1100:16,
1116:20, 1126:10,
1126:25
**religion** [1] - 1096:18
**rely** [3] - 1039:3,
1094:7, 1136:15
**remain** [2] - 1140:1,
1142:18
**remains** [4] - 1097:11,
1101:9, 1106:15,
1155:6
**remarkable** [1] -
1069:7
**remember** [26] -
1006:1, 1010:5,
1020:5, 1022:19,
1029:3, 1039:12,
1040:15, 1043:24,
1048:2, 1048:4,
1057:8, 1057:9,
1068:6, 1070:16,
1071:2, 1071:13,
1071:19, 1078:8,
1078:9, 1084:14,
1089:15, 1092:10,
1103:21, 1139:11,
1146:19, 1153:11
**remembered** [3] -
1040:13, 1040:16,

1040:17
**remind** [6] - 1098:15,
1119:14, 1136:4,
1138:21, 1139:5,
1151:7
**reminded** [1] -
1004:23
**reminder** [1] - 1135:3
**remotely** [2] -
1142:21, 1155:9
**removed** [1] - 1065:2
**removing** [1] -
1153:24
**repeat** [2] - 1096:25,
1109:24
**report** [7] - 1011:21,
1012:1, 1012:3,
1051:13, 1054:19,
1054:23, 1155:25
**reporter** [1] - 1139:25
**Reporter** [1] - 1002:22
**represent** [1] -
1109:10
**request** [5] - 1137:19,
1147:14, 1151:5,
1151:6, 1153:3
**requested** [1] - 1150:8
**requests** [1] - 1137:22
**require** [4] - 1094:12,
1106:3, 1106:7,
1111:12
**required** [10] - 1031:1,
1034:6, 1093:22,
1101:23, 1102:8,
1102:18, 1106:9,
1116:8, 1130:18,
1139:17
**requirement** [1] -
1107:1
**requirements** [1] -
1143:3
**requires** [2] - 1110:9,
1115:15
**research** [3] -
1136:19, 1142:11,
1155:8
**resolve** [3] - 1091:13,
1138:13, 1157:4
**respect** [11] - 1091:17,
1094:18, 1094:22,
1124:2, 1125:15,
1126:10, 1135:20,
1138:13, 1150:19,
1150:20, 1156:18
**respectfully** [3] -
1030:15, 1068:14,
1087:25
**respectively** [1] -
1131:10
**responding** [1] -

1138:2
**response** [7] -
1014:13, 1050:3,
1054:10, 1093:10,
1138:8, 1146:10,
1152:24
**responsibilities** [1] -
1155:15
**responsibility** [4] -
1090:19, 1097:11,
1101:21, 1135:4
**responsible** [3] -
1083:21, 1086:2,
1134:6
**rest** [2] - 1006:11,
1141:24
**rests** [2] - 1100:6,
1136:9
**result** [3] - 1029:1,
1123:8, 1143:5
**resume** [1] - 1046:18
**retire** [1] - 1135:8
**retired** [1] - 1100:8
**retrieved** [1] - 1050:7
**return** [5] - 1109:23,
1140:2, 1140:20,
1141:9, 1151:16
**revealed** [1] - 1062:4
**reverse** [2] - 1145:24,
1145:25
**review** [2] - 1156:15,
1156:16
**reviewing** [1] - 1101:2
**revision** [1] - 1154:22
**revolver** [1] - 1087:9
**RICHARD** [1] -
1002:14
**Richmond** [1] -
1065:22
**rid** [5] - 1023:7,
1037:16, 1072:17,
1072:20, 1086:17
**ride** [6] - 1005:14,
1059:7, 1074:14,
1075:20, 1079:9,
1079:10
**ridiculous** [1] -
1069:17
**riding** [1] - 1024:10
**right-hand** [6] -
1021:3, 1021:4,
1023:15, 1032:6,
1032:9, 1050:8
**right-handed** [3] -
1047:24, 1049:7,
1088:12
**rise** [2] - 1046:3,
1082:19
**Rite** [34] - 1008:11,
1008:12, 1019:11,

Case 1:18-cr-00684-ENV   Document 178   Filed 03/13/20   Page 181 of 189 PageID #: 2379

1020:18, 1020:21, 1021:10, 1021:16, 1021:22, 1022:2, 1022:24, 1023:1, 1023:10, 1023:13, 1023:16, 1023:17, 1023:20, 1024:21, 1025:10, 1025:13, 1025:18, 1026:9, 1029:17, 1031:15, 1035:9, 1038:2, 1040:16, 1042:23, 1053:18, 1054:6, 1122:17, 1131:25, 1132:12

**rite** [3] - 1121:25, 1122:7, 1122:10

**roadmap** [1] - 1149:19

**rob** [3] - 1012:13, 1029:13, 1042:20

**robbed** [10] - 1008:10, 1008:11, 1008:12, 1017:25, 1031:15, 1039:14, 1039:18, 1039:20, 1052:13, 1067:19

**robber** [17] - 1019:13, 1020:7, 1020:8, 1031:14, 1031:24, 1033:23, 1040:14, 1040:17, 1047:24, 1049:7, 1051:5, 1051:18, 1059:18, 1059:19, 1063:22, 1080:22

**robberies** [46] - 1007:13, 1008:4, 1010:12, 1010:16, 1023:7, 1023:12, 1026:1, 1027:19, 1028:5, 1029:7, 1029:16, 1029:21, 1030:6, 1030:8, 1031:22, 1032:19, 1034:18, 1034:21, 1035:8, 1035:14, 1036:15, 1037:6, 1037:7, 1037:8, 1040:6, 1042:6, 1042:13, 1042:24, 1042:25, 1043:10, 1043:11, 1044:20, 1045:8, 1066:6, 1070:22, 1071:7, 1071:11, 1071:12, 1078:25, 1079:2, 1088:5, 1119:18, 1121:13, 1123:21, 1131:10

**Robbery** [6] - 1029:8,

1029:12, 1029:16, 1033:4, 1033:7, 1033:11

**robbery** [95] - 1006:25, 1008:7, 1008:9, 1008:22, 1012:14, 1012:15, 1013:20, 1014:2, 1017:10, 1017:11, 1018:18, 1019:1, 1019:10, 1020:6, 1020:16, 1020:18, 1020:19, 1021:17, 1021:22, 1022:2, 1022:25, 1023:2, 1023:9, 1023:11, 1023:15, 1023:21, 1024:3, 1024:21, 1024:22, 1025:12, 1026:14, 1031:8, 1032:20, 1033:3, 1033:5, 1033:14, 1033:24, 1034:9, 1034:10, 1034:12, 1034:13, 1034:15, 1034:16, 1035:24, 1040:16, 1042:14, 1044:15, 1049:17, 1051:2, 1051:3, 1051:4, 1059:8, 1062:14, 1076:3, 1086:13, 1087:13, 1087:24, 1089:4, 1111:24, 1112:2, 1116:20, 1117:6, 1117:13, 1118:2, 1118:8, 1119:15, 1119:16, 1119:20, 1120:2, 1120:6, 1120:9, 1120:14, 1120:16, 1120:19, 1121:15, 1121:21, 1121:25, 1122:6, 1122:10, 1122:16, 1122:20, 1123:24, 1123:25, 1124:1, 1125:22, 1126:10, 1126:15, 1128:4, 1131:13, 1131:25, 1132:12, 1134:13

**robbery...or** [1] - 1116:25

**robbing** [1] - 1038:20

**robs** [2] - 1042:21, 1042:23

**role** [4] - 1083:19, 1090:2, 1115:15, 1142:17

**roles** [1] - 1115:14

**roll** [1] - 1076:3

**rolls** [1] - 1053:22

**room** [16] - 1006:15, 1053:25, 1080:21, 1090:13, 1134:15, 1135:23, 1135:24, 1136:1, 1136:23, 1140:18, 1140:19, 1142:6, 1148:22, 1151:14, 1155:3, 1156:1

