1

<pre>
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - X
 3
      UNITED STATES OF AMERICA,      : 18-CR-684(ENV)
 4                                   :
                                     :
 5                                   :
           -against-                 : United States Courthouse
 6                                   : Brooklyn, New York
                                     :
 7                                   :
                                     : Monday, March 2, 2019
 8    ELGIN BRACK,                   : 9:30 a.m.
                                     :
 9            Defendant.             :
                                     :
10    - - - - - - - - - - - - - X

11        TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
           BEFORE THE MAGISTRATE JUDGE JAMES ORENSTEIN
12               UNITED STATES DISTRICT COURT JUDGE

13                   A P P E A R A N C E S:

14    For the Government:   RICHARD P. DONOGHUE
                            United States Attorney
15                          Eastern District of New York
                            271 Cadman Plaza East
16                          Brooklyn, New York 11201
                            BY:PHILIP SELDEN,
17                              JONATHAN SIEGEL,
                                JONATHAN LAX,
18                              Assistant United States Attorneys

19    For the Defendant:    LAW OFFICES OF JOEL MARK STEIN
                            30 Wall Street, 8th Floor
20                          New York, New York 10005
                            BY:JOEL MARK STEIN, ESQ.
21

22    For the Defendant:    GARY A. FARRELL, ESQ.
                            305 Broadway, 14th Floor
23                          New York, New York 10007

24    Court Reporter:  Michele D. Lucchese, RPR, CRR
                          E-mail: MLuccheseENDY@gmail.com
25    Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
</pre>

1          (In open court.)

2          THE COURT:  Good morning, everybody.  Have a seat,

3    please.

4          THE COURTROOM DEPUTY:  Criminal cause for jury

5    selection on Docket No. 18-CR-684, United States of America

6    versus Elgin Brack.

7          Counsel, please state your name for the record.

8          MR. SELDEN:  Good morning, Your Honor.  On behalf of

9    the United States, Assistant United States Attorney Phil

10   Selden.

11         THE COURT:  Good morning.

12         MR. SELDEN:  I am joined at Government counsel table

13   by Assistant United States Attorneys Jonathan Siegel, Jonathan

14   Lax, Paralegal Specialist Elicia Bates, and Special Agent

15   Steven Saint-Hilaire.

16         THE COURT:  Good morning.  Do I have everybody's

17   name at the table on our list?

18         MR. SELDEN:  Yes, Your Honor.

19         THE COURT:  For the defendant.

20         MR. FARRELL:  Yes, Your Honor.  My name is Gary

21   Farrell.  I will be joined by Joel Stein who was present

22   earlier this morning and he's just in the restroom.

23         And our client Elgin Brack is before the court.

24         THE COURT:  Good morning, Mr. Brack.

25         THE DEFENDANT:  Good morning, sir.

```
                        Jury Selection                   3
```

1        MR. FARRELL:  Your Honor, I would like to

2    respectfully add one name who may be joining us for parts of

3    the trial and his name is John Bennett.  He's a third-year law

4    student.  As his schedule with school permits, he will be

5    joining us at counsel table.

6        THE COURT:  What is his name?

7        MR. FARRELL:  John Bennett.  B-E-N-N-E-T-T.

8        THE COURT:  Is there any particular reason I didn't

9    get the name in advance?

10       MR. FARRELL:  We weren't sure that he would be

11   participate at all.

12       THE COURT:  In the future, err on the side of

13   inclusion.

14       MR. FARRELL:  Sure.

15       THE COURT:  If you tell me in advance and he doesn't

16   show up, no problem.

17       MR. FARRELL:  I understand.

18       THE COURT:  Mr. Stein.

19       MR. STEIN:  Good morning, Judge.

20       THE COURT:  I'm told that contrary to what we heard

21   earlier, instead of a two-week trial, we are anticipating a

22   three-week trial; is that right?

23       MR. SELDEN:  That is correct.

24       THE COURT:  Okay, I hope we have enough jurors.  Mr.

25   Selden, if you are noticing some frustration that is because

Jury Selection                                        4

1    this is not the first time I am having surprises in a jury

2    selection with you.  I hope it won't be a pattern.  I hope we

3    have enough jurors to get through the day.  Let's see.

4            Have you seen the list of names?  Any there other

5    additions besides Mr. Bennett?

6            MR. SELDEN:  Not on behalf of the Government.  Thank

7    you, Your Honor.

8            MR. STEIN:  No, Judge.

9            THE COURT:  You have seen my proposed description of

10   the case.  Any issues with that?

11           MR. SELDEN:  Not on behalf of the Government.  Thank

12   you, Your Honor.

13           MR. FARRELL:  None, Your Honor.

14           THE COURT:  All right.  One thing I noticed after I

15   had written it, I want to make sure nobody has an objection,

16   and we can correct it if need be, in summarizing the charges,

17   I grouped three firearm charges together describing them as

18   possessing and brandishing a firearm during a crime of

19   violence.  I realized that later that Count Three includes

20   discharge as an element.  I don't think it makes a whole lot

21   of difference in terms of describing the charges for the jury

22   so that they can figure out if they're going to be fair, but

23   if somebody wants me to clarify that further, I will.

24           MR. STEIN:  Judge, I would actually prefer that be

25   in there, because who knows what previous experience jurors

1   have had.

2          THE COURT:  Okay.  I will make that two counts of

3   possessing and brandishing, and one count of possessing,

4   brandishing and discharging.

5          MR. SELDEN:  I believe it is three counts of

6   possession and brandishing a firearm, Your Honor, and one

7   count of possession, brandishing, and discharging a firearm.

8          THE COURT:  Let me take a look at the indictment to

9   make sure that I get it right.

10         MR. SELDEN:  Sure, Your Honor.

11         THE COURT:  The charge with discharging is Count

12  Three.  Count Five is possessing and brandishing.  Count Seven

13  is possessing -- so, how do I have this wrong?

14         Three counts of possessing and brandishing, one

15  count of possessing and brandishing and discharge, one count

16  of conspiracy, one count of attempted, and three substantive

17  counts, right?

18         MR. SIEGEL:  That's correct, Your Honor.

19         THE COURT:  Yes.  I left one out.

20         MR. SELDEN:  Your Honor?

21         THE COURT:  Yes.

22         MR. SELDEN:  Just for clarity, with regards to the

23  substantive counts, there is one attempt of Hobbs Act robbery

24  and three additional substantive counts of Hobbs Act robbery.

25         THE COURT:  Right.  So one count of conspiracy, one

Jury Selection                                    6

1   of attempted, three of robbery, tree of possessing and

2   brandishing and one of possessing, brandishing and discharge?

3            MR. SELDEN:  Yes, Your Honor.

4            THE COURT:  We are all good?

5            MR. SELDEN:  Thank you, Your Honor.

6            THE COURT:  Anything else before we bring the jurors

7   up?

8            BOTTOM RIGHT judge, I have one sort of a personal

9   question.

10            THE COURT:  Yes.

11            MR. STEIN:  At some point during the proceedings are

12   we going to take a morning break?

13            THE COURT:  You know, I am going to keep an eye on

14   the room, but probably a midmorning break.  My hope and my

15   expectation is to get them seated before lunch time.  We will

16   take it as it comes.  We will certainly take a midmorning

17   break as needed.

18            MR. STEIN:  Okay.

19            THE COURT:  If we're reaching a point where we need

20   a break, just sort of give me the hi sign.

21            All right.  Oh, I'm sorry.  Lastly, I am going to

22   fill the box.  The front row will be our named panel and on

23   the left side of the courtroom facing it, I will put our

24   alternate panel.  So I will qualify everybody at once.  Okay.

25   All right.

Jury Selection                                    7

1          (Prospective jurors enter courtroom.)

2          THE COURT:  Good morning, folks.  Have a seat

3   anywhere in the gallery anywhere you'd like.  Folks, the

4   jurors will be entering for a while, so please feel free to

5   have a seat.

6          You can also use the front row of the gallery, if

7   you'd like.  To give you fair warning, it is going to get

8   pretty crowded, so you are going to need to squeeze into those

9   seats.  Anywhere is fine.  Take seats anywhere in the gallery.

10  Do squeeze to use all of the seats.  It will be crowded when

11  we start and then we will relieve the crowding.

12         Come in, folks.  Take seats in the gallery,

13  including the front row.

14         We have a lot of people coming in, so please squeeze

15  in seats to use as many as possible.  Come in, folks.  Please

16  find seats in the gallery, including the front row.  You are

17  free to use the front row.  Do squeeze in as much as possible

18  to use as many seats as we can.

19         Come in to make room for other people who are coming

20  in, please.  I promise you it will relieve the crowd soon.

21  There are some empty seats in the front row.  Please come and

22  take them.  For example, in the front row, do you think you

23  can squeeze down a little bit to get a seat for one more

24  person.  If you haven't found a seat, we will get one for you

25  in just a couple of minutes.

Jury Selection                                            8

1          Do we have everybody?

2          THE COURTROOM DEPUTY:  Yes.

3          THE COURT:  Okay, let's get started.

4          Good morning, everyone.  Welcome to the Eastern

5    District of New York.  My name is Magistrate Judge Orenstein.

6    We are here today to select a jury in the trial of the United

7    States against Elgin Brack.  The trial will begin tomorrow

8    morning in this courtroom before Judge Eric Vitaliano.

9          The first thing we need to do to get started is to

10   swear all of you in as prospective jurors.  So, if you can,

11   please, rise and raise your right hand to be sworn in.

12          (Prospective jurors sworn.)

13          THE COURT:  Have a seat, please.  Thank you.

14          So, our purpose in selecting a jury today is to find

15   fair and impartial jurors who can tried this case.  And to do

16   that, I'm going to ask you some questions about your

17   background.  I apologize in advance for asking some questions

18   which will be pretty personal.  I have to do that to make sure

19   that we find jurors who are completely fair and impartial.  My

20   questions and your answers allow me to determine if any of you

21   should be excused for cause.  The questioning also allows the

22   parties to exercise their judgment with respect to what we

23   call peremptory challenges.  And that's a challenge for which

24   no reason needs to be provided and each side has been given a

25   certain number of those that they are free to exercise.

1          Now, if at any point you would feel uncomfortable

2    answering a question in front of a whole room of people,

3    that's fine.  Let me know that and I will ask you to come up

4    here.  It is called the sidebar area and we'll discuss

5    whatever it is with me, the court reporter, and the lawyers

6    present, so that way you can do it in a slightly more private

7    setting.

8          If I decide for any reason that you shouldn't sit as

9    a juror in this case, please understand that it doesn't

10   reflect badly on you in any way.  You know, our system

11   requires jurors who not only are completely fair but who lack

12   even the appearance of favoring one side or another, and that

13   kind of appearance can arise from a juror's relationship to

14   the case, the parties, or the subject matter.  So, if for any

15   reason I decide you shouldn't serve as a juror in this case,

16   don't worry, we will try to find a case for you.  I will ask

17   you to go back downstairs to the jury assembly room where you

18   just came from, and we will try our best to find a case that

19   is right for you and your background.

20         The next step, as we will relieve the crowding, we

21   are going to fill seats with the first group we are going to

22   talk to.  I will start with the jury box and we are also going

23   to end up using the front rows.  I will get to that in a

24   moment.

25         So, starting in the seat closest to me in the front

Jury Selection                                  10

1    row, and if I get your name wrong or mispronounce, please
2    correct me, because I want to get it right if I can.
3              Can I have Adam Diaz in the seat closest to me in
4    the front row.  Just come on up.
5              And then in the second seat in the front row, Jill
6    Rudolph.
7              The third seat in the front row, Lisa Harriott.
8              Four seat in the front row, Salvatore Eterno.
9              And in the fifth seat in the front row, Shing Wang.
10             And in the sixth farthest from me in the front row,
11   Keith Chan.
12             Starting with the seat closest to me in the jury
13   box, can we have Melody Camacho.
14             And in the second seat, Michael Patrick.
15             And in the third seat in the front row, Mary
16   Dichiaro.
17             In the fourth seat in the second row, Dennis Traina.
18             And in the fifth seat in the second row, James
19   Bosco.
20             And in the seat farthest from me in the second row,
21   Elbania Flete Duran.
22             Starting with the seat closest to me in the back
23   row, Nelson Hernandez.
24             In the second seat in the back row, Sonia
25   Fletcher-Lewis.

```
                        Jury Selection                        11
```

1           Third seat in the back row, Shoshana Griesner.

2           Four seat in the back row, Erica Taylor.

3           And in the fifth seat in the back row, Bernadette

4    Williams.

5           And in the seat farthest from me in the back row,

6    Halle Marks.  All right.  Musical chairs.

7           If you are sitting in the front row of the gallery

8    on either side, if you could empty those seats and we will

9    reseat you in a moment.  I am going to seat people in our

10   first group there.

11          Thank you.  So starting in the seat closest to the

12   wall on the left side of the courtroom, Santina Marando.

13          And next to Ms. Marando, Raymond Ng.

14          And next to Mr. Ng, Abdalla Westbrook.

15          Folks, if you're sitting on that side, please make

16   sure you are not blocked from my view by that podium.  We will

17   have -- we are only putting five people in that row for now.

18          Next, Steven Sagot.

19          And then closest to the aisle in that row on the

20   right side of the courtroom, Kanta Haque.

21          And then starting closest to the aisle on the left

22   side of the courtroom, Denise McNamara.

23          Next to Ms. McNamara, Wesley Masch.

24          How do you pronounce it, sir?

25          THE PROSPECTIVE JUROR:  Masch.

Jury Selection                                          12

1          THE COURT:  Next to Mr. Masch, Ms. Jessica Ray.

2          Next to Ms. Ray, Ms. Seketha Woods.

3          And closest to the wall, Frank Sabine.

4          All right, and our last bit of musical chairs, if

5    the people on the left side of the courtroom in the second row

6    could give us that row, we're going to put one more group in

7    there and then we'll let everybody find a seat.

8          Counsel, just so you know, I am going to go in

9    backwards order just so that we can start with the person

10   closest to the wall.

11         Closest to the wall on the left side of the

12   courtroom in the second row, Christian Ramirez.

13         And then next to Mr. Ramirez, Constanza Fuentes.

14         Next to Ms.  Fuentes, Porsche Lee.

15         Next to Mr. Lee, Edith Parker.

16         And then Marie Whelan.

17         And then Francis brown.

18         I am going to ask you to squeeze in a little, if

19   you've got room.

20         And then in the first chair closest to the wall is

21   Kathryn Gupta.

22         And finally, Alvaro LLanes.

23         And if I haven't called your name, take a seat in

24   the gallery.  And I should also say, if I haven't called your

25   name, please stay in the room and pay attention.  The group of

Jury Selection                                    13

1   folks that I've called by name is the first group that I will

2   interview.  It will make the day go faster for all of us if,

3   as we go on, you're all paying attention to the questions so

4   if I call you up to replacing somebody that I have excused,

5   just say oh, you asked this question before and I have a yes

6   answer to it.

7            I see your hand in the back.  If I haven't called

8   your name, please wait until I call you.  If there is a reason

9   you think you shouldn't be here, please wait until I call you

10  to bring it up.  Okay.

11           All right.  Next, let me introduce the participants

12  in our case, and starting at the table closest to the wall on

13  the left side of the courtroom, the defendant, Elgin Brack, is

14  represented by Joel Stein and Gary Farrell.

15           Folks, would you call rise and introduce yourselves

16  to the panel.

17           MR. STEIN:  Good morning.

18           MR. FARRELL:  Good morning, Gary Farrell.

19           THE COURT:  Okay.  This is a criminal prosecution

20  and all prosecutions in this judicial strict are brought on

21  behalf of the Government of the United States.

22           I'm sorry, before I turn to the prosecution table, I

23  have left out, you have John Bennett and he is not with us,

24  and he maybe joining us later, am I right?

25           MR. FARRELL:  Yes.

```
                      Jury Selection                    14
```

1          THE COURT:  He is a law school student intern?

2          MR. FARRELL:  Yes, that's correct.

3          THE COURT:  I will be asking you, folks, even though

4    I don't have John Bennett listed on that piece of paper you

5    got, but does anybody think they know a law student named John

6    Bennett?  All right.

7          Now let me turn to the prosecution table.  As I was

8    saying, all criminal cases in this district are brought on

9    behalf of the United States Government by the United States

10   Attorney for the Eastern District of New York whose name is

11   Richard Donahue.  And in this case, the Government will be

12   represented by three of Mr. Donahue's assistants, Assistant

13   United States Attorneys Phil Selden, Jonathan Siegel, and

14   Jonathan Lax.  And with them at counsel stable is Special

15   Agent Steven Saint-Hilaire and Paralegal Specialist Elicia

16   Bates.

17         MR. SELDEN:  Good morning.

18         MR. SIEGEL:  Good morning.

19         MR. LAX:  Good morning.

20         THE COURT:  All right.  Have a seat, folks.

21         Do any of our jurors -- and, again, when I am asking

22   questions now, it's to the people I have called your name, do

23   any of our prospective jurors think that they know anybody at

24   either of these tables?  No.

25         Do any of you think that either yourself or a family

1    member or a close friend have been represented by any of the

2    attorneys or has any other kind of association with any of

3    these folks?  All right.

4            Now, let's talk about the schedule.  The trial in

5    this case is expected to last up to three weeks, meaning from

6    the day it starts, which is tomorrow, through the latest, we

7    think, is March 20th.  The schedule will be that it starts

8    each day around 9:30, probably, goes up to five o'clock with

9    short breaks in the middle of the morning and the middle of

10   the afternoon and, of course, a longer lunch break in the

11   middle of the day.

12           If you are selected for service on this jury, we

13   will need to make sure that you can arrive at the courthouse

14   no later than 9:15 to make sure that we can start the trial on

15   time.

16           So, I am going to ask you in a moment, not just yet,

17   if that schedule presents a hardship for you.  But before I do

18   that, before you start raising your hands, I want to make sure

19   that everybody understands on behalf of myself, all of the

20   participants in the trial, we all know this is not where you'd

21   like to be and it's probably not where you want to be for the

22   next three weeks.

23           Jury service is a real inconvenience.  It takes you

24   away from important matters in your daily lives and it can be

25   hard to manage and everybody here is sympathetic to that.

1           On the other hand, we have a system that relies on

2   jurors coming from their lives to participate in our system to

3   make sure that everybody gets a fair trial and we can't do

4   that.  We can't give people a fair trial if ordinary citizens

5   don't do their part.

6           So, if this is truly a hardship for you, let me know

7   that and if I agree, I am going to excuse you and maybe we

8   will find a shorter trial for you.

9           If it's going to be an inconvenience, but you are

10  going to find a way to manage it, I am going to ask you to do

11  that, not because I don't sympathize and not because these

12  folks don't sympathize, but it's the only way that we can

13  to make sure that everybody gets a fair trial.

14          So, with that understanding, my apology if I end up

15  say that I am not excusing you.  If you to ask to be excused

16  please raise your hand if you think being on this jury in the

17  next three weeks is a hardship for you.  If I haven't called

18  your name in the back, don't raise your hand.  I am going to

19  go row by row.

20          Let me start with the front row of the jury box, Mr.

21  Khan.

22          THE PROSPECTIVE JUROR:  I have made travel

23  arrangements March 15th.

24          THE COURT:  March 15th?

25          THE PROSPECTIVE JUROR:  Yeah.

Case 1:18-cr-00684-ENV   Document 180   Filed 03/20/20   Page 17 of 166 PageID #: 2455

1          THE COURT:  Prepaid?

2          THE PROSPECTIVE JUROR:  Prepaid.

3          THE COURT:  I am going to excuse you.

4          If I excuse anybody, go down to the jury room on the

5    second floor.  I do see your hands, I will get to you.  I'm

6    going to go row by row.

7          Mr. Wang.

8          THE PROSPECTIVE JUROR:  My wife has surgery on the

9    19th and I have to pick her up and bring her to the hospital

10   and bring her back.

11         THE COURT:  When do you anticipate needing to be

12   there on the 19th?

13         THE PROSPECTIVE JUROR:  It's at 8 o'clock in the

14   morning.

15         THE COURT:  I hate to do that, to let you go,

16   because it is entirely possible we won't get quite what far,

17   but I'm not going to take that chance.  I'll send you

18   downstairs and see if we can get you on a shorter trial.

19         Anybody else in the front row?

20         In the second row?

21         Mr. Traina?

22         THE PROSPECTIVE JUROR:  I don't have a hardship per

23   se.  I'm a sole proprietor of a company.  So three weeks would

24   put me in a difficult position.  I manage three employees.

25         THE COURT:  Let me ask you what happens if you are

1   gone for that long?  Is there somebody there who can manage

2   things?

3           THE PROSPECTIVE JUROR:  I'm pretty much the decision

4   maker.

5           THE COURT:  What kind of business is it?

6           THE PROSPECTIVE JUROR:  It's a heating and air

7   conditioning company.  Every day is a new day with crews.

8   Really the -- I have a good manager, but he wouldn't be able

9   to run the business for three weeks.

10          THE COURT:  Do you ever take vacations for a couple

11  weeks?

12          THE PROSPECTIVE JUROR:  Honestly, I have never taken

13  any more than five days in the last five years, my father was

14  not business, he is no longer in the business, I'm sort of

15  doing it on my own.

16          THE COURT:  I am going to let you go.

17          THE PROSPECTIVE JUROR:  I do appreciate that.

18          THE COURT:  Don't thank me too much.  We're going to

19  find another trial for you.

20          THE PROSPECTIVE JUROR:  I appreciate that.  Three

21  weeks is too long.

22          THE COURT:  I understand.

23          I see a hand in the second row.  Ms. Flete Duran.

24          THE PROSPECTIVE JUROR:  Yes.  I'm currently a

25  full-time student and this is my last year of college.  So

1   being here for three weeks is --

2          THE COURT:  I understand.  I am going to excuse you.

3   Anybody else in the second row?  In the back row, Ms.

4   Griesner?

5          THE PROSPECTIVE JUROR:  I'm a grandma and I have to

6   help my daughter to pick up the children from the school bus

7   at three o'clock.  Besides, I got a summons for the county,

8   Queens County to go at the same time.

9          THE COURT:  Well, if you are here, they won't give

10  you a problem for not showing up in Queens County.

11         THE PROSPECTIVE JUROR:  Three weeks I'm not to be

12  helpful.  She won't be able to do it.

13         THE COURT:  Is your daughter the primary caregiver

14  for your granddaughter?  Who takes care of your grandchild,

15  your daughter or you?

16         THE PROSPECTIVE JUROR:  My daughter has to go to

17  work and I help her with the school bus.

18         THE COURT:  Every day?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Is there anybody who can fill in?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  If you are sick or away for a trip --

23         THE PROSPECTIVE JUROR:  Yeah, one day.

24         THE COURT:  What happens if you --

25         THE PROSPECTIVE JUROR:  Then she won't go to work.

```
                     Jury Selection                    20
```

1          THE COURT:  Is there anybody else besides your

2    daughter who fills in?

3          THE PROSPECTIVE JUROR:  No, I'm the only

4    grandmother.

5          THE COURT:  So when can you serve on a jury?

6          THE PROSPECTIVE JUROR:  Not three weeks.

7          THE COURT:  Okay.  When can you serve on a jury?

8    Can you serve on a jury this week?

9          THE PROSPECTIVE JUROR:  For a short time.

10          THE COURT:  We will find another trial for you.

11   Please go downstairs.

12          Is there anybody else in the back row?  All right.

13   On the right side of the courtroom, I see some hands.  Mr.

14   Sagot?

15          THE PROSPECTIVE JUROR:  Yes, sir.  Three weeks is

16   just too long.  I work two jobs and it's too much income to

17   lose over the course of three weeks.