**Room** [2] - 1155:25, 1156:5

**Roosevelt** [4] - 1017:6, 1017:7, 1119:21, 1120:4

**Rose** [1] - 1048:22

**rule** [5] - 1111:9, 1136:5, 1137:1, 1155:17, 1155:18

**rules** [7] - 1090:24, 1091:5, 1091:21, 1091:23, 1091:25, 1134:18, 1143:6

**ruling** [1] - 1096:7

**run** [3] - 1015:23, 1015:24, 1148:18

**running** [1] - 1148:16

**rush** [2] - 1005:19, 1156:14

# S

**S-1** [1] - 1079:3

**S-10** [1] - 1043:5

**S-11** [1] - 1036:7

**S-4** [1] - 1032:21

**S-5** [1] - 1031:22

**S-9** [4] - 1149:15, 1149:16, 1152:11, 1153:12

**sacrifice** [3] - 1005:16, 1154:20, 1156:22

**sad** [1] - 1053:1

**safe** [1] - 1147:17

**safeguard** [1] - 1139:18

**Saha** [13] - 1017:15, 1017:16, 1017:23, 1017:25, 1018:5, 1018:8, 1018:9, 1019:16, 1032:7, 1039:14, 1053:5, 1089:12

**Saha's** [1] - 1018:17

**Saint** [1] - 1003:12

**Saint-Hilaire** [1] - 1003:12

**Sanchez** [13] - 1019:12, 1019:20, 1019:21, 1019:23,

1019:25, 1020:6, 1032:9, 1039:18, 1053:10, 1053:12, 1054:7, 1084:9, 1089:15

**Sanchez's** [1] - 1059:9

**sands** [2] - 1148:16, 1148:18

**sandwich** [2] - 1081:8, 1081:9

**Sarge** [1] - 1058:6

**satisfied** [9] - 1032:16, 1034:19, 1067:18, 1094:21, 1098:16, 1113:21, 1119:8, 1130:12, 1133:8

**satisfy** [1] - 1112:18

**save** [2] - 1082:13, 1109:10

**saved** [1] - 1042:11

**saw** [22] - 1022:20, 1027:6, 1027:7, 1031:18, 1039:15, 1039:24, 1053:6, 1054:13, 1055:10, 1055:18, 1058:9, 1059:21, 1059:22, 1063:12, 1071:2, 1073:18, 1073:19, 1073:23, 1077:17, 1084:17, 1097:9

**scene** [10] - 1014:20, 1016:17, 1016:23, 1018:20, 1021:8, 1036:6, 1054:4, 1088:14, 1115:19, 1130:9

**scenes** [1] - 1142:12

**scheme** [7] - 1112:22, 1112:23, 1114:9, 1115:15

**scheming** [6] - 1071:1, 1071:5, 1071:25, 1075:24, 1077:7, 1077:15

**scope** [1] - 1115:5

**Scott** [74] - 1008:22, 1009:3, 1009:18, 1009:23, 1010:5, 1010:7, 1013:5, 1013:6, 1013:8, 1013:11, 1013:16, 1016:7, 1018:20, 1018:21, 1018:24, 1019:4, 1019:5, 1019:6, 1019:10, 1022:7, 1022:9, 1023:2, 1023:7, 1023:18, 1024:6,

1024:10, 1026:19, 1026:20, 1027:1, 1037:3, 1037:14, 1037:16, 1038:6, 1038:8, 1042:14, 1043:4, 1043:5, 1069:25, 1070:7, 1070:11, 1070:15, 1070:19, 1070:23, 1071:1, 1071:5, 1071:11, 1071:23, 1071:25, 1073:9, 1073:13, 1074:25, 1075:4, 1075:7, 1075:8, 1075:10, 1075:18, 1075:20, 1075:23, 1075:24, 1076:8, 1076:9, 1076:15, 1076:16, 1076:23, 1077:1, 1077:5, 1077:7, 1077:15, 1079:1, 1079:6, 1085:17, 1085:19, 1146:20

**Scott's** [4] - 1009:24, 1075:2, 1075:14, 1076:11

**scour** [1] - 1062:21

**screen** [3] - 1013:3, 1021:5, 1022:14

**screens** [3] - 1011:5, 1016:21, 1041:4

**search** [21] - 1011:22, 1012:3, 1024:14, 1024:20, 1042:18, 1059:2, 1059:13, 1060:8, 1063:4, 1063:5, 1063:6, 1063:8, 1063:11, 1064:6, 1064:19, 1066:4, 1078:7, 1078:14, 1089:1, 1108:10

**searched** [5] - 1009:15, 1012:8, 1027:25, 1041:7, 1063:10

**searches** [11] - 1012:4, 1043:6, 1064:18, 1064:22, 1065:3, 1065:5, 1065:6, 1065:8, 1088:3, 1108:10, 1108:13

**searching** [10] - 1011:19, 1012:6, 1012:11, 1012:13, 1024:15, 1042:19, 1042:22, 1060:13

**season** [1] - 1071:8

**seat** [6] - 1027:7, 1027:12, 1043:14, 1044:16, 1057:2, 1064:15
**seated** [12] - 1005:6, 1005:8, 1046:10, 1046:12, 1083:2, 1083:4, 1145:4, 1149:21, 1149:23, 1152:23, 1154:9, 1154:11
**second** [26] - 1004:24, 1007:9, 1008:12, 1023:10, 1023:17, 1024:1, 1029:11, 1031:5, 1031:25, 1034:20, 1035:2, 1038:14, 1040:24, 1062:24, 1075:3, 1091:1, 1109:13, 1112:12, 1113:17, 1118:5, 1120:9, 1120:17, 1127:18, 1128:8, 1145:10, 1150:19
**seconds** [6] - 1012:7, 1070:2, 1070:16, 1070:18, 1070:19
**secrecy** [1] - 1113:7
**section** [1] - 1117:3
**Section** [8] - 1073:11, 1073:12, 1086:19, 1086:20, 1116:21, 1122:25, 1123:8, 1127:1
**secure** [1] - 1140:19
**see** [102] - 1007:21, 1007:24, 1007:25, 1009:1, 1010:17, 1010:25, 1011:5, 1011:14, 1012:23, 1014:5, 1014:6, 1014:10, 1015:15, 1015:22, 1015:24, 1015:25, 1016:10, 1016:22, 1016:23, 1016:25, 1017:4, 1017:20, 1018:16, 1021:5, 1021:13, 1021:17, 1021:18, 1021:20, 1022:3, 1022:13, 1022:17, 1022:21, 1022:25, 1024:7, 1024:24, 1025:16, 1026:1, 1026:7, 1026:12, 1026:21, 1027:21, 1028:13, 1032:7, 1034:22, 1035:13, 1035:25, 1036:1,

1038:19, 1039:3, 1039:10, 1039:12, 1040:2, 1040:18, 1041:3, 1041:5, 1043:16, 1043:17, 1043:18, 1043:21, 1044:3, 1044:4, 1044:5, 1044:22, 1045:23, 1046:1, 1049:19, 1050:22, 1052:1, 1052:19, 1052:24, 1055:16, 1056:14, 1058:9, 1058:12, 1058:14, 1059:21, 1060:10, 1060:11, 1061:18, 1063:25, 1065:3, 1069:2, 1071:20, 1074:13, 1074:16, 1074:17, 1075:1, 1076:7, 1143:15, 1143:16, 1143:19, 1144:7, 1145:7, 1145:8, 1145:17, 1151:5, 1151:13, 1153:3, 1155:15, 1157:16
**seeing** [4] - 1032:11, 1036:5, 1055:24, 1156:23
**seek** [1] - 1125:8
**seem** [1] - 1103:9
**seized** [1] - 1108:9
**SELDEN** [34] - 1002:15, 1003:8, 1003:24, 1004:20, 1004:25, 1005:9, 1046:13, 1082:16, 1082:23, 1083:5, 1083:13, 1083:14, 1083:15, 1140:9, 1144:8, 1145:13, 1145:15, 1147:14, 1148:4, 1148:7, 1148:19, 1149:6, 1149:11, 1149:15, 1149:17, 1149:19, 1149:25, 1151:20, 1152:2, 1152:5, 1153:19, 1154:12, 1157:12, 1157:17
**Selden** [3] - 1003:10, 1004:18, 1049:23, 1077:20, 1077:23, 1078:5, 1078:12, 1081:8, 1081:10, 1082:3, 1082:11, 1082:22, 1083:11, 1083:12, 1090:6, 1146:10, 1151:18,