18          THE COURT:  You don't get paid if you are not there?

19          THE PROSPECTIVE JUROR:  Correct.

20          THE COURT:  What do you do for work?

21          THE PROSPECTIVE JUROR:  Line cook as well as

22   administrative assistant in a therapy clinic.

23          THE COURT:  You are an hourly earner?

24          THE PROSPECTIVE JUROR:  Yes, sir.

25          THE COURT:  I will excuse you.  Yes, Ms. Miranda?

```
                        Jury Selection                    21
```

1              THE PROSPECTIVE JUROR:  I work for the Department of

2    Education.

3              THE COURT:  I am going to ask you, because I can

4    barely see you.

5              THE PROSPECTIVE JUROR:  I work with the Department

6    of Education.  I'm a cook.  We are short.  We are very short

7    staffed.  I don't think they can manage without me for three

8    weeks, I can do something shorter.

9              THE COURT:  As you have seen, I have been excusing

10   people who have a hardship in their own lives.  The Department

11   of Education can find somebody.  So I'm going to ask you to

12   resume your seat.  If they give you a hard time, please tell

13   them you tried and the judge said no.

14             Anybody else on that side of the courtroom?

15             Turning to the front row on the left side.  Yes, Ms.

16   McNamara.

17             THE PROSPECTIVE JUROR:  I have two concerns:  One is

18   my employer will only cover up to three days of jury duty

19   service, beyond that I don't get paid.

20             THE COURT:  Yes.

21             THE PROSPECTIVE JUROR:  And then, secondly, my

22   father is ill with kidney cancer and goes to dialysis three

23   days a week.  My parents divorced when I was younger.

24             THE COURT:  All right.  I will excuse you.  We will

25   see if we can find a shorter trial for you.

```
                      Jury Selection                    22
```

1          Anybody else on the left side?  In the second row, I

2   see a few hand.

3          Starting with Mr. Llanes.

4          MR. STEIN:  I have a prepaid business trip from the

5   9th to the 11.

6          THE COURT:  A business trip?

7          THE PROSPECTIVE JUROR:  Yeah.

8          THE COURT:  Can they send somebody in your stead?

9          THE PROSPECTIVE JUROR:  No, I'm the only person.

10         THE COURT:  I will excuse you.

11         And Ms. Gupta.

12         THE PROSPECTIVE JUROR:  I have a travel scheduled

13  March 13th.

14         THE COURT:  Is it prepaid?

15         THE PROSPECTIVE JUROR:  Yes, sir.

16         THE COURT:  I will excuse you.

17         Anybody else?  Mr. Lee?

18         THE PROSPECTIVE JUROR:  I'm going to be taking my

19  exam, my medical entrance exam next week.

20         THE COURT:  Is that something that can be

21  rescheduled?

22         THE PROSPECTIVE JUROR:  I already rescheduled once.

23  It's too late for the deadline.  If it was any other week or a

24  shorter trial.

25         THE COURT:  All right.  I will excuse you.

```
                    Jury Selection                    23
```

1           Anybody else that I have missed?

2           Are you Mr. Bennett?

3           MR. FARRELL:  Yes, he is.

4           THE COURT:  Does anybody think they know Mr. Bennett

5   here?  All right.  So we have a number of seats to fill.  I

6   will fill them in the original order that I filled them.  Give

7   me one moment.

8           All right.  In the fifth seat in the front row,

9   Audrey Thomas.

10          In the seat farthest from me in the front row,

11  Khurshid Bashir.

12          In the fourth seat in the middle row, Linda Honig.

13          In the seat farthest from me in the second row, Paul

14  Claro.

15          And in the third seat in the back row, Jack Hammer.

16          In the seat second from the aisle on the right side

17  of the courtroom, forgive me, Jeanmarie Giordano.

18          In the seat closest to the aisle on the left side of

19  the courtroom, Gary Weil.

20          In the chair closest to the aisle in the second row,

21  John Zarrella.

22          And in the next chair, Christopher Ng.

23          In the third seat from the wall in that second row,

24  Elise Bellefond.

25          All right.  We have filled all of the seats that we

1   need to fill in, I think.

2          So we have a number of jurors who have just joined

3   us.  Do any of you who have just joined us have a hardship

4   serving over the next three weeks?

5          Yes, Mr. Zarrella.  I'm sorry, you are not Mr.

6   Zarrella.

7          You are Mr. Weil?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Yes?

10          THE PROSPECTIVE JUROR:  I'm a truck driver.

11          THE COURT:  Yes.

12          THE PROSPECTIVE JUROR:  I work for a union.  I don't

13   get paid unless I work.

14          THE COURT:  And --

15          THE PROSPECTIVE JUROR:  I have two kids in college.

16          THE COURT:  All right.  I am going to excuse you.

17   Just go downstairs.

18          (Continued on following page.)

19

20

21

22

23

24

25

Jury Selection                                        25

1    (Continuing.)

2          THE COURT:  Anyone I excuse, go back down to the

3    jury assembly room on the second floor.  We are going to try

4    to find you another trial.

5          Anyone else that just came?

6          At the back, I am talking to the jurors who have

7    been called up.  If you have an issue and I call you up, I

8    will listen to you.

9          All right, anybody else who has just joined us or

10   who joined us earlier and forgot to mention something?

11         Let me say this:  I have a number of questions I am

12   going to ask you today.  If we get past it and then you

13   realize you had not answered, please speak up.  What we cannot

14   have is you get through the jury selection process, you are on

15   the jury and then you say "Wait, I just remembered there was

16   something I forgot to raise," because it is so much harder to

17   fix that problem.

18         So do not be shy.  Really, if there is something

19   that you think of that you did not get to the first time

20   around, please, please, let me know about it.

21         All right, did I miss anybody who has a scheduling

22   issue?

23         All right, in the seat closest to the aisle in the

24   front on the left side of the courtroom can we have Armend

25   Odzic, please.

```
                    Jury Selection                    26
```

1          Mr. Odzic, do you have any problem with the

2     schedule?

3          THE PROSPECTIVE JUROR:  I am in 32BJ and I believe

4     if I'm in this procedure, I don't get paid for the three

5     weeks.

6          THE COURT:  You don't get paid?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  All right, I'll excuse you.

9          THE PROSPECTIVE JUROR:  Thank you.

10          (Prospective Juror No. 47 excused.)

11          THE COURT:  That same seat, can we have Claire

12     Hansen?

13          Ms. Hansen, do you have any you difficulty with the

14     schedule?

15          THE PROSPECTIVE JUROR:  Yes.  I have two small

16     children and they are in spring break and we have tickets to

17     go see their family in Canada.

18          THE COURT:  All right, I will excuse you.

19          (Prospective Juror No. 48 excused.)

20          THE COURT:  Yes, Mr. Patrick?

21          THE PROSPECTIVE JUROR:  Yes.  I work for a union as

22     well.  I'm not sure I'd be paid for three weeks.

23          THE COURT:  Okay, can you find out during the break

24     and let me know?

25          THE PROSPECTIVE JUROR:  I have to go get my phone.

1          THE COURT:  Okay, make a call.  If you are not going

2   to get paid I am not going to keep you, but I would like to

3   know that before I excuse you.

4          In the seat that's been emptied again, can we have

5   Courtney Weinstein?

6          I have the spelling of your first name C-O-U-R-N-Y,

7   is that missing a T?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  I thought it might be.

10         And, Ms. Weinstein, do you have any scheduling

11  issue?

12         THE PROSPECTIVE JUROR:  To your previous issue I do

13  have a very close friend who is an assistant U.S. Attorney,

14  and there are a few names on this list from donors of an

15  organization that I am familiar with where I work.

16         THE COURT:  I am going to get to the list.

17         Who is the Assistant U.S. Attorney you know?

18         THE PROSPECTIVE JUROR:  Mathew Miller.

19         THE COURT:  I don't think he has any involvement in

20  this case.

21         Am I right, counsel?

22         MR. SELDEN:  That is correct, Your Honor.

23         THE COURT:  Would the fact that you know somebody

24  who works at the same office in any way affect your ability to

25  be fair?

```
                        Jury Selection                    28
```

1            THE PROSPECTIVE JUROR:  It may.

2            THE COURT:  It may.  How?

3            THE PROSPECTIVE JUROR:  Lots of stories that I've

4    heard.  So it's --

5            THE COURT:  You have heard stories about this case?

6            THE PROSPECTIVE JUROR:  Not about this case.

7            THE COURT:  We are only asking for jurors to serve

8    in this case --

9            THE PROSPECTIVE JUROR:  Sure.

10           THE COURT:  -- not for other cases they may have

11   heard about.

12           Would the fact that you have heard stories about

13   other cases, we have all heard stories about lots of cases,

14   would that affect your ability to fairly judge this case?

15           THE PROSPECTIVE JUROR:  Hard to know for sure.

16           THE COURT:  Is it?

17           How do you think it might?  Because I take it you

18   know nothing about this case, right?

19           THE PROSPECTIVE JUROR:  No.

20           THE COURT:  How do you think it may affect your

21   judgment in a case that you know nothing about?

22           THE PROSPECTIVE JUROR:  Just the system and -- and

23   how it's worked in the past, but I would certainly try my

24   best.

25           THE COURT:  Okay, do you have any reason to think

1   that you are going to favor one side or another?

2              THE PROSPECTIVE JUROR:  Again, hard to know for

3   sure.

4              THE COURT:  Yes.  And let me assure everybody that,

5   I assume, like all human beings, you don't know what you don't

6   know and that there are uncertainties.  You cannot predict

7   everything.

8              We are looking for people who think that they are

9   fair and who do not know of a reason why they would not be.

10  If there is a reason why you think you would not be fair,

11  please let me know.  If you just don't know what you don't

12  know, we get it.  That is not a reason you cannot serve.

13             Is there anything you are aware of that would make

14  it hard for you to be fair?

15             THE PROSPECTIVE JUROR:  I guess I'll do my best.

16             THE COURT:  It is important to answer that question,

17  though.

18             Is there anything that you can think of that would

19  make it hard for you to be fair?

20             THE PROSPECTIVE JUROR:  I'm not sure.  I'll try my

21  best.

22             THE COURT:  Is there anything that you can think of?

23             I know you are not sure, you are going to try your

24  best, you have said that twice, I get that.

25             THE PROSPECTIVE JUROR:  Yes.

SAM      OCR      RMR      CRR      RPR

1          THE COURT:  Is there anything that you can think of
2    that would make it hard for you to be fair?
3          THE PROSPECTIVE JUROR:  No.
4          THE COURT:  Okay.
5          And to get back to the question I was trying to get
6    to earlier, is there any scheduling issue?
7          THE PROSPECTIVE JUROR:  There is a Jewish holiday
8    next week of Purim that may present some complications.
9          THE COURT:  How so?
10         THE PROSPECTIVE JUROR:  Needing to be partly in
11   synagogue and observance of the holiday, which may conflict
12   depending on holiday.
13         THE COURT:  When are the services that you are
14   planning to attend?
15         THE PROSPECTIVE JUROR:  On Tuesday.
16         THE COURT:  What time on Tuesday?  For example, at
17   my synagogue they are in the evening to accommodate people
18   who, like most of us, work.
19         THE PROSPECTIVE JUROR:  Sure.  I am not a hundred
20   percent sure.
21         THE COURT:  Okay.  If you find out that you have a
22   conflict, do please let me know.  I am sure you won't be shy
23   about that.
24         THE PROSPECTIVE JUROR:  All right.
25         THE COURT:  Is everybody else okay?  Two more hands

Jury Selection                                    31

1    on the scheduling issue, yes.  Okay, let me start with Mr. Ng.

2            THE PROSPECTIVE JUROR:  I am in 32BJ as well, and I

3    know that we don't get paid for this.

4            THE COURT:  Well, I am not sure it's true for

5    everybody.

6            THE PROSPECTIVE JUROR:  Right.

7            THE COURT:  If you know that you are not going to

8    get paid, let me know that.  If you find out, let me know

9    that.

10           THE PROSPECTIVE JUROR:  Okay.

11           THE COURT:  And, Ms. Westbrook?

12           THE PROSPECTIVE JUROR:  I have three small children,

13   I'm a stay-at-home mom.  I depend on my husband to go to work

14   and I typically am the one who picks up our children after

15   school.

16           THE COURT:  And how are you --

17           THE PROSPECTIVE JUROR:  So may I can make it on a

18   shorter trial.

19           THE COURT:  Well, how are you handling it today?

20           THE PROSPECTIVE JUROR:  My husband is currently at

21   home right now.  He has the children currently at home.  I

22   have a stepdaughter which we have -- I have to work with her

23   stepmother in order to pick up my stepdaughter from school and

24   drop her off at school.

25           THE COURT:  And is that an arrangement that you can

SAM     OCR     RMR     CRR     RPR

1    carry on for the next few weeks if you need to?

2          THE PROSPECTIVE JUROR:  It would cause conflict, but

3    maybe something shorter.

4          THE COURT:  I am sure your preference would be for

5    something shorter, and I am not trying to be unsympathetic, I

6    am really not.  I am trying to figure out if you can manage it

7    and it is inconvenient, in which case I am going to ask you to

8    stay; or you just cannot manage it.

9          People who cannot put food on the table, I am

10   letting go.  People who have inconvenience, I am asking them

11   to stay.  And I have to trust what you tell me.

12         THE PROSPECTIVE JUROR:  It's just my husband travels

13   a lot from New York to Philly.

14         THE COURT:  Does he have trips planned in the next

15   three weeks?

16         THE PROSPECTIVE JUROR:  Yeah.  He has work on Friday

17   and he has a work event on Tuesday as well, Which requires him

18   to travel.

19         THE COURT:  I am going to excuse you.

20         THE PROSPECTIVE JUROR:  Thank you.

21         (Prospective Juror No. 21 excused.)

22         THE COURT:  Did I see some other hands come up?

23         Mr. Khurshid, did you raise your hand?

24         THE PROSPECTIVE JUROR:  Yeah.  I was going to say in

25   reference to the 32BJ union, I'm with them as well.  They pay

Jury Selection                                    33

1   up to ten days, and then the management company covers the

2   rest after that.

3           THE COURT:  Okay, so hopefully you guys can be

4   managed.

5           THE PROSPECTIVE JUROR:  Yeah, yeah.

6           THE COURT:  Okay, thank you.

7           Anybody else have a scheduling issue that I have not

8   addressed yet?

9           And we have got one seat to fill.  Could we have

10  Kelly Cruz in the middle seat in the front row on the right

11  side?

12          And.  Ms. Cruz, do you have a scheduling issue?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Okay, wonderful.

15          I am going to move on from the scheduling issue.  I

16  know it's a tough one, folks, believe me.  You did not plan on

17  spending three weeks here when you got called for jury duty.

18  Most of you won't, that is the good news, but some of you

19  will.  I am moving on from it, so if there is anything else on

20  the scheduling issue, I would rather hear it from you now.  If

21  I hear it from you later I will hear it from you still, but

22  anyone else that I missed?  Okay.

23          Leaving aside, of course, folks that I have not

24  called up yet.  If I call you up and you have an issue, of

25  course, let me know.

1        All right, next question for everyone in the group

2   that I called by name, do any of you have any physical

3   problem:  Hearing loss, vision loss, need to take frequent

4   medication, that would just make it physically difficult for

5   you to serve on this jury?

6            And, of course, I should say, if it anything that

7   personal, do feel free to let me know at the sidebar if that

8   is what you prefer.

9            All right, Ms. Harriott?

10           THE PROSPECTIVE JUROR:  Yes.  I'm hypoglycemic.  I

11  just want to ask are you allowed to eat like a little snack

12  during?

13           THE COURT:  We can certainly accommodate your

14  need --

15           THE PROSPECTIVE JUROR:  Oh, okay.

16           THE COURT:  -- for a snack if you need it.

17           THE PROSPECTIVE JUROR:  Okay.

18           THE COURT:  Absolutely.

19           And, Ms. Marks?

20           THE PROSPECTIVE JUROR:  I get migraines and auras

21  that are triggered by my upper back and neck spasms.  They

22  happen -- I don't really know how often they happen and I'm

23  not really sure.  They happen a few every year where I can't

24  see, I get slurred speech and I'm on medicines.

25           THE COURT:  Yes.

```
                          Jury Selection                    35
```

1          THE PROSPECTIVE JUROR:  It might happen within the

2   next three weeks, but I just wanted to tell you.

3          THE COURT:  I appreciate that.  Now, I am not going

4   to excuse you for something that happens a few times a year.

5          THE PROSPECTIVE JUROR:  Yeah, no, I just wanted to

6   tell you.

7          THE COURT:  Of course.  But if that happens, we

8   always pick alternate jurors, so we would accommodate you in

9   that sense.

10          Do you avoid triggers if you can stand up and

11   stretch?

12          THE PROSPECTIVE JUROR:  Yeah.  I go to physical

13   therapy twice a week to help.

14          THE COURT:  Okay.  Well, if you are in the jury box

15   and you need to stand up and stretch to avoid triggering a

16   migraine, you are absolutely fine to do that, just let Judge

17   Vitaliano know, just let him know as well that that is

18   something you need to do.

19          Anybody else?  Yes, Ms. Fletcher-Lewis.

20          THE PROSPECTIVE JUROR:  Yes, I have back pain.  I

21   had two surgeries on my back and if I sit down long period of

22   time, it hurt.

23          THE COURT:  The same thing, can you ease that by

24   stretching and taking breaks?

25          THE PROSPECTIVE JUROR:  Yes.

```
                    Jury Selection                    36
```

1          THE COURT:  Okay.  All right, anybody else have a
2   physical issue?
3          Yes, Mr. Patrick.
4          THE PROSPECTIVE JUROR:  Yeah, I also have migraines,
5   cervicogenic migraines, because of issues with my neck, a
6   similar situation.
7          THE COURT:  Okay.  Can we accommodate it the same
8   way we are accommodating the others?
9          THE PROSPECTIVE JUROR:  I believe so.
10         THE COURT:  Okay, wonderful.
11         Anybody else?  Okay.
12         Do any of you have any difficulty understanding and
13  speaking the English language?
14         And you will understand why I ask this question as I
15  do this way:  Please, if you are understanding the question I
16  am asking right now, please raise your hand.
17         Keep it raised.  I just want to make sure I have not
18  missed somebody who did not understand the question.  All
19  right, wonderful.
20         The next question:  Do any of you have any
21  experience either studying law, whether at law school or any
22  other place, or working in any capacity in a law office?
23         And, again, I will do this row by row.  Let me start
24  with Ms. Harriott.
25         THE PROSPECTIVE JUROR:  Yes.  I'm a legal secretary

Jury Selection                              37

1  for a law firm.

2              THE COURT:  Okay, what kind of practice?

3              THE PROSPECTIVE JUROR:  It's litigation,

4  construction litigation.

5              THE COURT:  Does it include criminal practice at

6  all?

7              THE PROSPECTIVE JUROR:  Yeah, we have some cases in

8  the Eastern District.

9              THE COURT:  In the Eastern District?

10             THE PROSPECTIVE JUROR:  Yeah, and the Southern

11 District and also the Supreme.

12             THE COURT:  Okay.  Do you appear in court yourself?

13             THE PROSPECTIVE JUROR:  No, no.

14             THE COURT:  Okay.  Now, a few questions for people

15 who have experience working in the law.

16             One is, particularly since your firm has cases in

17 this district and criminal cases as well, I assume on the

18 other side is the United States Attorney's office.

19             Would that affect your ability to be fair in a case

20 that is brought by the U.S. Attorney's office?

21             THE PROSPECTIVE JUROR:  Not at all.

22             THE COURT:  Okay.

23             Anything else about working for a law firm or the

24 particular firm that you work for that you think would make it

25 difficult for you to be fair?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  The other kind of question that I have

3     for anybody who studied law or worked in a law office is that

4     you cannot help but pick up knowledge about the law and legal

5     rules when you have that experience.  And what is important

6     for all jurors is that you are deciding the case from the same

7     set of rules.

8               And if you are selected as a juror in this case,

9     Judge Vitaliano will give you instructions about what the

10    legal rules are that apply to this case and all jurors must

11    follow those same rules.  Now, for lawyers or people who work

12    in a law office, sometimes that can be difficult.

13              And so the question for you, Ms. Harriott, and for

14    anyone else who had this experience, is would you have

15    difficulty putting aside what you have learned about the law

16    along the way and just applying the rules that you get from

17    Judge Vitaliano?

18          THE PROSPECTIVE JUROR:  No.

19          THE COURT:  Okay.

20              And the reason for that, folks, is what we do not

21    want to happen is you are in the jury room and somebody says:

22    Well, wait, isn't the legal rule this?  And the person who

23    works at the law office says:  No, no, no, I know better.

24    Don't listen to the judge.  Here's the rule.

25          THE PROSPECTIVE JUROR:  I'm not an attorney.

1           THE COURT:  Well, look, you don't have to be an

2    attorney to have some pretty strong views of what you think

3    the law is.

4           So you would not have that problem?

5           THE PROSPECTIVE JUROR:  No.

6           THE COURT:  Wonderful.

7           Anyone else in the jury box who has experience

8    studying law or works in the law?

9           Mr. Claro.

10          THE PROSPECTIVE JUROR:  Yes.  I was an

11   administrative assistant at a law firm, a private firm, maybe

12   about 12 years ago in college.

13          THE COURT:  First of all, would it affect your

14   ability to be fair?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Was there any kind of criminal practice

17   there?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Did you have cases with the U.S.

20   Attorney's office on the other side?

21          THE PROSPECTIVE JUROR:  Not that I know of.

22          THE COURT:  Okay.  Would you have any difficulty

23   putting aside what you have learned about the law and just

24   deciding it based on the rules you get from Judge Vitaliano?

25          THE PROSPECTIVE JUROR:  No, sir.

1           THE COURT:  Okay.

2           Anybody else in the jury box?

3           And how about on the right side of the courtroom?

4           Ms. Woods.  You are not Ms. Woods, I'm sorry,

5    Ms. Giordano.

6           THE PROSPECTIVE JUROR:  I'm an attorney admitted to

7    practice in New York, but I don't practice as an attorney.  I

8    work as an underwriter in an insurance company.

9           THE COURT:  Okay.  Have you practiced in the past?

10          THE PROSPECTIVE JUROR:  A long time ago, over twenty

11   years ago.

12          THE COURT:  What was the area you practiced?

13          THE PROSPECTIVE JUROR:  I worked as a claims

14   attorney at Prudential Securities.

15          THE COURT:  Anything about your experience as a

16   lawyer that would affect your ability to be fair?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  Would you have any difficulty putting

19   aside your knowledge of the law and just applying the rules

20   that you get from Judge Vitaliano?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  And, Ms. Weinstein, did you have your

23   hand up?

24          THE PROSPECTIVE JUROR:  Yes.  I just mention I was

25   social work with lawyers for children when I was in grad

Jury Selection                        41

1   school, and I currently work for a non-profit where I assist

2   our lawyers division.  While it's not working at a law firm, I

3   fund raise for the lawyers.

4           THE COURT:  Anything about your work or your

5   experience working with lawyers that would affect your ability

6   to be fair?