1157:10
**self** [1] - 1138:10
**self-explanatory** [1] - 1138:10
**send** [7] - 1137:2, 1137:8, 1138:7, 1138:12, 1141:4, 1149:4, 1152:9
**sending** [1] - 1147:2
**sense** [21] - 1019:4, 1019:6, 1043:4, 1045:8, 1063:3, 1071:4, 1074:20, 1076:1, 1076:2, 1077:1, 1084:1, 1084:5, 1085:22, 1085:25, 1086:4, 1098:11, 1099:4, 1100:5, 1102:16, 1113:10
**senses** [1] - 1097:8
**sent** [4] - 1150:22, 1151:1, 1151:4, 1152:25
**sentence** [1] - 1136:9
**separate** [8] - 1007:17, 1109:23, 1112:6, 1115:12, 1131:4, 1141:23, 1150:14
**separately** [1] - 1109:23
**sequester** [1] - 1141:23
**Sergeant** [8] - 1027:4, 1056:19, 1056:22, 1057:10, 1058:2, 1058:16, 1063:11, 1084:12
**seriatim** [1] - 1157:9
**series** [2] - 1074:11, 1087:1
**serious** [5] - 1033:23, 1034:23, 1035:12, 1047:17, 1072:9
**service** [6] - 1139:19, 1139:22, 1142:23, 1143:10, 1143:14, 1154:20
**Service** [1] - 1147:16
**services** [2] - 1139:17, 1143:3
**session** [1] - 1046:4
**set** [8] - 1004:10, 1049:14, 1050:25, 1056:16, 1060:4, 1076:4, 1083:18, 1148:25
**Seth** [1] - 1011:21
**setting** [1] - 1069:3

**Seven** [10] - 1029:19, 1034:6, 1034:23, 1131:7, 1131:24, 1133:9, 1133:18, 1133:24, 1134:8, 1138:20
**several** [1] - 1095:2
**sex** [1] - 1096:19
**shall** [1] - 1127:6
**share** [1] - 1085:24
**Sharon** [3] - 1019:12, 1020:6, 1089:15
**Shawshank** [1] - 1080:10
**sheet** [7] - 1005:3, 1131:4, 1133:13, 1138:9, 1138:11, 1139:2, 1140:25
**sheets** [1] - 1077:7
**shift** [1] - 1106:14
**shifts** [1] - 1093:18
**shirt** [5] - 1060:18, 1072:15, 1072:21, 1072:23, 1072:25
**shirts** [1] - 1060:22
**shoe** [1] - 1055:21
**shoes** [14] - 1009:6, 1016:1, 1017:21, 1021:20, 1021:21, 1021:25, 1025:17, 1044:8, 1044:10, 1044:12, 1044:13, 1044:17, 1044:22
**shoot** [6] - 1014:13, 1032:15, 1035:21, 1041:21, 1067:19, 1089:19
**shooter** [6] - 1037:22, 1047:24, 1049:7, 1051:5, 1063:21, 1063:22
**shooting** [3] - 1012:16, 1017:9, 1036:9
**shopping** [2] - 1072:18, 1072:19
**short** [2] - 1082:4, 1156:9
**shot** [16] - 1008:9, 1013:3, 1014:14, 1014:15, 1015:13, 1015:17, 1016:5, 1017:2, 1017:12, 1028:16, 1029:13, 1033:19, 1035:11, 1035:20, 1035:22, 1089:24
**show** [21] - 1007:23, 1015:9, 1015:20, 1024:14, 1025:25,

1037:5, 1037:13, 1037:21, 1061:16, 1062:11, 1062:12, 1065:11, 1072:5, 1074:9, 1078:24, 1081:14, 1123:12, 1157:6, 1157:8, 1157:14
**showed** [2] - 1063:13, 1063:14
**showing** [9] - 1011:15, 1013:5, 1013:10, 1021:5, 1021:7, 1035:15, 1063:11, 1064:15, 1067:7
**shown** [11] - 1008:20, 1023:25, 1035:4, 1046:25, 1076:25, 1078:14, 1099:8, 1103:23, 1108:5, 1108:7
**shows** [31] - 1007:5, 1007:14, 1009:17, 1009:25, 1010:3, 1010:8, 1010:13, 1010:22, 1010:24, 1011:3, 1011:6, 1011:8, 1011:15, 1011:17, 1012:3, 1017:5, 1018:19, 1023:5, 1024:9, 1033:15, 1037:5, 1037:14, 1037:16, 1037:19, 1037:21, 1066:9, 1069:24, 1087:14
**shy** [1] - 1072:11
**side** [12] - 1004:16, 1004:19, 1015:23, 1021:10, 1021:13, 1030:5, 1046:23, 1058:10, 1092:25, 1101:24, 1102:1, 1145:18
**sidebar** [3] - 1139:25, 1140:5, 1140:12
**sidebars** [1] - 1153:24
**sides** [4] - 1046:5, 1144:7, 1145:2, 1152:21
**Siegel** [18] - 1003:11, 1004:20, 1006:19, 1045:18, 1049:4, 1052:15, 1053:12, 1053:15, 1053:25, 1055:9, 1055:12, 1056:3, 1065:3, 1070:4, 1072:4, 1075:16, 1081:8,

1153:11
**SIEGEL** [36] - 1002:16, 1003:14, 1006:20, 1009:1, 1009:5, 1013:3, 1014:5, 1014:18, 1015:13, 1015:20, 1016:3, 1017:15, 1018:4, 1018:12, 1019:18, 1020:5, 1021:2, 1022:5, 1022:19, 1024:13, 1025:1, 1025:6, 1025:16, 1025:22, 1026:12, 1027:10, 1028:9, 1030:24, 1032:5, 1036:5, 1039:7, 1040:5, 1040:21, 1041:2, 1144:9, 1153:12
**Siegel's** [1] - 1030:16
**sign** [3] - 1048:5, 1074:21, 1138:25
**signed** [4] - 1048:2, 1137:3, 1137:5
**significant** [1] - 1156:2
**silence** [2] - 1142:19, 1155:18
**similar** [1] - 1156:7
**similarity** [2] - 1110:9, 1115:24
**similarly** [3] - 1096:3, 1112:21, 1115:20
**simply** [4] - 1118:22, 1131:3, 1133:14, 1135:17
**single** [2] - 1084:16, 1115:16
**singular** [3] - 1146:16, 1146:17, 1146:22
**sit** [3] - 1036:21, 1038:25, 1052:8
**site** [10] - 1009:19, 1009:20, 1010:3, 1018:19, 1024:5, 1026:18, 1027:1, 1088:25, 1129:9
**sitting** [12] - 1027:15, 1027:16, 1027:18, 1043:15, 1051:21, 1052:20, 1061:4, 1081:16, 1085:5, 1097:20, 1097:22, 1147:18
**Six** [9] - 1029:15, 1121:12, 1121:24, 1122:24, 1123:10, 1123:21, 1124:10, 1131:11, 1132:7

**six** [2] - 1077:7, 1077:13
**sketch** [1] - 1005:17
**sketchy** [1] - 1073:7
**skill** [1] - 1099:16
**skin** [1] - 1080:24
**Skittles** [4] - 1054:9, 1054:11, 1054:12, 1054:18
**skull** [1] - 1036:9
**slide** [2] - 1011:1, 1055:24
**slight** [1] - 1118:11
**slightly** [1] - 1156:4
**slip** [2] - 1055:24, 1064:24
**slipping** [2] - 1055:18, 1055:19
**slow** [1] - 1016:5
**slowly** [1] - 1020:22
**small** [3] - 1011:4, 1103:20, 1105:19
**smart** [1] - 1067:21
**smelled** [1] - 1097:10
**smoke** [3] - 1036:1, 1049:24, 1073:21
**smoking** [1] - 1073:22
**smooth** [1] - 1005:14
**sneakers** [4] - 1056:12, 1056:14, 1080:25, 1081:1
**Snickers** [1] - 1025:2
**social** [2] - 1142:12, 1155:11
**socks** [1] - 1060:22
**Solara** [20] - 1010:14, 1010:18, 1011:6, 1011:10, 1011:13, 1016:7, 1016:9, 1016:10, 1016:24, 1020:19, 1021:23, 1021:24, 1023:21, 1025:24, 1025:25, 1026:15, 1027:8, 1037:24, 1056:25, 1084:19
**sole** [1] - 1091:11
**solely** [8] - 1092:6, 1092:16, 1096:1, 1100:6, 1107:14, 1136:12, 1136:15, 1139:7
**solemn** [1] - 1139:6
**someone** [15] - 1021:18, 1035:4, 1037:23, 1038:11, 1038:12, 1043:3, 1045:7, 1052:3, 1086:19, 1099:18, 1123:13, 1133:25,