7           THE PROSPECTIVE JUROR:  Not that I know of.

8           THE COURT:  Okay.  And would you have any difficulty

9   putting aside what you have learned about the law to just

10  apply the rules you get from the judge?

11          THE PROSPECTIVE JUROR:  I'll do my best.

12          THE COURT:  Anybody else study law or work in a law

13  office?  Okay.

14          All right, the next thing I want to talk to you

15  about, I just told you you will get some rules from Judge

16  Vitaliano, and you will, but there are some really fundamental

17  rules that apply in every criminal case and I want to go

18  through some of those with you now to see if any of you would

19  have difficulty following those rules.

20          So, first, every person who has been accused of a

21  crime is presumed to be innocent.

22          Is there anybody who would have difficulty applying

23  that rule of law?

24          Second, a person who has been charged with a crime

25  has absolutely no burden, no obligation to prove that he is

1   not guilty.  The sole burden of proof in this case, and in

2   every criminal case, is on the Government.

3               Is there anybody who has any difficulty accepting

4   and applying that rule of law?

5               Third, the Government has the burden of proving each

6   element of each crime charged beyond a reasonable doubt.  If

7   the Government fails to do this, the jury has an obligation to

8   return a verdict of not guilty.

9               Is there anybody who thinks they would have

10  difficulty accepting and applying that rule of law?

11              Fourth, a person who has been accused of a crime may

12  only be convicted on a unanimous verdict.  That is, all of the

13  jurors have to agree that the defendant's guilty of a

14  particular offense has been proved beyond a reasonable doubt.

15              Is there anybody here who thinks they would have

16  difficulty accepting and applying that rule of law?

17              Fifth, jurors are exclusive judges of the facts.  If

18  you are a juror in this case, it is going to be your function

19  to decide the facts, but you will have to do it according to

20  the legal rules.  And as I told you earlier, you will receive

21  instructions on those rules from Judge Vitaliano and if you

22  are a juror you must follow those rules, even if you disagree

23  with them or if you think they are unwise.

24              Is there anybody here who thinks they would have any

25  difficulty in accepting and applying that rule of law?

1          And finally, Mr. Brack has no obligation to testify

2   or to provide any proof whatsoever.  He is presumed innocent,

3   and that presumption stays with him throughout the trial and

4   it is only rebutted if the jury unanimously finds that he is

5   guilty.

6          Is there anybody that has any problem with that

7   rule, if you have any of difficulty accepting and applying?

8          All right, let me tell you now about the charges in

9   the case.

10          In a criminal case like this, the charges against a

11   defendant are contained in what's called an Indictment.  And

12   an Indictment is simply a way of letting the defendant know

13   what the Government has accused him of.  It is a way of giving

14   him notice of the charges.  An Indictment is an accusation and

15   nothing more.  An Indictment is not evidence, and if you are a

16   juror in this case you must give it no weight in your

17   deliberations.

18          I also want to say that nothing I say today or

19   nothing that anyone else in the courtroom says today in

20   describing the case or in discussing jury selection, none of

21   that is evidence.  If you are a juror in this case, the

22   evidence that you will consider will come only from the trial

23   testimony of witnesses, from exhibits that are admitted into

24   evidence.  That's it.

25          So, with that understanding, let me summarize the

Jury Selection                                                  44

1    charges in the Indictment to help you make a decision about

2    whether you could be fair as a juror.  It is not evidence.

3              So, the Government has accused Mr. Brack of nine

4    crimes arising from its allegation that he participated in the

5    robberies of various 24-hour convenience stores in Queens, and

6    that he brandished or discharged a gun in doing so.

7              So, there is one count of conspiracy to commit

8    robbery, one count of attempted robbery, three counts of

9    robbery, three counts of possessing and brandishing a firearm

10   during a crime of violence, and one count of possessing,

11   brandishing and discharging a firearm during a crime of

12   violence.  Those are the nine charges in the Indictment.

13             Based on that description I have just given you, do

14   any of you think that you have heard or read or seen anything

15   about this case or think that you know anything about this

16   case?

17             So, as you came in earlier we gave you all a

18   document, a list of names on one side and some places and

19   stores on the other side.

20             Anybody not have the list?  Okay.

21             Please take a moment.  I will give you some time.

22   Please take a moment to read through that list on both sides

23   of the sheet of paper carefully and when you are done, I am

24   going to ask you if you know anyone or have any connection

25   with any of the places on the list.

SAM      OCR      RMR      CRR      RPR

Jury Selection                                45

1            (Pause.)

2            THE COURT:  Does anybody think that they know

3    anybody on this list of names or have any connection with the

4    stores and locations on the back of the page?

5            Yes, give me a moment.

6            I am sorry, you are Ms. Brown?

7            THE PROSPECTIVE JUROR:  Yes.  I don't know if --

8    it's Jennifer Cardillo.  I worked with a woman named Jennifer

9    Cardillo.  I don't know if it's the same name.

10           THE COURT:  It could be.  So tell me, the Jennifer

11   Cardillo that you know, where do you know her from?

12           THE PROSPECTIVE JUROR:  From my job.

13           THE COURT:  Which is what?

14           THE PROSPECTIVE JUROR:  Department of Education.

15           THE COURT:  Okay.  And in terms of counsel, any

16   reason to think it's the same Jennifer Cardillo?

17           MR. SELDEN:  No.  Thank you, Your Honor.

18           THE COURT:  Anybody else?

19           Ms. Woods.

20           THE PROSPECTIVE JUROR:  Yes.  I'm just familiar with

21   one of the places.

22           THE COURT:  Okay, tell me about it.

23           THE PROSPECTIVE JUROR:  I just know where it's at.

24           THE COURT:  Which one are you talking about?

25           THE PROSPECTIVE JUROR:  The one on Merrick.

1      THE COURT:  So you know that Rite Aid store?

2      THE PROSPECTIVE JUROR:  Yes.

3      THE COURT:  Do you have any connection to it other

4  than knowing about it?

5      THE PROSPECTIVE JUROR:  No.

6      THE COURT:  I assume it is there.  And, you know,

7  folks, I don't really know the evidence in this case, but I

8  assume it is there because you are going to hear testimony

9  about events that happened there, possibly some of the events

10  charged in the Indictment.

11      Would hearing evidence about that store affect your

12  ability to be fair?

13      THE PROSPECTIVE JUROR:  I would say no.  I mean I

14  know the store.  I know the layout.  So I mean that might --

15      THE COURT:  Well, that was going to be my next

16  question.

17      You know the layout.  Would you have difficulty in

18  the jury room making sure that you are not bringing into the

19  discussion something that you know about the store that has

20  not been brought up in the trial?

21      THE PROSPECTIVE JUROR:  No, that wouldn't be a

22  problem.

23      THE COURT:  Okay, that wouldn't be a problem.

24      And I guess the last question is, we are going to

25  have a point later in the day when the lawyers come up and

1   tell me what I have forgotten to ask, so I may come back to

2   this.

3           But, again, I don't know, I can check quickly,

4   counsel, am I correct that that location is one of the -- yes,

5   in Count Eight.

6           MR. SELDEN:  That's correct, Your Honor.

7           THE COURT:  So one of the accusations is that there

8   was a robbery that Mr. Brack is charged with committing at

9   that store.

10          Would hearing evidence that there was a robbery at

11  that store, in itself, make it upsetting, just hard for you to

12  focus on it --

13          THE PROSPECTIVE JUROR:  Oh, no.

14          THE COURT:  -- and decide it fairly?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  All right.

17          Anybody else?  Thank you.

18          Anybody else have any connection?

19          Yes, Ms. Camacho.

20          THE PROSPECTIVE JUROR:  Yeah.  I don't have a

21  connection, but my son works in a -- he works at a Walgreens

22  that was robbed, and I just don't want to hear -- he's still

23  working there, so I really don't want to hear a whole bunch of

24  negative stuff because he doesn't want to leave that job.

25          THE COURT:  Well, I am confident, and this is a

1    question I am going to get to later, so, folks, I do want you

2    to bring up stuff if you think about it, but I do plan to get

3    to these questions.

4             Would you find it difficult to be fair hearing

5    evidence about robberies at a 24-hour convenience store?

6             THE PROSPECTIVE JUROR:  I might.

7             THE COURT:  Tell me, just tell me what is in your

8    mind about what you think the process would be.  Do you think

9    it would lead you to favor one side or the other?

10            THE PROSPECTIVE JUROR:  Maybe out of fear for my

11   son, yeah.

12            THE COURT:  Okay.  Well, obviously, that is a

13   personal reaction.

14            THE PROSPECTIVE JUROR:  Correct.

15            THE COURT:  You have not heard any evidence.

16            THE PROSPECTIVE JUROR:  No, I haven't.

17            THE COURT:  So it is not based on anything in the

18   case, but if the subject matter strikes too close to home, I

19   think we should find a different trial for you.

20            THE PROSPECTIVE JUROR:  Definitely.

21            THE COURT:  I am going to ask you to go back down to

22   the jury assembly room.

23            THE PROSPECTIVE JUROR:  Thank you.

24            THE COURT:  Thank you.

25            (Prospective Juror No. 7 excused.)

1          THE COURT:  Yes, Ms. Weinstein.

2          THE PROSPECTIVE JUROR:  As I referenced earlier,

3    several of the names sound familiar as donors to the

4    organization that I work at.  While I don't know any of them

5    in particular, I just wanted to reference that again.

6          THE COURT:  I appreciate that.

7          Would hearing testimony about folks on this list,

8    and some of them may be similar names but not the same

9    people --

10          THE PROSPECTIVE JUROR:  Correct.

11          THE COURT:  -- would that affect your ability to be

12    fair?

13          THE PROSPECTIVE JUROR:  I don't think so.

14          And I also did want to mention that our caregiver

15    lives in Woodside, Queens and is from there.  So it's a

16    neighborhood -- while I don't know these two locations, it is

17    a neighborhood that I am familiar with from her.

18          THE COURT:  And would that affect your ability to be

19    fair?

20          THE PROSPECTIVE JUROR:  I would certainly -- you

21    know, thought of any crimes happening in that area would

22    certainly be upsetting.

23          So, again, I just wanted to reference it.

24          THE COURT:  Counsel, could I see you at sidebar for

25    a moment?  A scheduling issue about our break.

Jury Selection                            50

1           (The following sidebar took place outside the

2    hearing of the prospective jurors.)

3           THE COURT:  Folks, I will get to the break in a

4    moment, but I think we are about to get to this point where I

5    get to this question about the list, and then we'll take a

6    short break.

7           Any objection to my excusing Ms. Weinstein?

8           I think we are going to get this eventually, she

9    will make sure of it.  And I think in the interest of the

10   shortness of life we might as well do it now.

11          Any objection?

12          MR. FARRELL:  No.

13          MR. SELDEN:  None from the Government.  Thank you,

14   Your Honor.

15          MR. SIEGEL:  Thank you.

16          THE COURT:  Have a seat, and as soon as I get

17   through this round I will take a break.

18          (Sidebar concluded.)

19          (In open court - prospective jurors present.)

20          THE COURT:  Okay.  I want to get through the

21   question about the list, and then I think we are going to take

22   a break and then fill the empty seats after the break.

23          So have I missed anybody who felt they knew somebody

24   who had a connection to any of the locations on the list?

25          All right.

1              Forgive me, Ms. Weinstein, I discussed, during the
2      sidebar I discussed with the counsel, I am going to ask you to
3      go down to the jury assembly room and see if there is another
4      trial for you.
5              THE PROSPECTIVE JUROR:  Thank you.
6              (Prospective Juror No. 49 excused.)
7              THE COURT:  All right, folks, we are going to take
8      our mid-morning break.  A couple things before I let you go.
9              First, let's try to keep it to under 15 minutes.
10     So, by that clock on the wall I want you back in your seat at
11     11:15.  Try to be on time.
12             While you are on a break, on this break or any other
13     that we take today, do not discuss the case with anyone; not
14     with each other, not at all.  If you happen to see any of
15     these folks who are at the counsel table, do not be offended
16     when they do not even acknowledge your presence.  They are not
17     being rude.  They know that they cannot have any contact with
18     any juror or prospective juror outside the courtroom.  So they
19     are just going to be sticking to that rule.
20             So, have a good break.  Do not discuss the case.  Be
21     back in the same seat you are in.  Look who is on either side
22     of you, be in the same place seat, and be back here in
23     15 minutes.  Have a good break.
24             (Prospective jurors exited the courtroom.)
25             (Magistrate Judge [!JUDGE NAME] exited courtroom.)

1          (Defendant exited the courtroom.)

2          (Recess taken.)

3          (In open court - prospective jurors present.)

4          (Judge [!JUDGE NAME] entered the courtroom.)

5          (Defendant entered the courtroom.)

6          THE COURT:  All right, folks, welcome back.  I hope

7    you had a good break.

8          Before I fill the empty seats, we had a couple of

9    jurors who were going to make inquiries.

10          Were you able to?

11          THE PROSPECTIVE JUROR:  I'm fine.

12          THE COURT:  Good.  Okay, great.

13          THE PROSPECTIVE JUROR:  I'm good.

14          THE COURT:  Great.  So let's move on.

15          I need to fill the empty seats.  So in the seat

16    closest to me in the second row, if I we can have Brittney

17    Knoch.

18          Is it K-NOCH with a hard K?

19          THE PROSPECTIVE JUROR:  Knock, like on a door.

20          THE COURT:  Got it.

21          All right, and in the seat closest to the aisle on

22    the left side of the courtroom in the front, could we have

23    Sharmin Yousuf?

24          Ms. Knoch and Ms. Yousuf, let me get the two of you

25    caught up.

1             Any scheduling issues?

2             THE PROSPECTIVE JUROR:  I have travel plans prepaid

3    for Friday of this week.

4             THE COURT:  I see.  We are going to have to let you

5    go.

6             THE PROSPECTIVE JUROR:  Okay.

7             (Prospective Juror No. 51 excused.)

8             THE COURT:  All right.

9             Craig Romain, please.

10            THE PROSPECTIVE JUROR:  I also have.

11            THE COURT:  Oh, you also have?

12            THE PROSPECTIVE JUROR:  Yes.  I am a full-time

13   college student.

14            THE COURT:  Okay, and you are enrolled in this

15   semester?

16            THE PROSPECTIVE JUROR:  Yes.

17            THE COURT:  I will let you go as well.  Go back down

18   to the second floor, if you would.

19            (Prospective Juror No. 52 excused.)

20            THE COURT:  Mr. Romain?

21            THE PROSPECTIVE JUROR:  Yes.

22            THE COURT:  Sit in the seat closest to me in the

23   second row.

24            And then in the seat in the front row, Jacqueline

25   Bueno-Graham.

```
                        Sidebar                      54
```

1              And folks who just joined us, do either of you have

2    any scheduling issues?

3              No?  Mr. Romain?

4              Ms. Bueno-Graham, do you have any scheduling issue?

5              THE PROSPECTIVE JUROR:  Can I approach?

6              THE COURT:  Yes, come on up.

7              (Sidebar held.)

8              (The following sidebar took place outside the

9    hearing of the prospective jurors.)

10             (Prospective Juror No. 54 present at sidebar.)

11             THE COURT:  All right, yes, ma'am.

12             THE PROSPECTIVE JUROR:  I just lost my husband

13   June 30th, so --

14             THE COURT:  I am very sorry.

15             THE PROSPECTIVE JUROR:  -- so I'm not -- I'm not

16   sleeping.  So I really can't concentrate.

17             THE COURT:  I understand.  I am very sorry to hear

18   it and I wish you the best.  I will excuse you.  Okay?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  But I do need you to go back down to the

21   second floor.

22             THE PROSPECTIVE JUROR:  Okay.  Thank you.

23             (Prospective Juror No. 54 leaves sidebar.)

24             (Prospective Juror No. 54 excused.)

25             (Sidebar concluded.)

```
                        Sidebar                    55

1            (In open court - prospective jurors present.)
2            THE COURT:  In that front seat in the front row,
3    Susan Teitelbaum, please.
4            Ms. Teitelbaum, do you have any scheduling issue?
5            THE PROSPECTIVE JUROR:  I would like to come up.
6            THE COURT:  You also would like to come up; okay.
7    Sidebar.
8            (Sidebar held.)
9            (The following sidebar took place outside the
10   hearing of the prospective jurors.)
11           THE COURT:  Yes, ma'am.
12           THE PROSPECTIVE JUROR:  Only because I have a
13   medical issue.
14           THE COURT:  Speak up.
15           THE PROSPECTIVE JUROR:  I have a medical issue.  I
16   have a cyst on my liver and I am going for testing next week.
17           THE COURT:  I see.  Is it just the one day testing?
18           THE PROSPECTIVE JUROR:  I don't know.  That's the
19   thing, I honestly don't know.  I don't know what my doctor is
20   going to do.
21           THE COURT:  All right, I am going to excuse you.
22           THE PROSPECTIVE JUROR:  Thank you.
23           (Prospective Juror No. 55 leaves sidebar.)
24           (Prospective Juror No. 55 excused.)
25           (Sidebar concluded.)
```

```
                        Jury Selection                      56
```

 1              (In open court - prospective jurors present.)
 2              THE COURT:  Next in that front row, can we have
 3    Nicholas Brigante, please.
 4              Have a seat, sir.
 5              Mr. Brigante, do you have any scheduling issue?
 6              THE PROSPECTIVE JUROR:  No, I do not.
 7              THE COURT:  Okay.  And for Mr. Brigante and
 8    Mr. Romain, any medical or physical issues serving on a jury?
 9              THE PROSPECTIVE JUROR:  No.
10              THE PROSPECTIVE JUROR:  No.
11              THE COURT:  You both speak and understand English?
12              THE PROSPECTIVE JUROR:  Yes.
13              THE PROSPECTIVE JUROR:  Yes.
14              THE COURT:  And do either of you have any experience
15    studying law or working in a law office?
16              THE PROSPECTIVE JUROR:  No.
17              THE PROSPECTIVE JUROR:  Actually, I'm a cop for
18    NYPD.
19              THE COURT:  Sorry, one more time.
20              THE PROSPECTIVE JUROR:  I am a New York City police
21    officer.
22              THE COURT:  You are.  That gets into another issue
23    that I will get to later, folks.  If that sparks a thought for
24    you, hold onto it for a moment, I will come back to it.
25              So you are currently working as an officer?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  And would the fact that you serve as an

3     officer affect your ability to be fair in a criminal case

4     generally?

5          THE PROSPECTIVE JUROR:  No, but I think it might be

6     difficult to turn off the law enforcement perspective.

7          THE COURT:  Okay.  Well, tell me how you think it

8     would play out.

9          THE PROSPECTIVE JUROR:  Because I made similar

10    arrests in the past.

11         THE COURT:  That was going to be my next question.

12         I think that is a little too close to home for you.

13    We will see if we can find a different kind of trial for you.

14         THE PROSPECTIVE JUROR:  Okay.

15         THE COURT:  So if you can go back down to the jury

16    assembly room.

17         THE PROSPECTIVE JUROR:  Thank you.

18         (Prospective Juror No. 56 excused.)

19         THE COURT:  In that same seat, may we have next

20    Charles Gosrisirikul.

21         (No response.)

22         THE COURT:  If I mispronounced the name, please

23    correct me.  Charles Gosrisirikul.

24         (No response.)

25         THE COURT:  And in case I have been mangling the

1  name, G-O-S-R-I-S-I-R-I-K-U-L is the last name.

2          (No response.)

3          THE COURT:  Are you Mr. Gosrisirikul?

4          AUDIENCE MEMBER:  No.

5          THE COURT:  Well, he did not show up.

6          And, counsel, if he shows up later, I will fill an

7  empty seat with him.  So we will come back to him.

8          James Dunford.

9          Mr. Dunford, do you have any scheduling issue with

10 the trial?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  Do you have any physical issues serving?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  And you speak and understand English?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Do you have any experience studying law

17 or working in a law office?

18         THE PROSPECTIVE JUROR:  No.

19         THE COURT:  And for both you and Mr. Romain who

20 joined us, you heard me discuss the rules that apply in every

21 criminal case.

22         Do either of you think you would have trouble

23 applying them?

24         THE PROSPECTIVE JUROR:  No problem.

25         THE COURT:  Sir?

```
                        Jury Selection                        59
```

1              THE PROSPECTIVE JUROR:  No.

2              THE COURT:  Okay.

3              And do either of you think based on the description

4    of the charges I gave earlier that you have any connection to

5    anybody involved in the case, or if you know anything about

6    it?

7              THE PROSPECTIVE JUROR:  None.

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Did you recognize any names on the list

10   or have any connection with any of the places?

11             THE PROSPECTIVE JUROR:  One of the names sounds

12   like -- like a co-worker who I used to know, but it's a very

13   common -- common name, so I don't -- I don't think it's the

14   same guy.

15             THE COURT:  Okay, can you tell me which name you

16   recognize?

17             THE PROSPECTIVE JUROR:  Daniel Rivera.

18             THE COURT:  Where do you know Mr. Rivera from?

19             THE PROSPECTIVE JUROR:  I used to work with him.

20             THE COURT:  Where?

21             THE PROSPECTIVE JUROR:  At my job in Tribeca at a

22   clothing store.

23             THE COURT:  I'm sorry, what kind of job, a clothing

24   store?

25             THE PROSPECTIVE JUROR:  Yes.

Jury Selection                     60

1          THE COURT:  And, counsel, any reason to think it is

2     the same Daniel Rivera?

3          MR. SELDEN:  No.  Thank you, Your Honor.

4          THE COURT:  So probably a different person.  As you

5     noted, it is a common name.

6          All right, so I think that gets us caught up.

7          Let's move on, and this is now questions, again, for

8     everyone in the group of people I have called by name.

9          So you heard me before the break describe the

10    charges in the case arising from the allegation that Mr. Brack

11    was involved in some robberies of convenience stores and he is

12    charged with brandishing and discharging a gun.

13         Is there anything about the nature of those

14    accusations that makes any of you think that it would be

15    difficult for you to be fair in a trial with those kinds of

16    charges?

17         Yes, Ms. Thomas.

18         THE PROSPECTIVE JUROR:  Yes, I don't think I can be

19    fair thinking about it, you know, being a black mother and in

20    the neighborhood I grew up with we have a tendency not to be

21    trustful towards the police officers.  So that's what I've

22    been thinking about.  I don't think I would be fair, to be

23    honest with you.

24         I've been watching a lot of movies on TV about

25    celebrating Black History Month, so I think all those things

1    are inside my heart, so I don't know if I could be fair.

2              THE COURT:  Okay.  Well, I am going to excuse you.

3    We will find a different trial.

4              THE PROSPECTIVE JUROR:  Thank you.

5              THE COURT:  We can get you on something else.

6              (Prospective Juror No. 37 excused.)

7              (Person entered the courtroom.)

8              THE COURT:  Do you happen to be Mr. Gosrisirikul?

9              AUDIENCE MEMBER:  No.

10             THE COURT:  All right.

11             And before I fill that seat, is there anything

12   anybody else?

13             Yes, Ms. DiChiaro?

14             THE PROSPECTIVE JUROR:  Yes, I served on a grand

15   jury about five years ago and, correct me if I'm wrong, but in

16   serving on the grand jury and you need enough evidence

17   to indict --

18             THE COURT:  Well, before you go on with that, grand

19   jury service is a different rule and there are different

20   standards of proof for what grand jurors look into and what

21   trial jurors look into.