1134:1
**sometime** [1] - 1079:8
**sometimes** [2] - 1103:16, 1112:4
**somewhat** [1] - 1048:19
**somewhere** [2] - 1051:21, 1060:24
**soon** [7] - 1015:17, 1072:17, 1072:20, 1138:3, 1138:8, 1141:5, 1141:10
**sorry** [1] - 1145:19
**sort** [4] - 1006:11, 1148:10, 1151:15, 1153:11
**sounds** [1] - 1004:2
**spaces** [1] - 1131:4
**speaking** [1] - 1140:1
**Special** [22] - 1008:18, 1011:21, 1011:24, 1011:25, 1013:7, 1013:11, 1027:16, 1042:10, 1047:25, 1056:20, 1062:7, 1063:9, 1063:15, 1063:18, 1064:5, 1064:17, 1064:23, 1066:25, 1071:14, 1084:12, 1089:5
**special** [2] - 1064:25, 1099:16
**Specialist** [1] - 1003:11
**specific** [16] - 1050:22, 1091:3, 1106:18, 1107:1, 1109:15, 1110:6, 1111:9, 1111:10, 1114:3, 1120:20, 1124:14, 1127:21, 1137:21, 1148:12, 1149:14, 1153:16
**specifically** [4] - 1117:4, 1126:14, 1131:10, 1137:10
**speculate** [1] - 1107:17
**speculation** [2] - 1094:10, 1098:14
**spend** [2] - 1018:6, 1139:24
**split** [1] - 1077:15
**spoil** [1] - 1047:20
**spoken** [2] - 1063:1, 1113:1
**spreading** [1] - 1077:17
**spree** [4] - 1006:25, 1008:7, 1086:13,

1087:24
**St** [6] - 1014:20, 1015:2, 1016:18, 1054:5, 1054:7, 1055:11
**stack** [1] - 1067:4
**staggering** [1] - 1041:19
**stake** [1] - 1114:7
**stand** [7] - 1020:13, 1043:25, 1052:17, 1063:18, 1078:1, 1087:3, 1092:10
**standard** [2] - 1033:17, 1133:22
**standing** [3] - 1040:12, 1040:21, 1052:14
**stands** [1] - 1137:11
**stare** [1] - 1038:25
**staring** [1] - 1131:4
**start** [9] - 1007:14, 1008:16, 1030:8, 1031:12, 1052:9, 1072:10, 1142:6, 1150:6, 1156:13
**started** [6] - 1008:7, 1008:22, 1037:7, 1088:7, 1098:6, 1156:6
**starting** [3] - 1003:6, 1149:13, 1156:3
**starts** [2] - 1025:14, 1042:22
**state** [9] - 1050:15, 1110:24, 1111:13, 1111:17, 1111:18, 1118:23, 1118:24, 1118:25, 1139:9
**statement** [8] - 1046:19, 1047:19, 1105:6, 1105:8, 1105:12, 1105:16, 1105:24, 1105:25
**statements** [3] - 1095:17, 1113:13, 1114:21
**states** [6] - 1117:6, 1117:14, 1118:23, 1120:2, 1121:21, 1122:6
**STATES** [3] - 1002:1, 1002:4, 1002:11
**States** [20] - 1002:5, 1002:15, 1002:17, 1003:9, 1003:10, 1006:19, 1083:11, 1092:11, 1092:13, 1096:23, 1122:16, 1122:25, 1123:7,

1127:1, 1127:4, 1127:17, 1128:1, 1139:15, 1147:15
**statute** [9] - 1110:12, 1110:14, 1110:16, 1110:19, 1116:20, 1123:1, 1123:11, 1123:19, 1126:25
**stayed** [1] - 1024:6
**Stein** [6] - 1003:15, 1047:5, 1051:11, 1062:23, 1063:14, 1081:12
**STEIN** [24] - 1002:19, 1003:15, 1005:11, 1046:15, 1083:7, 1140:8, 1145:19, 1145:22, 1146:1, 1146:4, 1146:6, 1146:8, 1146:12, 1146:14, 1146:16, 1146:18, 1147:1, 1147:4, 1147:7, 1147:10, 1149:24, 1153:8, 1153:21, 1154:14
**Stein's** [2] - 1050:3, 1063:23
**stenography** [1] - 1002:24
**step** [15] - 1004:2, 1007:8, 1033:8, 1033:13, 1033:15, 1033:18, 1033:19, 1033:21, 1055:17, 1084:16, 1120:10, 1120:23, 1121:1, 1121:10
**stepped** [1] - 1056:14
**steps** [1] - 1033:21
**step"** [1] - 1120:18
**sterilized** [1] - 1067:22
**sterilizes** [1] - 1068:2
**Steven** [1] - 1003:12
**stick** [1] - 1032:2
**sticking** [1] - 1044:4
**still** [10] - 1010:9, 1017:18, 1021:3, 1022:25, 1023:23, 1044:10, 1082:11, 1112:8, 1134:10, 1146:7
**stink** [1] - 1071:9
**stipulate** [5] - 1005:7, 1046:11, 1083:3, 1149:22, 1154:10
**stipulated** [7] - 1031:20, 1032:18, 1043:5, 1070:12,

1095:9, 1095:10, 1095:13

**Stipulation** [3] - 1078:23, 1150:11, 1152:11

**stipulation** [11] - 1031:23, 1036:7, 1036:8, 1078:19, 1078:20, 1078:21, 1079:3, 1095:11, 1148:10, 1149:12, 1153:10

**stipulations** [2] - 1097:4, 1136:16

**stitch** [1] - 1057:7

**stop** [4] - 1016:6, 1058:10, 1079:10, 1087:22

**stopped** [14] - 1009:4, 1013:2, 1014:17, 1015:19, 1016:2, 1017:14, 1018:11, 1020:4, 1022:8, 1022:18, 1025:9, 1025:21, 1026:11, 1036:4

**Store** [1] - 1065:6

**store** [28] - 1012:16, 1012:24, 1015:10, 1017:13, 1017:22, 1017:24, 1020:15, 1020:17, 1025:11, 1033:18, 1037:25, 1051:6, 1053:15, 1059:9, 1074:25, 1119:20, 1120:3, 1121:15, 1121:22, 1121:25, 1122:7, 1122:10, 1122:17, 1131:14, 1132:1, 1132:13

**stores** [21] - 1012:6, 1012:7, 1012:10, 1024:16, 1024:17, 1031:14, 1031:21, 1031:24, 1038:20, 1042:20, 1042:21, 1042:23, 1065:6, 1066:5, 1085:13, 1088:4, 1088:9, 1088:24, 1089:7, 1117:7, 1117:15

**story** [2] - 1045:6, 1076:17

**street** [8] - 1009:13, 1016:14, 1016:25, 1017:1, 1020:20, 1021:6, 1021:11, 1021:12

**stretch** [1] - 1080:6

**stricken** [1] - 1096:10

**strike** [1] - 1093:2

**strip** [1] - 1015:2

**struck** [1] - 1089:9

**struggle** [1] - 1055:18

**struggled** [1] - 1085:3

**stuck** [2] - 1019:14, 1052:19

**stuff** [10] - 1060:21, 1061:2, 1061:6, 1064:17, 1064:18, 1064:19, 1072:19, 1073:6, 1074:1

**stuffed** [2] - 1028:3, 1061:3

**stumbles** [1] - 1088:15

**stupid** [1] - 1067:6

**style** [2] - 1051:14, 1072:16

**subject** [4] - 1054:22, 1101:11, 1126:25, 1137:7

**submit** [31] - 1013:17, 1019:6, 1022:1, 1023:2, 1035:23, 1038:5, 1038:6, 1039:1, 1039:9, 1045:9, 1052:24, 1066:14, 1072:8, 1072:16, 1073:6, 1073:17, 1075:4, 1075:9, 1075:11, 1076:19, 1077:11, 1077:23, 1078:5, 1080:5, 1080:19, 1080:22, 1080:24, 1085:1, 1085:6, 1093:19, 1140:2