22             But as I said, when we have a criminal trial, we

23   start fresh.  We start off with no evidence.  And if you were

24   on a jury now, this is true for everybody, if you were on the

25   trial of a jury and all of a sudden the judge said "Trial is

1    over, start deliberations," every one of us knows what the

2    verdict would be:  Not guilty because there has been no

3    evidence.  You would be legally required, if the trial ended

4    right now, to say that the Government has failed to prove its

5    case because it presented no evidence.  So that is where we

6    start in the trial jury.

7              Does that address your question?

8              THE PROSPECTIVE JUROR:  No.  I thought that is the

9    defendant being indicted --

10             THE COURT:  I am going to ask you to come up to the

11   sidebar to discuss the issue further.

12

13             (Continued on the following page.)

14

15

16

17

18

19

20

21

22

23

24

25

63

1              (Sidebar.)

2              THE COURT:  What's your question, ma'am?

3              THE PROSPECTIVE JUROR:  Serving on a grand jury.

4    When we were serving my thought, my understanding was the

5    grand jury is there for evidence to indict to go to trial.  We

6    would say that's a no.  In this particular incident, since he

7    is coming to trial, there was enough -- am I wrong that there

8    was enough evidence to indict the person?  That I would think

9    that he's guilty.  That's what my thought it's.

10             THE COURT:  So every person who has been charged

11   with a crime is guilty?

12             THE PROSPECTIVE JUROR:  No.

13             THE COURT:  Why do we bother with a trial then?

14             THE PROSPECTIVE JUROR:  No.  That's why I'm asking

15   you.

16             THE COURT:  So right now the defendant is not

17   guilty?

18             THE PROSPECTIVE JUROR:  Okay.  So in grand jury

19   bringing him it only means it's an indictment to present

20   evidence?

21             THE COURT:  The grand jury process has literally --

22             THE PROSPECTIVE JUROR:  I'm sorry.

23             THE COURT:  No.  No.  Keep in mind, the question is

24   whether you are going to be fair.  If you think he's guilty

25   because he's been charged, that's what you think.  It's not

Anthony M. Mancuso, CSR    Official Court Reporter

64

1   our law.  If it's what you think and you can't be fair because
2   you couldn't get that out of your head that's something we all
3   need to know.

4          THE PROSPECTIVE JUROR:  I'll be honest, I don't
5   know.  I'm thinking yes I would think they are guilty.

6          THE COURT:  I'm not going to let you serve on this
7   jury.  You are not qualified.  If you think that somebody who
8   has been charged with a crime is guilty simply because they
9   have been charged, you really shouldn't be on a criminal jury.
10  It's totally foreign to our system of law.  You are correct
11  that when you sit on a grand jury you make a determination if
12  there's enough evidence to go to trial.  What you don't know
13  is whether that evidence would be admissible at trial.

14         THE PROSPECTIVE JUROR:  Okay.

15         THE COURT:  What you don't know is what the
16  defendant would say because you only hear from one side.  So
17  we need people to serve on a jury who have an open mind.

18         THE PROSPECTIVE JUROR:  I do have an open mind.  I
19  was confused about --

20         THE COURT:  From what you have said so far I would
21  not want to put you in a position of judging somebody's guilt
22  or innocence.  It's not guilt or innocence.  It's whether the
23  government has proved its case.  Right now they have not.  I
24  hope we can find a civil trial for you.  I'll send you
25  downstairs to see if we can do that.  Have a good day.

65

1          (In open court.)

2          THE COURT:  All right.  Is there anybody else who

3    thinks that just because of the nature of the accusations it

4    would be difficult to be fair?  Mr. Traina?

5          THE PROSPECTIVE JUROR:  My son is a New York City

6    Police Officer and I know he responds to robberies and things

7    like that.  So with gun play.

8          THE COURT:  Again, try to understand.  Is that

9    experience you have had is familiar or because your son has

10   responded to these calls that the government has proved its

11   case?

12         THE PROSPECTIVE JUROR:  I don't think it's proved

13   its case because they have not presented it.

14         THE COURT:  Would you start off thinking that the

15   government is most likely going to prove its case simply

16   because it's accused somebody of these crimes?  How would you

17   make the decision?

18         THE PROSPECTIVE JUROR:  Right now it's the nature of

19   the crimes that's being explained, knowing what my son has to

20   deal with every day.

21         THE COURT:  You think you would be more likely to

22   favor one side in this case?

23         THE PROSPECTIVE JUROR:  I would think that I would.

24         THE COURT:  All right.  We can't help you from

25   thinking what you think.  I think everybody else here

Anthony M. Mancuso, CSR     Official Court Reporter

1  understands whether your son has done one robbery call or a

2  million, it tells us literally nothing about whether the

3  charges in this case are true.  If that's something that you

4  can't get past you shouldn't be on this jury.  I'll ask you to

5  go down to the jury assembly room.

6          Is there anybody else who thinks they would have

7  difficulty being fair because of the nature of the allegation?

8  Ms. Bellefond.

9          THE PROSPECTIVE JUROR:  My dad is on disability and

10  he's worked on robberies.  I heard a lot of this.

11          THE COURT:  Again, I won't ask you to elaborate on

12  that.  The logic is quite honestly lost on me.

13          THE PROSPECTIVE JUROR:  I might favor --

14          THE COURT:  Do you think you are likely to favor one

15  side or another.

16          THE PROSPECTIVE JUROR:  I could.

17          THE COURT:  We all could.  Do you think it's likely?

18          THE PROSPECTIVE JUROR:  It might be.  I don't know.

19          THE COURT:  We'll find somebody who can be fair in

20  this case.  If you can go down to the jury assembly room.

21          Is there anybody else who thinks they would have

22  difficulty being fair because of the nature of the allegations

23  here?  Fill the empty seats.  The fifth seat in the front row.

24          THE CLERK:  Fourth seat.

25          THE COURT:  Forgive me.  Yes, fourth seat in the

67

1  front row, we have Stephen Figuieredo.  And the fifth seat in

2  the front row, Teresa Vance Burke.

3       In the third seat in the second row, Daniella Bock.

4  And in the third seat from the wall in the second row on the

5  left side, Jessie Ferraro.

6       So for the jurors who have just joined us, first,

7  let start with any scheduling issues.  Ms. Bock?

8       THE PROSPECTIVE JUROR:  I'm a full-time student.

9       THE COURT:  Okay.  I'll excuse you.  Anyone else?

10  Ms.  Ferrero?

11       THE PROSPECTIVE JUROR:  I just served jury duty five

12  weeks ago with county court.  I'm a teacher and New York State

13  tests start on March 25.

14       THE COURT:  I am sorry for the bad luck.  But I take

15  it you have substitutes who will sit in if you are selected?

16       THE PROSPECTIVE JUROR:  It would be a different

17  person each day.

18       THE COURT:  I'm going to ask you to stay.  Anyone

19  else with a scheduling issue?

20       In the empty seat in the second row, we have Sean

21  Wilson, please:

22       Mr. Wilson, do you have a scheduling issue?  Okay.

23  The jurors who just joined us in the last few moments, any of

24  you have a health problems or a physical issue that would make

25  it physically difficult for you to serve?  Any of you have any

68

1   difficulty speaking and understanding English?

2           THE PROSPECTIVE JUROR:  I do.

3           THE COURT:  Hold on.

4           Do any of you have any experience working in a law

5   office or studying law.  Ms. Westbrook?

6           THE PROSPECTIVE JUROR:  A long time ago and not

7   criminal.

8           THE COURT:  Would you have any difficulty putting

9   aside what you remember from your legal studies and following

10  the rules from the judge?

11          THE PROSPECTIVE JUROR:  No.

12          THE COURT:  Would it affect your ability to be fair

13  at all?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  Anybody else?  Again for the jurors who

16  just joined us, as well as anybody else, it can't hurt to give

17  some more thought to this.  Let me quickly remind you of the

18  rules that apply in every criminal case.  Mr. Malcolm is

19  innocent.  The government alone has the burden of proving his

20  guilt and they have to prove his guilt beyond a reasonable

21  doubt.  The standard of proof is, as I said, proof beyond a

22  reasonable doubt.  If the government fails to prove

23  Mr. Malcolm's guilt on a particular offense by proof beyond a

24  reasonable doubt, you must find him not guilty.  The jurors

25  must be unanimous in their verdict.  The jurors must decide

1    the facts based on legal rules that they must follow even if

2    they disagree with those reel rules.  Mr. Malcolm has no

3    obligation to testify or provide any evidence at all.  The

4    government has the sole burden in the case.  Do any of you

5    have any difficulty applying those rules?  Okay.

6            Those who just joined us, do you think you know

7    anything about this case or have any connection to people at

8    the counsel table or the names or places on the list?  Again

9    for the people who just joined us, anything about the nature

10   of the charges that makes you think it would be difficult to

11   be fair?

12           Let's move on to all of the jurors I called by name.

13   Do any of you have any experiences working in a 24 hour

14   convenience store, grocery, pharmacy, 7-Eleven, Rite Aid, CVS,

15   Duane Reade, those kind of places or any other customer facing

16   job?

17           Mr. Haque?

18           THE PROSPECTIVE JUROR:  I did work at a 24 hour

19   YMCA.

20           THE COURT:  In that role did you have any experience

21   either with training for a robbery or robbery itself?

22           THE PROSPECTIVE JUROR:  Yes and no.

23           THE COURT:  Tell me about it.

24           THE PROSPECTIVE JUROR:  It was a 24 hour residence

25   and there was a police precinct across the street, we were

70

1   instructed on protocols how to handle if anybody attempted to

2   rob.  This was this college, a long time ago, no cellphones,

3   no computers and we did have a couple of incidents that I did

4   have to report to the precinct.

5           THE COURT:  A couple of questions on that.  As you

6   said it's a long time ago, circumstances change.  I don't know

7   what the proof will be here.  But I think one thing to avoid

8   is you have to use your common sense of course and your

9   history.  Everybody is entitled to do that.  You have to judge

10   the case on the evidence here and not -- the issue is not how

11   the proof stacks up against what people might have done in

12   different organizations.  You judge every witness based on

13   what they tell you, how credible it seems to you.  But nobody

14   is required to meet the training that you receive.  Do you

15   have any difficulty judging evidence about how people were

16   trained or what they did based on what they say here and on

17   what others say here and what you learned before?

18           THE PROSPECTIVE JUROR:  It's hard to separate your

19   personal experiences from any present situation.

20           THE COURT:  You are not required to put aside your

21   personal experience.  You know about what you know.  What

22   we're trying to avoid is in the jury room, during

23   deliberations, saying that's not credible because that's not

24   what we are trained to do in that situation.  They may have

25   received different training.  So you don't know.  If somebody

1  else comes on the witness stand and says here is what the

2  training is or should be and you don't believe it, that's one

3  thing.  The parties have a right to know what training is

4  being discussed.  So unless you are a witness you couldn't

5  bring that to the table in the jury.  Do you understand?

6          THE PROSPECTIVE JUROR:  I think so.

7          THE COURT:  Do you have any difficulty now?

8          THE PROSPECTIVE JUROR:  In terms of judging the

9  training that the person received?

10         THE COURT:  Would you have difficulty deciding it if

11  you hear about what training they received and would you have

12  difficulty being fair and not saying I'm an expert in this,

13  fellow jurors, I Know better?  Would that be difficult for

14  you?

15         THE PROSPECTIVE JUROR:  I don't think so.

16         THE COURT:  Anybody else?  Ms. Ferraro?

17         THE PROSPECTIVE JUROR:  My family is in the

18  drugstore business.

19         THE COURT:  Would that affect your ability to be

20  fair?

21         THE PROSPECTIVE JUROR:  I think it would.

22         THE COURT:  Congratulations.  You found a way out.

23  We'll send you back down to see if there's another trial

24  you'll be better able to serve on.

25             Let's have in that same seat Wei Zhang, please.  Did

72

1   I skip somebody?

2          THE CLERK:  No, your Honor.

3          THE COURT: Mr. Zhang, do you have any scheduling

4   issues?

5          THE PROSPECTIVE JUROR: No.

6          THE COURT:  Any difficulty giving him a fair trial

7   and serving on this jury?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Have you studied law or worked in a law

10  office?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT: Would you have difficulty accepting the

13  rules that I described already for a criminal case?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Do you know anything about this case?

16         THE PROSPECTIVE JUROR:  No.

17         THE COURT:  Do you have any connection with the

18  folks or places on the list?

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  And is there anything about the nature

21  of the crimes that would make it difficult for you to be fair?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Do you have any experience working in a

24  24 hour store or customer facing role?

25         THE PROSPECTIVE JUROR:  I worked at a UPS store

1    years ago.

2            THE COURT:  Did you receive any training in

3    robberies or experience yourself?

4            THE PROSPECTIVE JUROR:  No.

5            THE COURT:  Anybody else have training in what to do

6    in the event of a robbery or experience with that?  You're Ms?

7            THE PROSPECTIVE JUROR:  Whelan.

8            THE COURT:  Whelan.

9            THE PROSPECTIVE JUROR:  I just remembered.  When I

10   was young a long time ago I was held up.

11           THE COURT:  Would that affect your ability to be

12   fair here?

13           THE PROSPECTIVE JUROR:  I don't think so.

14           THE COURT:  Anybody else before I move own from that

15   question?

16           Now, this will get back to some responses I've heard

17   in connection with law enforcement, which is a separate topic

18   I'll get to in a few moments.  Right now I want to focus your

19   attention on witnesses.  During the course of the trial you'll

20   hear from any number of witnesses.  They'll have different

21   backgrounds, different jobs.  They are all equal in the eyes

22   of the law and you have to judge the credibility of each

23   witness based on what they tell you and how credible it seems

24   but not based on assumptions about who they are or what they

25   do.  So you listen, you hear what they have to say, you

74

1  shouldn't say, oh, this person has this background so I do or

2  don't believe them.  That's the goal.  As a general matter do

3  any of you think that would be difficult for you?  As a

4  specific example, do any of you think that you would find it

5  difficult being completely fair listening to the testimony

6  from a law enforcement officer?  You are thinking they are

7  more likely to be telling the truth or more likely not to be

8  telling the truth than other witnesses?

9          Along the same lines, I'm told that some of the

10  witnesses will testify not to facts, like the other witnesses,

11  but instead they will tell you their opinions based on their

12  expertise in analyzing firearms or ballistics or DNA evidence.

13  Now, jurors are allowed to consider that kind of opinion

14  testimony.  Judge Vitaliano will give you instructions about

15  how to evaluate it if you are selected for the jury.  What I

16  want to find out now if there's anybody who feels they could

17  not be fair and impartial in considering as we call it expert

18  testimony.  It may be about expert testimony in general or you

19  may have views about expert testimony in firearms or

20  ballistics or DNA evidence.  Anybody think they would have

21  trouble judging that fairly?

22          Do any of you have any connection either yourself or

23  family member or close friend with anyone on the staff of the

24  United States Attorney's Office for the Eastern District of

25  New York?  How about any connection, same thing, family

75

1   member, yourself or family member or close fried, any

2   connection with somebody who works for the Bureau of Alcohol,

3   Tobacco and Firearms and Explosives, ATF or the police

4   department?  Ms.  Giordano?

5           THE PROSPECTIVE JUROR:  I have a close friend that

6   works for ATF.  He's an attorney for them.

7           THE COURT:  Would that lead you to favor one side or

8   another in this particular case?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  ATF has a role in this?

11          MR. SELDEN:  That's correct.

12          THE COURT: I'll have a more general question about

13  law enforcement in a moment.  Anyone else connection with ATF?

14          THE PROSPECTIVE JUROR:  NYPD and my husband, was

15  back in the 80's.

16          THE COURT:  Would that affect your ability to be

17  fair and impartial?

18          THE PROSPECTIVE JUROR: No.

19          THE COURT: Anyone in connection with the ATF?

20          Ms. Vance Burke?

21          THE PROSPECTIVE JUROR:  Multiple close friends who

22  are retired police officers.

23          THE COURT: Yes.

24          THE PROSPECTIVE JUROR:  I'm not sure.  Can I?

25          THE COURT:  Come on up.

1          (Sidebar.)

2          THE COURT:  Yes, sir.

3          THE PROSPECTIVE JUROR:  I have multiple close

4    friends who are retired police officers.  That's one side.

5    February 28, 2011 I was arrested.  All the charges were

6    dropped because the police lied during the testimony of the

7    activities that occurred:  So this is where I am.  I mean so I

8    would try my best to be fair.  I do have -- because I do have

9    very close friends who are police officers, the same situation

10   with NYPD I was treated unfairly, the charges were dropped and

11   I brought a lawsuit against the NYPD.  That's where I am.  Not

12   something I want to broadcast.

13         THE COURT:  I'm sorry to put you in this position.

14         THE PROSPECTIVE JUROR:  I'm trying to be as fair as

15   possible.

16         THE COURT:  I can see you are giving it a lot of

17   thought and I appreciate it.  What strikes me from what you

18   are telling me you have experienced good and bad, honest and

19   dishonest from law enforcement?

20         THE PROSPECTIVE JUROR:  Exactly.

21         THE COURT:  I could certainly see somebody checking

22   themselves out from the system entirely based on that.  I can

23   see others whose reaction is each case is different and I

24   don't know what I'm going to hear until I hear it.  I accept

25   whatever choice you make.  We need to know if you think you

1    come into this case being fair to both sides or giving one

2    side an advantage?

3              THE PROSPECTIVE JUROR:  I would try my best to judge

4    it on the what's presented.  I feel since I'm in this position

5    I wanted to be completely honest and I didn't necessarily want

6    to publicize everything.

7              THE COURT:  I totally appreciate that and respect

8    it.  From what I can tell you are doing your best to be fair

9    and I have no reason to doubt it.

10             THE PROSPECTIVE JUROR:  Thank you.

11             THE COURT:  Have a seat.

12             (In open court.)

13             THE COURT:  Did I miss anybody who has a connection

14   with the U.S. Attorney?

15             THE PROSPECTIVE JUROR:  My husband is a retired

16   policeman.

17             THE COURT:  Would that affect your ability to be

18   fair in this case do you think?

19             THE PROSPECTIVE JUROR:  I don't think so.

20             MR. STEIN:  Can we have her name?

21             THE COURT:  Ms. Whelen.

22             Is that right?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Mr. Wilson?

25             THE PROSPECTIVE JUROR:  I have family members and

1  close friends in the NYPD.

2          THE COURT:  Would that affect your ability to be

3  fair?

4          THE PROSPECTIVE JUROR:  I don't think so.

5          THE COURT:  Anybody else.  Ms. Marks?

6          THE PROSPECTIVE JUROR:  My brother just took the

7  NYPD exam.

8          THE COURT:  Would that affect your ability to be

9  fair do you think?

10         THE PROSPECTIVE JUROR:  No.

11         THE COURT:  All right.  More broadly, do any of you

12 personally, family members or close friends, have any

13 connection to law enforcement?  Considered broadly, any law

14 enforcement agency, federal, state or local, prosecutor,

15 correction officers, court officers, if you have somebody

16 close to you who has a role in enforcing the law, let's make

17 sure we find out about it.  Ms. Brown?

18         THE PROSPECTIVE JUROR:  My brother-in-law is a

19 retired correction officer and my best friend is a correction

20 officer.

21         THE COURT:  Do you think that would have any effect

22 on your being fair?

23         THE PROSPECTIVE JUROR:  No, your Honor.  My husband

24 worked in Duane Reade for about ten years and he was a manager

25 of the store and it did get robbed once.

79

1          THE COURT:  Do you think that would affect your

2    ability to be fair in this case?

3          THE PROSPECTIVE JUROR:  I just wanted to mention it.

4          THE COURT:  Mr. Hernandez?

5          THE PROSPECTIVE JUROR:  My brother is a retired

6    corrections officer.

7          THE COURT:  Would that affect your ability to be

8    fair?

9          THE PROSPECTIVE JUROR:  No.

10          THE COURT:  Mr.  Dunford.

11          THE PROSPECTIVE JUROR:  My brother-in-law is a cop

12    in Connecticut.

13          THE COURT:  Would that affect your ability to be

14    fair do you think?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Did I miss anybody else on that?

17    Mr. Claro.

18          THE PROSPECTIVE JUROR:  My brother-in-law is a

19    police officer.  My cousin works for the Supreme Court as a

20    clerk.

21          THE COURT:  Do you think either of those

22    relationships would have any effect on your ability to be

23    fair?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  Anyone else that I missed?

1        Have any ever you or a family member or close friend

2   ever been involved in litigation in any way?  That could be in

3   a civil case or criminal case, as a plaintiff, as a defendant,

4   as a witness, as somebody who was subpoenaed, investigated, in

5   any way?  Any connection like that?  If you already mentioned

6   it to me in one of your previous answers you don't have to go

7   back to it. Any that I have not heard about yet, Mr. Claro?

8        THE PROSPECTIVE JUROR:  My girlfriend's brother is

9   an attorney for New York City.

10       THE COURT:  I'm not trying to get at attorneys so

11  much.  I want to know people who have themselves any kind of

12  stake in litigation for themselves as a party, as a witness,

13  as a participants.  Mr. Caccavo?

14       THE PROSPECTIVE JUROR:  I was subpoenaed to be

15  before a grand jury.

16       THE COURT:  Would that have any affect on your

17  ability to be fair?

18       THE PROSPECTIVE JUROR:  No.

19       THE COURT:  Mr. Beckman?

20       THE PROSPECTIVE JUROR:  I broke my leg one time.

21       THE COURT:  Is there anything about that experience

22  that would affect your ability to be fair in a different case?

23       THE PROSPECTIVE JUROR:  No.

24       THE COURT:  Civil cases sometimes people have

25  experiences going through litigation that just gives them

1   views about litigation or courts in general.  I wanted to make

2   sure I address that.  Anybody else?  Ms. Ray?

3           THE PROSPECTIVE JUROR:  My brother is an

4   investigator.

5           THE COURT:  Would that experience affect your

6   ability to be fair in a case where the government is

7   represented here?

8           THE PROSPECTIVE JUROR:  No.

9           THE COURT:  Anybody else?  Whether or not there was

10   any kind of litigation, do any of you have any kind of

11   experience with a crime yourself, again family member or close

12   friend as well, whether as the victim of a crime, somebody who

13   has been accused of a crime or investigated, someone who was a

14   participant in a criminal investigation in some way, even if

15   there wasn't a case.  Something that you have told plea about

16   you don't have to tell me again. Something we have not covered

17   yet.

18           Mrs. Knoch?

19           THE PROSPECTIVE JUROR:  My parents had their

20   identity stolen by our live-in home care aide.

21           THE COURT:  Would that affect your ability to be

22   fair in this case?

23           THE PROSPECTIVE JUROR:  No.

24           THE COURT:  Ms.  Williams?

25           THE PROSPECTIVE JUROR:  My husband was convicted of

1  a charge and he did fifteen years.

2          THE COURT:  Would anything about that experience --

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Would it affect your ability to be fair

5  at all?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Anyone else?

8          Last general question for all of you.  I'll be

9  passing around a microphone to ask you folks individual

10  questions about yourselves.  Last general question to the

11  group.  I have asked you a lot of different things this

12  morning.  I cannot think of everything that might affect your

13  ability to be fair.  I don't want that to stand in the way of

14  you letting us know if there's something that you think we

15  should.  Just take a moment and reflect on it.  Is there

16  anything, whether I have asked about it or not?  If I didn't,

17  forgot to mention it earlier that's fine.  If there's anything

18  at all that you have not discussed with me that you think

19  would have any effect on you've ability to be fair and

20  completely impartial to both sides in this case?  If so,

21  please, raise your hand.