**subpoena** [1] - 1071:17

**substantial** [12] - 1033:7, 1033:13, 1033:15, 1033:18, 1033:19, 1033:21, 1110:9, 1120:10, 1120:23, 1121:1, 1121:10

**substitute** [1] - 1100:4

**substituted** [1] - 1142:18

**succeed** [2] - 1124:6, 1125:9

**success** [1] - 1124:24

**successful** [2] - 1034:12, 1119:17

**successfully** [2] - 1031:15, 1119:7

**suffices** [1] - 1118:11

**sufficient** [8] -

1093:14, 1094:13, 1110:18, 1115:16, 1116:5, 1124:18, 1129:10, 1130:9

**suggest** [2] - 1053:14, 1134:25

**suggesting** [1] - 1053:17

**suitable** [1] - 1051:16

**suitcase** [1] - 1061:7

**sum** [1] - 1116:13

**summaries** [3] - 1109:8, 1109:9, 1109:12

**summation** [2] - 1004:9, 1006:4

**summed** [1] - 1045:2

**summoned** [2] - 1139:3, 1149:10

**sums** [1] - 1139:12

**Supermarket** [2] - 1065:18, 1065:24

**supervised** [1] - 1125:18

**supervision** [1] - 1048:11

**supervisor** [7] - 1050:11, 1050:12, 1050:13, 1054:16, 1055:24, 1055:25

**supplied** [1] - 1102:3

**supports** [3] - 1076:19, 1084:5, 1086:6

**supposedly** [2] - 1062:14, 1076:2

**surrender** [1] - 1135:16

**surrounding** [1] - 1111:4

**surveillance** [5] - 1020:20, 1038:24, 1043:18, 1043:23, 1044:9

**suspect** [2] - 1054:19, 1056:25

**suspicion** [2] - 1094:10, 1099:6

**sustain** [1] - 1127:13

**sustained** [3] - 1056:2, 1096:8, 1096:17

**sustenance** [1] - 1143:23

**swab** [2] - 1041:13, 1041:14

**swabs** [2] - 1028:19

**swear** [1] - 1140:13

**sweatshirt** [1] - 1072:25

**sweet** [1] - 1050:23

**switch** [2] - 1048:20, 1048:21

**swore** [2] - 1064:5, 1064:6

**sworn** [5] - 1063:19, 1095:4, 1097:3, 1139:7, 1140:15

**sympathy** [1] - 1136:14, 1139:5

**system** [2] - 1081:19, 1081:22

## T

**T-shirt** [4] - 1060:18, 1072:21, 1072:23, 1087:18

**T-shirts** [1] - 1060:22

**table** [2] - 1036:22, 1147:18

**tangible** [1] - 1118:13

**targets** [2] - 1011:20, 1024:15

**tasted** [1] - 1097:10

**tea** [1] - 1050:23

**team** [2] - 1056:18, 1058:19

**teammate** [1] - 1064:12

**tech** [3] - 1004:5, 1065:4, 1065:5

**technique** [1] - 1107:2

**techniques** [2] - 1106:19, 1107:3

**technology** [2] - 1004:1, 1006:22

**teed** [1] - 1151:16

**television** [1] - 1090:1

**ten** [5] - 1045:20, 1045:23, 1045:24, 1046:1, 1082:4

**ten-minute** [1] - 1045:20

**tender** [2] - 1151:22, 1151:23

**tends** [1] - 1097:14

**term** [3] - 1099:2, 1118:12, 1125:20

**terms** [2] - 1054:3, 1110:23

**terrified** [1] - 1040:10

**Tessitore** [1] - 1059:12

**test** [2] - 1028:15, 1048:15

**tested** [1] - 1061:22

**testified** [47] - 1008:18, 1009:10, 1009:20, 1011:24,

1014:21, 1015:6, 1017:15, 1017:23, 1018:6, 1019:12, 1019:13, 1019:21, 1019:25, 1020:6, 1021:9, 1024:23, 1025:1, 1026:6, 1027:5, 1027:17, 1027:24, 1028:15, 1028:22, 1031:19, 1032:13, 1040:5, 1041:2, 1041:4, 1041:6, 1041:12, 1041:22, 1041:23, 1044:5, 1049:13, 1052:12, 1054:5, 1059:7, 1064:7, 1071:24, 1072:2, 1072:16, 1087:19, 1089:20, 1089:21, 1097:7, 1097:9, 1103:11

**testify** [9] - 1012:1, 1067:1, 1097:20, 1099:15, 1100:4, 1101:7, 1101:11, 1103:22

**testifying** [3] - 1052:17, 1056:24, 1099:23

**testimony** [68] - 1007:25, 1012:22, 1018:17, 1020:2, 1022:20, 1027:4, 1039:13, 1041:11, 1041:22, 1043:1, 1061:8, 1063:1, 1063:20, 1065:1, 1068:3, 1068:4, 1075:21, 1076:19, 1077:19, 1084:22, 1085:9, 1086:22, 1095:4, 1096:10, 1097:3, 1097:12, 1099:17, 1099:21, 1099:25, 1100:3, 1100:7, 1100:8, 1100:10, 1100:12, 1100:17, 1100:18, 1100:21, 1100:24, 1101:3, 1101:4, 1101:13, 1101:15, 1102:6, 1102:12, 1102:22, 1103:2, 1103:14, 1103:15, 1104:1, 1105:4, 1105:7, 1105:10, 1105:13, 1105:14, 1106:2, 1108:9, 1110:10, 1136:16, 1137:16, 1137:24,

1137:25, 1153:6, 1153:16, 1153:17, 1153:24
**tests** [1] - 1061:25
**Texas** [1] - 1052:9
**text** [1] - 1064:20
**texts** [4] - 1064:18, 1074:11, 1074:12, 1074:18
**textured** [1] - 1028:20
**THE** [88] - 1002:11, 1003:2, 1003:13, 1003:19, 1003:21, 1003:23, 1004:11, 1004:15, 1004:18, 1004:23, 1005:1, 1005:6, 1005:12, 1030:19, 1045:18, 1046:1, 1046:3, 1046:7, 1046:10, 1046:16, 1082:1, 1082:10, 1082:19, 1082:22, 1082:24, 1083:2, 1083:8, 1090:6, 1090:15, 1090:16, 1105:2, 1130:1, 1140:6, 1140:11, 1140:13, 1140:14, 1140:16, 1141:13, 1143:21, 1145:2, 1145:4, 1145:7, 1145:9, 1145:14, 1145:16, 1145:21, 1145:25, 1146:3, 1146:5, 1146:7, 1146:10, 1146:13, 1146:15, 1146:17, 1146:23, 1147:2, 1147:5, 1147:8, 1147:11, 1147:20, 1147:22, 1147:23, 1148:6, 1148:15, 1148:20, 1149:8, 1149:10, 1149:14, 1149:16, 1149:18, 1149:21, 1150:2, 1151:23, 1152:4, 1152:7, 1152:16, 1152:21, 1152:23, 1153:2, 1153:9, 1153:10, 1153:13, 1153:22, 1154:9, 1154:15, 1157:2, 1157:13, 1157:18
**themselves** [4] - 1049:10, 1093:25, 1121:9, 1148:23
**theory** [1] - 1099:18
**thereafter** [1] -

1151:15
**thereby** [2] - 1110:3, 1116:16
**therefore** [8] - 1091:12, 1094:5, 1103:18, 1103:22, 1108:18, 1109:2, 1114:16, 1125:11
**they've** [3] - 1146:11, 1151:3, 1157:7
**third** [7] - 1007:10, 1031:8, 1040:8, 1042:7, 1091:5, 1118:8, 1134:17
**thirdly** [1] - 1151:5
**thirty** [1] - 1011:12
**Thomas** [1] - 1089:5
**thorough** [2] - 1049:5, 1049:21
**thoroughly** [1] - 1101:20
**thousand** [2] - 1084:10, 1089:15
**thousands** [1] - 1048:15
**threat** [1] - 1032:15
**threatened** [6] - 1031:6, 1032:1, 1117:22, 1118:6, 1125:25, 1126:4
**threatens** [1] - 1117:1
**Three** [12] - 1029:19, 1034:6, 1034:9, 1034:23, 1035:10, 1126:12, 1126:16, 1127:9, 1127:14, 1133:23, 1134:7, 1138:19
**three** [21] - 1007:4, 1023:12, 1029:15, 1030:9, 1031:12, 1031:14, 1031:21, 1031:22, 1032:24, 1042:21, 1051:4, 1058:19, 1067:19, 1070:5, 1071:19, 1072:11, 1084:2, 1090:22, 1145:16, 1147:11
**three-and-a-half** [1] - 1051:4
**threw** [2] - 1023:2, 1038:4
**throughout** [2] - 1080:20, 1142:1
**throw** [2] - 1022:15, 1037:17
**thrown** [1] - 1022:21
**throws** [1] - 1022:6
**Thursday** [2] - 1153:3,