22          Okay.

23          So here is what we're going to do next.  This is

24  going to take us a little while.  I want to spend a couple of

25  moments with each of you.  We'll pass around the microphone.

83

1   I'm going to ask you several questions.  Let me tell you what

2   I am looking for and what I am not.  I'll ask you where you

3   live.  I don't need your address.  I want to know what town or

4   neighborhood you are in now and also going back ten years,

5   tell me that as well.  Things you do for work, what do you do

6   now.  You don't have to tell me the precise company.  I want

7   to know what kind of work you do, who you do it for, your own

8   company, someone else.  Again going back ten years, what else

9   you have done.  I'll ask you how far you have gone in school.

10  I'll ask you about family that you live with and some people

11  live with people who are not family.  Who are the adults that

12  you share a home with?  What do they do for work?  If you have

13  children, whether they live with you or not.  Please tell me

14  how many you have, their ages, what they are doing for work.

15  I'll ask you about any hobbies, interests you like to pursue

16  in your free time, if you belong to any organizations, civic,

17  church, social, political, whatever it is, let us know the

18  organizations that you devote your time to, if you have a

19  leadership role in that.  I'll also ask you about any prior

20  jury service, federal or state, civil or criminal, grand jury

21  as well.  I'll ask about all those things.

22          The one thing I won't ask you about, if you have

23  been on a jury, what your verdict was.  I want to know if you

24  reached a verdict.  I don't want to know what the verdict was

25  because that wouldn't tell us anything useful at all.  You

84

1    don't need to tell us that.  Let's start with Mr. Diaz.  Tell

2    us where you live, please.

3              THE PROSPECTIVE JUROR:  Massapequa Park, New York,

4    Nassau County.

5              THE COURT:  How long have you been there?

6              THE PROSPECTIVE JUROR:  Ten years.

7              THE COURT:  What do you do for work?

8              THE PROSPECTIVE JUROR:  Long Island Rail Road.

9              THE COURT:  What do you do for them?

10             THE PROSPECTIVE JUROR:  Ticket sales.

11             THE COURT:  How long have you been doing that?

12             THE PROSPECTIVE JUROR:  20 plus years.

13             THE COURT:  How far did you go in school?

14             THE PROSPECTIVE JUROR:  Associate's, business.

15             THE COURT:  Do you have family or friends that you

16   live with?

17             THE PROSPECTIVE JUROR:  My wife.

18             THE COURT:  Who does she do for work?

19             THE PROSPECTIVE JUROR:  She works for the railroad

20   as well.

21             THE COURT:  Doing what?

22             THE PROSPECTIVE JUROR:  Strategic investments.

23             THE COURT:  Do you have any children?

24             THE PROSPECTIVE JUROR:  I have one.

25             THE COURT:  Tell us about your child.

85

1          THE PROSPECTIVE JUROR: He's 28 years old.

2          THE COURT:  What does he do for work?

3          THE PROSPECTIVE JUROR:  He works in the hospital.

4          THE COURT:  A physician, a nurse?

5          THE PROSPECTIVE JUROR:  Central sterile they call

6    it.

7          THE COURT:  Is that a support staff role?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Do you have hobbies or interests that

10   you like to pursue?

11         THE PROSPECTIVE JUROR:  Just the gym.  That's about

12   it.

13         THE COURT:  Do you belong to any organizations?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Have you served on a jury before?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Tell us about that.

18         THE PROSPECTIVE JUROR:  Mineola, I don't remember if

19   it was federal.

20         THE COURT:  Probably state court.  What kind of case

21   was it?

22         THE PROSPECTIVE JUROR:  What would I call it?

23         THE COURT:  Was it a crime?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  And do you remember what the crime was?

86

1    You don't have to come up with precise names.  Generally what

2    it was about?

3              THE PROSPECTIVE JUROR:  Just perversions.

4              THE COURT:  Did you deliberate with your fellow

5    jurors and reach a verdict?

6              THE PROSPECTIVE JUROR:  Yes, I did.

7              THE COURT:  Anything about that experience that

8    would affect your ability to be fair here?

9              THE PROSPECTIVE JUROR: No.

10             THE COURT:  If you are selected for the jury, as a

11   juror, would you keep an open mind, listen to all of the

12   evidence and give us a fair verdict?

13             THE PROSPECTIVE JUROR:  Absolutely.

14             THE COURT:  Pass the microphone to Ms. Rudolph. Good

15   morning.  Sorry.  Good afternoon.  Tell us where you live.

16             THE PROSPECTIVE JUROR:  In Kew Garden Hills.

17             THE COURT:  How long have you been there?

18             THE PROSPECTIVE JUROR:  Fifteen years.

19             THE COURT:  What do you do for work?

20             THE PROSPECTIVE JUROR:  I work in a bank.

21             THE COURT:  Doing what?

22             THE PROSPECTIVE JUROR:  Bank teller.

23             THE COURT:  How long have you been doing that?

24             THE PROSPECTIVE JUROR:  20 years.

25             THE COURT:  How far did you go in school?

87

1          THE PROSPECTIVE JUROR:  Associate's.

2          THE COURT:  In what subject.

3          THE PROSPECTIVE JUROR:  Accounting.

4          THE COURT:  Do you have family or friends that you

5  live with?

6          THE PROSPECTIVE JUROR:  My husband.

7          THE COURT:  What does he do for work?

8          THE PROSPECTIVE JUROR:  He's an accountant.

9          THE COURT:  Do you have any children?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  Do you have hobbies or interests?

12          THE PROSPECTIVE JUROR:  Yes.  I like to play tennis,

13  swimming, shopping.

14          THE COURT:  Do you belong to any organizations?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Have you served on a jury before?

17          THE PROSPECTIVE JUROR: Yes.  Grand jury, eight years

18  ago, for six months.

19          THE COURT:  As I'm sure you understand, a grand jury

20  has a very different role in our system.  They consider

21  evidence just from one side and that evidence may or may not

22  later come up at trial.  It's basically deciding if there's

23  enough to move on to a trial.  Very different than what I

24  explained earlier.  In a jury trial the government has to meet

25  a higher standard of proof and both sides participate.  Would

1    you have any difficulty adapting to the standard at a jury

2    trial?

3               THE PROSPECTIVE JUROR: No.

4               THE COURT:  Anything about your experience on the

5    grand jury that would affect your ability to be fair here?

6               THE PROSPECTIVE JUROR:  No.

7               THE COURT:  And if you are selected as a juror will

8    you keep an open mind and listen to all the evidence and give

9    us a fair verdict?

10              THE PROSPECTIVE JUROR:  Yes.

11              THE COURT:  Pass the microphone on next to

12   Ms. Harriott.

13              Tell us where you live.

14              THE PROSPECTIVE JUROR:  Ozone Park for 25 years.

15              THE COURT:  What do you do for work?

16              THE PROSPECTIVE JUROR:  A legal secretary.

17              THE COURT:  How long have you been at your position?

18              THE PROSPECTIVE JUROR:  At this firm a year.  I have

19   been a legal secretary 30 years.

20              THE COURT:  How far did you go in school?

21              THE PROSPECTIVE JUROR:  Associate's.

22              THE COURT:  In what?

23              THE PROSPECTIVE JUROR:  Computer science.

24              THE COURT:  Do you have friends or family that you

25   live with?

1          THE PROSPECTIVE JUROR:  Two elderly parents that
2    live with me.
3          THE COURT:  What do they?
4          THE PROSPECTIVE JUROR:  They are retired.
5          THE COURT:  From doing what?
6          THE PROSPECTIVE JUROR:  My father was in insurance
7    and my mother was a homemaker.
8          THE COURT:  Do you have any children?
9          THE PROSPECTIVE JUROR:  Two sons.  They are out of
10   home.
11         THE COURT:  What do they do?
12         THE PROSPECTIVE JUROR:  One is a mortgage broker and
13   the other one is a still trying to figure it out.
14         THE COURT:  Do you have hobbies or interests that
15   you like to pursue?
16         THE PROSPECTIVE JUROR:  Just I like to bowl.
17         THE COURT:  Do you belong to any organizations?
18         THE PROSPECTIVE JUROR:  No.
19         THE COURT:  Have you served on a jury before?
20         THE PROSPECTIVE JUROR:  Yes.  I believe it was 2005.
21   The last couple of times I was called but my number never came
22   up.
23         THE COURT:  In 2005 you were on a jury?
24         THE PROSPECTIVE JUROR:  Yes.  It was a criminal
25   case.

1        THE COURT:  Do you remember what the crime was?

2        THE PROSPECTIVE JUROR:  A battery.

3        THE COURT:  Did you deliberate with your fellow

4   jurors and reach a verdict?

5        THE PROSPECTIVE JUROR: Yes.

6        THE COURT:  Anything about that experience that

7   would affect your ability to be fair here?

8        THE PROSPECTIVE JUROR:  Not at all.

9        THE COURT:  If you are selected as a juror in this

10  case would you keep an open mind and give us a fair verdict?

11       THE PROSPECTIVE JUROR:  Yes.

12       THE COURT:  Mr. Figuieredo, where do you live,

13  please?

14       THE PROSPECTIVE JUROR:  Bed Stuy, Brooklyn.

15       THE COURT:  How long have you been there?

16       THE PROSPECTIVE JUROR: Three years.

17       THE COURT:  Going back ten years, where else did you

18  live?

19       THE PROSPECTIVE JUROR:  Greenpoint, Brooklyn and

20  Sunset Park.

21       THE COURT:  And what do you do for work?

22       THE PROSPECTIVE JUROR:  I work for a production

23  company.

24       THE COURT:  How long have you been doing that?

25       THE PROSPECTIVE JUROR:  Eight years.

1          THE COURT:  And anything else that you have been
2    doing in the last ten years?
3          THE PROSPECTIVE JUROR:  Workwise, not really.
4          THE COURT:  How far did you go in school?
5          THE PROSPECTIVE JUROR:  Bachelors.
6          THE COURT:  In what subject?
7          THE PROSPECTIVE JUROR:  Cinema studies.
8          THE COURT:  Do you have family or friends that you
9    live with?
10         THE PROSPECTIVE JUROR:  I live with my wife and two
11   children.
12         THE COURT:  What does your wife do for work?
13         THE PROSPECTIVE JUROR:  She is a therapist.
14         THE COURT:  How old are your children?
15         THE PROSPECTIVE JUROR:  The boy is one and the girl
16   two.
17         THE COURT:  You don't get any sleep.  I understand.
18   Would you be able to stay up and pay attention?
19         THE PROSPECTIVE JUROR:  Yes.
20         THE COURT:  Do you have hobbies that you like to
21   pursue?
22         THE PROSPECTIVE JUROR:  I play soccer and watch
23   movies and do film making personal projects.
24         THE COURT:  Do you belong to any organizations?
25         THE PROSPECTIVE JUROR:  No.

92

1          THE COURT:  Have you served on a jury before?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  If you are selected for this case, will

4    you keep an open mind and listen to all he the evidence and

5    give us a fair verdict?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Pass the microphone to Ms. Vance Burke.

8    Where do you live?

9          THE PROSPECTIVE JUROR: Beachhurst, Queens.

10         THE COURT:  How long have you been there?

11         THE PROSPECTIVE JUROR:  21 years.

12         THE COURT:  What do you do for work?

13         THE PROSPECTIVE JUROR:  New York City Department of

14   Education.

15         THE COURT:  What's your role there?

16         THE PROSPECTIVE JUROR:  Teaching assistant.

17         THE COURT:  How long have you lived there?

18         THE PROSPECTIVE JUROR:  Fourteen years.

19         THE COURT:  How far did you go in school?

20         THE PROSPECTIVE JUROR:  BA in English.

21         THE COURT:  Do you have family or friends that you

22   live with?

23         THE WITNESS:  My husband.

24         THE COURT:  What does he do for work?

25         THE PROSPECTIVE JUROR:  He's an attorney.

1            THE COURT:  You mentioned that earlier.  Do you have

2   any children?

3            THE PROSPECTIVE JUROR:  Yes.

4            THE COURT:  Tell us about them, please.

5            THE PROSPECTIVE JUROR:  I have two kids away at

6   college.

7            THE COURT:  Boys or girls, how old?

8            THE PROSPECTIVE JUROR:  They are twins; they are

9   sophomores.

10           THE COURT:  Do you have hobbies or interests you

11  like to pursue?

12           THE PROSPECTIVE JUROR:  Nothing in particular.

13           THE COURT:  Belong to any organizations?

14           THE PROSPECTIVE JUROR:  No.

15           THE COURT:  Give us a sense how you like to fill

16  your free time.

17           THE PROSPECTIVE JUROR:  I have a little time now

18  that the kids are away.  I was sick so I kind of been getting

19  back.

20           THE COURT:  We wish you a speedy recovery.  Do you

21  belong to any organizations?

22           THE PROSPECTIVE JUROR: No.

23           THE COURT:  Have you served on a jury before?

24           THE PROSPECTIVE JUROR:  No.

25           THE COURT:  If you are selected as a juror in this

1   case will you keep an open mind and listen to all the evidence

2   and give us a fair verdict?

3           THE PROSPECTIVE JUROR: Yes.

4           THE COURT:  Pass the microphone to Mr. Thomas.

5   Where you live?

6           THE PROSPECTIVE JUROR:  Flatbush, Brooklyn.

7           THE COURT:  How long have you lived there?

8           THE PROSPECTIVE JUROR:  33 years.

9           THE COURT:  What do you do for work?

10          THE PROSPECTIVE JUROR:  I'm a maintenance porter, 32

11  BJ union.

12          THE COURT:  How long have you been doing that?

13          THE PROSPECTIVE JUROR: Three years.

14          THE COURT:  Going back ten years what other kind of

15  work did you do?

16          THE PROSPECTIVE JUROR: Yellow cab driver.  I sold

17  cars for three years.

18          THE COURT:  How far did you go in school?

19          THE PROSPECTIVE JUROR:  Automotive trade school

20  certificate.

21          THE COURT:  Do you have family or friends that you

22  live with?

23          THE PROSPECTIVE JUROR: My mother and father and

24  brother.

25          THE COURT:  What do they do for work?

95

1          THE PROSPECTIVE JUROR:  My father is in boiler

2    operation and my brother doesn't work.

3          THE COURT:  Your mom?

4          THE PROSPECTIVE JUROR:  She's a housewife.

5          THE COURT:  Do you have any children of your own?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Do you have any hobbies?

8          THE PROSPECTIVE JUROR:  I like to travel.

9          THE COURT:  Do you belong to any organizations?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  Have you ever served on a jury before?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  If you are selected as a juror in this

14    case can you keep an open mind and listen to all the evidence

15    and give us a fair verdict?

16          THE PROSPECTIVE JUROR; yes.

17          THE COURT: Mr. Bashir, tell us where you liver?

18          THE PROSPECTIVE JUROR:  Kings County.

19          THE COURT:  How long have you been there?

20          THE PROSPECTIVE JUROR: Twelve years.

21          THE COURT:  What do you do for work?

22          THE PROSPECTIVE JUROR:  Director of operations for a

23    home automations company.

24          THE COURT:  How long have you been doing that?

25          THE PROSPECTIVE JUROR: Over 20 years.

96

1          THE COURT:  How far did you go in school?

2          THE PROSPECTIVE JUROR:  High school.

3          THE COURT:  Do you have family or friends that you

4    live with?

5          THE WITNESS:  My wife and two kids.

6          THE COURT:  What does your wife do for work?

7          THE PROSPECTIVE JUROR:  Homemaker.

8          THE COURT:  Your kids, boys or girls?

9          THE PROSPECTIVE JUROR: Boys, five and ten.

10          THE COURT:  No jobs yet?

11          THE PROSPECTIVE JUROR:  Not yet.  They are working

12   on it.

13          THE COURT:  Do you have hobbies or interests that

14   you like to pursue?

15          THE PROSPECTIVE JUROR:  More than I have time for.

16   I'm a historian; I do drone flying.  Do the two together when

17   I can.

18          THE COURT:  Do you belong to any organizations?

19          THE PROSPECTIVE JUROR: Boy Scouts of America.

20          THE COURT:  Have you had any kind of leadership role

21   there?

22          THE PROSPECTIVE JUROR:  Cub master, commissioner,

23   trainer.

24          THE COURT:  Have you served on jury before?

25          THE PROSPECTIVE JUROR:  No.

1      THE COURT:  If you are selected as a juror for this

2  case can you keep an open mind and listen to the evidence and

3  give us a fair verdict?

4      THE PROSPECTIVE JUROR:  Yes.

5      THE COURT:  Pass the microphone to Mr. Patrick.

6  Good afternoon.  Tell us where you live.

7      THE PROSPECTIVE JUROR:  Williamsburg, Brooklyn.

8      THE COURT:  How long have you been there?

9      THE PROSPECTIVE JUROR:  53 years.

10      THE COURT:  And what do you do for work?

11      THE PROSPECTIVE JUROR:  I teach training and

12  support, IT.

13      THE COURT:  For your own company?

14      THE PROSPECTIVE JUROR:  For the City of New York.

15      THE COURT:  How long have you been doing that?

16      THE PROSPECTIVE JUROR:  For the city for ten years

17  and overall about 25.

18      THE COURT:  How far did you go in school?

19      THE PROSPECTIVE JUROR:  Bachelors in English.  It

20  makes no sense to me either.

21      THE COURT:  Do you have family or friends that you

22  live with?

23      THE PROSPECTIVE JUROR:  My sister and I own a house

24  in Williamsburg.  Her and her family live upstairs.

25      THE COURT:  What does your wife do for work?

98

1          THE PROSPECTIVE JUROR:  No one really knows, some

2     sort of biostatistics.

3          THE COURT:  I have a brother in computer science and

4     I have no idea what he does either.  Do you have any children?

5          THE PROSPECTIVE JUROR:  I don't.

6          THE COURT:  Have you served on a jury before?

7          THE PROSPECTIVE JUROR: I have.

8          THE COURT:  What kind of case?

9          THE PROSPECTIVE JUROR: Burglary.

10         THE COURT: Was that state court?

11         THE PROSPECTIVE JUROR:  I assume so.

12         THE COURT:  Do you remember how long ago that was?

13         THE PROSPECTIVE JUROR:  About 20 years.

14         THE COURT:  Did you deliberate and reach verdict?

15         THE PROSPECTIVE JUROR:  I did.

16         THE COURT:  Was there anything about that experience

17    that would affect your ability to be fair?

18         THE PROSPECTIVE JUROR:  I don't believe so.

19         THE COURT:  If you are selected for this jury would

20    you keep an open mind and listen to all the evidence and give

21    us a fair verdict?

22         THE PROSPECTIVE JUROR:  To the best of my ability.

23         THE COURT:  Mr. Wilson, tell us where you live,

24    please.

25         THE PROSPECTIVE JUROR:  Levittown, New York.

99

1          THE COURT:  How long have you been there?

2          THE PROSPECTIVE JUROR:  22 years.

3          THE COURT:  What do you do for work?

4          THE PROSPECTIVE JUROR:  I'll an aide in a physical

5    therapy office.

6          THE COURT:  How long have you been doing that work?

7          THE PROSPECTIVE JUROR:  Six months.

8          THE COURT:  Going back ten years what else have you

9    done?

10          THE PROSPECTIVE JUROR:  Been in school, just got out

11   of college.

12          THE COURT:  How far did you go to in school?

13          THE PROSPECTIVE JUROR:  Bachelors in science.

14          THE COURT:  Do you have any family or friends that

15   you live with?

16          THE PROSPECTIVE JUROR: With my mom and dad.

17          THE COURT:  What do they do for work?

18          THE PROSPECTIVE JUROR: My father is an investment

19   banker and my mom is a bank teller.

20          THE COURT:  Do you have any children of your own?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Do you have any hobbies or interests

23   that you like to pursue?

24          THE PROSPECTIVE JUROR:  I like sports.

25          THE COURT:  Do you belong to any organizations?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Mr. Bashir, I forgot to ask you this

3   question.  Do you have any hobbies?

4          THE PROSPECTIVE JUROR:  I do.

5          THE COURT:  Tell us please.

6          THE PROSPECTIVE JUROR:  Gym and martial arts.

7          THE COURT:  Do you belong to any organizations?

8          THE PROSPECTIVE JUROR:  No organizations.

9          THE COURT:  Give the microphone back to Mr. Wilson.

10         Do you belong to any organizations?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  Have you served on a jury before.

13         THE PROSPECTIVE JUROR: No.

14         THE COURT:  If you are selected for this jury would

15   you keep an open mind and listen to all the evidence and give

16   us a fair verdict?

17         THE PROSPECTIVE JUROR: Yes.

18         THE COURT:  Pass the microphone to Mr. Honig.  Where

19   do you live?

20         THE PROSPECTIVE JUROR: Nassau County.

21         THE COURT:  What do you do for work?

22         THE PROSPECTIVE JUROR:  I'm a retired New York City

23   school teacher.

24         THE COURT: How long were you teaching?

25         THE PROSPECTIVE JUROR:  25 years.

1        THE COURT:  How far did you go to school yourself?

2        THE PROSPECTIVE JUROR:  Masters degree.

3        THE COURT:  In teaching or education?

4        THE PROSPECTIVE JUROR:  Yes.

5        THE COURT:  Do you have family or friends that you

6   live with?

7        THE PROSPECTIVE JUROR:  I live with my husband.

8        THE COURT:  What does he do?

9        THE PROSPECTIVE JUROR:  He's retired.  He was an

10  inventory clerk.

11        THE COURT:  Do you have any children?

12        THE PROSPECTIVE JUROR:  I do.

13        THE COURT:  Tell us about them.

14        THE PROSPECTIVE JUROR:  I have two sons.  One is an

15  English teacher the other one is an attorney and I have six

16  grandchildren.

17        THE COURT:  And do you have hobbies that you like to

18  pursue?

19        THE PROSPECTIVE JUROR:  I do.  I injured my knee

20  this weekend.  I can't do my hobbies.  I do Zumba, weight

21  training and I'm in a bowling league.

22        THE COURT:  That's on hold for now.  Do you belong

23  to any organizations?

24        THE PROSPECTIVE JUROR:  No.

25        THE COURT:  Have you served on a jury before?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  If you are selected for this jury will

3     you keep an open mind and listen to all the evidence and give

4     us a fair verdict?

5          THE PROSPECTIVE JUROR: Yes.

6          THE COURT:  Mr.  Bosco, tell us where you live,

7     please.

8          THE PROSPECTIVE JUROR:  Staten Island, New York.

9          THE COURT:  How long have you been there?

10         THE PROSPECTIVE JUROR:  Since I was two.

11         THE COURT:  Tell us what you do for work?

12         THE PROSPECTIVE JUROR:  I work for Yelp.com.

13         THE COURT:  What do you do.

14         THE PROSPECTIVE JUROR:  I am an account executive.

15         THE COURT:  Allowing have you been doing that.

16         THE PROSPECTIVE JUROR:  Two years.

17         THE COURT:  Going back ten years what else have you

18     done?

19         THE PROSPECTIVE JUROR:  Bar back, busboy, cleaner

20     for the Board of Education.  That's about it.  Stop and Shop.

21         THE COURT:  How far did you go in school?

22         THE PROSPECTIVE JUROR:  BA.

23         THE COURT:  In what?

24         THE PROSPECTIVE JUROR:  History.

25         THE COURT:  Do you have family or friends that you

1    live with?