1153:5
**tied** [1] - 1059:17
**tightly** [1] - 1041:5
**timeline** [2] - 1008:1, 1008:14
**timestamp** [1] - 1008:21
**timestamps** [2] - 1153:7, 1153:9
**timing** [2] - 1022:24, 1118:1
**title** [1] - 1063:18
**Title** [2] - 1122:25, 1126:25
**today** [10] - 1005:15, 1005:17, 1005:22, 1006:12, 1008:6, 1088:21, 1148:16, 1151:12, 1156:8, 1156:9
**today's** [1] - 1151:8
**together** [35] - 1007:3, 1008:22, 1009:1, 1009:18, 1010:10, 1011:9, 1019:9, 1023:6, 1036:23, 1037:4, 1037:7, 1037:9, 1037:10, 1037:12, 1037:19, 1054:3, 1069:16, 1075:19, 1112:20, 1113:16, 1115:25, 1117:11, 1119:24, 1121:18, 1122:3, 1122:13, 1126:18, 1131:18, 1132:5, 1132:17, 1136:1, 1141:5, 1151:3, 1155:4, 1156:1
**token** [2] - 1092:15, 1102:11
**Tom** [5] - 1062:13, 1077:25, 1078:3, 1078:13, 1078:18
**tomorrow** [8] - 1005:24, 1151:17, 1153:25, 1154:2, 1156:3, 1156:23, 1157:5, 1157:16
**tone** [1] - 1080:24
**tongue** [1] - 1059:23
**took** [26] - 1016:18, 1020:7, 1020:8, 1025:7, 1025:12, 1031:3, 1031:5, 1031:25, 1033:7, 1033:12, 1044:11, 1044:12, 1045:6, 1053:23, 1053:24, 1058:10, 1058:21,

1060:8, 1062:14, 1062:15, 1070:10, 1071:15, 1118:3, 1118:5, 1120:18, 1120:23
**top** [5] - 1010:22, 1011:3, 1060:4, 1060:5, 1061:4
**tops** [1] - 1053:17
**total** [1] - 1062:16
**totally** [1] - 1142:14
**touch** [1] - 1007:6
**touched** [3] - 1054:10, 1061:14, 1097:10
**touches** [4] - 1142:21, 1142:22, 1155:9, 1155:21
**touching** [4] - 1061:9, 1074:1, 1136:25, 1137:7
**toward** [4] - 1107:9, 1120:18, 1120:24, 1121:1
**towards** [7] - 1011:19, 1021:22, 1022:2, 1023:1, 1024:2, 1024:3, 1156:16
**tower** [1] - 1042:16
**towers** [5] - 1009:25, 1010:8, 1018:22, 1024:8, 1026:21
**town** [1] - 1060:3
**Toyota** [17] - 1010:14, 1010:17, 1011:6, 1011:10, 1011:13, 1016:6, 1016:9, 1016:10, 1020:19, 1021:23, 1021:24, 1023:21, 1025:24, 1025:25, 1027:8, 1037:24, 1084:19
**tracked** [1] - 1026:15
**traditionally** [1] - 1134:21
**trafficking** [1] - 1127:3
**training** [1] - 1099:17
**TRANSCRIPT** [1] - 1002:10
**transcript** [28] - 1002:24, 1007:19, 1007:25, 1008:20, 1009:21, 1011:24, 1012:22, 1013:14, 1014:21, 1016:19, 1017:23, 1019:12, 1020:3, 1020:9, 1020:14, 1021:9, 1024:23, 1026:6, 1027:6, 1027:24, 1028:17, 1028:23,

1032:12, 1039:17, 1041:12, 1137:20, 1137:25, 1157:3
**transcript-wise** [1] - 1157:3
**transcription** [1] - 1002:25
**transcripts** [2] - 1153:18, 1153:23
**transfer** [2] - 1055:2, 1087:18
**transference** [2] - 1068:13, 1074:2
**transferred** [3] - 1054:22, 1068:11, 1118:14
**transferring** [2] - 1055:4, 1056:8
**transfers** [1] - 1055:1
**transit** [1] - 1076:17
**trash** [1] - 1022:22
**travel** [1] - 1026:25
**traveling** [1] - 1011:18
**tray** [11] - 1018:10, 1018:14, 1018:15, 1022:22, 1023:2, 1023:3, 1025:19, 1037:17, 1038:2, 1038:3
**trays** [1] - 1038:1
**treat** [1] - 1096:9
**trial** [35] - 1003:5, 1007:18, 1007:20, 1014:3, 1054:25, 1058:8, 1080:20, 1085:18, 1088:21, 1095:1, 1095:14, 1099:1, 1100:7, 1101:15, 1101:17, 1101:22, 1101:23, 1105:7, 1105:10, 1105:12, 1105:14, 1106:6, 1106:8, 1106:17, 1107:9, 1107:14, 1107:16, 1107:18, 1107:19, 1107:21, 1135:5, 1136:17, 1137:19, 1142:1
**TRIAL** [1] - 1002:10
**trials** [1] - 1047:15
**tried** [3] - 1057:6, 1071:17, 1075:6
**trip** [1] - 1010:19
**true** [8] - 1050:2, 1057:5, 1059:25, 1066:22, 1095:12, 1095:13, 1102:15
**truly** [1] - 1139:13
**truth** [2] - 1063:19,

1103:6
**try** [8] - 1078:21, 1100:20, 1137:21, 1139:13, 1141:2, 1141:4, 1143:24, 1154:17
**trying** [10] - 1014:11, 1014:12, 1058:25, 1067:7, 1071:24, 1074:14, 1074:24, 1076:9, 1077:2, 1153:22
**tune** [1] - 1142:14
**turn** [2] - 1109:13, 1138:4
**turning** [2] - 1111:21, 1111:25
**twelve** [2] - 1135:25, 1155:3
**twenties** [2] - 1039:19, 1087:6
**twenty** [3] - 1017:11, 1040:8, 1089:4
**twenty-four** [1] - 1089:4
**twenty-third** [1] - 1040:8
**twice** [3] - 1077:5, 1077:6, 1077:7
**twister** [1] - 1059:24
**two** [41] - 1006:24, 1010:14, 1011:5, 1016:10, 1021:24, 1025:19, 1026:2, 1029:17, 1031:15, 1033:6, 1034:1, 1036:14, 1036:16, 1037:6, 1037:22, 1045:2, 1049:9, 1054:5, 1055:24, 1060:18, 1063:12, 1063:13, 1070:17, 1075:15, 1076:24, 1077:6, 1078:21, 1097:4, 1112:3, 1112:10, 1112:11, 1112:16, 1113:1, 1118:23, 1120:6, 1123:9, 1133:9, 1146:3, 1146:7, 1146:18
**Two** [14] - 1029:12, 1033:24, 1034:10, 1119:19, 1119:22, 1126:15, 1126:21, 1127:8, 1127:9, 1127:11, 1127:22, 1128:2, 1128:12, 1130:21
**two-door** [4] -

1010:14, 1021:24, 1025:19, 1026:2
**Tyler** [5] - 1008:18, 1013:7, 1013:12, 1027:16, 1058:20
**type** [3] - 1029:11, 1033:3
**types** [1] - 1029:8