2            THE PROSPECTIVE JUROR:  Yes, my mother, father,

3    sister.

4            THE COURT:  What do they do for work?

5            THE PROSPECTIVE JUROR:  My mother is a retired New

6    York City principal; my father is retired from ATF; my sister

7    is a New York City teacher currently.

8            THE COURT:  Do you have children?

9            THE PROSPECTIVE JUROR:  No.

10           THE COURT:  Do you have hobbies or interests that

11   you like to pursue?

12           THE PROSPECTIVE JUROR:  Yes.  I like to snow board.

13   I like to play softball.  I like to bowl.  Bunch of stuff.

14           THE COURT:  Do you belong to any organizations?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  Tell us about those?

17           THE PROSPECTIVE JUROR:  I have been a coach for the

18   Catholic Youth Organization.

19           THE COURT:  Have you served on a jury before?

20           THE PROSPECTIVE JUROR:  No.

21           THE COURT:  If you are selected as a juror in this

22   case, will you keep an open mind and listen to all the

23   evidence and give us a fair verdict?

24           THE PROSPECTIVE JUROR:  Definitely.

25           THE COURT:  Mr. Clara, tell us where you live,

1   please.

2           THE PROSPECTIVE JUROR:  Bay Ridge, Brooklyn.

3           THE COURT:  How long have you been there?

4           THE PROSPECTIVE JUROR: Eight years.

5           THE COURT:  Anywhere else in the last ten years?

6           THE PROSPECTIVE JUROR:  Marine Park where I grew up.

7           THE COURT:  What do you do for work?

8           THE PROSPECTIVE JUROR:  I work at a Japanese bank in

9   the city.  I'm a credit administrator.

10          THE COURT:  How long have you been doing that?

11          THE PROSPECTIVE JUROR: Since 2012.

12          THE COURT:  Anything else in the last ten years in

13  terms of work?

14          THE PROSPECTIVE JUROR:  I worked for American Lawyer

15  Media which is a magazine placing legal notices when companies

16  form LLP's and stuff like that.

17          (Continued on next page.)

18

19

20

21

22

23

24

25

```
                    Jury Selection                105
```

1   (continuing)
2           THE COURT:  And how far did you go in school?
3           THE PROSPECTIVE JUROR:  Bachelor's in English.
4           THE COURT:  Do you have family or friends that you
5   live with?
6           THE PROSPECTIVE JUROR:  My girlfriend.
7           THE COURT:  What does she do?
8           THE PROSPECTIVE JUROR:  She works in advertising.
9           THE COURT:  Do you have any children?
10          THE PROSPECTIVE JUROR:  No.
11          THE COURT:  Do you have hobbies or interests you
12  like to pursue?
13          THE PROSPECTIVE JUROR:  I'm a musician, play in a
14  band, drums.
15          THE COURT:  Do you belong to any organizations?
16          THE PROSPECTIVE JUROR:  No.
17          THE COURT:  Have you served on a jury before?
18          THE PROSPECTIVE JUROR:  No, sir.
19          THE COURT:  If you're selected for this jury, will
20  you keep an open as to all of the evidence and give us a fair
21  verdict?
22          THE PROSPECTIVE JUROR:  Yes.
23          THE COURT:  Pass the microphone to Mr. Hernandez in
24  the back row.
25          Good afternoon, sir.  Tell us where you live.

1          THE PROSPECTIVE JUROR:  Sunset Park.

2          THE COURT:  How long have you been in Sunset Park?

3          THE PROSPECTIVE JUROR:  Nine years.

4          THE COURT:  And where were you before that?

5          THE PROSPECTIVE JUROR:  Before that, I've been in

6   Mexico.

7          THE COURT:  What do you do for work?

8          THE PROSPECTIVE JUROR:  I paint houses and

9   apartments.

10         THE COURT:  How long have you been doing that.

11         THE PROSPECTIVE JUROR:  Past three years.

12         THE COURT:  Do you have your own business?

13         THE PROSPECTIVE JUROR:  Yeah, I do with my brother.

14         THE COURT:  I see.  Before you were doing that work,

15  going back ten years, what other kinds of work have you done?

16         THE PROSPECTIVE JUROR:  You are talking about work?

17         THE COURT:  Yes.

18         THE PROSPECTIVE JUROR:  I was a busboy and I do some

19  freelance work for development.

20         THE COURT:  And how far did you go in school?

21         THE PROSPECTIVE JUROR:  Associates's.

22         THE COURT:  What subject?

23         THE PROSPECTIVE JUROR:  Liberal arts.

24         THE COURT:  Do you have family or friends that you

25  live with?

1          THE PROSPECTIVE JUROR:  Yes, my mother, brother and

2     my sister.

3          THE COURT:  What do they do for work?

4          THE PROSPECTIVE JUROR:  My brother is construction

5     worker.  My mom, she is a babysitter and my sister clean

6     houses.

7          THE COURT:  Do you have any children of your own?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Do you have any hobbies or interests

10    that you like to do?

11         THE PROSPECTIVE JUROR:  Yeah, I like computers and I

12    play around with computers, stuff like that, and I play

13    soccer.

14         THE COURT:  Do you belong to any organizations?

15         THE PROSPECTIVE JUROR:  No.

16         THE COURT:  Have you served on a jury before?

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:  If you are selected for this jury, will

19    you keep an open mind and listen to all of the evidence and

20    give us a fair verdict?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Great.  If you can pass the microphone

23    on to Ms. Fletcher-Lewis.  Tell us where you live, please.

24         THE PROSPECTIVE JUROR:  Troy Avenue.

25         THE COURT:  What neighborhood is that?

1          THE PROSPECTIVE JUROR:  It's like Flatbush.

2          THE COURT:  Okay.  How long have you been there?

3          THE PROSPECTIVE JUROR:  Like 25 years.

4          THE COURT:  What do you do for work?

5          THE PROSPECTIVE JUROR:  I don't work.  I used to

6    woke for Maimonides, but I got injured on the job, so I'm on

7    compensation.

8          THE COURT:  I see.  And what did you do for

9    Maimonides?

10          THE PROSPECTIVE JUROR:  Patient-care technician.

11          THE COURT:  How long were you in that job?

12          THE PROSPECTIVE JUROR:  Like three -- four months.

13   After four months, I get my back injured and I was home until

14   now from '06.

15          THE COURT:  From '06?

16          THE PROSPECTIVE JUROR:  '06.

17          THE COURT:  How far did you go in school?

18          THE PROSPECTIVE JUROR:  High school in Barbados.

19          THE COURT:  Do you have family or friends that you

20   live with?

21          THE PROSPECTIVE JUROR:  My husband and my daughter.

22          THE COURT:  What do they do for work?

23          THE PROSPECTIVE JUROR:  My husband works for

24   Woodhull Hospital, assistant analyst, and my daughter is in

25   her first year college.

1          THE COURT:  And are there any other children --

2          THE PROSPECTIVE JUROR:  I have a son in Barbados.

3  He's a clerk for the transport board.

4          THE COURT:  Do you have hobbies or interests that

5  you like to pursue?

6          THE PROSPECTIVE JUROR:  I like traveling.

7          THE COURT:  Do you belong to any organizations?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Have you served on a jury before?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Tell me about that, please.  What kind

12 of case was it?

13         THE PROSPECTIVE JUROR:  It was a crime.

14         THE COURT:  Do you remember what crime?

15         THE PROSPECTIVE JUROR:  Someone shoot someone, a guy

16 shoot some other guy.

17         THE COURT:  Did you deliberate with the fellow

18 jurors and reach a verdict?

19         THE PROSPECTIVE JUROR:  Yes, I did.

20         THE COURT:  Anything about that experience that

21 would affect your ability to be fair?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  If you are selected for this case, will

24 you keep an open mind and listen to all of the evidence and

25 give us a fair verdict?

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Wonderful.  If you could please pass the

3    microphone on to Mr. Hammer.

4           Good afternoon, sir.  Tell us where you live,

5    please.

6           THE PROSPECTIVE JUROR:  South Richmond Hill.

7           THE COURT:  That's in Staten Island?

8           THE PROSPECTIVE JUROR:  South Richmond Hill in

9    Queens.

10          THE COURT:  How long have you lived there?

11          THE PROSPECTIVE JUROR:  About two years.

12          THE COURT:  And going back ten years, where else did

13   you --

14          THE PROSPECTIVE JUROR:  Forest Hills.

15          THE COURT:  And what do you do for work?

16          THE PROSPECTIVE JUROR:  Retired from the New York

17   City Housing Department.  I was there for about 36 years

18   total.

19          THE COURT:  What were you doing there?

20          THE PROSPECTIVE JUROR:  Involved in planning for

21   affordable housing development.

22          THE COURT:  And how far did you go in school?

23          THE PROSPECTIVE JUROR:  Master's degree in urban

24   planning.

25          THE COURT:  Do you have family or friends that you

1    live with?

2              THE PROSPECTIVE JUROR:  My wife.

3              THE COURT:  What does she do for work?

4              THE PROSPECTIVE JUROR:  Personal service.  She works

5    for family.  She does cooking and those kinds of things.

6              THE COURT:  Forgive me.  Do you have children?

7              THE PROSPECTIVE JUROR:  Two step kids.

8              THE COURT:  Are they grown and out of the house?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  What do they do?

11             THE PROSPECTIVE JUROR:  The son does computer work.

12   The daughter works for the State Court system.  She does

13   research.

14             THE COURT:  Do you have hobbies or interests that

15   you like to pursue?

16             THE PROSPECTIVE JUROR:  Sports, travel.

17             THE COURT:  Do you belong to any organizations?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  Have you served on a jury before?

20             THE PROSPECTIVE JUROR:  I did.

21             THE COURT:  Tell me what kind of case it was.

22             THE PROSPECTIVE JUROR:  Criminal case, Queens

23   County, about nine years ago and we did reach a verdict.

24             THE COURT:  Uh-hum.  I thought you were going to say

25   there was another one.

Jury Selection                                    112

1          THE PROSPECTIVE JUROR:  No, that was it.

2          THE COURT:  Was there anything about that experience

3    that would affect your ability to be fair?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  If you're selected as a juror in this

6    case, will you keep an open mind and listen to all of the

7    evidence and give us a fair verdict?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  All right.  Let's pass the microphone

10   next to Ms. Taylor.  Good afternoon.  Tell us where you live,

11   please.

12         THE PROSPECTIVE JUROR:  Prospect Heights.

13         THE COURT:  How long have you been there?

14         THE PROSPECTIVE JUROR:  Two years.

15         THE COURT:  And going back ten years, where else did

16   you live?

17         THE PROSPECTIVE JUROR:  Brooklyn Heights and the

18   Lower East Side.

19         THE COURT:  What do you do for work?

20         THE PROSPECTIVE JUROR:  I own an event marketing

21   company.

22         THE COURT:  How long have you been doing that?

23         THE PROSPECTIVE JUROR:  Ten years.

24         THE COURT:  And how far did you go in school?

25         THE PROSPECTIVE JUROR:  Bachelor in communications

```
                        Jury Selection                      113
```

1    and sociology.

2           THE COURT:  Do you have family or friends that you

3    live with?

4           THE PROSPECTIVE JUROR:  Just my husband.

5           THE COURT:  What does he do for work?

6           THE PROSPECTIVE JUROR:  He's a digital marketing

7    director at a non-profit.

8           THE COURT:  Do you have children?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  Do you have hobbies or interests that

11   you like to --

12          THE PROSPECTIVE JUROR:  Yes.  Travel, music and

13   theatre.

14          THE COURT:  Do you belong to any organizations?

15          THE PROSPECTIVE JUROR:  I do.  The Jackie Robinson

16   Foundation.

17          THE COURT:  Do you have any kind of leadership role

18   with them?

19          THE PROSPECTIVE JUROR:  I am the Northeast Regional

20   coordinator for the Alumni Association.

21          THE COURT:  Forgive me for not knowing, but what is

22   the mission of that organization?

23          THE PROSPECTIVE JUROR:  Sure.  It was founded by

24   Jackie Robinson's widow.  It is a scholarship program for

25   national college students and then we have very involved

1   alumni association.

2           THE COURT:  And have you served on an injury before?

3           THE PROSPECTIVE JUROR:  Yes.

4           THE COURT:  Tell me what kind of case.

5           THE PROSPECTIVE JUROR:  An assault case.

6           THE COURT:  How long about?

7           THE PROSPECTIVE JUROR:  About six or seven years

8   ago.

9           THE COURT:  Did you reach a verdict?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Anything about that experience that

12  would affect your ability to be fair?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  And if you're selected for this jury,

15  will you keep an open mind and listen to all of the evidence

16  and reach a fair verdict?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  If you could pass the microphone to Ms.

19  Williams.

20          THE PROSPECTIVE JUROR:  Hi.

21          THE COURT:  Tell us where you live, please.

22          THE PROSPECTIVE JUROR:  Jamaica, New York.

23          THE COURT:  How long have you been there?

24          THE PROSPECTIVE JUROR:  Almost 21 years.

25          THE COURT:  What do you do for work?

Jury Selection                                115

1          THE PROSPECTIVE JUROR:  I work for the New York City
2  Human Resources Administration.
3          THE COURT:  What do you do there?
4          THE PROSPECTIVE JUROR:  Right now, I'm there
5  personal liaison.
6          THE COURT:  And how long have you been working for
7  them?
8          THE PROSPECTIVE JUROR:  A lifetime.  37 years.
9          THE COURT:  And how far did you go in school?
10         THE PROSPECTIVE JUROR:  A Bachelor's in urban
11 studies.
12         THE COURT:  Do you have family or friends that you
13 live with?
14         THE PROSPECTIVE JUROR:  I do.  I live with my mom,
15 my husband, and my younger son, who is back and forth in
16 school, and I have three other older kids.
17         THE COURT:  What do the other adults in the home who
18 are working do and what does your husband do?
19         THE PROSPECTIVE JUROR:  OKAY.  My husband is
20 self-employed.  He does custom-made vertical blinds.  My mom
21 is retired.
22         My youngest son who is home is a college student at
23 Stony Brook.  He's home for this semester.  He's doing an
24 internship for a photography company.
25         My oldest son is a videographer who is now in

Jury Selection                           116

1    Vancouver.

2            I have a daughter who works for New York City

3    housing, and another daughter who works for a medical billing

4    company.

5            THE COURT:  Okay.  Do you have hobbies or interests

6    that you like to pursue?

7            THE PROSPECTIVE JUROR:  I want to retire.  That's

8    what's on my mind right now.

9            THE COURT:  How do you spend your time, if you have

10   any?

11           THE PROSPECTIVE JUROR:  Crocheting, relaxing.

12           THE COURT:  Do you belong to any organizations?

13           THE PROSPECTIVE JUROR:  No, I do not.

14           THE COURT:  Have you served on a jury before?

15           THE PROSPECTIVE JUROR:  I have.

16           THE COURT:  Tell me about that, please.

17           THE PROSPECTIVE JUROR:  I served on a grand jury for

18   28 days and then I also served on civil matter, I think it was

19   age discrimination.  After jury selection, they settled out of

20   court.

21           THE COURT:  And with respect to the grand jury, you

22   have heard me say earlier today how that's a very different

23   process.

24           THE PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Would you have any difficulty putting

1  aside that experience and following the rules for a jury

2  trial?

3              THE PROSPECTIVE JUROR:  No, not at all.

4              THE COURT:  Anything about either of the experiences

5  that you mentioned with juries, with either the grand jury or

6  the civil matter, that would affect your ability to be fair

7  here?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  And if you are selected for this jury,

10 will you keep an open mind and listen to all of the evidence

11 and give us a fair verdict?

12             THE PROSPECTIVE JUROR:  Absolutely.

13             THE COURT:  Pass the microphone on next to Ms.

14 Morris.

15             THE PROSPECTIVE JUROR:  Hi.

16             THE COURT:  Tell us where you live, please.

17             THE PROSPECTIVE JUROR:  Merrick, New York.

18             THE COURT:  How long have you been there?

19             THE PROSPECTIVE JUROR:  22 years.

20             THE COURT:  What do you do for work?

21             THE PROSPECTIVE JUROR:  I work at Make a Wish.  I'm

22 the wish assist coordinator.

23             THE COURT:  So you match --

24             THE PROSPECTIVE JUROR:  I plan and coordinate wishes

25 for children.

1           THE COURT:  Wonderful.  How long have you been doing

2    that?

3           THE PROSPECTIVE JUROR:  Six months.

4           THE COURT:  Going back ten years, what else have you

5    been doing?

6           THE PROSPECTIVE JUROR:  I graduated college in May.

7    I lived in Bloomington, Indiana.  I got my Bachelor's in human

8    development and family studies.

9           THE COURT:  And do you have family or friends that

10   you live with?

11          THE PROSPECTIVE JUROR:  Yeah.  I live with my

12   parents and younger brother.

13          THE COURT:  What do the adults, what do they do for

14   work?

15          THE PROSPECTIVE JUROR:  My dad works in sales for an

16   eyewear company.  My mom stays at home and sometimes babysits.

17   And my brother is a sophomore at Adelphi studying criminal

18   justice and he is a volunteer fireman.

19          THE COURT:  Do you have any children?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  Do you have any hobbies or interests

22   that you like to pursue?

23          THE PROSPECTIVE JUROR:  Spending time with family,

24   friends, traveling.

25          THE COURT:  Do you belong to any organizations?

1            THE PROSPECTIVE JUROR:  No.

2            THE COURT:  Have you served on a jury before?

3            THE PROSPECTIVE JUROR:  No.

4            THE COURT:  If you are selected for this jury, will

5    you keep an open mind and listen to all of the evidence and

6    give us a fair verdict?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  Pass the microphone next to the front

9    row.

10           Let me tell you, folks, where we are headed.  I

11   would normally try to give you a lunch break pretty soon, but

12   I'm hopeful that if we stick with it, we can get most of you

13   out the door and done with this case before we take a lunch

14   break.  So we're going to push through.  I hope that's okay

15   with you because that's what I plan to do.

16           Let's pass the microphone next to Ms. Marando.  If I

17   can trouble you to stand up because I can barely see you over

18   that podium.

19           Tell us where you live, please.

20           THE PROSPECTIVE JUROR:  Staten Island, New York.

21           THE COURT:  How long have you been there?

22           THE PROSPECTIVE JUROR:  18 years.

23           THE COURT:  What do you do for work?

24           THE PROSPECTIVE JUROR:  I'm a cook at a school.

25           THE COURT:  How long have you been doing that?

1          THE PROSPECTIVE JUROR:  About two years.

2          THE COURT:  Going back ten years, what other type of

3    work have you done?

4          THE PROSPECTIVE JUROR:  I was a stay-at-home mom.

5          THE COURT:  How far did you go in school?

6          THE PROSPECTIVE JUROR:  High school.

7          THE COURT:  Do you have family or friends that you

8    live with?

9          THE PROSPECTIVE JUROR:  My husband and two sons.

10          THE COURT:  What do they all do for work?

11          THE PROSPECTIVE JUROR:  My husband is retired from

12    construction and my son, one is in college and the other is a

13    manager in a pharmacy.

14          THE COURT:  Do you have hobbies or interests that

15    you like to pursue?

16          THE PROSPECTIVE JUROR:  Not much.  I have a book

17    club that I go to.

18          THE COURT:  Do you belong to any organizations?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Have you served on a jury before?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  If you are selected for this jury, will

23    you keep an open mind and listen to all of the evidence and

24    give us a fair verdict?

25          THE PROSPECTIVE JUROR:  Yes.

Jury Selection                                    121

1              THE COURT:  That's wonderful.

2              Pass the microphone to Mr. Ng.

3              Good afternoon, sir.  Tell us where you live,

4     please.

5              THE PROSPECTIVE JUROR:  Flushing, Queens.

6              THE COURT:  How long have you been in Flushing?

7              THE PROSPECTIVE JUROR:  All my life, 32 years.

8              THE COURT:  What do you do for work?

9              THE PROSPECTIVE JUROR:  I am a custodian for DOE.

10             THE COURT:  How long have you been doing that work?

11             THE PROSPECTIVE JUROR:  On and off for about 12

12    years.

13             THE COURT:  How far did you go in school?

14             THE PROSPECTIVE JUROR:  Bachelor's in sociology.

15             THE COURT:  Do you have family or friends that you

16    live with?

17             THE PROSPECTIVE JUROR:  My parents.

18             THE COURT:  What do they do for work?

19             THE PROSPECTIVE JUROR:  My father is handyman at the

20    same school and my mother is a school aide at another public

21    school.

22             THE COURT:  Do you have any children?

23             THE PROSPECTIVE JUROR:  No.

24             THE COURT:  Do you have hobbies or interests that

25    you like to pursue?

1          THE PROSPECTIVE JUROR:  I like to play basketball.

2          THE COURT:  Do you belong to any organizations?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Have you served on a jury before?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  If you are selected for this jury, will

7  you keep an open mind and listen to all of the evidence and

8  give us a fair verdict?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Thank you.  If you could pass the

11  microphone next to Ms. Cruz.  Good afternoon.  Tell us where

12  you live, please.

13          THE PROSPECTIVE JUROR:  Williamsburg, Brooklyn.

14          THE COURT:  How long have you been there?

15          THE PROSPECTIVE JUROR:  Ten years.

16          THE COURT:  What do you do for work?

17          THE PROSPECTIVE JUROR:  I'm an account manager for

18  an HVAC company, a management company.

19          THE COURT:  You did mention that quite a while ago.

20  How long have you been doing that?

21          THE PROSPECTIVE JUROR:  15 years.

22          THE COURT:  How far did you go in school?

23          THE PROSPECTIVE JUROR:  Bachelor's.

24          THE COURT:  What subject?

25          THE PROSPECTIVE JUROR:  Criminology.

Jury Selection                          123

1        THE COURT:  Do you have family or friends that you

2   live with?

3        THE PROSPECTIVE JUROR:  Yes.  My husband and my son.

4        THE COURT:  What do they do for work?

5        THE PROSPECTIVE JUROR:  My husband works for Local

6   3, electrician.  My son is four.  He is in pre-K.

7        THE COURT:  Do you have any hobbies or interests

8   that you like to pursue?

9        THE PROSPECTIVE JUROR:  I like to go to the gym.  I

10  like to watch basketball.

11       THE COURT:  Do you belong to any organizations?

12       THE PROSPECTIVE JUROR:  No.

13       THE COURT:  Have you served on a jury before?

14       THE PROSPECTIVE JUROR:  I did.

15       THE COURT:  Tell me about that, please.

16       THE PROSPECTIVE JUROR:  It was ten years ago in

17  Queens.  I think it was civil.

18       THE COURT:  Do you remember what the dispute was

19  about?

20       THE PROSPECTIVE JUROR:  An MTA bus driver hit

21  someone.

22       THE COURT:  I see.  Did you deliberate and reach a

23  verdict?

24       THE PROSPECTIVE JUROR:  Yes.

25       THE COURT:  Anything about that experience that

1    would affect your ability to be fair here?

2            THE PROSPECTIVE JUROR:  No.

3            THE COURT:  And if you're selected as a juror in

4    this case, will you keep an open mind, listen to all of the

5    evidence and give us a fair verdict?