## U

**U.S.C** [2] - 1116:21, 1123:8
**ultimately** [2] - 1148:15, 1148:20
**umbrella** [3] - 1097:23, 1098:2, 1098:5
**unable** [1] - 1139:19
**unanimous** [5] - 1133:21, 1135:19, 1137:12, 1138:22, 1156:18
**unanimously** [1] - 1138:17
**under** [15] - 1008:13, 1020:1, 1048:10, 1052:17, 1064:7, 1116:8, 1117:18, 1122:25, 1123:8, 1123:11, 1123:15, 1127:11, 1130:9, 1134:4, 1142:2
**underlying** [3] - 1109:9, 1134:10, 1134:12
**underneath** [3] - 1028:6, 1028:11, 1041:8
**undertaken** [1] - 1139:6
**undertaking** [1] - 1116:16
**underwear** [3] - 1060:22, 1061:15, 1068:9
**undisputed** [1] - 1075:21
**unfavorable** [3] - 1092:21, 1101:17, 1107:9
**unfortunately** [1] - 1141:18
**unit** [1] - 1054:4
**UNITED** [3] - 1002:1, 1002:4, 1002:11
**united** [5] - 1117:6, 1117:13, 1120:2, 1121:21, 1122:6
**United** [20] - 1002:5,

1002:15, 1002:17, 1003:9, 1003:10, 1006:19, 1083:11, 1092:11, 1092:13, 1096:23, 1122:16, 1122:25, 1123:7, 1127:1, 1127:4, 1127:17, 1128:1, 1139:15, 1147:15
**unlawful** [14] - 1029:18, 1112:4, 1112:16, 1113:2, 1113:16, 1114:2, 1114:15, 1114:18, 1115:8, 1116:4, 1116:12, 1116:14, 1116:17, 1117:20
**unless** [3] - 1093:12, 1093:14, 1098:16
**unlike** [2] - 1006:10, 1035:1
**unluckiest** [4] - 1086:10, 1086:15, 1087:12, 1087:23
**unlucky** [4] - 1086:11, 1086:25, 1087:15, 1087:18
**unnecessary** [1] - 1109:10
**unpleasant** [1] - 1094:11
**unspoken** [1] - 1113:1
**up** [64] - 1004:2, 1004:10, 1005:24, 1007:17, 1007:23, 1012:5, 1013:3, 1013:25, 1014:6, 1017:19, 1018:4, 1019:18, 1021:17, 1021:23, 1023:16, 1023:24, 1044:10, 1044:24, 1045:2, 1046:23, 1048:11, 1049:10, 1051:14, 1052:25, 1053:25, 1056:21, 1058:10, 1059:1, 1059:13, 1060:4, 1060:5, 1061:12, 1061:13, 1061:16, 1061:24, 1062:20, 1063:7, 1065:12, 1068:7, 1068:18, 1069:22, 1071:10, 1072:14, 1074:1, 1074:3, 1075:13, 1076:6, 1076:13, 1077:19, 1078:24, 1081:10, 1081:11, 1081:12, 1087:2, 1087:14,

1141:3, 1142:16, 1148:14, 1148:23, 1148:25, 1151:16, 1153:22, 1156:1, 1156:17
**upper** [2] - 1023:14, 1032:5, 1032:6
**USA** [1] - 1003:4
**uses** [2] - 1067:22, 1127:4
**usual** [1] - 1153:24
**utilize** [2] - 1084:4, 1106:18

## V

**vacation** [1] - 1047:9
**value** [1] - 1118:13
**various** [3] - 1070:9, 1097:2, 1110:14
**Vasquez** [12] - 1070:11, 1070:23, 1071:1, 1071:5, 1071:12, 1071:13, 1071:20, 1072:1, 1073:10, 1076:10, 1085:18
**Vasquez's** [6] - 1010:13, 1070:11, 1073:10, 1073:19, 1075:20, 1075:25
**venture** [5] - 1069:21, 1114:7, 1124:25, 1125:7, 1125:9
**verdict** [33] - 1005:2, 1045:15, 1084:5, 1092:8, 1092:16, 1093:9, 1096:25, 1098:24, 1107:20, 1109:24, 1131:4, 1133:13, 1135:1, 1135:13, 1135:18, 1135:19, 1135:21, 1136:8, 1137:12, 1138:9, 1138:11, 1138:17, 1138:21, 1138:22, 1138:23, 1138:25, 1139:2, 1139:9, 1140:25, 1141:1, 1144:11, 1156:18
**version** [1] - 1153:23
**versus** [2] - 1003:4, 1077:20
**victim** [4] - 1035:15, 1055:17, 1056:7, 1118:19
**victim's** [9] - 1031:6, 1032:1, 1055:21, 1055:22, 1118:6,

1125:23, 1125:24, 1126:3
**victims** [3] - 1031:19, 1039:12, 1040:10
**video** [88] - 1008:7, 1008:16, 1008:18, 1008:24, 1009:17, 1012:23, 1013:1, 1013:2, 1014:1, 1014:4, 1014:5, 1014:11, 1015:11, 1015:15, 1016:2, 1017:13, 1017:20, 1017:25, 1018:11, 1018:17, 1019:16, 1020:4, 1020:15, 1020:20, 1020:21, 1021:3, 1021:11, 1021:14, 1021:16, 1022:4, 1022:17, 1022:18, 1022:20, 1024:24, 1024:25, 1025:5, 1025:11, 1025:13, 1025:15, 1025:16, 1025:21, 1025:23, 1026:8, 1026:11, 1027:19, 1031:18, 1032:11, 1033:2, 1033:23, 1034:22, 1034:25, 1036:1, 1036:3, 1036:4, 1036:5, 1038:20, 1039:2, 1039:10, 1040:19, 1043:18, 1043:23, 1044:9, 1044:19, 1044:25, 1050:21, 1051:6, 1054:17, 1055:10, 1055:14, 1055:16, 1060:9, 1063:22, 1072:3, 1072:18, 1108:24, 1108:25, 1109:1, 1146:5, 1148:5, 1148:13, 1153:7, 1153:9
**Video** [15] - 1008:25, 1009:4, 1013:2, 1014:17, 1015:12, 1015:19, 1016:2, 1017:14, 1018:3, 1019:17, 1021:15, 1022:8, 1022:18, 1025:9
**videos** [34] - 1010:15, 1020:17, 1025:6, 1026:2, 1045:10, 1053:6, 1059:21, 1085:13, 1087:1, 1087:13, 1088:6, 1088:9, 1088:10,

1088:23, 1145:7,
1147:25, 1148:1,
1148:2, 1148:3,
1148:4, 1148:11,
1148:12, 1148:17,
1148:23, 1149:4,
1150:8, 1150:9,
1150:12, 1150:15,
1153:3, 1153:4,
1157:7
**videotaped** [1] -
1008:3
**view** [3] - 1092:2,
1150:16, 1150:18
**viewing** [1] - 1150:17
**views** [1] - 1153:11
**Villanueva** [2] -
1049:14, 1151:22
**Vinny** [3] - 1080:13,
1083:16, 1089:11
**violated** [1] - 1110:14
**violating** [2] -
1110:12, 1111:10
**violation** [2] -
1110:19, 1117:3
**violence** [31] - 1031:7,
1032:2, 1032:15,
1034:2, 1034:5,
1117:1, 1117:23,
1118:7, 1122:21,
1125:25, 1126:4,
1126:14, 1126:20,
1126:23, 1127:3,
1127:16, 1127:25,
1128:5, 1128:19,
1129:2, 1131:9,
1131:20, 1131:22,
1132:7, 1132:9,
1132:19, 1132:21,
1132:25, 1133:5,
1134:10, 1134:13
**violent** [1] - 1118:15
**virus** [1] - 1047:13
**visible** [2] - 1052:16,
1131:2
**visit** [1] - 1142:11
**Vitaliano** [7] - 1003:2,
1036:19, 1036:25,
1047:11, 1062:8,
1077:9, 1081:18
**VITALIANO** [1] -
1002:11
**vividly** [1] - 1065:3
**voice** [3] - 1039:22,
1087:7, 1134:22
**voir** [1] - 1081:21
**voluntarily** [2] -
1111:1, 1130:15