6            THE PROSPECTIVE JUROR:  Yes.

7            THE COURT:  Wonderful.  Going to Ms.  Giordano.

8    Good afternoon, ma'am.  Tell us where you live, please.

9            THE PROSPECTIVE JUROR:  Cobble Hill, Brooklyn.

10           THE COURT:  How long have you been there?

11           THE PROSPECTIVE JUROR:  30 years.

12           THE COURT:  And what do you do for work?

13           THE PROSPECTIVE JUROR:  I underwrite insurance for

14   an insurance company.

15           THE COURT:  How long have you been doing that?

16           THE PROSPECTIVE JUROR:  About 25 years.

17           THE COURT:  How far did you go in school?

18           THE PROSPECTIVE JUROR:  I have a J.D.

19           THE COURT:  We talked about your legal studies

20   earlier.

21           THE PROSPECTIVE JUROR:  Uh-hum.

22           THE COURT:  Do you have family or friends that you

23   live with?

24           THE PROSPECTIVE JUROR:  I live with my husband.

25           THE COURT:  What does he do for work?

1          THE PROSPECTIVE JUROR:  He's an attorney.

2          THE COURT:  What kind of practice does he have?

3          THE PROSPECTIVE JUROR:  He has an insurance defense

4    firm.

5          THE COURT:  Do you have any children?

6          THE PROSPECTIVE JUROR:  Two children, freshman in

7    junior and college.

8          THE COURT:  Do you have hobbies or interests that

9    you like to pursue?

10          THE PROSPECTIVE JUROR:  Travel, reading.

11          THE COURT:  Do you belong to any organizations?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  Have you served on a jury before?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  If you are selected for this case, will

16    you keep an open mind, listen to all of the evidence and give

17    us a fair verdict?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Let's pass the microphone next to Ms.

20    Hague.  Good afternoon, ma'am.

21          THE PROSPECTIVE JUROR:  Good afternoon.

22          THE COURT:  Where do you live?

23          THE PROSPECTIVE JUROR:  Borough Park, Brooklyn.

24          THE COURT:  How long have you been there?

25          THE PROSPECTIVE JUROR:  About 12 years.

1           THE COURT:  And what do you do for work.

2           THE PROSPECTIVE JUROR:  I'm a biomedical research

3    internet for Weill Cornell Medicine.

4           THE COURT:  And for how long have you been doing

5    that?

6           THE PROSPECTIVE JUROR:  A year.

7           THE COURT:  Going back ten years, what else have you

8    been doing for work?

9           THE PROSPECTIVE JUROR:  Before I worked as a retail

10   customer associate.

11          THE COURT:  Okay.  And how far did you go in school?

12          THE PROSPECTIVE JUROR:  Recently a master's degree

13   candidate at Weill Cornell Medicine.

14          THE COURT:  And in what subject?

15          THE PROSPECTIVE JUROR:  Health infomatics.

16          THE COURT:  Do you have family or friends that you

17   live with?

18          THE PROSPECTIVE JUROR:  I live with my parents.

19          THE COURT:  What do they do for work?

20          THE PROSPECTIVE JUROR:  My mom is a housewife.  My

21   dad is a taxi driver.

22          THE COURT:  Do you have children of your own?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  Do you have hobbies or interests that

25   you like to pursue?

1          THE PROSPECTIVE JUROR:  Reading, shopping,

2    traveling.

3          THE COURT:  Do you belong to any organizations?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  Have you served on a jury before?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  If you are selected for this jury, will

8    you keep an open mind, listen to all of the evidence and reach

9    a fair verdict?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Wonderful.  Let's turn next to --

12         THE PROSPECTIVE JUROR:  Mr. Dunford.

13         THE COURT:  Thank you.  Mr. Dunford, tell us where

14   you live, please.

15         THE PROSPECTIVE JUROR:  I live in Jackson Heights,

16   Queens.

17         THE COURT:  How long have you been there?

18         THE PROSPECTIVE JUROR:  About 34 years.

19         THE COURT:  What do you do for work?

20         THE PROSPECTIVE JUROR:  Right now I'm unemployed,

21   but I used to do be an IT manager for a retail fashion

22   company.

23         THE COURT:  And going back ten years, what other

24   kinds of jobs have you had?

25         THE PROSPECTIVE JUROR:  Stock management.  Before

1   that, I worked for retail stores.

2           THE COURT:  How far did you go in school?

3           THE PROSPECTIVE JUROR:  I have about two years of

4   college, but I didn't finish.

5           THE COURT:  Did you have a major?

6           THE PROSPECTIVE JUROR:  I was doing film.

7           THE COURT:  Do you have family or friends that you

8   live with?

9           THE PROSPECTIVE JUROR:  Yeah.  I live with my parent

10  and my brother.

11          THE COURT:  What do they all do for work?

12          THE PROSPECTIVE JUROR:  My dad's an accountant.  My

13  mom is retired and she used to work at a dry cleaners and my

14  brother is a bartender.

15          THE COURT:  Do you have any children?

16          THE PROSPECTIVE JUROR:  No.

17          THE COURT:  Do you have any hobbies or interests

18  that you like to pursue?

19          THE PROSPECTIVE JUROR:  Computer games.

20          THE COURT:  Do you belong to any organizations?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Have you served on a jury before?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  If you are selected as a juror in this

25  case, will you keep an open mind, listen to all of the

1    evidence and reach a fair verdict?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  All right.  Let's pass the microphone on

4    next to Mr. Masch.

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Tell us where you live, please.

7              THE PROSPECTIVE JUROR:  Smithtown, Suffolk.

8              THE COURT:  How long have you been there?

9              THE PROSPECTIVE JUROR:  11 years.

10             THE COURT:  What do you do for work?

11             THE PROSPECTIVE JUROR:  IT security for a financial

12   company.

13             THE COURT:  And how long have you been doing that?

14             THE PROSPECTIVE JUROR:  About 20 years.

15             THE COURT:  And how far did you go in school?

16             THE PROSPECTIVE JUROR:  Associate's engineering.

17             THE COURT:  Do you have family or friends that you

18   live with?

19             THE PROSPECTIVE JUROR:  Yes.  A wife and two kids.

20             THE COURT:  What do they all do for work?

21             THE PROSPECTIVE JUROR:  My wife just started doing

22   substitute.

23             THE COURT:  Okay.  And your boys?

24             THE PROSPECTIVE JUROR:  They're 13 and 11.

25             THE COURT:  Do you have any hobbies or interests

1    that you like to pursue?

2              THE PROSPECTIVE JUROR:  Fishing, woodworking.

3              THE COURT:  Do you belong to any organizations?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Have you served on a jury before?

6              THE PROSPECTIVE JUROR:  Probably about 15 years ago.

7              THE COURT:  What kind of case was it?

8              THE PROSPECTIVE JUROR:  It was a car accident, but

9    they ended up reaching a settlement.

10             (Continued on following page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Continuing.)

2            THE COURT:  So you never are reached a verdict?

3            THE PROSPECTIVE JUROR:  Correct.

4            THE COURT:  If you are selected for this jury will

5    you keep an open mind, listen to all of the evidence, and give

6    us a fair verdict?

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  So let's pass the microphone on to

9    Ms. Ray.

10           Tell us where you live, please.

11           THE PROSPECTIVE JUROR:  I live in downtown Brooklyn.

12           THE COURT:  And how long have you been there?

13           THE PROSPECTIVE JUROR:  I've been there for two

14   years.

15           THE COURT:  And where else did you live?

16           THE PROSPECTIVE JUROR:  I was on the upper eastside,

17   and then part of that in Texas, in the Dallas area and

18   Lubbock.

19           THE COURT:  What do you do for work?

20           THE PROSPECTIVE JUROR:  I am a product manager for a

21   data platform for an underwriting company.

22           THE COURT:  How long have you been doing that work?

23           THE PROSPECTIVE JUROR:  I've been doing that for two

24   years, but being a product manager for a data engineering team

25   for seven for different start-ups.

1            THE COURT:  Any other jobs in the last ten years?

2            THE PROSPECTIVE JUROR:  I was in consulting right

3    out of school.

4            THE COURT:  Okay.  And how far did you go in school?

5            THE PROSPECTIVE JUROR:  I have a Bachelor's degree

6    in accounting.

7            THE COURT:  Do you have family or friends that you

8    live with?

9            THE PROSPECTIVE JUROR:  I live with my husband.

10           THE COURT:  What does he do for work?

11           THE PROSPECTIVE JUROR:  He is a software engineer.

12           THE COURT:  Do you have any children?

13           THE PROSPECTIVE JUROR:  No.

14           THE COURT:  Do you have hobbies or interests that

15   you like to pursue?

16           THE PROSPECTIVE JUROR:  Just television and work.

17           THE COURT:  And do you belong to any organizations?

18           THE PROSPECTIVE JUROR:  I am heavily involved in the

19   alumni association of my college.

20           THE COURT:  And have you had a leadership role with

21   that group?

22           THE PROSPECTIVE JUROR:  I am the vice president.

23           THE COURT:  Have you served on a jury before?

24           THE PROSPECTIVE JUROR:  Yes, I was an alternate

25   juror for a civil trial about two years ago.

Jury Selection                                    133

1          THE COURT:  Now, as an alternate, did you stay for
2    deliberations?
3          THE PROSPECTIVE JUROR:  I did not, I was dismissed.
4          THE COURT:  Anything about that experience that
5    would affect your ability to serve fairly here?
6          THE PROSPECTIVE JUROR:  No.
7          THE COURT:  And if you are selected for this trial
8    will you keep an open mind, listen to all of the evidence and
9    give us a fair verdict?
10         THE PROSPECTIVE JUROR:  Yes.
11         THE COURT:  Wonderful.  Pass the microphone on next
12   to Ms. Woods.
13         Good afternoon, ma'am.
14         THE PROSPECTIVE JUROR:  Good afternoon.
15         THE COURT:  Tell us where you live, please.
16         THE PROSPECTIVE JUROR:  I live in Jamaica, New York.
17         THE COURT:  How long have you been in Jamaica?
18         THE PROSPECTIVE JUROR:  Forty Years.
19         THE COURT:  What do you for work?
20         THE PROSPECTIVE JUROR:  I'm a letter carrier for the
21   United States Postal Service.
22         THE COURT:  How long have you been doing that?
23         THE PROSPECTIVE JUROR:  Twenty-two Years.
24         THE COURT:  How far did you go in school?
25         THE PROSPECTIVE JUROR:  High school, some college.

```
                       Jury Selection                  134
```

1           THE COURT:  Did you have a major in college?

2           THE PROSPECTIVE JUROR:  Yes, nursing.

3           THE COURT:  Do you family or friends that you live

4    with?

5           THE PROSPECTIVE JUROR:  Yes; my mom, my brother and

6    a son.

7           THE COURT:  And what do they all do for work?

8           THE PROSPECTIVE JUROR:  My mom is a homemaker.  My

9    brother is disabled.  And my son attends high school.

10          THE COURT:  Do you have hobbies or interests you

11   like to pursue?

12          THE PROSPECTIVE JUROR:  Cooking and gardening.

13          THE COURT:  Do you belong to any organizations?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  And have you served on a jury before?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Tell me about that, please.

18          THE PROSPECTIVE JUROR:  It was grand jury about

19   seven years ago maybe.

20          THE COURT:  Would you have any difficulty adapting

21   to the different rules for a trial jury?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  Okay.  Anything about your grand jury

24   experience that would affect your ability to be fair here?

25          THE PROSPECTIVE JUROR:  No.

1          THE COURT:  If you are selected for this jury, will

2     you keep an open mind, listen to all of the evidence, and give

3     us a fair verdict?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Wonderful.  If you can, please pass the

6     microphone to Mr. Sabine.

7          Good afternoon, sir.  Tell us where you live,

8     please.

9          THE PROSPECTIVE JUROR:  East Flatbush.

10         THE COURT:  How long have you been there?

11         THE PROSPECTIVE JUROR:  I didn't hear you.

12         THE COURT:  How long have you lived there?

13         THE PROSPECTIVE JUROR:  40 years, 40 years.

14         THE COURT:  And what do you do for work?

15         THE PROSPECTIVE JUROR:  Sanitation, New York City.

16         THE COURT:  You're trash collector?

17         THE PROSPECTIVE JUROR:  Huh?

18         THE COURT:  Are you a collector or something else?

19         THE PROSPECTIVE JUROR:  No, a collector.

20         THE COURT:  Oh, thank you.  How long have you been

21    doing that work?

22         THE PROSPECTIVE JUROR:  Twenty-three years.

23         THE COURT:  How far did you go in school?

24         THE PROSPECTIVE JUROR:  High school.

25         THE COURT:  Do you have family or friends that you

```
                    Jury Selection                    136
```

1    live with?

2            THE PROSPECTIVE JUROR:  Just my wife.

3            THE COURT:  And what does she do for work?

4            THE PROSPECTIVE JUROR:  She is a school aid.

5            THE COURT:  Do you have any children?

6            THE PROSPECTIVE JUROR:  No.

7            THE COURT:  Do you have hobbies or interests you

8    like to pursue?

9            THE PROSPECTIVE JUROR:  Some singing, music.

10           THE COURT:  Okay.  Do you belong --

11           THE PROSPECTIVE JUROR:  Used to play the drums.

12           THE COURT:  Do you belong to any organizations?

13           THE PROSPECTIVE JUROR:  Uh-uh, no.

14           THE COURT:  Have you served on a jury before?

15           THE PROSPECTIVE JUROR:  A long time ago.

16           THE COURT:  What do you remember about it?

17           THE PROSPECTIVE JUROR:  It was a criminal, and they

18   came to a verdict.

19           THE COURT:  And did you deliberate and reach the

20   verdict?

21           THE PROSPECTIVE JUROR:  Yes.

22           THE COURT:  Anything about that experience that

23   would affect your ability to be fair here?

24           THE PROSPECTIVE JUROR:  I don't think it should.

25           THE COURT:  Okay.  And if you are selected as a

1  juror, will you keep an open mind, listen to all of the

2  evidence, and give us a fair verdict?

3            THE PROSPECTIVE JUROR:  Uh-hum, yeah.

4            THE COURT:  So pass the microphone on next, please,

5  to Mr. Zarrella.

6            Good afternoon.  Tell us where you live, please.

7            THE PROSPECTIVE JUROR:  Staten Island.

8            THE COURT:  And how long have you been there?

9            THE PROSPECTIVE JUROR:  My whole life, 23 years.

10           THE COURT:  And what do you do for work?

11           THE PROSPECTIVE JUROR:  I'm an actuary.

12           THE COURT:  How long have you been doing that?

13           THE PROSPECTIVE JUROR:  Eight Months.

14           THE COURT:  Do you have your own practice or do you

15  work --

16           THE PROSPECTIVE JUROR:  No, I work for an analytics

17  company in Jersey City.

18           THE COURT:  Okay.  And going back ten years, what

19  other kind of work did you have?

20           THE PROSPECTIVE JUROR:  This is my first job out of

21  college.

22           THE COURT:  Okay.  And how far did you go in school?

23           THE PROSPECTIVE JUROR:  Bachelor's in math.

24           THE COURT:  Do you have family or friends that you

25  live with?

Jury Selection                               138

1        THE PROSPECTIVE JUROR:  My parents.

2        THE COURT:  What do they do work for?

3        THE PROSPECTIVE JUROR:  My dad's a retired

4   firefighter, and my mom's been a teacher for the DOE for 25

5   years.

6        THE COURT:  Do you have any children?

7        THE PROSPECTIVE JUROR:  No.

8        THE COURT:  Do you hobbies or interests you like to

9   pursue?

10       THE PROSPECTIVE JUROR:  Basketball, traveling.

11       THE COURT:  Do you belong to any organizations?

12       THE PROSPECTIVE JUROR:  No.

13       THE COURT:  Have you served on a jury before?

14       THE PROSPECTIVE JUROR:  No.

15       THE COURT:  If you are selected for this jury will

16  you keep an open mind, listen to all of the evidence, and give

17  us a fair verdict?

18       THE PROSPECTIVE JUROR:  Yes.

19       THE COURT:  Okay, pass the mic down next to Mr. Ng.

20       Good afternoon.  Tell us where you live, please.

21       THE PROSPECTIVE JUROR:  Queens, Howard Beach.

22       THE COURT:  How long have you been there?

23       THE PROSPECTIVE JUROR:  All my life.

24       THE COURT:  What do you do for work?

25       THE PROSPECTIVE JUROR:  I'm a paraprofessional for a

Jury Selection                              139

1    District 75 school.

2              THE COURT:  How long have you had that work?

3              THE PROSPECTIVE JUROR:  Five Years.

4              THE COURT:  What else have you done over the last

5    ten years?

6              THE PROSPECTIVE JUROR:  I was a lifeguard for a gym.

7              THE COURT:  How far did you go in school?

8              THE PROSPECTIVE JUROR:  Associate's in liberal arts.

9              THE COURT:  Do you have family or friends that you

10   live with?

11             THE PROSPECTIVE JUROR:  Yes, my parents.  My father

12   is retired and my mother is an office manager.

13             THE COURT:  Do you have any children?

14             THE PROSPECTIVE JUROR:  I don't.

15             THE COURT:  And do you have any hobbies or interests

16   that you like to pursue?

17             THE PROSPECTIVE JUROR:  For interest, I'm trying to

18   be a New York State court officer.  And for hobbies, I collect

19   action figures.

20             THE COURT:  Do you have an action figure of a judge

21   like me?

22             THE PROSPECTIVE JUROR:  No, maybe one day.

23             THE COURT:  Do you belong to any organizations?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  Have you ever served on a jury before?

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Tell me about that.

3           THE PROSPECTIVE JUROR:  I think it was an injury, a

4    car accident and they settled before it got to anything.

5           THE COURT:  Anything about that experience that

6    would affect your ability to be fair?

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  If you are selected for this jury will

9    you keep an open mind, listen to all of the evidence, and give

10   us a fair verdict?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  All right, let's pass the mic on next to

13   Ms. Brown.

14          Tell us where you live, please.

15          THE PROSPECTIVE JUROR:  I live in Borough Park,

16   Brooklyn.

17          THE COURT:  How long have you been there?

18          THE PROSPECTIVE JUROR:  Forty years.

19          THE COURT:  What do you do for work?

20          THE PROSPECTIVE JUROR:  I am a special education

21   teacher.

22          THE COURT:  How long have you been doing that?

23          THE PROSPECTIVE JUROR:  Fifteen Years.

24          THE COURT:  How far did you go in school yourself?

25          THE PROSPECTIVE JUROR:  A master's degree.

Jury Selection                                   141

1           THE COURT:  In education?

2           THE PROSPECTIVE JUROR:  In special education.

3           THE COURT:  And do you have family or friends that

4      you live with?

5           THE PROSPECTIVE JUROR:  I live with -- we live in a

6      building, a family building.  So I live with my husband and my

7      mom lives downstairs and my sister and brother-in-law and kids

8      live upstairs.

9           THE COURT:  Tell me about your husband.

10          THE PROSPECTIVE JUROR:  He is a receiving manager at

11     New York Life.

12          THE COURT:  Do you have kids?

13          THE PROSPECTIVE JUROR:  No, two dogs --

14          THE COURT:  Okay.

15          THE PROSPECTIVE JUROR:  -- which count as kids.

16          THE COURT:  But they don't have jobs.

17          Do you have hobbies or interests that you like to

18     pursue?

19          THE PROSPECTIVE JUROR:  Just cooking and baking.

20          THE COURT:  Do you belong to any organizations?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Have you served on a jury before?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  If you are selected for this jury will

25     you keep an open mind, listen to all of the evidence, and give

1    us a fair verdict?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Great.  If you could pass the microphone

4    next to Ms. Whelan.

5              Tell us where you live, please.

6              THE PROSPECTIVE JUROR:  Long Beach, New York.

7              THE COURT:  How long have you been there?

8              THE PROSPECTIVE JUROR:  My whole life.

9              THE COURT:  What do you do for work?

10             THE PROSPECTIVE JUROR:  I'm a librarian in a high

11   school.

12             THE COURT:  How long have you been do doing that?

13             THE PROSPECTIVE JUROR:  Fifteen Years.

14             THE COURT:  How far did you go in school?

15             THE PROSPECTIVE JUROR:  Master's degree.

16             THE COURT:  Do you have family or friends that you

17   live with?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Tell us about them, please.

20             THE PROSPECTIVE JUROR:  I live with my husband who

21   is a retired New York City detective; one daughter who is a

22   teacher for the DOE; and my other daughter is at school,

23   college.

24             THE COURT:  Do you have hobbies or interests that

25   you like to pursue?

1          THE PROSPECTIVE JUROR:  Golfing, reading, travel.

2          THE COURT:  Do you belong to any organizations?

3          THE PROSPECTIVE JUROR:  Yes, many library

4     organizations.

5          THE COURT:  Do you have any type of leadership role

6     in any of those?

7          THE PROSPECTIVE JUROR:  One of them I am.

8          THE COURT:  Tell me about that.

9          THE PROSPECTIVE JUROR:  I am the president of the

10    library association.

11         THE COURT:  Okay.  Have you served on a jury before?

12         THE PROSPECTIVE JUROR:  No.

13         THE COURT:  If you are selected for this jury will

14    you keep an open mind, listen to all of the evidence, and give

15    us a fair verdict?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Okay.  Let's pass the microphone on next

18    to Ms. Parker.

19         Tell us where you live, please.

20         THE PROSPECTIVE JUROR:  I live in Williamsburg,

21    Brooklyn.

22         THE COURT:  How long have you been there?

23         THE PROSPECTIVE JUROR:  Thirty years.

24         THE COURT:  What do you do for work?

25         THE PROSPECTIVE JUROR:  I am director of an

1    after-school program.

2            THE COURT:  For a city school or for private?

3            THE PROSPECTIVE JUROR:  No, for city school.

4            THE COURT:  I see.  And how long have you been doing

5    that?

6            THE PROSPECTIVE JUROR:  About 20 years now.

7            THE COURT:  How far did you go in school yourself?

8            THE PROSPECTIVE JUROR:  I have a Master's degree.

9            THE COURT:  In what subject?

10           THE PROSPECTIVE JUROR:  Public administration.

11           THE COURT:  Do you have family or friends that you

12   live with?

13           THE PROSPECTIVE JUROR:  No.

14           THE COURT:  Do you have any children?

15           THE PROSPECTIVE JUROR:  Yes, I have one daughter.

16           THE COURT:  What does she do?

17           THE PROSPECTIVE JUROR:  She's a medical assistant.

18           THE COURT:  Do you hobbies or interests you like to

19   pursue?

20           THE PROSPECTIVE JUROR:  Yes.  I like to read.  I

21   like to write.  I am pursuing my doctorate degree.

22           THE COURT:  Do you belong to any organizations?

23           THE PROSPECTIVE JUROR:  No.

24           THE COURT:  Have you served on a jury before?

25           THE PROSPECTIVE JUROR:  Yes, on a grand jury.

1           THE COURT:  And same question I had for the others,

2    would you have any difficulty adapting to the rules of a jury

3    trial?

4           THE PROSPECTIVE JUROR:  No.

5           THE COURT:  Anything about your grand jury

6    experience that would make it difficult for you to be fair?

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  And if you are selected as a juror in

9    this case, will you keep an open mind, listen to all of the

10   evidence and give us a fair verdict?

11          THE PROSPECTIVE JUROR:  Absolutely.

12          THE COURT:  All right, then let's pass the

13   microphone on next to Mr. Llanes.

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Tell us where you live, please.