## W

**wad** [1] - 1053:20
**wading** [1] - 1060:15
**wait** [5] - 1015:16,
1054:18, 1062:23,
1078:6, 1152:16
**waiting** [2] - 1025:19,
1061:4
**walk** [9] - 1007:5,
1007:7, 1010:21,
1012:23, 1014:6,
1025:18, 1029:22,
1084:1, 1085:11
**walked** [4] - 1009:12,
1013:22, 1017:16,
1087:2
**walking** [7] - 1009:1,
1017:13, 1019:18,
1021:21, 1022:25,
1084:19, 1086:13
**walks** [6] - 1018:4,
1021:19, 1022:2,
1085:23, 1097:22
**wall** [1] - 1048:5
**wallet** [4] - 1028:1,
1028:6, 1040:7,
1041:9
**wants** [1] - 1075:10
**warrant** [2] - 1091:4,
1109:16
**warranted** [2] -
1091:15, 1136:14
**warrants** [2] - 1064:6,
1108:10
**Washington** [2] -
1011:11, 1026:17
**watch** [11] - 1010:15,
1010:16, 1015:22,
1015:24, 1021:12,
1026:8, 1026:9,
1088:9, 1088:10,
1088:13
**watched** [4] - 1026:8,
1031:17, 1032:2,
1055:14
**watching** [2] -
1055:23, 1056:24
**water** [1] - 1097:24
**ways** [2] - 1007:12,
1123:9
**weapon** [7] - 1128:13,
1128:18, 1129:4,
1129:5, 1129:6,
1130:17, 1145:8
**wear** [2] - 1008:4,
1086:17
**wearing** [36] - 1008:3,
1009:6, 1009:7,
1009:8, 1009:9,

1009:10, 1013:23,
1013:24, 1014:6,
1017:18, 1019:18,
1022:11, 1027:13,
1044:10, 1044:20,
1044:21, 1044:22,
1051:1, 1051:5,
1052:1, 1054:13,
1054:20, 1057:3,
1057:9, 1061:9,
1072:13, 1072:23,
1073:1, 1081:4,
1084:15, 1097:22,
1098:4
**wears** [1] - 1085:12
**weather** [1] - 1105:14
**weathering** [1] -
1015:2
**weed** [2] - 1073:21,
1073:22
**week** [3] - 1007:7,
1038:25, 1085:14
**weeks** [1] - 1006:24
**weigh** [1] - 1136:10
**weighing** [3] - 1094:2,
1099:21, 1100:14
**weight** [13] - 1091:13,
1093:8, 1100:1,
1100:13, 1100:18,
1101:4, 1102:4,
1105:3, 1105:25,
1109:4, 1110:1,
1134:22, 1135:17
**welcome** [4] -
1005:13, 1046:17,
1150:3, 1157:18
**wet** [4] - 1097:23,
1098:1, 1098:4,
1098:5
**whatsoever** [1] -
1136:19
**whichever** [1] -
1150:24
**whim** [1] - 1094:9
**white** [9] - 1009:6,
1017:21, 1021:20,
1021:25, 1025:17,
1044:8, 1080:25,
1081:1
**Whitestone** [2] -
1026:16, 1079:5
**Who'd** [1] - 1078:13
**whole** [8] - 1008:14,
1019:25, 1025:7,
1037:11, 1038:17,
1038:18, 1053:23,
1054:25
**willfully** [4] - 1103:23,
1123:5, 1123:16,
1125:15

**William** [4] - 1142:25,
1144:1, 1154:6,
1157:7
**win** [2] - 1078:7,
1078:17
**wind** [1] - 1071:18
**window** [2] - 1015:2,
1151:8
**windowless** [1] -
1097:21
**windshield** [1] -
1026:7, 1026:13
**wise** [2] - 1111:14,
1157:3
**wish** [3] - 1094:25,
1150:15, 1156:22
**wished** [1] - 1125:5
**wit** [4] - 1126:21,
1131:20, 1132:7,
1132:19
**witness** [39] -
1049:12, 1052:17,
1058:8, 1078:3,
1078:4, 1078:5,
1087:3, 1095:5,
1095:19, 1097:7,
1097:9, 1097:12,
1099:14, 1100:10,
1100:13, 1100:16,
1100:17, 1100:21,
1101:2, 1101:12,
1101:14, 1102:4,
1102:9, 1102:12,
1102:13, 1103:2,
1103:4, 1103:5,
1103:7, 1103:9,
1103:10, 1103:12,
1103:23, 1103:25,
1105:5, 1105:10,
1105:11, 1105:16,
1105:19
**witness'** [1] - 1137:23
**witness's** [6] -
1099:22, 1099:25,
1103:14, 1104:1,
1105:7, 1106:2
**witnesses** [28] -
1052:12, 1053:23,
1054:3, 1056:18,
1084:3, 1084:6,
1084:9, 1085:8,
1087:4, 1092:14,
1095:4, 1097:3,
1099:13, 1100:3,
1100:9, 1100:10,
1101:16, 1101:21,
1101:25, 1102:2,
1102:5, 1102:14,
1102:19, 1103:15,
1106:4, 1106:10,

1136:16
**Woodhaven** [23] -
1065:16, 1065:17,
1065:18, 1065:20,
1065:21, 1065:22,
1065:23, 1065:24,
1066:1, 1066:2,
1066:10, 1066:11
**woodhaven** [1] -
1065:17
**Woodside** [1] - 1008:8
**word** [7] - 1029:4,
1062:22, 1097:16,
1110:15, 1110:17,
1130:17, 1141:15
**words** [15] - 1032:13,
1032:14, 1037:1,
1042:1, 1062:10,
1089:19, 1093:25,
1097:25, 1110:13,
1110:22, 1111:19,
1112:22, 1113:11,
1118:17, 1137:22
**wore** [1] - 1043:11,
1051:18, 1051:25,
1052:3, 1052:4,
1072:15
**worker** [1] - 1114:4
**works** [1] - 1149:6
**world** [6] - 1048:23,
1069:22, 1073:12,
1086:11, 1086:15,
1087:23
**worry** [1] - 1118:20
**worth** [1] - 1053:21
**Wow** [1] - 1081:1
**write** [1] - 1089:21
**writing** [6] - 1043:16,
1043:17, 1109:25,
1112:22, 1137:5,
1137:7
**written** [1] - 1141:3
**wrote** [3] - 1040:1,
1040:2, 1054:23

## X

**X-ray** [1] - 1036:8

## Y

**year** [2] - 1040:9,
1084:13
**year-and-a-half** [1] -
1084:13
**years** [6] - 1039:21,
1041:24, 1071:24,
1089:22, 1089:23,
1089:25
**yesterday** [7] -

1005:15, 1040:6,
1049:12, 1060:21,
1072:2, 1072:12,
1144:5
**YORK** [1] - 1002:1
**York** [34] - 1002:6,
1002:18, 1002:23,
1009:24, 1010:18,
1011:11, 1011:18,
1012:10, 1024:17,
1072:15, 1085:24,
1089:13, 1117:7,
1117:10, 1117:15,
1119:21, 1119:24,
1120:4, 1121:16,
1121:18, 1121:23,
1122:1, 1122:3,
1122:8, 1122:11,
1122:13, 1122:18,
1126:18, 1131:14,
1131:17, 1132:1,
1132:4, 1132:13,
1132:16
**young** [15] - 1039:15,
1039:16, 1040:14,
1049:12, 1053:20,
1066:17, 1066:20,
1067:6, 1067:7,
1067:21, 1077:17,
1081:15, 1087:5,
1087:7, 1087:25
**yourself** [8] - 1019:3,
1024:24, 1062:20,
1087:7, 1088:21,
1125:3, 1135:10,
1142:24
**yourselves** [11] -
1007:2, 1045:21,
1048:3, 1050:18,
1071:22, 1082:6,
1084:14, 1113:22,
1142:3, 1154:24,
1155:7

## Z

**zip** [1] - 1051:14
**zip-up** [1] - 1051:14
**zipper** [1] - 1043:12
**zippered** [1] - 1060:19
**zippers** [5] - 1009:9,
1009:11, 1017:20,
1043:23, 1072:24
**zoom** [1] - 1016:20
**zoomed** [1] - 1023:24

## ...

**...** [1] - 1127:3

## "

**"fear"** [1] - 1118:17
**"Force"** [1] - 1118:15
**"intentionally"** [2] -
1110:23, 1111:5
**"knowingly"** [2] -
1110:22, 1110:25
**"no,"** [1] - 1125:13
**"or."** [1] - 1110:17
**"property"** [1] -
1118:12
**"robbery"** [2] -
1117:18, 1117:19
**"substantial** [1] -
1120:18
**"violence"** [1] -
1118:17
**"willfully** [2] -
1125:16, 1125:20
**"yes,"** [1] - 1126:7