16          THE PROSPECTIVE JUROR:  I live in Sunset Park,

17   Brooklyn.

18          THE COURT:  How long have you been there?

19          THE PROSPECTIVE JUROR:  Eight Years.

20          THE COURT:  What do you do for work?

21          THE PROSPECTIVE JUROR:  I am a lab technologist at a

22   hospital lab.

23          THE COURT:  How long have you been doing that?

24          THE PROSPECTIVE JUROR:  Six years.

25          THE COURT:  And what other work have you done over

1    the past ten years?

2            THE PROSPECTIVE JUROR:  Retail sales associates at

3    UPS store.

4            THE COURT:  And how far did you go in school?

5            THE PROSPECTIVE JUROR:  I have a Bachelor's of

6    Science.

7            THE COURT:  Do you have family or friends that you

8    live with?

9            THE PROSPECTIVE JUROR:  Yes.  I live with my

10   parents, my brother and my sister.

11           THE COURT:  What do they all do for work?

12           THE PROSPECTIVE JUROR:  My dad works in a restaurant

13   and my mom works in a garment factory.

14           THE COURT:  Do you have any children?

15           THE PROSPECTIVE JUROR:  No, I don't.

16           THE COURT:  Do you have hobbies or interests that

17   you like to pursue?

18           THE PROSPECTIVE JUROR:  I like to read, watch

19   television, travel.

20           THE COURT:  And do you belong to any organizations?

21           THE PROSPECTIVE JUROR:  No, I don't.

22           THE COURT:  Have you served on a jury before?

23           THE PROSPECTIVE JUROR:  No.

24           THE COURT:  If you are selected for this jury will

25   you keep an open mind, listen to all of the evidence and give

```
                    Jury Selection                    147
```

1    us a fair verdict?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Okay, then let's pass the microphone on

4    next to Ms. Fuentes.

5              Tell us where you live, please.

6              THE PROSPECTIVE JUROR:  I live in Forest Hills.

7              THE COURT:  How long have you lived there?

8              THE PROSPECTIVE JUROR:  Five Years.

9              THE COURT:  Where else did you live over the last

10   ten years?

11             THE PROSPECTIVE JUROR:  Kew Gardens.

12             THE COURT:  What do you do for work?

13             THE PROSPECTIVE JUROR:  I'm an architect.

14             THE COURT:  Do you have your own practice or work

15   for somebody else?

16             THE PROSPECTIVE JUROR:  I work for someone else.

17             THE COURT:  How long have you been doing that work?

18             THE PROSPECTIVE JUROR:  Over ten years.

19             THE COURT:  How far did you go in school?

20             THE PROSPECTIVE JUROR:  Bachelor in architecture.

21             THE COURT:  Do you have family or friends that you

22   live with?

23             THE PROSPECTIVE JUROR:  Yeah.  I live with my

24   husband, he's an architect as well; and with my two boys, they

25   are six and nine years.

Jury Selection                                      148

1          THE COURT:  And do you have hobbies or interests

2     that you like to pursue?

3          THE PROSPECTIVE JUROR:  Yeah, I like to practice

4     yoga and cooking.

5          THE COURT:  Do you belong to any organizations?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Have you served on a jury before?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  If you are selected for this jury will

10    you keep an open mind, listen to all of the evidence, and give

11    us a fair verdict?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Wonderful.  And then finally for now,

14    Mr. Ramirez, tell us where you live, please.

15         THE WITNESS:  Yes, I live in Roslyn Heights, Long

16    Island.

17         THE COURT:  How long have you been there?

18         THE PROSPECTIVE JUROR:  Twenty-five Years.

19         THE COURT:  What do you for work?

20         THE PROSPECTIVE JUROR:  I'm a computer programmer.

21         THE COURT:  And do you have your own business?

22         THE PROSPECTIVE JUROR:  No, I work for a major bank

23    in Manhattan.

24         THE COURT:  How long have you been doing that?

25         THE PROSPECTIVE JUROR:  Twenty-five Years.

1        THE COURT:  And do you have family or friends that
2   you live with?
3        THE PROSPECTIVE JUROR:  My wife, she's a chemical
4   engineer; and my father-in-law, who is retired.
5        THE COURT:  Do you have any children?
6        THE PROSPECTIVE JUROR:  I have two daughters, 30 and
7   26.
8        THE COURT:  What do they do for work?
9        THE PROSPECTIVE JUROR:  One is an event planner and
10  the other is graphic designer.
11       THE COURT:  I neglected to ask, how far did you go
12  in school?
13       THE PROSPECTIVE JUROR:  I have a Master's degree in
14  computer science.
15       THE COURT:  Do you have hobbies or interests that
16  you like to pursue?
17       THE PROSPECTIVE JUROR:  Lots of hobbies, not enough
18  time.
19       THE COURT:  What do you spend your free time on
20  mostly?
21       THE PROSPECTIVE JUROR:  Golf, when I get a chance,
22  and fixing my house and my mother's house.
23       THE COURT:  Okay.  Do you belong to any of
24  organizations?
25       THE PROSPECTIVE JUROR:  No, I don't.

```
                        Jury Selection                    150
```

 1            THE COURT:  Have you served on a jury before?

 2            THE PROSPECTIVE JUROR:  Twice, criminal cases.

 3            THE COURT:  What kind of cases?

 4            THE PROSPECTIVE JUROR:  Criminal cases.

 5            THE COURT:  Do you remember what the crimes charged

 6     were in the cases?

 7            THE PROSPECTIVE JUROR:  One was drug related, and

 8     the other one was some sort of assault.

 9            THE COURT:  Okay.  And in each of those cases did

10     you deliberate and reach a verdict?

11            THE PROSPECTIVE JUROR:  Yes, we did.

12            THE COURT:  Is there anything about either of those

13     experiences that you think would make it difficult for to be

14     fair here?

15            THE PROSPECTIVE JUROR:  No.

16            THE COURT:  If you are selected for this jury will

17     you keep an open mind, listen to all of the evidence, and give

18     us a fair verdict?

19            THE PROSPECTIVE JUROR:  Absolutely.

20            THE COURT:  Okay.

21            Folks, I am going to ask you to sit tight for a few

22     minutes.  I am going to talk to counsel at the sidebar.

23            MR. STEIN:  Mr. Ramirez's neighborhood?

24            THE COURT:  What neighborhood?

25            THE PROSPECTIVE JUROR:  Roslyn Heights, on Long

Sidebar                                        151

1   Island.

2            THE COURT:  So, folks, I am going to ask you to just

3   sit tight.  I need to talk to the lawyers at the sidebar here.

4   It may take a few minutes, but we are getting very close to

5   the end of our process, so please bear with us.

6            (Sidebar held.)

7            (The following sidebar took place outside the

8   hearing of the prospective jurors.)

9            THE COURT:  All right, folks, let's start with any

10  challenges for cause.

11           MR. STEIN:  Judge, I have some additional questions

12  to ask.

13           THE COURT:  I'll get to that in just a minute.  So

14  far any challenges for cause?

15           MR. STEIN:  No.

16           THE COURT:  No, okay.  Any?

17           MR. SELDEN:  None on behalf of the Government.

18           THE COURT:  Follow-up.

19           MR. STEIN:  Yes, Judge.  Judge, Mr. Ng.

20           THE COURT:  There are two of them.

21           MR. STEIN:  Christopher Ng.

22           THE COURT:  Christopher Ng, he's Alternate 2; yes.

23           MR. STEIN:  I am trying to read my notes.  So, I

24  believe he said he was applying for a job as a New York City

25  court officer.

```
                        Sidebar                      152
```

1           THE COURT:  Yes.

2           MR. STEIN:  I would like to know whether he applied

3    for a job in the Police Department; and if so, what happened.

4           THE COURT:  Okay.

5           MR. STEIN:  And Marie Whelan, whose husband is a

6    retired New York City detective, what was his assignment?  I

7    don't mean just his precinct, but what kind of work did he

8    investigate.

9           THE COURT:  Do you have anything else?

10          MS. FARRELL:  No, thanks.

11          MR. STEIN:  Just let me see.

12          Judge, the other thing, I don't know whether you

13   think it's just for Judge Vitaliano, but since everybody in

14   the world seems to be on social media and Googling, are you

15   going to say anything to the jurors about not engaging in

16   that?

17          THE COURT:  Once we have selected the jury, as I

18   give them their instructions between now and tomorrow I will

19   tell them to stay off social media, but I don't have a long

20   instruction to give.  Mostly, I will defer to Judge Vitaliano.

21          Any other follow-ups?

22          MR. SELDEN:  Not on behalf of the Government.  Thank

23   you.

24          THE COURT:  If it's all right with you, I am just

25   going to ask you to do that while we stay here.

Jury Selection                           153

1          Do you think we can do it in like 10, 15 minutes?

2          MR. STEIN:  I would like to speak to Mr. Farrell and

3   our client.

4          THE COURT:  So we will need to take a lunch break if

5   we do that.

6          Do you think we can take a short break and do that?

7          MR. STEIN:  A short lunch break?

8          THE COURT:  No, a short break in a few minutes and

9   come back, or do you think you need a full lunch break?

10          I do not want to rush you at all.  You know what,

11  let's wait until I do the follow-up.

12          (Sidebar concluded.)

13          (In open court - prospective jurors present.)

14          THE COURT:  Folks, just a couple follow-up questions

15  that I should have asked.

16          Mr. Christopher Ng, because we've got two Mr. Ngs,

17  you said you applied to be a court officer?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Did you also apply for the police

20  department?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  And, Ms. Whelan, you said your husband

23  is an officer, a police officer or was.

24          THE PROSPECTIVE JUROR:  Yes.

25          THE COURT:  What kind of cases did he investigate,

```
                        Sidebar                      154
```

1    do you know?

2            THE PROSPECTIVE JUROR:  Murder, robberies.  He was a

3    precinct detective, so he got whatever was assigned.

4            THE COURT:  Which precinct?

5            THE PROSPECTIVE JUROR:  The 7-5 in East New York.

6            THE COURT:  And would his work have any bearing on

7    your ability to be fair in this case?

8            THE PROSPECTIVE JUROR:  I don't think so.

9            THE COURT:  Okay, all right, thank you.

10           (Sidebar held.)

11           (The following sidebar took place outside the

12   hearing of the prospective jurors.)

13           THE COURT:  Based on that, any follow-up or

14   challenges for cause?

15           MR. SELDEN:  Not on behalf of the Government.

16           MR. STEIN:  Can I have a moment, Judge?

17           THE COURT:  Yes.

18           (Pause.)

19           MR. STEIN:  Judge, Ms. Whelan, whose husband's a

20   retired New York City detective, his investigation sounds

21   similar to what is involved in this case, so I would like to

22   know whether or not there is anything about what she's heard

23   about the nature of the charges, given her husband's previous

24   employment, that may affect her view at all.

25           THE COURT:  I think we have a record on that and I

                              Sidebar                        155

1    am satisfied that she has understood it and can be fair.

2         I am happy to entertain a challenge for cause, but I

3    think the record is clear enough.

4         Anything else?

5         MR. SELDEN:  Not on behalf of the Government.

6         THE COURT:  All right, I don't want to rush you.  I

7    would very much like, if possible, to find a way to not send

8    everybody to lunch and have them come back, but you tell me.

9         What do you need to do to represent your client?

10        MR. STEIN:  Well, we'd like to speak with him.  I

11   don't know how long it is going to take, whether it's short, I

12   don't know, Judge.  I mean, honestly.

13        THE COURT:  Here is what I am going to suggest.  I

14   am going to say we send them out for 10 minutes.  If you come

15   back sooner, great, but have them stand by.  If you can get

16   done before a lunch break, great; but if you don't think you

17   can do it in good conscience, I will send them for a lunch

18   break then.

19        MR. STEIN:  Thanks, Judge.

20        (Sidebar concluded.)

21

22        (Continued on the following page.)

23

24

25

1              (In open court.)

2          THE COURT:  Folks, here is what we're going to do:

3    I have delayed the lunch a long time.  I would like to get

4    through the process entirely before taking an hour plus lunch

5    break.  What we're going to do, the lawyers need some time to

6    talk to their client.  We need the courtroom for that.  We're

7    going to take a ten-minute break and come back.  At that point

8    we'll do the last part of the process which will take a few

9    minutes or I'll tell you it's not possible and we'll take a

10   lunch break.  We'll try our best to get it done.  Take a

11   ten-minute break.  Same instructions as before.  Don't talk to

12   each other.  If you see counsel in the corridor, don't talk to

13   them.  Same instructions as before.  Ten-minute break.

14             (Jury excused.)

15         THE COURT:  All right.  I'll be right back.

16             (Recess taken.)

17             (In open court; jury not present.)

18         THE COURT:  Excuse me, folks.  Can I get your

19   attention for a moment?  We're fifteen minutes into our

20   ten-minute break.  I get the impression that you are all still

21   working hard.  It's probably best to give them a lunch break

22   and have them come back.  Does that make sense?

23         MR. STEIN:  That's fine.

24             (Jury present.)

25         THE COURT:  All right, folks.  So the lawyers are

Anthony M. Mancuso, CSR     Official Court Reporter

1   working very hard to get this done so that we can send you

2   home if you are not going to be on the jury.  The truth is

3   this is something that can't be rushed and we're not going to

4   get it done before you take a lunch break.  I'm going to ask

5   you to take a lunch break and be back here in the same seats

6   at 2:30 p.m. and we'll be ready to go to finish up the process

7   quickly and get those of you who are not staying with us on

8   your way.  For now have a good lunch break.  Don't discuss the

9   case.  Don't take offense that those people at the table don't

10  acknowledge your presence because they can't.  I'll see you

11  all at 2:30 in your seats.  Have a good lunch.

12              (Jury excused.)

13              THE COURT:  Folks, have a good lunch.  If you could

14  be back here at 2:25 if you need to raise anything with me.

15              (Lunch recess taken.)

16

17

18

19

20

21

22

23

24

25

158

1          AFTERNOON SESSION

2          (In open court; jury not present.)

3          THE COURT:  Are we ready to go before we invite

4    jurors back in?

5          MR. SELDEN:  Nothing on behalf of the government.

6          MR. STEIN:  No, your Honor.

7          THE COURT:  We're ready to come up to sidebar?

8          MR. SELDEN:  Yes, your Honor.

9          MR. STEIN:  Yes, your Honor.

10         THE COURT:  Great.

11         (Jury present.)

12         THE COURT:  We're just waiting for one more juror.

13         (Pause.)

14         THE COURT:  All right.  Welcome back everybody.  I

15   hope you had a good lunch break.  We are at what I hope will

16   be the final stage of our selection procedure.  The lawyers

17   have been working hard over the lunch break.  I'm going to ask

18   you to sit patiently for us.  We have some discussion to have

19   here and we'll be able to wrap up the process.

20         (Sidebar.)

21         THE COURT:  All right.  The government has the first

22   strike .

23         MR. SELDEN:  Thank you, your Honor.

24         THE COURT:  Just remember only strike against the

25   main pool of 28 for the main jury and then strikes against the

1  second row for the alternate pool.  First strike .

2          MR. SELDEN:  Your Honor, the government's first

3  strike, we would move to strike Mr. Seat four, Mr. Figuieredo.

4          THE COURT:  Mr.  Figuieredo, okay.

5          Defense has the next four strikes.

6          MR. STEIN:  The next four?

7          THE COURT:  Yes.

8          MR. STEIN:  Judge, maybe I'm misreading this or

9  something worse.  I thought it was one, two, one two.

10         THE COURT:  One, two, two, one, one.  It's all

11  written down there.

12         MR. STEIN:  So one, two, five and nine.

13         THE COURT:  So that's Mr. Diaz in seat one.  Ms.

14  Rudolph in seat two; Ms. Vance Burke in seat five and

15  Mr. Wilson in seat nine.

16         The government has the next two strikes.

17         MR. SELDEN:  Thank you, your Honor.  Your Honor,

18  seat 16.

19         THE COURT:  Ms. Taylor .

20         MR. SELDEN:  Yes, your Honor.

21         And seat 26.

22         THE COURT:  Ms. Ray.

23         MR. SELDEN:  Thank you, your Honor.

24         THE COURT:  All right.  Defense has four strikes .

25         MR. STEIN:  13.

160

1        THE COURT:  13 is Mr. Hernandez.

2        MR. STEIN:  14.

3        THE COURT:  Mrs. Fletcher-Lewis

4        MR. STEIN:  Seat 19 and 20.

5        THE COURT:  19, Ms.  Marando.  And 20, Mr. Raymond

6   Ng.

7        The government has the next two strikes.

8        MR. SELDEN:  Thank you, your Honor.

9        Your Honor, we would strike seat 17.

10        THE COURT:  Ms. Williams.

11        MR. SELDEN:  As well as seat six.

12        THE COURT:  Number six, Mr. Khurshid.  All right.

13   Defense has the last two strikes against the main panel.

14        MR. FARRELL:  The main panel goes up to?

15        THE COURT:  Number 28.  Basically everybody in the

16   first row.

17        MR. STEIN:  22 and 28.

18        THE COURT:  So number 22 is Ms. Giordano.  And

19   number 28 is Mr.  Sabine.

20        THE COURT:  And the government has one last strike

21   against the main panel .

22        MR. SELDEN:  Seat eight, please.

23        THE COURT:  Number eight, Mr. Patrick.

24        All right.  So let's go through who is on our main

25   panel.  It Ms.  Harriott in seat three; Mr. Romain in seat

Anthony M. Mancuso, CSR     Official Court Reporter

1    seven; Ms.  Honig in seat ten; Mr. Bosco in seat eleven;

2    Mr. Claro in seat twelve; Mr. Hammer in seat 15; Ms.  Marks in

3    seat 18; Ms. Cruz in seat 21.  Ms. Haque in seat 23; Mr.

4    Dunford in seat 24; Mr. Masch in seat 25 and Ms. Woods in seat

5    27.  Does that accord with your notes, folks?

6              MR. STEIN:  Yes, your Honor .

7              MR. SELDEN:  Yes, your Honor.

8              THE COURT:  Let's move on to the alternate panel.

9    Anyone in that second row?

10             MR. STEIN:  We're starting, just to be clear, with

11   number 29?

12             THE COURT:  Yes.

13             The government goes first.

14             MR. SELDEN:  Seat 33, please, your Honor.

15             THE COURT:  That's Ms. Parker.

16             MR. SELDEN:  Yes.

17             THE COURT:  Defense has both of its alternate

18   strikes now.

19             MR. STEIN:  30 and 32.

20             THE COURT:  So 30 is Christoper Ng and 32 is Ms.

21   Whelen.

22             And the government has one last strike against the

23   alternate pool.

24             MR. SELDEN:  Number 35, your Honor.

25             THE COURT:  Number 35 is Ms. Fuentes.

162

1          MR. SELDEN:  Thank you, your Honor.

2          THE COURT:  All right.  So that leaves us our four

3     alternates, Mr. Zarrella in seat 29; Mrs. Brown in seat 31;

4     Mr. Zhang in seat 34 and Ms. Ramirez in seat 36.  Does that

5     accord with your notes?

6          MR. STEIN:  Yes, your Honor .

7          MR. SELDEN:  I believe it does.

8          THE COURT:  Thank you all.  Before I let you go, do

9     you know if Judge Vitaliano wants to see them?

10         THE CLERK:  He doesn't.

11         THE COURT:  Thank you.  Have a seat.

12         (Continued on next page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Jury Selection                                   163

1           (In open court.)

2           THE COURT:  All right.  Folks,  thank you all for

3    your patience.  First of all, I am going to announce the

4    members of your jury in just a moment.  If you hear your name,

5    I am going to ask you to stay.  If you don't, I am going to

6    excuse you and you go back to the jury assembly room.  It is

7    possible at this point in the day, unlikely, you will be

8    required for your service.

9           For all of you in the back who have been sitting

10   there patiently all day and who I haven't called, I'm sorry I

11   didn't excuse you earlier, but we never know until we get to

12   this point whether we are going to need you or not.  Thank you

13   all for your service.  I am going to ask you to go down to the

14   second floor assembly room as well.  Not yet.  Wait until I

15   excuse others.

16          Our jurors are going to be Ms. Harriott, Mr. Romain,

17   Ms. Honig, Mr. Bosco, Mr. Claro, Mr. Hammer, Ms. Marks, Ms.

18   Cruz, Ms. Haque, Mr. Dunford, and Mr. Masch, and Ms. Woods.

19   You are our main panel jurors.

20          And then our alternate jurors are Mr. Zarrella, Ms.

21   Brown, Mr. Ng and Mr. Ramirez.

22          If I have called your name, please stay in the room.

23   I am going to rearrange your seating, but please stay where

24   you are for right now.

25          If you haven't heard your name, please go down to

1   the central jury room.  Thank you for your service.  We all

2   appreciate it.

3          I will put you in the order I think you will be

4   seated in during the trial.  Ms. Harriott come to the seat

5   closest to me in the front row and then in the same order that

6   you are in, Mr. Romain in seat two, Ms. Honig in seat three.

7   Mr. Bosco, in seat four, Mr. Claro in seat five.  Mr. Hammer,

8   come down to the last seat in the front row, seat six.  Ms.

9   Marks, move up to the seat in the second row.  Ms. Cruz,

10  second seat in the second row, and then Ms. Haque the third

11  seat in the second row.  Mr. Dunford, you will be in the

12  fourth seat in the second row, and then Mr. Masch in the fifth

13  seat, second row, Ms. Woods in the sixth seat, second row.

14         The back row, Mr. Zarrella, you will be the seat

15  closest to me.  Ms. Brown in the second seat.  Mr. Ng in the

16  third seat, and Ms. Ramirez in the fourth seat.  I'll warn

17  you, don't get too comfortable, you won't be there long for

18  today.

19         Folks, I will keep you a moment more for some

20  instructions for now until you come back tomorrow to start the

21  trial.  Ms. Guy and Ms. Almonte will bring you back to the

22  jury room.

23         The trial hasn't started yet.  You haven't heard any

24  evidence, so there is nothing to discuss.  Don't discuss the

25  case with each other, with others outside the case, really.  I

1    don't expect there to be anything to read about or listen to.

2    If you happen to see or hear something, stop reading or

3    listening and let somebody from the Court staff know.  Don't

4    look for any information about the case.  Don't search the

5    internet for it.  Don't post on social media about it.  If

6    anybody asks you about your service, just say I'm on a jury

7    and the judge has told me not to talk about it.  I think that

8    should probably do it.  If for any reason somebody is being

9    persistent about it, just stick to that line, I have been told

10   not to discuss the case.  But if you think somebody is being

11   persistent, let somebody from the Court staff know, if it's

12   me, Ms. Guy, Ms. Almonte or somebody on Judge Vitaliano's

13   staff.

14           As before, if you happen to see anybody from the

15   trial teams in the courthouse as you are coming in and out,

16   they are not going to acknowledge you.  They can't have any

17   contact with jurors outside this courtroom.  As I said, Ms.

18   Guy and Ms. Almonte will have more instructions for you jury

19   room.  I want to thank you all for your service.

20           I wish you the best of luck with the trial.

21           All rise, please.  The jury is excused.

22           (Jury exits the courtroom.)

23           THE COURT:  All right, folks, anything before we

24   adjourn for the day?

25           MR. SELDEN:  Not on behalf of the Government.

1        THE COURT:  For the defense?

2        MR. STEIN:  No, Your Honor.

3        THE COURT:  Thank you all.  The best of luck.

4        (Matter concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25